Patrick J. Perotti (Ohio Bar No. 0005481)
Frank A. Bartela (Ohio Bar No. 0088128)
DWORKEN & BERNSTEIN CO., L.P.A.
60 South Park Place
Painesville, Ohio 44077
Telephone: (440) 352-3391
Facsimile: (440) 352-3469
Email: pperotti@dworkenlaw.com
        fbartela@dworkenlaw.com

John A. Kithas (California Bar No. 64284)
Christopher Land (California Bar No. 238261)
LAW OFFICES OF JOHN A. KITHAS
One Embarcadero Center, Suite 1020
San Francisco, CA 94111
Telephone: (415) 788-8100
Facsimile: (415) 788-8001
Email: john@kithas.com
        chris@kithas.com

Attorneys for Plaintiff JAMES P. BRICKMAN

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMES P. BRICKMAN, individually and as a representative of all others similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> FITBIT, INC., <br><br> Defendant. | Case No. 3:15-cv-2077 <br><br> COMPLAINT <br> CLASS ACTION <br> DEMAND FOR JURY TRIAL |

Now comes Plaintiff James P. Brickman, individually and as a representative of all others similarly situated, and for his Class Action Complaint states:

### INTRODUCTION

This is a class action brought by James P. Brickman ("Plaintiff"), individually and as putative class representative, against Fitbit, Inc. ("Defendant" and/or "Fitbit"). Defendant sells wearable, wireless-enabled devices that purportedly track exercise and other fitness and physical activity to

measure data such as the number of steps walked, calories burned, and other personal metrics. This lawsuit does not challenge any of those functions. Recently however, Defendant has made specific advertisement claims that for an extra charge, the customer can purchase a device which also contains a "sleep-tracking" function which will track "how long you sleep," "the number of times you woke up," and "the quality of your sleep." In fact, the sleep-tracking function does not and cannot do these things. It does not perform as advertised. Consumers who purchase these products and pay the extra amount for this function do not receive the value of this function for which they paid.

By advertising this sleep-tracking function without actually providing this function to its customers, Defendant is violating California law. This lawsuit is to stop this unlawful practice, force the Defendant to return and disgorge its inequitable profits, and recover for customers the overcharges which they paid.

## PARTIES

1.     Plaintiff James P. Brickman is an individual and resident of the State of Florida, County of Hernando, City of Spring Hill.

2.     Defendant Fitbit, Inc. is a corporation organized under the laws of Delaware, headquartered in San Francisco, CA, and registered to do business with the Secretary of State of California.  Defendant operates its website and online store (www.fitbit.com) from California, through which Defendant sells its consumer fitness devices. Defendant also sells these devices at national brick-and-mortar retailer stores, including Apple stores, AT&T and Verizon stores, Best Buy, Brookstone, Dick's Sporting Goods, RadioShack, REI, Target, and more (see http://www.fitbit.com/where-to-buy).

## JURISDICTION & VENUE

3.     Defendant is a citizen of the State of California and Plaintiff is a citizen of the State of Florida.

4.     This is a putative class action which involves more than 100 class members and more than $5,000,000.00 in controversy.

5. This Court has jurisdiction over the present matter pursuant to 28 U.S.C. §1332 et seq.

6. Venue is proper in this Court pursuant to 28 U.S.C. §1391(b)(1) because Defendant has its headquarters in this District.

6b. Intradistrict Assignment: Assignment to the San Francisco Division is proper because a substantial part of the events or omissions which give rise to the claim occurred in this county.

## FACTS

7. Plaintiff realleges and incorporates herein all previous paragraphs of this Complaint.

8. Defendant markets and sells to consumers, directly and through large retail stores throughout the country, distinctly branded personal fitness-tracking devices. These are called the Fitbit Force, Fitbit Flex, Fitbit One, Fitbit Zip, and Fitbit Ultra; as well as Fitbit's second-generation products, the Fitbit Charge, Fitbit Charge HR, and Fitbit Surge.

9. The basic model of the devices, the Fitbit Zip, does not have the 'sleep-tracking function' and the price for this base-model device does not reflect any extra charge for that function.

10. In contrast, the non-Zip Fitbit devices – the Fitbit Force, Fitbit Flex, Fitbit One, Fitbit Ultra, Fitbit Charge, Fitbit Charge HR, and Fitbit Surge (herein "Fitbit devices") – charge at least an additional $30 for the 'sleep tracker' function which is not available on the Fitbit Zip. The Fitbit Force, Fitbit Flex, Fitbit One, Fitbit Ultra, Fitbit Charge, Fitbit Charge HR, and Fitbit Surge all claim to "track hours slept," track "times woken up", and track the "quality of sleep" of the wearer. These claims are on Fitbit Inc.'s website (www.fitbit.com) as well as on the actual physical packaging of the device itself.

11. On its always-available website, www.fitbit.com, Fitbit Inc. advertises claims that these sleep-tracking devices will "measure your sleep quality. Once the data syncs, graphs on your (device) dashboard will reveal how long you slept and the number of times you woke up, giving you a 'sleep quality score.'"

