WILLIAM L. STERN (CA SBN 96105)
WStern@mofo.com
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, California  94105
Telephone: 415.268.7000

JAMES W. HUSTON (CA SBN 115596)
JHuston@mofo.com
ERIN M. BOSMAN (CA SBN 204987)
EBosman@mofo.com
JULIE Y. PARK (CA SBN 259929)
JuliePark@mofo.com
MORRISON & FOERSTER LLP
12531 High Bluff Drive
San Diego, California  92130-2040
Telephone: 858.720.5100
Facsimile: 858.720.5125

Attorneys for Defendant
FITBIT, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMES P. BRICKMAN, individually and as a representative of all others similarly situated,<br><br>            Plaintiff,<br><br>      v.<br><br>FITBIT, INC.,<br><br>            Defendant. | Case No. 3:15-cv-2077-JD<br><br>**DEFENDANT FITBIT, INC.'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Date:     September 2, 2015<br>Time:     10:00 a.m.<br>Ctrm:     11, 19th Floor<br><br>The Honorable James Donato<br><br>Date Action Filed:      May 8, 2015 |

FITBIT'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT
Case No. 3:15-cv-2077-JD
sd-662006

**TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES ..................................................................................................ii

NOTICE OF MOTION AND MOTION .................................................................................iv

STATEMENT OF THE ISSUES TO BE DECIDED............................................................ v

MEMORANDUM OF POINTS AND AUTHORITIES ........................................................ 1

I.      INTRODUCTION .................................................................................................... 1

II.     FACTUAL BACKGROUND .................................................................................... 2

        A.      Fitbit's Wide Range of Activity and Fitness Trackers................................. 2

        B.      Plaintiff's Flex Tracker ............................................................................... 2

        C.      Fitbit's Advertisements and Statements on Sleep Tracking ........................ 3

        D.      Scientific Research on Fitbit's Sleep Tracking Feature............................... 3

        E.      Plaintiff's Allegations ................................................................................. 4

III.    LEGAL STANDARD................................................................................................ 5

IV.     ARGUMENT ........................................................................................................... 5

        A.      Plaintiff's California State-Law Claims Should Be Dismissed .................... 5

        B.      Plaintiff's Claims Are Not Plausible............................................................ 7

        C.      Plaintiff's Fraud-Based Claims Should Be Dismissed for Lack of
                Specificity ................................................................................................. 11

        D.      Plaintiff's Warranty Claims Fail and Should Be Dismissed....................... 13

                1.      The Breach of Express Warranty Fails Due to Lack of Notice................. 13

                2.      There Is No Defect Giving Rise to a Breach of Implied Warranty of
                        Merchantability ................................................................................... 14

                3.      Plaintiff Does Not Plead a Particular Purpose That Could Form the
                        Basis of an Implied Warranty of Fitness................................................ 14

                4.      Plaintiff's MMWA Claim Also Fails....................................................... 15

V.      CONCLUSION...................................................................................................... 15

**CASES**

*Ang v. Whitewave Foods Co.*,
No. 13-cv-1953, 2013 WL 6492353 (N.D. Cal. Dec. 10, 2013)................................................ 7

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .................................................................................... 5, 7, 11, 13

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ............................................................................................ 5, 7, 14

*Cardinal Health 301, Inc. v. Tyco Elec. Corp.*,
87 Cal. Rptr. 3d 5 (Ct. App. 2008)........................................................................ 13

*Clemens v. DaimlerChrysler Corp.*,
534 F.3d 1017 (9th Cir. 2008)............................................................................... 15

*Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv. Inc.*,
911 F.2d 242 (9th Cir. 1990)................................................................................... 9

*Frenzel v. AliphCom*,
No. 14-cv-3587-WHO, 2014 WL 7387150 (N.D. Cal. Sept. 29, 2014) .......................... *passim*

*Glen Holly Entm't, Inc. v. Tektronix, Inc.*,
352 F.3d 367 (9th Cir. 2003)................................................................................... 7

*Henderson v. Gruma Corp.*,
No. CV 10-04173 AHM, 2011 WL 1362188 (C.D. Cal. Apr. 11, 2011) ................................ 7

*In re All Terrain Vehicle Litig.*,
771 F. Supp. 1057 (C.D. Cal. 1991)........................................................................ 9

*In re iPhone 4S Consumer Litig.*,
No. C 12-1127 CW, 2014 WL 589388 (N.D. Cal. Feb. 14, 2014) ......................................... 12

*Kaplan v. Rose*,
49 F.3d 1363 (9th Cir. 1994)................................................................................... 5

*Kearns v. Ford Motor Co.*,
567 F.3d 1120 (9th Cir. 2009)........................................................................... 11, 12

*Mazza v. Am. Honda Motor Co., Inc.*,
666 F.3d 581 (9th Cir. 2012)................................................................................... 6

*McCann v. Foster Wheeler LLC*,
225 P.3d 516 (Cal. 2010) ...................................................................................... 6

*McKinney v. Google, Inc.*,
No. 5:10-CV-01177 EJD (PSG), 2011 WL 3862120 (N.D. Cal. Aug. 30, 2011) .................. 12

*Minkler v. Apple, Inc.*,
   -- F. Supp. 3d --, No. 5:13-CV-05332-EJD, 2014 WL 4100613 (N.D. Cal. Aug. 20, 2014) ............................................................................................................................ 12, 13, 14

*Newcal Indus., Inc. v. Ikon Office Solution*,
   513 F.3d 1038 (9th Cir. 2008).............................................................................................. 9