12. Even more, the functional displays of information (see below) present even further detail and specific claims. These images claim to identify exactly what time and for how long the

wearer was awake over the course of each night's sleep. These images also include specific numbers for "actual sleep time, X hrs X mins," "bed time XX:XX p.m.," "fell asleep in X minutes," "awakened X times," "sleep efficiency X%," "X minutes awake," "X restless minutes," and how many times the user was awake and/or restless over the course of the wearer's night of sleep.



13.     These are specific numbers presented to the consumer as exact times and percentages.

14. However, the Fitbit sleep-tracking technology cannot and does not perform these functions as represented.

<u>Research Shows Fitbit Sleep-Tracking Devices "Consistently Misidentify" Sleep[1]</u>

15. Polysomnography and actigraphy are the two widely accepted sleep-monitoring technologies used by sleep scientists.

16. Polysomnography is the most accurate of sleep-monitoring technologies. In polysomnography, a patient is hooked up to electrodes which report information back to a technician or doctor who, in real time, monitors the scientific equipment. This method accurately monitors many body functions during sleep, including brain function, eye movements, muscle activity, heart rhythm, and more, to diagnose and/or rule out sleep disorders.

17. Actigraphy, on the other hand, is a less invasive sleep-monitoring technology. The standard method involves attaching an actimetry sensor to the patient to measure gross motor activity. While actigraphy is a scientifically accepted technology, it is widely regarded as less accurate than the polysomnography.

18. The Fitbit sleep-monitoring function available to consumers on the Fitbit devices uses a much cheaper, and much less accurate actigraphy-like technology called an accelerometer (a "3-axis accelerometer" according to the device specs) to purportedly track a wearer's movement while they are sleeping.

19. At least one study has shown that the accuracy of the accelerometer in the Fitbit sleep-tracking devices falls far below the accuracy level of the actigraphy, and far below an acceptable standard of accuracy to render it useful in any way for scientific purposes.

---

[1] The scientific study referred to in this section is available at http://www.ncbi.nlm.nih.gov/pubmed/21971963.

Additionally, a significant amount of anecdotal evidence suggests that there is a pattern of consumer as well as sleep-scientist dissatisfaction with the Fitbit devices' sleep-tracking function. See http://www.theguardian.com/lifeandstyle/2014/aug/22/sleep-trackers-to-boost-health-fitness (last visited October 28, 2014); http://www.livescience.com/42710-fitness-trackers-sleep-monitoring-accuracy.html (last visited October 28, 2014); http://www.huffingtonpost.com/2014/01/22/fitness-trackers-sleep_n_4637328.html (last visited October 28, 2014); http://www.usatoday.com/story/news/nation/2013/03/24/sleep-tracking-devices/2007085/ (last visited October 28, 2014); http://techcrunch.com/2012/11/18/fitbit-one-review-slightly-flawed-but-still-a-great-way-to-quantify-yourself/ (last visited October 28, 2014); http://gizmodo.com/fitbit-force-review-a-health-tracker-youd-actually-ke-1454962288 (last visited October 28, 2014); http://gizmodo.com/5954563/fitbit-one-review-a-great-way-to-monitor-your-wretched-laziness (last visited October 28, 2014).

20.    The Fitbit sleep-tracking function consistently overestimated sleep by *67 minutes per night* as compared to what the polysomnography reported.

21.    The Fitbit sleep-tracking function consistently overestimates sleep by *43 minutes per night* as compared to what even the less-accurate actigraphy reported.

22.    Despite being based on similar technology to the actigraphy, this study unequivocally evidences that the actual, discrete, specific numbers that the Fitbit sleep-tracking function presents to consumers as fact are substantially less accurate than any scientifically-accepted method of sleep-tracking.

23.    Despite Fitbit, Inc's specific representations that the Fitbit sleep-tracking function can and does track and provide precise and accurate numbers, down to the minute, of how much sleep a user gets, the Fitbit sleep-tracking function simply does not and cannot accurately provide these numbers.

24.    Fitbit, Inc. goes beyond even those exact, mathematical representations, though, and represents to consumers that the sleep-tracking function can actually take those numbers, the numbers that the function itself purportedly carefully works out, to determine, to an exact percentage, the quality and efficiency of the consumer's sleep.

25.    This, plainly, is false. The Fitbit sleep-tracking function simply does not and *cannot* inform the user how well they slept with any accuracy whatsoever.[2]

26.    Fitbit Inc. has egregiously overstated the ability of the Fitbit sleep-tracking function to perform as advertised. At the absolute very least, Defendant has failed to disclose and/or has concealed material facts from consumers, namely, the limitations of the sleep-tracking function of these devices.