*Slakey Bros. Sacramento, Inc. v. Parker*,
   71 Cal. Rptr. 269 (Ct. App. 2009)...................................................................................... 10

*Smith v. LG Elects. U.S.A., Inc.*,
   No. C 13-4361 PJH, 2014 WL 989742 (N.D. Cal. Mar. 11, 2014) ...................................... 15

*Stearns v. Select Comfort Retail Corp.*,
   No. 08-2746 JF, 2009 WL 1635931 (N.D. Cal. June 5, 2009) .............................................. 10

*Tietsworth v. Sears*,
   720 F. Supp. 2d 1123 (N.D. Cal. 2010) ........................................................................... 9, 14

*Vess v. Ciba-Geigy Corp.*,
   317 F.3d 1097 (9th Cir. 2003)........................................................................................... 5, 11

*Viggiano v. Hansen Natural Corp.*,
   944 F. Supp. 2d 877 (C.D. Cal. 2013) ................................................................................. 7

*Werbel v. Pepsico, Inc.*,
   No. C 09-04456 SBA, 2010 WL 2673860 (N.D. Cal. July 2, 2010) ...................................... 7

*Williams v. Beechnut Nutrition Corp.*,
   185 Cal. App. 3d 135 (1986)............................................................................................... 13

*Williamson v. Apple, Inc.*,
   No. 5:11-cv-00377 EJD, 2012 WL 3835104 (N.D. Cal. Sept. 4, 2012) ............................ 7, 11

**STATUTES**

15 U.S.C.
   § 2310................................................................................................................................. 15

**OTHER AUTHORITIES**

Federal Rules of Civil Procedure
   Rule 9 ............................................................................................................................ 5, 11, 13
   Rule 12 ................................................................................................................................. 5

## NOTICE OF MOTION AND MOTION

**PLEASE TAKE NOTICE** that on September 2, 2015 at 10:00 a.m. or as soon thereafter as the matter may be heard, in the United States District Court for the Northern District of California, Defendant Fitbit, Inc. ("Fitbit" or "Defendant") will, and hereby does, move to dismiss the Complaint of Plaintiff James P. Brickman ("Plaintiff") pursuant to Rules 12(b)(6) and 9(b) of the Federal Rules of Civil Procedure on the grounds that the Complaint fails to state a claim upon which relief can be granted and Plaintiff's fraud-based claims fail to meet the federal standard for pleading fraud with particularity.

This motion is based on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the concurrently filed Request for Judicial Notice and Declaration of Julie Y. Park, and on such other written and oral argument as may be presented to the Court.

Dated:  July 1, 2015                         MORRISON & FOERSTER LLP


                                             By:  s/ Erin M. Bosman
                                                  Erin M. Bosman

                                                  Attorneys for Defendant
                                                  FITBIT, INC.

FITBIT'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT
Case No. 3:15-cv-2077-JD
sd-662006

iv

## STATEMENT OF THE ISSUES TO BE DECIDED

This motion raises the following issues:

1. **Application of California Law**.  In light of the Ninth Circuit's opinion in *Mazza v. American Honda Motor Co.*, 666 F.3d 581, 591 (9th Cir. 2012), finding that consumer protection claims should be governed by the law of the state where the transaction occurred, can a Florida resident who purchased his Fitbit product in Florida bring claims under the UCL, CLRA, FAL, and California warranty law, individually and on behalf of a nationwide class?

2. **Implausibility**.  Can Plaintiff state a claim where no reasonable consumer would have been deceived by Fitbit's conduct?

3. **Rule 9(b) Particularity**.  Can Plaintiff meet the Rule 9(b) pleading standard for fraud where Defendant has made no representations about the accuracy of its sleep tracking features and Plaintiff fails to allege which specific statements he relied upon in making his purchase decision?

4. **Breach of Warranties**.  Can Plaintiff's breach of warranty claims survive even though he has failed to provide notice to Fitbit and he has not alleged a product defect or a particular use other than the product's ordinary purpose?

**I.    INTRODUCTION**

According to Plaintiff, everyone who bought a Fitbit device with a sleep tracking function was deceived because the device does not deliver the accuracy or sophistication of sleep monitoring equipment used by scientists in laboratory settings.  But Fitbit never represented it could.  Plaintiff prefers different facts and attempts to rewrite what Fitbit *actually* said, suing for false advertising based on imagined representations.

Fitbit's activity and fitness trackers have enabled millions of users to count steps, compete online with their friends, and lead more active lives.  With a wide range of options for consumers to choose from, Fitbit trackers feature various combinations of sleep tracking, LED displays, silent alarms, the ability to track floors climbed, interchangeable bands, GPS, and heart rate monitoring.  This menu of offerings allows consumers to choose the features that match their lifestyle and the price that matches their budget.

Plaintiff brings suit individually and on behalf of purported class members that his menu selection was overpriced:  he incorrectly attributes price differences to a single feature, sleep tracking.  He then exaggerates Fitbit's marketing claims about that feature, and ignores the fact that Fitbit's sleep tracking does exactly what it claims to do.

Plaintiff's undoing is the scientific paper (the "Montgomery-Downs Paper") that he cites in his Complaint.  The Montgomery-Downs Paper disproves his thesis.  It explains that Fitbit's sleep-tracking feature utilizes an accelerometer to measure movement and, based on these movements, is able to detect wakefulness and sleep using sophisticated algorithms.  The trackers do in fact measure sleep.  Fitbit does not represent, warrant or guarantee that its trackers can deliver the accuracy or sophistication of medical devices or clinical sleep monitoring equipment. No reasonable consumer would read Fitbit's general representations, such as "TRACK YOUR NIGHT," and conclude that Fitbit is representing that its devices measure sleep with the precision of sophisticated laboratory equipment.