27.    While Plaintiff and the putative class members expressly disclaim any recovery for physical injury flowing from any misrepresentations made by Defendant, nevertheless, these misrepresentations implicate serious public health concerns, as thinking you are sleeping *up to 67*

---

[2] It should be noted that a consumer can manually input their sleep data on the dashboard function through their computer or through Fitbit's website. This, however, does not affect the primary claim herein – that Defendant represented to consumers that each of the putative class devices would have a useful and functional sleep-tracking function, this function does not perform as represented, Plaintiff and the putative class members paid for a device that was supposed to have a useful and functional sleep-tracking function, and Plaintiff and the putative class members are entitled to recovery in the amount of the value of that function.

*minutes more than you actually are* can obviously cause health consequences, especially over the long term.

28.   As such, reasonable consumers are likely to be deceived by Defendant's representations.

29.   Moreover, Plaintiff and the putative class members have been harmed in that they have paid for this sleep-tracking function, which was promised to them by Defendant through advertising, packaging, and other public and direct representations, and they have not received the function for which they have paid.

## PLAINTIFF BRICKMAN'S PURCHASE

30.   Plaintiff realleges and incorporates herein all previous paragraphs of this Complaint.

31.   On or about November 29, 2013, Plaintiff Brickman purchased a Fitbit Flex device, which includes the sleep-tracking function challenged in this action.

32.   Plaintiff Brickman contracted with Defendant to purchase said device for $99.00, which Defendant had represented through advertising, the packaging on the device itself, its website (www.fitbit.com), its social media pages (including, but not limited to, www.facebook.com/fitbit) and other public and direct representations, to include a sleep-tracking function as described above.

33.   Plaintiff's receipt is attached hereto as Exhibit A and incorporated herein.

34.   Images of the packaging for Plaintiff's purchased Fitbit Flex are attached hereto as Exhibit B and incorporated herein.

35.   Plaintiff encountered and relied on Defendant's representations as to the Fitbit Flex's sleep-tracking function, as described above, including, but not limited to, Defendant's representations through advertising, the packaging on the device itself, its website (www.fitbit.com), Defendant's social media pages (including, but not limited to, www.facebook.com/fitbit), and other public and direct representations. See ¶¶ 10 – 13, above.

36.   Defendant's representations that Plaintiff Brickman would receive a working and functional sleep-tracking feature were false. The product Plaintiff Brickman purchased did not perform as advertised.

## CLASS ALLEGATIONS

37.     Plaintiff realleges and incorporates herein all previous paragraphs of this Complaint.

38.     Plaintiff brings this action on behalf of himself and all other similarly situated persons (hereinafter referred to as "putative class members"), to wit:

> All individuals who have purchased a Fitbit Force, a Fitbit Flex, a Fitbit One, a Fitbit Ultra, a Fitbit Charge, a Fitbit Charge HR, and/or a Fitbit Surge within the applicable statute of limitations.

39.     The class numbers over one-hundred (100) persons and is so numerous that joinder of all members is impracticable, and it is further impracticable to bring all such persons before this Court.

40.     The injuries and damages to these class members present questions of law and fact that are common to each class member, and that are common to the class as a whole.

41.     Defendant has engaged in the same conduct regarding all of the other members of the classes asserted in this suit.

42.     The claims, defenses, and injuries of the representative Plaintiff is typical of the claims, defenses, and injuries of all those in the class he represents, and the claims, defenses, and injuries of each class member are typical of those of all other members in the class.

43.     The representative Plaintiff will fully and adequately protect and represent the entire class, and all of its putative class members.

44.     The identity of all members of the class cannot be determined at this time, but will be so determined at a later time upon obtaining discovery from Defendant and others.

45.     The prosecution of separate actions by each member of these classes would create a substantial risk of inconsistent or varying adjudications with regard to individual members of the class that would establish incompatible standards of conduct for Defendant.

46.     The prosecution of separate actions would also create a substantial risk of adjudication with respect to individual members of the class which, as a practical matter, would be dispositive of the interest of other members not parties to the adjudication, thereby substantially impairing and impeding their ability to protect these interests.  Further, the maintenance of this suit

as a class action is the superior means of disposing of the common questions which predominate herein.

**FIRST CLAIM FOR RELIEF**
**California's Unfair Competition Law**
**Bus & Prof. Code, § 17200 *et seq*.**

47.     Plaintiff realleges and incorporates herein all previous paragraphs of this Complaint.

48.     At all times relevant hereto, Defendant's alleged actions constitute a business practice under California law.

49.     The California Unfair Competition Law ("UCL") defines unfair business competition to include "unlawful, unfair, or fraudulent" acts or practices, as well as any unfair, deceptive, untrue, or misleading advertising. Bus & Prof. Code, § 17200.

50.     The California Supreme Court has emphasized that the "[s]ubstantive right extended to the public by the UCL is the right to protection from fraud, deceit, and unlawful conduct, and the focus of the statute is on the defendant's conduct."

        a.   "Unlawful" Prong of the UCL

51.     Plaintiff realleges and incorporates herein all previous paragraphs of this Complaint.

52.     A business act or practice is "unlawful" if it violates any established state or federal law.

53.     The Federal Trade Commission Act prohibits unfair methods of competition, and unfair or deceptive acts or practices in or affecting commerce, which includes, inter alia, false advertising. 15 U.S.C. § 41 et seq.; 15 U.S.C. § 52(a) & (b).