In deciding this motion, this Court need look no further than Judge Orrick's order dismissing nearly identical claims for the same arguments made here.  *Frenzel v. AliphCom*, No. 14-cv-3587-WHO, 2014 WL 7387150, at \*7-\*8 (N.D. Cal. Sept. 29, 2014).  These claims should

fare no differently.

Mr. Brickman and every putative class member received exactly what they paid for:  a novel, wrist-based activity tracker that does exactly what Fitbit says it does.  For all the foregoing reasons, Fitbit respectfully asks this Court to dismiss with prejudice.

## II.     FACTUAL BACKGROUND

### A.     Fitbit's Wide Range of Activity and Fitness Trackers

Fitbit is the market leader in activity and fitness trackers.  Sold direct to consumers and through retailers nationwide, Fitbit's activity and fitness tracker lineup has included Ultra, Zip, One, Flex, Force, Charge, Charge HR, and Surge.  (Compl. ¶ 8.)  Devices currently available for sale are Zip, One, Flex, Charge, Charge HR, and Surge.  (RJN Ex. A at 1.)

All of Fitbit's trackers count steps.  (*Id.*)  They also sync wirelessly to leading smartphones and computers.  (*See, e.g., id.* Ex. B at 8.)  By syncing their trackers, users have access to Fitbit's online application ("app"), which has a dashboard with tools for users to "[v]iew your progress and analyze your trends with easy-to-read charts and graphs."  (*Id.* Ex. D at 9.)

Other features vary among trackers.  For example, Zip, the lowest priced tracker, has a clip-on design.  (RJN Ex. B at 8.)  It features a replaceable battery that lasts up to six months and an LCD display without backlighting.  (*Id.* at 2.)  Designed with simplicity in mind, Zip tracks activity, but does not track floors climbed or sleep.  (*Id.* Ex. A at 1.)  Fitbit's most basic activity tracker, Zip retails at a price at least $30 less than any other Fitbit tracker.  (Compl. ¶ 10.)

Fitbit One, like Zip, is a clip-on tracker that counts steps.  But it contains a number of features that Zip does not, including sleep tracking.  (Compl. ¶ 10.)  Branded as "One powerful, motivating tracker," One also tracks the number of floors climbed.  (RJN Ex. C at 2.)  It features an OLED display that can be read in the dark and has a rechargeable battery.  (*Id.* Ex. C at 9.)  In addition to tracking sleep, One contains a vibrating motor (such as those found in cell phones) that powers its silent alarm.  (*Id.*)

### B.     Plaintiff's Flex Tracker

Plaintiff purchased a Fitbit Flex on or about November 29, 2013 for $99 (Compl. ¶¶ 31-32) in Brandon, Florida (*id.* Ex. A; RJN Ex. J at 1).  Flex debuted in May 2013 as Fitbit's first

FITBIT'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT
Case No. 3:15-cv-2077-JD
sd-662006

2

wrist-worn activity and fitness tracker.  The wrist-based tracker was made possible by technical advances in the accelerometer and algorithms used to track steps.  (RJN Ex. D at 10.)  Flex tracks steps and sleep.  (*Id.* Ex. A at 1.)  It has an LED light display that shows progress toward a user's daily step goal.  (*Id.* Ex. D at 10.)  Like One, Flex has a silent alarm.  (*Id.* Ex. A at 1.)  Flex is unique among Fitbit trackers in allowing users to accessorize.  (*Id.* Ex. D at 6.)  Fitbit offers a full range of colored bands as well as a designer option, which introduces yet another dimension of enjoyment and novelty for Fitbit users.  (*Id.* Ex. H at 1.)[1]

### C.    Fitbit's Advertisements and Statements on Sleep Tracking

In advertising its products, Fitbit highlights an individual product's unique combination of features as part of a complete package.  Sleep tracking is just one part of that package.  For example, Fitbit urges its users to "Get fit.  Sleep better.  All in one."  (RJN Ex. C at 1.)  "Flex never sleeps—even when you do.  Wear it all night to measure your sleep quality and how long you slept.  Then, wake with a silent, vibrating alarm to start your day stepping on the right foot."  (*Id.* Ex. D at 5.)  On the packaging, users can read that Flex helps "TRACK YOUR DAY" with steps, distance, calories burned, and active minutes.  (Compl. Ex. B.)  Similarly, the packaging boasts that Flex helps users "TRACK YOUR NIGHT" with hours slept, times woken up, sleep quality, and a silent vibrating alarm.  (*Id.* ¶ 10 & Ex. B.)

After a user has registered and synced a device to his Fitbit account, the online dashboard displays information to the user about the amount and quality of sleep.  (*Id.* ¶¶ 12-13.)  The dashboard shows information such as "Actual sleep time," "Bed time," and number of times awakened.  The dashboard does not claim to present scientifically precise statistics about the user's sleep.  (*See id.*)

### D.    Scientific Research on Fitbit's Sleep Tracking Feature

The Montgomery-Downs Paper compared Fitbit's sleep tracking to polysomnography and actigraphy, two advanced sleep monitoring technologies used by professional sleep doctors and

---

[1] Similarly, Fitbit's Force, Charge, Charge HR, and Surge trackers sport a variety of features designed to help users track their fitness goals.  (*See* RJN Exs. E-G.)