54.     Defendant has violated and continues to violate the "unlawful" prong of the UCL by violating the FTC Act's prohibition on false advertising and deceptive acts and practices when it represented to consumers that the sleep-tracking function of its Fitbit devices can and does make specific, mathematical measurements and calculations as to the amount and quality of the wearer's sleep, as stated above.

55.     As detailed in Plaintiff's Second Claim for Relief, below, Cal. Bus. & Prof. § 17500 (California False Advertising Law aka "FAL") prohibits unfair, deceptive, untrue, or misleading advertising, including, but not limited to, making untrue or misleading statements in advertising.

56.     Defendant has violated and continues to violate the "unlawful" prong of the UCL by violating the FAL. See ¶¶ 81 – 86, below.

57.     Moreover, as detailed in Plaintiff's Third Claim for Relief, below, Cal. Civ. Code §1770 (California Legal Remedies Act aka "CLRA") section (a)(5) prohibits a business from "representing that goods… have… characteristics,… uses,  [or] benefits… which they do not have"; Section (a)(7) prohibits a business from representing that its devices are "of a particular standard or quality, when they are of another"; and §1770(a)(9) prohibits a business from "advertising goods or services with intent not to sell them as advertised."

58.     Defendant has violated and continues to violate the "unlawful" prong of the UCL by violating the CLRA. See ¶¶ 81 – 86, below.

59.     As a direct and proximate result of Defendant's violations, Plaintiff and the putative class members have suffered injury in fact in an amount to be established at trial. For instance, Defendant markets and sells the Fitbit Zip, which contains the same fundamental features of the other Fitbit devices EXCEPT the sleep-tracking function. The Fitbit devices with the sleep-tracking function are at least $30 more than the Fitbit device without the sleep-tracking function.

60.     Through its unlawful acts and practices, Defendant has obtained, and continues to unfairly obtain, money from members of the putative class. As such, Plaintiff requests that this court restore this money to Plaintiff and all putative class members, to disgorge the profits Defendant has made on its sleep-tracking function, and to enjoin Defendant from continuing to violate the UCL as discussed herein.

b.   "Unfair" Prong of the UCL

61.     Plaintiff realleges and incorporates herein all previous paragraphs of this Complaint.

62.     A business act or practice is "unfair" if the reasons, justifications, and motives of the alleged wrongdoer are outweighed by the gravity of the harm to the alleged injured party.

63.     Defendant has violated and continues to violate the "unfair" prong of the UCL by falsely representing that the sleep-tracking function of its Fitbit devices can make specific, mathematical measurements and calculations as to the amount and quality of the wearer's sleep as stated above.

64.     These acts and practices are unfair because they are likely to cause consumers to falsely believe that Defendant is offering a function that will track, to the minute, the amount they sleep and the quality and efficiency, to an exact percentage point, of that sleep.

65.     The gravity of the harm to Plaintiff and the putative class members outweighs any conceivable reasons, justifications, and/or motives of Defendant to overstate the Fitbit devices' sleep function capabilities (i.e. Defendant's profit motive).

66.     As a direct and proximate result of Defendant's violations, Plaintiff and the putative class members have suffered injury in fact in an amount to be established at trial. For instance, Defendant markets and sells the Fitbit Zip, which contains the same fundamental features of the other Fitbit devices EXCEPT the sleep-tracking function. The Fitbit devices with the sleep-tracking function are at least $30 more than the Fitbit device without the sleep-tracking function.

67.     Through its unfair acts and practices, Defendant has obtained, and continues to unfairly obtain, money from members of the putative class. As such, Plaintiff requests that this court restore this money to Plaintiff and all putative class members, to disgorge the profits Defendant has made on its sleep-tracking function, and to enjoin Defendant from continuing to violate the UCL as discussed herein.

c.     "Fraudulent" Prong of the UCL

68.     Plaintiff realleges and incorporates herein all previous paragraphs of this Complaint.

69.     A business act or practice is "fraudulent" under the UCL if it is likely to deceive members of the consuming public.

70.     Defendant's acts and practices of overstating the Fitbit sleep function's capabilities and misrepresenting that the function will track, to the minute, the amount a user sleeps and the

efficiency, to an exact percentage point, of that sleep have the likely effect of misleading consumers into believing, simply, that the function can do things it cannot. See ¶¶ 8 – 13.

71.     To reiterate, Defendant makes numerous very specific representations that the devices can and do track and provide precise and accurate numbers, down the minute, of how much sleep a user would get. The Fitbit sleep-tracking function simply does not and cannot accurately provide these numbers. See ¶¶ 8 – 13.

72.     What's more, Defendant goes beyond even those exact, mathematical representations, and represents to consumers that the sleep-tracking function can actually take those numbers that the function itself carefully worked out to determine, to an exact percentage, the quality of the consumer's sleep. See ¶¶ 8 – 13.