scientists. (Compl. ¶ 15; RJN Ex. I.) According to the Montgomery-Downs Paper, "[p]olysomnography (PSG) is considered the 'gold-standard' for sleep measurement. Its disadvantages include high-cost, time-intensiveness, [and] intrusiveness." (RJN Ex. I at 914.) Actigraphy "is relatively low-cost, non-intrusive, and ambulatory." (*Id.*) The Montgomery-Downs Paper noted that "[s]imilar to actigraphy, the Fitbit system relies on movement and absence of movement to infer sleep and wake." (*Id.* at 916.) In addition, "Fitbit devices show acceptable reliability between devices, demonstrating that different devices perform consistently compared to each other." (*Id.*) Importantly, the Montgomery-Downs Paper conceded its own limitations: "the sleep field has not established standard criteria for agreement between PSG and new technologies." (*Id.* at 917.) Nonetheless, the Montgomery-Downs Paper concluded that Fitbit's sleep tracking function has "decided improvements . . . over standard actigraphy: it has much lower cost; it allows web-based interface so that the researcher can access data downloaded from the home of any participant with a web-accessible computer; and as long as the device is returned to its docking station every 4 days, the battery life is unlimited." (*Id.*)

### E.   Plaintiff's Allegations

Despite the documented ability of Fitbit trackers to measure sleep, Plaintiff claims that Fitbit's "representations that Plaintiff [] would receive a working and functional sleep-tracking feature were false." (Compl. ¶ 36.) And despite the wide range of features Fitbit offers in its trackers, Plaintiff insists that Zip "contains the same fundamental features of the other Fitbit devices EXCEPT the sleep-tracking function." (*See, e.g.*, *id.* ¶ 74.) On that basis, Plaintiff claims, he has suffered injury because he paid at least $30 more than he would have paid for Zip. Plaintiff further claims that Fitbit represented and warranted to consumers that its products measure sleep with absolute precision and accuracy, but that the Fitbit products are not as accurate as medical diagnostic tools such as polysomnography and actigraphy because they overestimate the amount of time slept. (*Id.* ¶¶ 15-25.) Although Plaintiff "expressly disclaim[s] any recovery for physical injury," he claims that Fitbit's overestimation of sleep "implicate[s] serious public health concerns, as thinking you are sleeping *up to 67 minutes more than you actually are* can obviously cause health consequences." (*Id.* ¶ 27 (emphasis in original).)

Plaintiff asserts that "reasonable consumers are likely to be deceived by Defendant's representations."  (*Id.* ¶ 28.)

Based on these alleged misrepresentations, Plaintiff has pled nine causes of action against Fitbit individually and on behalf of a putative nationwide class:  (1) unfair business practices under the California Unfair Competition Law ("UCL"); (2) false advertising under the California False Advertising Law ("FAL"); (3) unfair and deceptive practices under the Consumer Legal Remedies Act ("CLRA"); (4) violation of the Magnuson-Moss Warranty Act ("MMWA"); (5) breach of express warranty under California common law; (6) breach of implied warranty under California common law; (7) fraud under California common law; (8) negligent misrepresentation; and (9) unjust enrichment.

### III.   LEGAL STANDARD

Under Rule 12(b)(6), dismissal of a case is warranted if the complaint lacks "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  To survive a Rule 12(b)(6) motion to dismiss, a complaint must contain "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Id.* at 555. "Factual allegations must be enough to raise a right to relief above the speculative level." *Id.* However, a court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555).

Federal Rule of Civil Procedure 9(b) requires that fraud claims "state with particularity the circumstances constituting fraud or mistake."  Under this standard, "[t]he pleadings must state precisely the time, place, and nature of the misleading statements, misrepresentations, and specific acts of fraud." *Kaplan v. Rose*, 49 F.3d 1363, 1370 (9th Cir. 1994).  The pleading must be "specific enough to give defendants notice of the particular misconduct . . . so that they can defend against the charge and not just deny that they have done anything wrong." *Vess v. Ciba-Geigy Corp.*, 317 F.3d 1097, 1106 (9th Cir. 2003) (internal quotation omitted).

### IV.   ARGUMENT

#### A.   Plaintiff's California State-Law Claims Should Be Dismissed

Under California choice-of-law principles, California law does not apply to Plaintiff's

consumer deception claims.  California applies the three-step "governmental interest analysis": (1) whether the laws of the potentially affected jurisdictions differ; (2) if so, whether there is a "true conflict" given each jurisdiction's interest in the application of its own laws in the facts and circumstances of the case; and (3) if so, which jurisdiction's interests would be most impaired if its laws were not applied.  *Mazza v. Am. Honda Motor Co., Inc.*, 666 F.3d 581, 590 (9th Cir. 2012); *McCann v. Foster Wheeler LLC*, 225 P.3d 516, 527 (Cal. 2010).  Applying this test, the Ninth Circuit reversed certification of a nationwide class under the UCL, FAL, and CLRA, holding that "each class member's consumer protection claim should be governed by the consumer protection laws of the jurisdiction in which the transaction took place." *Mazza*, 666 F.3d at 594.  Courts can resolve choice-of-law issues at the pleading stage where, as here, discovery "is not reasonably likely to materially impact the choice of law determination." *Frenzel*, 2014 WL 7387150, at *5.

In *Frenzel*, Judge Orrick dismissed nearly identical claims of consumer deception and breach of warranty against a fitness and activity tracker manufacturer.  2014 WL 7387150, at *5.  There, the plaintiff failed to plead that he was a California resident who purchased the product in California, yet tried to bring claims under California law.  *Id.*  The court found that this was impermissible under California choice-of-law principles and dismissed the plaintiff's claims— both individual and class—to the extent they were California state-law claims.  *Id.* at *6.