73.     The Fitbit sleep function cannot and does not do this.

74.     As a direct and proximate result of Defendant's violations, Plaintiff and the putative class members have suffered injury in fact in an amount to be established at trial. For instance, Defendant markets and sells the Fitbit Zip, which contains the same fundamental features of the other Fitbit devices EXCEPT the sleep-tracking function. The Fitbit devices with the sleep-tracking function are at least $30 more than the Fitbit device without the sleep-tracking function.

75.     Through its fraudulent acts and practices, Defendant has obtained, and continues to unfairly obtain, money from members of the putative class. As such, Plaintiff requests that this court restore this money to Plaintiff and all putative class members, to disgorge the profits Defendant has made on its sleep-tracking function, and to enjoin Defendant from continuing to violate the UCL as discussed herein.

## SECOND CLAIM FOR RELIEF
### California False Advertising Law, Cal. Bus. & Prof. Code § 17500 et seq.

76.     Plaintiff realleges and incorporates herein all previous paragraphs of this Complaint.

77.     The California False Advertising Law (FAL) prohibits unfair, deceptive, untrue, or misleading advertising.

78. Defendant's practice of overstating the Fitbit sleep function's capabilities and misrepresenting that the function will track, to the minute, the amount a user sleeps and the quality and efficiency of that sleep, to an exact percentage point, is an unfair, deceptive, and misleading advertising practice because it gives the false impression that the Fitbit sleep-tracking function can do things that it simply cannot do.

79. As a direct and proximate result of Defendant's violations, Plaintiff and the putative class members have suffered injury in fact in an amount to be established at trial. For instance, Defendant markets and sells the Fitbit Zip, which contains the same fundamental features of the other Fitbit devices EXCEPT the sleep-tracking function. The Fitbit devices with the sleep-tracking function are at least $30 more than the Fitbit device without the sleep-tracking function.

80. Through its deceptive advertising practices, Defendant has obtained, and continues to unfairly obtain, money from members of the putative class. As such, Plaintiff requests that this court restore this money to Plaintiff and all putative class members, to disgorge the profits Defendant has made on its sleep-tracking function, and to enjoin Defendant from continuing to violate the FAL as discussed herein.

### THIRD CLAIM FOR RELIEF
**Consumer Legal Remedies Act, Cal Civ. Code § 1750 et seq.**

81. Plaintiff realleges and incorporates herein all previous paragraphs of this Complaint.

82. At all relevant times hereto, including at all times during the transactions between Plaintiff Brickman and Defendant, and the consumer transactions between the putative class members and Defendant, Plaintiff Brickman and each of the putative class members were "consumers", and the transactions were "consumer transactions", within the meaning of the CLRA.

83. In connection with the consumer transactions alleged herein, including the consumer transaction between Plaintiff and Defendant, and the consumer transactions between the putative class members and Defendant, Defendant's representations, acts, and/or practices regarding the Fitbit sleep-tracking function's purported abilities were unfair and deceptive, to wit:

a. Defendant made very specific representations that the Fitbit sleep function will precisely track, to the minute, the amount a user sleeps and the quality and efficiency, to an exact percentage point, of that sleep.

b. Defendant goes beyond even those exact, mathematical representations, though, and represents to consumers that the sleep-tracking function can actually take those numbers, the numbers that the function itself purportedly carefully works out, to determine, to an exact percentage, the quality of the consumer's sleep.

c. Defendant specifically represents and provides to consumers exact numbers for "actual sleep time, X hrs X mins," "bed time XX:XX p.m.," "fell asleep in X minutes," "awakened X times," "sleep efficiency X%," "X minutes awake," "X restless minutes," and how many times the user was awake and/or restless over the course of the wearer's night of sleep.

84. Defendant's deceptive representations were material to the consumer transaction between Plaintiff and Defendant, and the putative class members and Defendant.

85. As a result of the conduct described herein, Defendant has engaged in unfair and deceptive sales practices in violation of the CLRA, to wit:

a. Defendant, by advertising that the Fitbit sleep-tracking function could perform tasks that it in fact could not, was thus representing that its goods had characteristics, uses, and/or benefits that they did not have, which is a violation of CLRA §1770(a)(5);

b. Defendant, by advertising that the Fitbit sleep-tracking function could perform tasks that it in fact could not, and not being able to provide consumers with a product with a function that could perform as advertised, Defendant was thus representing that its devices were of a particular standard or quality, when they are of another, which is a violation of CLRA §1770(a)(7).

c. Defendant, by advertising that the Fitbit sleep-tracking function could perform tasks that it in fact could not, and not being able to provide consumers with a product with a function that could perform as advertised, Defendant was thus advertising goods or services with intent not to sell them as advertised, which is a violation of CLRA §1770(a)(9).

86. As a direct and proximate result of Defendant's violations, Plaintiff and the putative class members have suffered injury in fact in an amount to be established at trial. For instance, Defendant markets and sells the Fitbit Zip, which contains the same fundamental features of the other Fitbit devices EXCEPT the sleep-tracking function. The Fitbit devices with the sleep-tracking function are at least $30 more than the Fitbit device without the sleep-tracking function.