Here, Plaintiff is a Florida resident who purchased his Fitbit Flex in Florida.  (Compl. ¶ 1; RJN Ex. J at 1.)  Yet he seeks to assert claims under California's consumer protection statutes (UCL, CLRA, and FAL) and California warranty law on behalf of "*[a]ll* individuals who have purchased" Fitbit sleep tracking products—i.e., a nationwide class of consumers.  (*Id.* ¶ 38 (emphasis added).)  This is contrary to *Mazza*.  Florida law must apply to Plaintiff's consumer protection claims, as that is "the jurisdiction in which the transaction took place." *Mazza*, 666 F.3d at 594.  As such, Plaintiff cannot pursue his claims under California law individually or on behalf of consumers who purchased Fitbit products in another state.  *See Frenzel*, 2014 WL 7387150, at *5-*6.  The Court should dismiss Plaintiff's UCL, CLRA, and FAL claims, and his warranty claims that are brought under California law.  *Id.* at *5.

### B.      Plaintiff's Claims Are Not Plausible

A complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'  A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citation omitted); *see also Twombly*, 550 U.S. at 570.

Moreover, "statements are only actionable under [the UCL, CLRA, and FAL] if they are likely to deceive a reasonable consumer," which requires "the plaintiff [to] 'show that members of the public are likely to be deceived.'" *Henderson v. Gruma Corp.*, No. CV 10-04173 AHM (AJWx), 2011 WL 1362188, at *10 (C.D. Cal. Apr. 11, 2011) (citing *Freeman v. Time*, *Inc.*, 68 F.3d 285, 289 (9th Cir. 1995)).  "[W]here a court can conclude as a matter of law that members of the public are not likely to be deceived by the product packaging, dismissal is appropriate." *Werbel v. Pepsico, Inc.*, No. C 09-04456 SBA, 2010 WL 2673860, at *3 (N.D. Cal. July 2, 2010); *see also Williamson v. Apple, Inc.*, No. 5:11-cv-00377 EJD, 2012 WL 3835104, at *6 (N.D. Cal. Sept. 4, 2012) (dismissing CLRA, UCL, FAL, and breach of express warranty claim based on allegations that defendant represented that the glass housing on its phone was drop-proof because "it is a well-known fact of life that glass can break under impact, even glass that has been reinforced"); *Ang v. Whitewave Foods Co.*, No. 13-cv-1953, 2013 WL 6492353, at *4 (N.D. Cal. Dec. 10, 2013) (dismissing UCL, FAL, and CLRA claims for lack of plausibility where plaintiffs asserted consumers would confuse soy milk or almond milk for dairy milk).

A plausible claim of deception is also a necessary element of Plaintiff's fraud and negligent misrepresentation claims and breach of express warranty claim.  *See Glen Holly Entm't, Inc. v. Tektronix, Inc.*, 352 F.3d 367, 379 (9th Cir. 2003) ("Under California law, both fraud and negligent misrepresentation as causes of action require [plaintiff] to demonstrate it justifiably relied on [defendant's] misrepresentations."); *Viggiano v. Hansen Natural Corp.*, 944 F. Supp. 2d 877, 893 (C.D. Cal. 2013) (dismissing breach of express warranty claim where one alleged misrepresentation did in fact describe the product and the other was considered puffery).  Finally, Plaintiff's unjust enrichment claim relies on a plausible allegation of deception as Plaintiff seeks

FITBIT'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT
Case No. 3:15-cv-2077-JD
sd-662006

7

recovery for the profits retained from the "conduct alleged herein," all of which is based on Fitbit's alleged misrepresentations. (Compl. ¶ 135.)

Plaintiff cannot show that a reasonable consumer would be deceived by Fitbit's statements about sleep tracking. His claims of deception are implausible as a matter of law for five reasons.

1.    **Fitbit's Trackers Do What They Claim To Do.** Plaintiff claims to expect down-to-the minute, scientifically accurate sleep measurements based on Fitbit's representations. His expectations are misplaced. According to the Complaint, Fitbit represented that its "devices can make specific, mathematical measurements and calculations as to the amount and quality of the wearer's sleep." (Compl. ¶ 63.) Plaintiff further asserts that consumers are "likely" to believe that Fitbit's trackers "will track, to the minute, the amount they sleep and the quality and efficiency to an exact percentage point, of that sleep." (*Id.* ¶ 64.) Plaintiff even goes so far as to claim deception on the basis that Fitbit's sleep-tracking function lacks "any accuracy whatsoever." (*Id.* ¶ 25.) Not one of these allegations is plausible. Fitbit's statements that the products can track "hours slept," "times woken up," or "sleep quality" do not promise scientifically calibrated or medical device level accuracy. They only promise that Fitbit trackers can track sleep, which is confirmed by the Montgomery-Downs Paper cited by Plaintiff: the Fitbit tracker works by "rel[ying] on movement and absence of movement to infer sleep and wake." (RJN Ex. I at 916.)

Plaintiff relies on the Montgomery-Downs Paper in asserting that Fitbit's sleep-tracking function is "far below an acceptable standard of accuracy to render it useful in any way for scientific purposes." (Compl. ¶ 19.) Yet the "gold-standard" method of PSG to which Plaintiff compares Fitbit's sleep-tracking function (*id.* ¶ 20) is an overnight study, which used "[m]ultichannel data acquisition equipment . . . , chin electromyography, bilateral electrooculography, electrocardiogram, and anterior tibialis electromyography" with "[s]imultaneous audio/video monitoring" (RJN Ex. I at 914). Even actigraphy, another scientific sleep tracking method which is less accurate than PSG, but allegedly more accurate than Fitbit's trackers, has disadvantages to Fitbit: compared to actigraphy, Fitbit's sleep tracking "has much lower cost." (*Id.* at 917.)