**FOURTH CLAIM FOR RELIEF**
**Violation of the Magnuson-Moss Warranty Act,**
**15 U.S.C. § 2301, et. seq.**

87.    Plaintiff realleges and incorporates herein all previous paragraphs of this Complaint.

88.    At all times relevant hereto, there was in full force and effect the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301, et seq. (the "MMWA").

89.    The Fitbit products are consumer products within the meaning of 15 U.S.C. § 2301(1).

90.    Plaintiff and the putative class members are consumers as defined in 15 U.S.C. § 2301(3). They are consumers because they are persons entitled under applicable state law to enforce against the warrantor the obligations of its warranties.

91.    Defendant is a supplier and warrantor within the meaning of 15 U.S.C. § 2301(4) and (5).

92.    Pursuant to 15 U.S.C. § 2310(e), Plaintiff is entitled to bring this class action and is not required to give Defendant notice or an opportunity to cure until such time as the Court determines the representative capacity of Plaintiff pursuant to Rule 23 of the Federal Rules of Civil Procedure.

93.    In connection with its sale of the Fitbit products, Defendant gave an implied warranty as defined in 15 U.S.C. § 2301(7); namely, the implied warranty of merchantability. As a part of the implied warranty of merchantability, Defendant warranted that the sleep-tracking function of the Fitbit devices were fit for their ordinary purpose, would pass without objection in the trade as designed, manufactured and marketed, and were adequately contained, packaged and labeled. Cal. Civ. Code § 1790 et seq. (Song-Beverly Consumer Warranty Act); UCC 2-314.

94.    Defendant is liable to Plaintiff and the putative class members pursuant to 15 U.S.C. § 2310(d)(1), because it breached its implied warranty of merchantability.

95.    Defendant breached its implied warranty of merchantability to Plaintiff and putative class members because the sleep-tracking function of the Fitbit devices were not fit for the ordinary purposes for which they are used – accurately tracking the user's sleep.

96.    Defendant further breached its implied warranty of merchantability to Plaintiff and the putative class members because the Fitbit devices were not adequately contained, packaged, and labeled. The representations that accompanied the sleep-tracking function of the Fitbit devices did not adequately instruct Plaintiff or the putative class members on the proper use of the sleep-tracking function in light of the function's inability to accurately give exact, mathematical representations, as well as the sleep-tracking function's inability to take those supposedly precise numbers, the numbers that the function itself purportedly carefully works out, to determine, to an exact percentage, the quality and efficiency of the consumer's sleep.

97.    Pursuant to 15 U.S.C. § 2310(d)(1), Defendant caused Plaintiff and the putative class members foreseeable harm, to wit: the difference in value between the Fitbit devices as sold and the Fitbit devices as actually delivered – without a functioning sleep-tracking device (i.e. a partial refund of the purchase price of the Fitbit devices equal to the value of the sleep-tracking function each consumer should have received).

98.    In addition, pursuant to 15 U.S.C. § 2310(d)(2), Plaintiff and the putative class members are entitled to recover a sum equal to the aggregate amount of costs and expenses (including attorneys' fees based on actual time expended) determined by the Court to have been reasonably incurred by Plaintiff and the putative class members in connection with the commencement and prosecution of this action.

**FIFTH CLAIM FOR RELIEF**
**Breach of Express Warranties**
**Common Law, UCC, and/or Cal. Civ. Code § 1790 et seq.**

99.    Plaintiff realleges and incorporates herein all previous paragraphs of this Complaint.

100.    At all times relevant, Defendant was a "merchant".

101.    Defendant made promises and affirmations of fact through its marketing campaign, as alleged above, including, but not limited to, representing that the product had a sleep-tracking function that would perform as advertised.

102.    This product advertising constitutes express warranties, became part of the basis of the bargain, and is part of the contract between Plaintiff and the putative members of the class on

the one hand, and Defendant on the other.

103.     The affirmations of fact made by Defendant were made to induce Plaintiff and members of the purported class to purchase the products.

104.     Plaintiff and the putative class members have relied on Defendant's affirmations of fact.

105.     All conditions precedent to Defendant's liability under the warranty have been performed by Plaintiff and the putative class members or have been waived.

106.     Defendant breached the terms of the express warranty because the products did not conform to the description provided by Defendant, to wit: that the sleep-tracking function would perform as represented.

107.     As a direct and proximate result of Defendant's breach of warranty, Plaintiff and the putative class members have been damaged in an amount to be established at trial. For instance, Defendant markets and sells the Fitbit Zip, which contains the same fundamental features of the other Fitbit devices EXCEPT the sleep-tracking function. The Fitbit devices with the sleep-tracking function are at least $30 more than the Fitbit device without the sleep-tracking function.

### SIXTH CLAIM FOR RELIEF
**Breach of Implied Warranties**
**Common Law, UCC, and/or Cal. Civ. Code § 1790 et seq.**

108.     Plaintiff realleges and incorporates herein all previous paragraphs of this Complaint.

109.     At all times relevant, Defendant was a "merchant" and/or a "manufacturer," and the Fitbit products were "consumer goods" "sold" at retail.