No reasonable consumer could share Plaintiff's alleged expectation that Fitbit's $99 fitness tracker was intended to deliver the precision of a scientific sleep study, which often requires an overnight stay at a research facility and costs significantly more.  Not when the Fitbit tracker includes a plethora of other activity and fitness tracking features, including step-tracking, an LED progress light, a silent alarm, and a wide array of accessory bands to choose from.[2]

2.      **Fitbit's General Statements Are Puffery**.  Fitbit's statements about sleep tracking are "general, subjective claim[s] about a product [that are] non-actionable puffery." *Newcal Indus., Inc. v. Ikon Office Solution*, 513 F.3d 1038, 1053 (9th Cir. 2008).  Fitbit advertised that the devices "'track hours slept,' track 'times woken up', and track the 'quality of sleep.'"  (Compl. ¶ 10 (citing fitbit.com and product packaging).)  Fitbit states its products "'measure your sleep quality,' and '[o]nce the data syncs, graphs on your (device) dashboard will reveal how long you slept and the number of times you woke up, giving you a "sleep quality score."'"  (*Id.* ¶ 11 (citing www.fitbit.com).)

Courts have routinely held that general representations such as Fitbit's constitute non-actionable puffery.  *See, e.g.*, *Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv. Inc.*, 911 F.2d 242, 246 (9th Cir. 1990) (finding it was "beyond the realm of reason to assert" that a reasonable consumer would interpret as a factual claim the statement that "we're the low cost commercial collection experts"); *Tietsworth v. Sears*, 720 F. Supp. 2d 1123, 1136 (N.D. Cal. 2010) (statements that washing machines were "designed and manufactured for years of dependable operation" and "save you time by allowing you to do fewer, larger loads" were puffery); *Frenzel*, 2014 WL 7387150, at *7-*8 (general statement that activity tracker helps users "understand your sleep and wake up refreshed" constitutes "the sort of vague statements about general functionality that are not actionable under California's consumer protection statutes."); *In*

---

[2] Plaintiff's claim that he was harmed $30 is similarly implausible.  Plaintiff calculates this amount by wrongly concluding that the only difference between Zip and other trackers is the sleep tracking function.  A quick study of Fitbit's website reveals that this is untrue.  (RJN Ex. A at 1.)  Compared to Flex, Zip cannot be worn on the wrist and lacks an LED display, silent alarm, and the novelty of accessorizing with different colored bands.  (*Compare id.* Ex. B *with id.* Ex. D)  A reasonable consumer would expect and understand that the $99 purchase price includes all of these features.  Plaintiff should have understood this, too.

*re All Terrain Vehicle Litig.*, 771 F. Supp. 1057, 1061 (C.D. Cal. 1991) (use of name "all terrain vehicle" or "all-weather tires" is puffing, as is statement that vehicle is "precisely balanced in the frame for superb handling"); *Stearns v. Select Comfort Retail Corp.*, No. 08-2746 JF, 2009 WL 1635931, at *11 (N.D. Cal. June 5, 2009) (statement that bed would be "maintenance free" and provide "constant and wear free support night after night" were puffery despite fact that beds need to be cleaned periodically because "no consumer reasonably could have [] expectation" that any product would be maintenance free). Similarly, Fitbit's general statements about sleep tracking would not mislead a reasonable consumer.

3. **No Standard Criteria for Comparing Sleep-Tracking Capability to PSG**. In light of the fact that "the sleep field has not established standard criteria for agreement between PSG and new technologies" (RJN Ex. I at 917), it is unclear even on what basis Plaintiff challenges the accuracy of Fitbit's sleep-tracking feature. The notion that Fitbit's tracking are "substantially less accurate than any scientifically-accepted method of sleep tracking" (Compl. ¶ 22) is implausible in light of the Montgomery-Downs Paper cited in Plaintiff's own Complaint.

4. **Plaintiff Cannot Have Been Deceived By the Dashboard**. Plaintiff cites to the online dashboard (viewed after purchasing and syncing the device through a smartphone or computer) for proof of his claims, even though consumers only access this interface after they have registered and synced a device. Therefore, Plaintiff could not have relied on the online dashboard in purchasing his Flex, nor does he so allege.[3] Nonetheless, Plaintiff claims it is misleading. According to the Complaint, the online interface displays data in the form of "*specific* numbers" and as "*exact* times and percentages." (*Id*. ¶¶ 12-13.) But these are Plaintiff's words, not Fitbit's. (*See id.*) Nowhere does Fitbit advertise that its devices' sleep-tracking feature can track every second of sleep. (*See generally id.*) Nor, as discussed above, would a reasonable consumer have so believed.

---

[3] Because reliance is a necessary element of Plaintiff's deception claims the Court need not even consider these statements in determining whether Plaintiff has plausibly stated a claim for relief. *See, e.g.*, *Slakey Bros. Sacramento, Inc. v. Parker*, 71 Cal. Rptr. 269, 272 (Ct. App. 2009) ("An essential element in recovery for deceit is proof of the plaintiff's justifiable reliance on the defendant's fraudulent representations.").