110.     At no relevant time did Defendant state, orally or in writing, "as is" or "with all faults" on the Fitbit products or the product packaging.

111.     Defendant made promises and affirmations of fact through its marketing campaign, as alleged above, including, but not limited to, representing that the product had a sleep-tracking function that would perform as advertised.

112.     This product advertising constitutes promises and assurances including, but not limited to, implied warranties of merchantability and fitness for a particular purpose.

113. Defendant's advertising constitutes warranties, became part of the basis of the bargain, and is part of the contract between Plaintiff and the putative members of the class on the one hand, and Defendant on the other.

114. The affirmations of fact made by Defendant were made to induce Plaintiff and members of the purported class to purchase the products.

115. Plaintiff and the putative class members have relied on Defendant's affirmations of fact.

116. All conditions precedent to Defendant's liability under the warranties have been performed by Plaintiff and the putative class members or have been waived.

117. Defendant breached the terms of the implied warranty of merchantability because the Fitbit products were not adequately packaged or labeled, nor did the promises or affirmations found on the packaging conform to the actual efficacy of the sleep-tracking function.

118. Moreover, the Fitbit devices were designed for, inter alia, the particular purpose of tracking the consumer's sleep. As such, by failing to provide a sleep-tracking function that performs as represented, Defendant has breached its implied warranty that the product is fit for that purpose.

119. As a direct and proximate result of Defendant's breach of warranties, Plaintiff and the putative class members have been damaged in an amount to be established at trial. For instance, Defendant markets and sells the Fitbit Zip, which contains the same fundamental features of the other Fitbit devices EXCEPT the sleep-tracking function. The Fitbit devices with the sleep-tracking function are at least $30 more than the Fitbit device without the sleep-tracking function.

## SEVENTH CLAIM FOR RELIEF
### Common Law Fraud

120. Plaintiff realleges and incorporates herein all previous paragraphs of this Complaint.

121. Defendant willfully, falsely, and knowingly misrepresented material facts relating to the character and quality of the sleep-tracking function, as stated above. These misrepresentations are contained in various media advertising and packaging disseminated or caused to be disseminated by Defendant, and such misrepresentations were reiterated and disseminated by officers, agents,

representatives, servants, or employees of Defendant, acting within the scope of their authority, and employed by Defendant to merchandise and market Fitbit products.

122.   Defendant's misrepresentations were the type of misrepresentations that are material (i.e., the type of misrepresentations to which a reasonable person would attach importance and would be induced to act thereon in making purchase decisions).

123.   Defendant knew that the misrepresentations alleged herein were false at the time it made them and/or acted recklessly in making such misrepresentations.

124.   Defendant intended that Plaintiff and the putative class members rely on the misrepresentations alleged herein and purchase the Fitbit products containing a sleep-tracking function.

125.   Plaintiff and the putative class members reasonably and justifiably relied on Defendant's misrepresentations when purchasing the Fitbit products containing a sleep-tracking function, were unaware of the existence of facts that Defendant suppressed and failed to disclose, and, had the facts been known, would not have purchased products and/or would not have purchased them at the prices at which they were offered.

126.   As a direct and proximate result of Defendant's fraudulent misrepresentations, Plaintiff and the putative class members have been damaged in an amount to be established at trial. For instance, Defendant markets and sells the Fitbit Zip, which contains the same fundamental features of the other Fitbit devices EXCEPT the sleep-tracking function. The Fitbit devices with the sleep-tracking function are at least $30 more than the Fitbit device without the sleep-tracking function.

127.   Moreover, in that, at all times herein mentioned, Defendant intended to cause or acted with reckless disregard of the probability of causing damage to Plaintiff and the putative class members, and because Defendant was guilty of oppressive, fraudulent, and/or malicious conduct, Plaintiff and the putative class members are entitled to an award of exemplary or punitive damages against Defendant in an amount adequate to deter such conduct in the future.

**EIGHTH CLAIM FOR RELIEF**
**Negligent Misrepresentation**

128.     Plaintiff realleges and incorporates herein all previous paragraphs of this Complaint.

129.     Defendant, directly or through its agents and employees, made false representations, as described above, to Plaintiff and the putative class members.

130.     Defendant had no reasonable grounds for believing these representations to be true when it made them.

131.     In making these representations, Defendant intended to induce the reliance of Plaintiff and the putative class members.

132.     Plaintiff and the putative class members reasonably and justifiably relied on Defendant's misrepresentations when purchasing the products and, had the facts been known, they would not have purchased a Fitbit product with a sleep-tracking function at the price at which they were offered.

133.     As a direct and proximate result of Defendant's negligent misrepresentations, Plaintiff and the putative class members have been damaged in an amount to be established at trial. For instance, Defendant markets and sells the Fitbit Zip, which contains the same fundamental features of the other Fitbit devices EXCEPT the sleep-tracking function. The Fitbit devices with the sleep-tracking function are at least $30 more than the Fitbit device without the sleep-tracking function.