5.    **User Input Is Unreliable**. Plaintiff's Flex tracker does not feature automatic sleep tracking and *relies on user input to track sleep*. In order to track sleep, the user must "tell" his Fitbit to enter sleep or wake mode by tapping it "rapidly for one or two seconds" or by manually entering the time he slept. (*See* RJN Ex. K at 11.) Just as in *Williamson*, Plaintiff's claims should be dismissed because his claims contradict a "well-known fact of life": it is impossible for a consumer to self-record with 100% precision when he fell asleep and when he awoke. *See Williamson*, 2012 WL 3835104, at *6. A reasonable consumer would not believe, as Plaintiff baldly asserts, that Fitbit trackers "will track, to the minute, the amount they sleep and the quality and efficiency, to an exact percentage point, of that sleep." (Compl. ¶ 64.) Nor is the Court "bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678. A reasonable consumer would expect to receive a feature-packed fitness tracker that has a functional sleep tracking mechanism. That is exactly what Plaintiff received.

Plaintiff's claims of deception are implausible. On this basis, his UCL, FAL, CLRA, breach of express warranty, fraud, negligent misrepresentation, and unjust enrichment claims should be dismissed.

### C.    Plaintiff's Fraud-Based Claims Should Be Dismissed for Lack of Specificity

Plaintiff's first, second, and third causes of action (violation of the UCL, FAL, and CLRA) as well as Plaintiff's seventh cause of action (fraud) are all fraud-based claims subject to the heightened pleading standard of Rule 9(b). *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1126-27 (9th Cir. 2009) (consumer deception claims that rely on allegations of fraudulent conduct are subject to Rule 9(b) heightened pleading standards); *see also Frenzel*, 2014 WL 7387150, at *7 (dismissing plaintiff's fraud-based UCL, FAL, and CLRA claims for failure to meet Rule 9(b) pleading standard). As such, plaintiffs must "state with particularity the circumstances constituting fraud." *Kearns.*, 567 F.3d at 1126 (quoting Fed. R. Civ. P. 9(b)). This heightened pleading standard requires plaintiffs to allege "the who, what, when, where, and how" of the fraud. *Vess*, 317 F.3d at 1106.

Under this standard, Plaintiff's claims fail for two reasons. First, Plaintiff fails to allege

that Fitbit made specific statements about the accuracy of its sleep tracking features, or that its products' sleep tracking function would be as accurate as polysomnography or actigraphy. Courts have dismissed similar fraud claims where the plaintiff failed to allege that the defendant made specific statements that a particular product feature would work flawlessly and all the time. *See, e.g.*, *Minkler v. Apple, Inc.*, -- F. Supp. 3d --, No. 5:13-CV-05332-EJD, 2014 WL 4100613, at *7 (N.D. Cal. Aug. 20, 2014) (dismissing plaintiff's fraud claim based on inconsistencies in the Apple Maps application because she "failed to identify any specific statement by Apple that expressly indicates that Apple Maps would always work flawlessly and without error."); *In re iPhone 4S Consumer Litig.*, No. C 12-1127 CW, 2014 WL 589388, at *6 (N.D. Cal. Feb. 14, 2014) ("Plaintiffs do not allege any specific statement by Apple that expressly indicates that Siri would be able to answer every question, or do so consistently."); *McKinney v. Google, Inc.*, No. 5:10-CV-01177 EJD (PSG), 2011 WL 3862120, at *5 (N.D. Cal. Aug. 30, 2011) (dismissing fraud claim where plaintiff failed to plead facts sufficient to show a representation that "the Nexus One would maintain consistent 3G connectivity").  Fitbit has made no similar representations about the performance of its sleep tracking feature.

Second, Plaintiff fails to allege which specific statements were material and that he relied on in making his decision to purchase Flex, and when he was exposed to any such material statements.  *Kearns*, 567 F.3d at 1126 (dismissing fraud-based claims where plaintiff failed to "specify when he was exposed to [the allegedly deceptive statements] or which ones he found material" and "also failed to specify which sales material he relied upon in making his decision" to purchase the product); *Frenzel*, 2014 WL 7387150, at *10.  Plaintiff simply makes conclusory allegations that "Defendant's deceptive representations were material to the consumer transaction between Plaintiff and Defendant."  (Compl. ¶ 84.)  He does not specifically allege when he received those communications or which (if any) of the alleged misrepresentations he specifically relied on.

In *Frenzel*, Judge Orrick dismissed nearly identical allegations because plaintiff failed to meet the heightened pleading standard for fraud.  2014 WL 7387150, at *10.  There, the plaintiff claimed that he "reviewed [defendant's] marketing materials and representations" and purchased

defendant's products "based on those representations." *Id.* Not sufficient, the court held: "this amounts to the incredible claim that [plaintiff] reviewed all existing representations by [defendant], and relied on all of them in deciding to purchase" defendant's product. *Id.*

Here, Plaintiff makes similarly incredible claims. He alleges to have "encountered and relied on" numerous representations, "including, but not limited to," Fitbit's website, social media ("including, but not limited to, www.facebook.com/fitbit"), and "other public and direct representations." (Compl. ¶ 35.) Without a recitation of the specific representations Plaintiff allegedly relied on, or when he relied on them, these allegations fall short of the Rule 9(b) pleading standard. *See Frenzel*, 2014 WL 7387150, at \*10-11.

Moreover, Plaintiff cannot have relied on information he alleges "provides . . . exact numbers for 'actual sleep time, X hrs X mins," and other data (*see id.* ¶ 83) because that information is not advertised to consumers prior to purchase, nor has Plaintiff so alleged. Plaintiff has failed to plead facts with sufficient particularity to support his fraud-based claims, and the Court should not accept Plaintiff's conclusory allegations and conclusions of law. *See Iqbal*, 556 U.S. at 678. Plaintiff's UCL, FAL, CLRA, and fraud claims should be dismissed.