**NINTH CLAIM FOR RELIEF**
**Unjust Enrichment/Restitution/Quasi-Contract**

134.     Plaintiff realleges and incorporates herein all previous paragraphs of this Complaint.

135.     This claim asserts that it is unjust to allow Defendant to retain profits from its deceptive, misleading, and unlawful conduct alleged herein.

136.     Defendant charged Plaintiff and the putative class members for the sleep-tracking function.

137.    Defendant represented that this function would perform as stated in its advertising and as alleged above.

138.    As detailed above, the sleep-tracking function does not actually work as represented by Defendant.

139.    Because the sleep-tracking function was advertised as being able to perform in very specific ways when, in reality, it cannot, Defendant collected profit for this ineffective function.

140.    As a result of these actions, Defendant received benefits under circumstances where it would be unjust to retain these benefits.

141.    Defendant has knowledge or an appreciation of the benefit conferred upon it by Plaintiff and the putative class members.

142.    Defendant has been unjustly enriched.

143.    Plaintiff and the putative class members are entitled to restitution and/or disgorgement of all profits, benefits, and other compensation obtained and retained by the Defendant from its deceptive, misleading, and unlawful conduct. For instance, Defendant markets and sells the Fitbit Zip, which contains the same fundamental features of the other Fitbit devices EXCEPT the sleep-tracking function. The Fitbit devices with the sleep-tracking function are at least $30 more than the Fitbit device without the sleep-tracking function.

## **PRAYER FOR RELIEF**

**WHEREFORE** Plaintiff demands judgment as follows:

1.      For an Order determining at the earliest possible time that this matter may proceed as a class action under Civil Rule 23 and certifying this case as such;

2.      For compensatory damages, restitution, and/or recovery of such relief as permitted by law in kind and amount;

3.      For punitive damages pursuant to common law and/or statutory law;

4.      For reasonable costs and attorney fees necessarily incurred herein pursuant to common law and/or statutory law;

5.      For trial by jury on all issues;

For such other or further relief as this Honorable Court deems Plaintiff and the class entitled.

DATED: May 8, 2015                          DWORKEN & BERNSTEIN CO., L.P.A.
                                            Attorneys for Plaintiff JAMES P. BRICKMAN


                                             _/s/ Patrick J. Perotti_____
                                            By Patrick J. Perotti

# EXHIBIT A



**TARGET**
EXPECT MORE. PAY LESS.

BRANDON - 813-654-4955
11/29/2013 11:16 AM EXPIRES 02/27/14

ENTERTAINMENT-ELECTRONICS
057010796        BEATS          T    $119.00
                 #1BLB7273PDHN

-------- SPECIAL PROMOTION --------
057002576        FITBIT              $99.00
                 Refund Value $79.00  T
790011255        GIFT CARDS          $20.00
                 041-212-101-919-779
                 NEW BAL:  $20.00

                 PACKAGE SUBTOTAL    $119.00
                 GIFTCARD FREE       $20.00-
                                     =========
                 PACKAGE TOTAL       $99.00
ALL ITEMS MUST BE RETURNED FOR FULL REFUN

                 SUBTOTAL            $218.00
        Your REDcard Savings 5%      $9.90-
T = FL TAX  7.0000% on $188.10       $13.17
                 TOTAL               $221.27

*9223 TARGET CHECK CARD TOTAL        $221.27

          ↓ INDICATES SAVINGS

Today's                    REDcard
REDcard                                        Savings
Savings                                        This Year

$9.90                                    $13.09
Congratulations!  Use your 20% Off
Storewide Purchase Coupon 12/1 - 12/7/13.

Target Pharmacy We're here to help!
          9am - 7pm M-F
          9am - 5pm Sat
          11am - 5pm Sun

REC#2-3333-0812-0112-1057-2 VCD#701-158-93

# EXHIBIT B



Wireless Wristband
Track Activity + Sleep

SET GOALS

TRACK ACTIVITY

TRACK SLEEP



## SYNCS WITH

iPhone® 4S & 5
iPad® (3 gen.)
Samsung Galaxy S III
Note II & select Android devices.

Full list: www.fitbit.com/devices

Windows® XP & Windows® 8
Mac® OS 10.5 +

## WHAT'S INCLUDED

Tracker

Wireless USB dongle

Charging cable

**2 Wristbands included**
Large & small

It's water resistant.
Wear it in the shower!



# fitbit flex

### TRACK YOUR DAY

Steps                    Calories burned
Distance                 Active minutes

### TRACK YOUR NIGHT

Hours slept              Sleep quality
Times woken up           Silent vibrating
                         alarm

### SET A GOAL & GET MOVING

LED lights show you how your day is
stacking up against your goal.



Lights indicate
progress to goal

### SYNC YOUR STATS REAL-TIME

Automatically syncs wirelessly to
select smartphones & computers.

SEE PROGRESS WITH ONLINE &