### D.     Plaintiff's Warranty Claims Fail and Should Be Dismissed

#### 1.     The Breach of Express Warranty Fails Due to Lack of Notice

To state a cause of action for breach of express warranty under California law, a plaintiff "must allege the exact terms of the warranty, plaintiff's reasonable reliance thereon, and a breach of that warranty which proximately causes plaintiff injury." *Williams v. Beechnut Nutrition Corp.*, 185 Cal. App. 3d 135, 142 (1986) (citation omitted). "A plaintiff also must plead that he or she provided the defendant with pre-suit notice of the breach." *Minkler*, 2014 WL 4100613, at \*3 (citing Cal. Com. Code § 2607). The purpose of this rule is to "allow the seller the opportunity to repair the defective item, reduce damages, avoid defective products in the future, and negotiate settlements." *Cardinal Health 301, Inc. v. Tyco Elec. Corp.*, 87 Cal. Rptr. 3d 5, 20-21 (Ct. App. 2008).

Plaintiff did not provide notice to Fitbit, nor did he so plead. Plaintiff does state that "[a]ll conditions precedent to Defendant's liability under the warranty have been performed by Plaintiff

and the putative class members or have been waived." (Compl. ¶ 105.)  This blanket assertion, however, does not necessarily include pre-suit notice.  Nor should the Court accept Plaintiff's "labels and conclusions" as true. *Twombly*, 550 U.S. at 545.  Plaintiff's breach of express warranty claim is defective and should be dismissed.

### 2.    There Is No Defect Giving Rise to a Breach of Implied Warranty of Merchantability

To establish a breach of implied warranty of merchantability, Plaintiff must allege a "fundamental defect that renders the product unfit for its ordinary purpose." *Tietsworth,* 720 F. Supp. 2d at 1142; *see also Minkler*, 2014 WL 4100613.  In *Minkler*, the plaintiff brought a breach of implied warranty claim over the functionality of the Apple Maps application. *Id.* at *2.  The court dismissed the plaintiff's claim for breach of implied warranty of merchantability for two reasons.  First, the plaintiff did not "allege that the ordinary purpose of the iPhone 5 was navigational capability.  The iPhone 5 has a multitude of uses . . . [and] Plaintiff never alleges that she used the iPhone solely for navigation." *Id.* at *5.  Second, the plaintiff did not "allege a fundamental defect in the software.  Although she alleges several problems exist in the software, she has not alleged that Apple Maps failed to work at all or even that it failed to work a majority of the time." *Id.*

The same logic applies here.  Replace "iPhone 5" with "Flex" and "navigation" and "Apple Maps" with "sleep tracking," and *Minkler* turns into this case, minus the alleged problems.  Like the iPhone, Fitbit's trackers have a multitude of uses—step count, silent alarm, floors climbed, time of day.  Sleep tracking is not the only function of Fitbit's products.  Nor has Plaintiff alleged that the sleep tracking function failed to work at all.  Just as the *Minkler* plaintiff failed to state a claim, Plaintiff here "has not alleged a plausible claim for relief under breach of implied warranty," and this cause of action should be dismissed. *Id.*

### 3.    Plaintiff Does Not Plead a Particular Purpose That Could Form the Basis of an Implied Warranty of Fitness

Plaintiff's claim for breach of implied warranty of fitness for a particular purpose is equally deficient.  A "'particular purpose' differs from 'the ordinary purpose for which the goods

are used' in that it 'envisages a specific use by the buyer which is peculiar to the nature of his business whereas the ordinary purposes for which goods are used are those envisaged in the concept of merchantability and go to uses which are customarily made of the goods in question.'" *Smith v. LG Elects. U.S.A., Inc.*, No. C 13-4361 PJH, 2014 WL 989742, at *7 (N.D. Cal. Mar. 11, 2014) (dismissing claim for breach of implied warranty of fitness against washing machine manufacturer relating to a defective electrical panel where plaintiff "pled no facts showing that her purpose was anything other than the ordinary one of washing clothes.").

Plaintiff makes the legal conclusion that the products in question "were designed for . . . the particular purpose of tracking the consumer's sleep." (Compl. ¶ 118.) Indeed, Fitbit designed many of its products to offer sleep tracking as part of a user's overall fitness tracking capabilities. But nothing in Plaintiff's Complaint suggests that sleep tracking is "a specific use by the buyer which is peculiar to the nature of his business." *Smith*, 2014 WL 989742, at *7. Instead, it is evident that sleep tracking is available to, and an intended use for, many consumers who purchase a Fitbit product with sleep-tracking capabilities. Plaintiff has failed to plead any particular purpose Fitbit knew about, let alone how Fitbit's devices have breached that obligation. Plaintiff's breach of implied warranty claim should be dismissed.

### 4.      Plaintiff's MMWA Claim Also Fails

The MMWA provides that "a consumer who is damaged by the failure of a supplier, warrantor, or service contractor to comply with any obligation under this chapter, or under a written warranty, implied warranty, or service contract, may bring suit for damages and other legal and equitable relief." 15 U.S.C. § 2310(d)(1). Here, Plaintiff's warranty allegations arise exclusively under state law. Accordingly, Plaintiff's MMWA claims will "stand or fall with his express and implied warranty claims under state law." *Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1022 (9th Cir. 2008). Because Plaintiff has failed to state a claim for breach of warranty under state law, his MMWA claim should be dismissed as well.

### V.      CONCLUSION

For all of the foregoing reasons, Fitbit respectfully asks the Court to dismiss Plaintiff's Complaint in its entirety, without leave to amend.

Dated: July 1, 2015                    MORRISON & FOERSTER LLP


                                       By: s/Erin M. Bosman
                                          Erin M. Bosman

                                          Attorneys for Defendant
                                          FITBIT, INC.