1    WILLIAM L. STERN (CA SBN 96105)
      WStern@mofo.com
2    MORRISON & FOERSTER LLP
      425 Market Street
3    San Francisco, California  94105
      Telephone: 415.268.7000
4

5    JAMES W. HUSTON (CA SBN 115596)
      JHuston@mofo.com
      ERIN M. BOSMAN (CA SBN 204987)
6    EBosman@mofo.com
      JULIE Y. PARK (CA SBN 259929)
7    JuliePark@mofo.com
      MORRISON & FOERSTER LLP
8    12531 High Bluff Drive
      San Diego, California  92130-2040
9    Telephone: 858.720.5100
      Facsimile: 858.720.5125
10

11   Attorneys for Defendant
      FITBIT, INC.
12

13                UNITED STATES DISTRICT COURT

14              NORTHERN DISTRICT OF CALIFORNIA

15

| | |
|---|---|
| JAMES P. BRICKMAN, individually and as a representative of all others similarly situated, | Case No. 3:15-cv-2077-JD |
| Plaintiff, | **DEFENDANT FITBIT, INC.'S NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION AND DISMISS LITIGATION; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** |
| v. | |
| FITBIT, INC., | |
| Defendant. | |
| | Date:    November 4, 2015 |
| | Time:   10:00 a.m. |
| | Ctrm:   11, 19th Floor |
| | The Honorable James Donato |
| | Date Action Filed:   May 8, 2015 |

# TABLE OF CONTENTS

**Page**

NOTICE OF MOTION AND MOTION ............................................................................... 1

MEMORANDUM OF POINTS AND AUTHORITIES ..................................................... 1

I.    INTRODUCTION .................................................................................................. 1

II.   STATEMENT OF FACTS .................................................................................... 2

    A.    The Product at Issue ................................................................................ 2

    B.    Plaintiff and the California Class ........................................................... 2

    C.    Fitbit's Terms of Service Require Dispute Resolution and Prohibit Class Actions ................................................................................................... 3

    D.    Plaintiff Agreed to the Terms of Service ............................................... 4

    E.    Plaintiff Refuses to Arbitrate ................................................................. 4

III.  LEGAL STANDARD ............................................................................................ 5

IV.   ARGUMENT .......................................................................................................... 5

    A.    Plaintiff Bears the Burden of Overcoming the Presumption that the Dispute Is Arbitrable ............................................................................... 5

    B.    Plaintiff Entered into a Valid Agreement to Arbitrate .......................... 6

    C.    The Arbitration Agreement Encompasses the Dispute at Issue ............ 8

    D.    The Arbitration Agreement Is Not Unconscionable .............................. 9

    E.    The Court Should Compel Arbitration and Dismiss Litigation of Plaintiff's Claims .................................................................................. 11

V.    CONCLUSION ..................................................................................................... 12

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**CASES**

*5381 Partners LLC v. Shareasale.com, Inc.,*
   No. 12-CV-4263 (JFB) (AKT), 2013 WL 5328324 (E.D.N.Y. Sept 23, 2013) ...................... 7

*Alvarez v. T-Mobile USA, Inc.,*
   No. CIV. 2:10-2373, 2011 WL 6702424 (E.D. Cal. Dec. 20, 2011) ....................................... 8

*AT&T Mobility LLC v. Concepcion,*
   563 U.S. 333, 131 S. Ct. 1740 (2011) ........................................................................ 5, 9, 10

*AT&T Techs., Inc. v. Commc'ns Workers of Am.,*
   475 U.S. 643 (1986) ........................................................................................................ 5, 6, 9

*Binder v. Aetna Life Ins. Co.,*
   75 Cal. App. 4th 832 (1999) ..................................................................................................... 6

*Bosinger v. Belden CDT, Inc.,*
   358 F. App'x. 812 (9th Cir. 2009) ........................................................................................... 9

*Carnival Cruise Lines, Inc. v. Shute,*
   499 U.S. 585 (1991) .................................................................................................................. 6

*Chiron Corp. v. Ortho Diagnostic Sys., Inc.,*
   207 F.3d 1126 (9th Cir. 2000) .................................................................................................. 5

*Crawford v. Beachbody, LLC,*
   No. 14-CV-1583 GPC (KSC), 2014 WL 6606563 (S.D. Cal. Nov. 5, 2014) ........................ 7

*Crook v. Wyndham Vacation Ownership, Inc.,*
   No. 13-CV-03699 WHO, 2013 WL 6039399 (N.D. Cal. Nov. 8, 2013) ............................... 10

*Dang v. Samsung Elecs. Co.,*
   No. 14-CV-00530 LHK, 2015 WL 4735520 (N.D. Cal. Aug. 10, 2015) .............................. 11

*Dauod v. Ameriprise Fin. Servs., Inc.,*
   No. 8:10-CV-00302 CJC (MANx), 2011 WL 6961586 (C.D. Cal. Oct. 12, 2011) .............. 11

*Dean Witter Reynolds, Inc. v. Byrd,*
   470 U.S. 213 (1985) ................................................................................................................ 10

*Fteja v. Facebook, Inc.,*
   841 F. Supp. 2d 829 (S.D.N.Y. 2012) ...................................................................................... 8

*Garcia v. Enter. Holdings, Inc.,*
   78 F. Supp. 3d 1125, 1137 (N.D. Cal. 2015) ........................................................................... 6

*Graf v. Match.com, LLC*,
   No. CV-15-3911 PA (MRWx), 2015 WL 4263957 (C.D. Cal. July 10, 2015) .................... 11

*Green Tree Fin. Corp. v. Randolph*,
   531 U.S. 79 (2000) ........................................................................................................ 5

*Hubbert v. Dell Corp.*,
   835 N.E.2d 113 (Ill. App. Ct. 2005) ............................................................................ 7

*Krause v. Barclays Bank Del.*,
   No. 2:13-CV-01734 MCE-AC, 2013 WL 6145261 (E.D. Cal. Nov. 21, 2013) .................... 8

*Kuehner v. Dickinson & Co.*,
   84 F.3d 316 (9th Cir. 1996)........................................................................................... 6

*Mortensen v. Bresnan Commc'n, LLC*,
   722 F.3d 1151 (9th Cir. 2013)............................................................................ 5, 6, 10

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
   460 U.S. 1 (1983) ..................................................................................................... 5, 9

*Murphy v. DIRECTV, Inc.*,
   No. 2:07-CV-06465 JHK-VBKx, 2011 WL 3319574 (C.D. Cal. Aug. 2, 2011)
   *aff'd*, 724 F.3d 1218 (9th Cir. 2013) ........................................................................... 11

*Nicosia v. Amazon.com, Inc.*,
   No. 14-CV-04513 (SLT) (MDG), 2015 WL 500180 (E.D.N.Y. Feb. 4, 2015)...................... 7

*Pinnacle Museum Towers Ass'n v. Pinnacle Market Dev., LLC*,
   55 Cal. 4th 223 (2012) ................................................................................................. 9

*Rent-A-Center W., Inc. v. Jackson*,
   561 U.S. 63 (2010) ....................................................................................................... 9

*Rep. of Nicar. v. Standard Fruit Co.*,
   937 F.2d 469 (9th Cir.1991)........................................................................................ 11

*Sheffer v. Samsung Telecomms. Am., LLC*,
   No. CV-13-8466 GW (AJWx), 2014 WL 792124 (C.D.Cal. Feb. 6, 2014) ........................ 11

*Simula, Inc. v. Autoliv, Inc.*,
   175 F.3d 716 (9th Cir.1999)........................................................................................ 11

*Sparling v. Hoffman Constr. Co.*,
   864 F.2d 635 (9th Cir.1988)........................................................................................ 11

*Swift v. Zynga Game Network, Inc.*,
   805 F. Supp. 2d 904 (N.D. Cal. 2011) ........................................................................ 6, 7

*Tompkins v. 23andMe, Inc.*,
   No. 13-CV-05682-LHK, 2014 WL 2903752 (N.D. Cal. Jun. 25, 2014) ................................. 7

*Ulbrich v. Overstock.com, Inc.*,
   887 F. Supp. 2d 924 (N.D. Cal. 2012) ................................................................................ 10

*Windsor Mills, Inc. v. Collins & Aikman Corp.*,
   25 Cal. App. 3d 987 (1972) ................................................................................................... 6

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## NOTICE OF MOTION AND MOTION

**PLEASE TAKE NOTICE** that on November 4, 2015 at 10:00 a.m. or as soon thereafter as the matter may be heard, in the United States District Court for the Northern District of California, Defendant Fitbit, Inc. ("Fitbit" or "Defendant") will, and hereby does, move the Court for an order to compel arbitration and dismiss litigation of claims pursued by Plaintiff Stephanie Mallick, individually and on behalf of a putative class.

Defendant's motion is based on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the concurrently filed Declaration of Jay Kershner and Declaration of Erin M. Bosman, and all exhibits thereto, all documents in the Court's file, any matters of which this Court may take judicial notice, and on such other written and oral argument as may be presented to the Court.

Dated:  September 30, 2015                    MORRISON & FOERSTER LLP


                                              By:  s/ Erin M. Bosman
                                                   Erin M. Bosman

                                              Attorneys for Defendant
                                              FITBIT, INC.

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.      INTRODUCTION

Even though Plaintiff Stephanie Mallick ("Plaintiff") has agreed to arbitrate any dispute with Fitbit, Inc. ("Fitbit"), she nevertheless brings this action in district court in direct contravention of the arbitration agreement set forth in Fitbit's Terms of Service.  If Plaintiff had insisted on filing her claims in court, Fitbit's Terms of Service provide an option to bring a claim in small claims court.  Since Plaintiff opted not to go to small claims court, her only option under the Terms of Service is arbitration, where this matter should now be sent.

In essence, Plaintiff alleges that purchasers of Fitbit devices with a sleep tracking function were deceived because the device does not deliver the accuracy or sophistication of sleep monitoring equipment used by scientists in laboratory settings.  (First Amended Complaint ("FAC") ¶¶ 13, 17-30, ECF No. 32.)  On that basis, Plaintiff claims to have suffered injury because she paid more for the Fitbit Charge HR™ ("Charge HR") than she would have paid for the Fitbit Zip™, a basic model without the sleep-tracking function, in reliance on representations made in Fitbit's product packaging.  (*Id.* ¶ 44.)  Plaintiff brings eight claims on behalf of herself and the putative California class members: (1) unfair business practices under the California Unfair Competition Law; (2) false advertising under the California False Advertising Law; (3) unfair and deceptive practices under the Consumer Legal Remedies Act; (4) violation of the Magnuson-Moss Warranty Act; (5) breach of implied warranty under California common law; (6) common law fraud; (7) negligent misrepresentation; and (8) unjust enrichment.

Each cause of action relates to Plaintiff's purchase and use of the Fitbit Charge HR.  Missing from this Complaint is the acknowledgment that to use their activity trackers, Fitbit customers must create an account requiring them to consent to the Terms of Service, which include an agreement to resolve all disputes individually in arbitration or in small claims court.  Fitbit's records show that Plaintiff has completed registration of her device and agreed to the arbitration provision.  Having so agreed, Plaintiff cannot bring this action in district court.  This Court should order Plaintiff to arbitrate her claims as the parties expressly agreed to do.

## II.     STATEMENT OF FACTS

### A.     The Product at Issue

Plaintiff purchased a Charge HR on or about February 4, 2015, for $149.99.[1]  (FAC ¶¶ 40-41, Ex. C.)  Activity trackers are wireless-enabled wearable devices that measure data such as number of steps walked, minutes of activity and rest, and other personal metrics.  (FAC Ex. C at 1.)  Like other Fitbit trackers, Charge HR tracks workouts by recording the number of steps walked, distance, and calories burned.  (Declaration of Jay Kershner ("Kershner Decl.") Ex. 1 at 1.)  It has an LED light display that shows progress toward a user's daily step goal.  (*Id*.)  In addition, the Charge HR offers PurePulse[TM] heart rate monitoring that allows a user to continuously monitor her heart rate to optimize intensity of workouts and maximize training.  (*Id*. Ex. 1 at 2.)  The Charge HR also includes a silent vibrating alarm, a watch, and call notifications with caller ID, among other features.  (*Id*. Ex. 1 at 1.)

Fitbit's devices sync wirelessly with a computer or a smartphone and the collected data is displayed in the user's personal "dashboard."  (FAC ¶¶ 14-16.)  In order to view the personal metrics collected by a Fitbit device, a user must register for an account on Fitbit's website.  After a user has registered and paired a device to her Fitbit account, the user is able to view her activity logs, share the data with friends, set goals, and earn rewards.  (Kershner Decl. Ex. 1 at 3.)

### B.     Plaintiff and the California Class

Plaintiff alleges that she "relied on Defendant's representations as to the Fitbit Charge's sleep-tracking function" and "would not have purchased the Fitbit Charge in the absence of Defendant's misrepresentations."  (FAC ¶¶ 44-46.)[1]

Plaintiff brings this action on behalf of herself, and all other similarly situated persons (the "California Class"), namely: "All California residents who have purchased a Fitbit Force, a Fitbit Flex, a Fitbit One, a Fitbit Ultra, a Fitbit Charge, a Fitbit Charge HR, and/or a Fitbit Surge, in the State of California, within the applicable statute of limitations."  (*Id*. ¶ 48.)

---

[1] Although Plaintiff alleges she purchased a Charge™, her receipt is for a Charge HR™. (FAC Ex. C.)

**C.      Fitbit's Terms of Service Require Dispute Resolution and Prohibit Class Actions**

Fitbit users agree to arbitrate any disputes with Fitbit through their acceptance of Fitbit's Terms of Service.  A true and correct copy of the Terms of Service is attached to the Declaration of Jay Kershner as Exhibit 2.  In the Dispute Resolution section of the Terms of Service, there is a heading stating "We Both Agree To Arbitrate."  (Kershner Decl. Ex. 2 at 2.)  The text following this subheading reads, "You and Fitbit agree to resolve any Disputes through final and binding arbitration, except as set forth under Exceptions to Agreement to Arbitrate below."  (*Id.* Ex. 2 at 4.)  Directly below the agreement to arbitrate, there is another subheading explaining how to "Opt-out of Agreement to Arbitrate."  (*Id.*)  This opt-out section allows that "You can decline this agreement to arbitrate by contacting legal@fitbit.com within 30 days of first accepting these Terms and stating that you (include your first and last name) decline this arbitration agreement." (*Id.*)

The Terms of Service also have two specific provisions for customers with claims under a certain monetary threshold.  First, they provide an exception to arbitration for claims brought in small claims court.  Second, under the Terms of Service, Fitbit provides that it "will pay all arbitration fees for claims less than $75,000."  (*Id.*)  The Terms of Service provide that the "American Arbitration Association (AAA) will administer the arbitration under its Commercial Arbitration Rules and the Supplementary Procedures for Consumer Related Disputes."  (*Id.*) Further, "Fitbit will not seek its attorneys' fees and costs in arbitration unless the arbitrator determines that your claim is frivolous."  (*Id.*)

Moreover, the Dispute Resolution section contains a provision titled "No Class Actions" that reads, "You may only resolve Disputes with Fitbit on an individual basis, and may not bring a claim as a plaintiff or a class member in a class, consolidated, or representative action.  Class arbitrations, class actions, private attorney general actions, and consolidation with other arbitrations aren't allowed under our agreement."  (*Id.*)

A Fitbit user must create a Fitbit account and register her Fitbit device in order to track her step count, heart rate, sleep data, or other personal metrics on their home computer or

smartphone.  (Kershner Decl. ¶ 4.)  A Fitbit consumer cannot use her activity tracker as intended until the user sets up an account.  (*Id.*)  In fact, the Charge HR, cannot even be used as a watch until the device is first paired to a Fitbit account, which requires the user to agree to the Terms of Service.  (*Id.*)  When a Fitbit user sets up an account, the user is prompted to agree to the Terms of Service and the Privacy Policy.  A hyperlink allows the customer to review these documents before agreeing to their terms.  (*Id.* ¶ 5.)  The user must then affirmatively check the box indicating, "I agree to the Terms of Service and the Privacy Policy."  (*Id.*)

### D.       Plaintiff Agreed to the Terms of Service

The First Amended Complaint alleges that Plaintiff purchased a Charge HR on or about February 4, 2015.  (FAC ¶¶ 40, Ex. C.)  To set up a Fitbit account, each user is required to consent to the Terms of Service.  (*See* Kershner  Decl. ¶ 4.)

A review of Fitbit's records confirms that Stephanie Mallick created an account, No. 24014727, through the Fitbit website on February 4, 2015.  (*Id.* ¶ 7.)  Fitbit's records also confirm that Stephanie Mallick synced her Charge HR with the Fitbit system on February 4, 2015.  (*Id.* ¶ 8.)  A user cannot sync a device with the Fitbit system without first agreeing to the Terms of Service.  (*Id.* ¶ 6.)

The Terms of Service provide that the parties agree to arbitrate unless an individual contacts Fitbit via email at legal@fitbit.com within 30 days and declines the arbitration agreement.  (*Id.* Ex. 2 at 4.)  Fitbit did not received notice at legal@fitbit.com from Plaintiff declining the agreement to arbitrate.  (*Id.* ¶ 9.)  Thus, Fitbit's records confirm that Plaintiff consented to the Terms of Service, including arbitration, and her claims should be dismissed.

### E.       Plaintiff Refuses to Arbitrate

Despite consenting to the arbitration agreement in the Terms of Service, Plaintiff failed to initiate arbitration and instead filed the present suit in this Court.  Counsel for Fitbit has informed Plaintiff's counsel that any disputes relating to the Charge HR are governed by the Dispute Resolution provisions in the Terms of Service.  (Declaration of Erin M. Bosman ¶¶ 2-4 and Ex. 1.)

III. **LEGAL STANDARD**

The Federal Arbitration Act ("FAA") reflects a liberal federal policy favoring arbitration, and requires that arbitration agreements be rigorously enforced.  *See AT&T Mobility LLC v. Concepcion*, 563 U.S. 333,  335, 131 S. Ct. 1740, 1745 (2011) ("courts must place arbitration agreements on an equal footing with other contracts") ("*Concepcion*").  Where a contract contains an arbitration provision, "a presumption of arbitrability" arises and any ambiguity as to the arbitrability of a claim must be resolved in favor of arbitration.  *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986); *Comedy Club, Inc. v. Improv W. Assocs.*, 553 F.3d 1277, 1284 (9th Cir. 2009).  Because of this presumption, "the party resisting arbitration bears the burden of proving that the claims at issue are unsuitable for arbitration."  *Green Tree Fin. Corp. v. Randolph*, 531 U.S. 79, 91-92 (2000).  The Court's role in determining whether a dispute is arbitrable is "limited to determining (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue."  *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000).  "If the response is affirmative on both counts, then the Act requires the court to enforce the arbitration agreement in accordance with its terms."  *Id*.

IV. **ARGUMENT**

A. **Plaintiff Bears the Burden of Overcoming the Presumption that the Dispute Is Arbitrable**

In enacting the FAA, Congress's "clear intent" was "to move the parties to an arbitrable dispute out of court and into arbitration as quickly and easily as possible."  *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 22-25 (1983) (the FAA embodies "a liberal federal policy favoring arbitration agreements").  The Ninth Circuit recognizes that "the FAA's purpose is to give preference (instead of mere equality) to arbitration provisions."  *Mortensen v. Bresnan Commc'n LLC*, 722 F.3d 1151, 1160 (9th Cir. 2013) (citing *Concepcion*, 131 S. Ct. at 1745).

Accordingly, "[an] order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute."  *AT&T Techs.*, 475 U.S. at 650 (1986) (quoting

1   *Steelworkers v. Warrior Gulf Navigation Co.*, 363 U.S. 574, 583-83 (1960)); *see also Kuehner v.*

2   *Dickinson & Co.*, 84 F.3d 316, 319 (9th Cir. 1996) (holding that the FAA "created a rule of

3   contract construction favoring arbitration.").  "As arbitration is favored, those parties challenging

4   the enforceability of an arbitration agreement bear the burden of proving that the provision is

5   unenforceable." *Mortensen*, 722 F.3d at 1157 (citing *Green Tree Fin. Corp.*, 531 U.S. at 91).

6                **B.        Plaintiff Entered into a Valid Agreement to Arbitrate**

7          Mutual assent to contract "may be manifested by written or spoken words, or by conduct,"

8   *Binder v. Aetna Life Insurance Co.*, 75 Cal. App. 4th 832, 850 (1999), and acceptance of contract

9   terms may be implied through action or inaction.  *See Carnival Cruise Lines, Inc. v. Shute*, 499

10  U.S. 585, 593-95 (1991).  Thus, "an offeree, knowing that an offer has been made to him but not

11  knowing all of its terms, may be held to have accepted, by his conduct, whatever terms the offer

12  contains." *Windsor Mills, Inc. v. Collins & Aikman Corp.*, 25 Cal. App. 3d 987, 992 (1972)

13  (citations omitted).

14         In an analogous recent case in this District, the court concluded that in online agreements

15  where a plaintiff is provided with an opportunity to review terms of service prior to acceptance

16  and a means for the plaintiff to confirm that she has read the terms, the plaintiff is on sufficient

17  inquiry notice of the terms to which she is assenting.  *Swift v. Zynga Game Network, Inc*., 805 F.

18  Supp. 2d 904, 911-12 (N.D. Cal. 2011).  Thus, where the plaintiff was provided with a hyperlink

19  to the terms of service immediately under the "I accept" button and she admittedly clicked the

20  button, the plaintiff consented to the terms of service.  *Id*.  It is sufficient to "requir[e] a user to

21  affirmatively accept the terms, even if the terms are not presented on the same page as the

22  acceptance button" as long as the user has "access to the terms of service." *Id*.  And in the

23  context of online transactions, "the terms of the agreement are binding, even if the user did not

24  actually review the agreement, provided that the user had actual knowledge of the agreement or

25  the website put a 'reasonably prudent user on notice of the terms of the contract.'" *Garcia v.*

26  *Enter. Holdings, Inc*., 78 F. Supp. 3d 1125, 1137 (N.D. Cal. 2015).

27         In this case, there was undoubtedly inquiry notice.  The Fitbit registration process is clear,

28  simple and unequivocal.  In order to begin the registration process on Fitbit's website, the user

1    must affirmatively check the box indicating, "I agree to the Terms of Service and the Privacy

2    Policy" and press the "Continue" button.  (Kershner Decl. ¶ 5.)  The phrases "Terms of Service"

3    and "Privacy Policy" are hyperlinks.  (*Id.*)

4            In situations like the one here, courts in this District and throughout the nation (federal

5    and state) have repeatedly held users to terms and conditions when they were on notice that such

6    terms would bind them if they proceeded.  *See, e.g.*, *Swift*, 805 F. Supp. 2d at 911 (videogame

7    user bound by Zynga's online terms and conditions because she was told that, "By using YoVille,

8    you also agree to the YoVille [blue hyperlink] Terms of Service" and the user proceeded)

9    (compelling arbitration);  *Tompkins v. 23andMe, Inc.*, No. 13-CV-05682-LHK, 2014 WL

10   2903752, at *18 (N.D. Cal. Jun. 25, 2014) (user was bound by terms of service where a button

11   that appeared near a hyperlink to the terms indicated acceptance of the terms) (compelling

12   arbitration);  *Nicosia v. Amazon.com, Inc.*, No. 14-CV-4513 (SLT) (MDG), 2015 WL 500180, at

13   *5 (E.D.N.Y. Feb. 4, 2015) (online Amazon customer who placed order was bound by contract

14   terms when website stated that, "By placing your order, you agree to Amazon.com's privacy,

15   notice and conditions of use," which were reachable by a hyperlink on the same webpage)

16   (compelling arbitration);  *Crawford v. Beachbody, LLC*, No. 14-CV-1583 GPC (KSC), 2014 WL

17   6606563, at *3 (S.D. Cal. Nov. 5, 2014) (online customer who placed order was bound by

18   contract terms when website stated that "By clicking *Place Order* below, you are agreeing that

19   you have read and understand the Beachbody Purchase Terms and Conditions," which were at a

20   hyperlink on the same webpage) (granting motion to transfer venue);  *5381 Partners LLC v.*

21   *Shareasale.com, Inc.*, No. 12-CV-4263 (JFB) (AKT), 2013 WL 5328324, at *4 (E.D.N.Y. Sept

22   23, 2013) (online purchaser who activated account was bound by contract when website stated

23   that "by clicking and making a request to Activate, you agree to the terms and conditions in the

24   Merchant Agreement," and a hyperlink to the terms and conditions was available on the same

25   page) (granting motion to transfer venue);  *Fteja v. Facebook, Inc.*, 841 F. Supp. 2d 829, 837-38

26   (S.D.N.Y. 2012) (Facebook account holder was bound by contract when holder was expressly

27   informed during the internet sign up process that registering would manifest agreement to the

28   terms of use) (granting motion to transfer venue);  *Hubbert v. Dell Corp.*, 835 N.E.2d 113, 122

1    (Ill. App. Ct. 2005) ("The statement that the sales were subject to the defendant's 'Terms and

2    Conditions of Sale' . . . accessible online by blue hyperlinks, was sufficient notice to the plaintiffs

3    that purchasing computers online would make the 'Terms and Conditions of Sale' binding on

4    them.") (compelling arbitration).

5          It cannot be disputed that Plaintiff completed the registration process.  A review of Fitbit's

6    records confirms that an account No. 24014727 was created by Stephanie Mallick via the Fitbit

7    website on February 4, 2015.  (Kershner Decl. ¶ 7.)  Fitbit's records also confirm that Plaintiff

8    paired her Charge HR to her Fitbit account on February 4, 2015.  (*Id.* ¶ 8.)  Fitbit did not receive

9    notice at legal@fitbit.com from Plaintiff declining the agreement to arbitrate.  (*Id.* ¶ 9.)  Thus,

10   Fitbit's records confirm that Plaintiff consented to the Terms of Service, including a valid

11   agreement to arbitrate.

12             **C.       The Arbitration Agreement Encompasses the Dispute at Issue**

13         Nor is there any doubt that Plaintiff's claims fall squarely within the scope of the

14   arbitration agreement in the Terms of Service.  The Dispute Resolution section of the agreement

15   defines arbitrable disputes broadly: "You agree that any dispute between you and Fitbit arising

16   out of or relating to these Terms of Service, the Fitbit Service, or any other Fitbit products or

17   services (collectively, 'Disputes') will be governed by the arbitration procedure outlined below."

18   (Kershner Decl. Ex. 2 at 4.)  Because Plaintiff's claims plainly relate to Fitbit's products, they are

19   encompassed by the definition of "Disputes" that are subject to the arbitration clause.  *See Krause*

20   *v. Barclays Bank Del.*, No. 2:13 CV-01734 MCE-AC, 2013 WL 6145261, at *10 (E.D. Cal. Nov.

21   21, 2013)  ("The rule is that, where an arbitration clause applies to matters  'arising out of or

22   relating to' the agreement, its application should be broadly construed.") (citing *Mediterranean*

23   *Enters., Inc. v. Ssangyong Corp.*, 708 F.2d 1458, 1463-64 (9th Cir. 1983)); *Alvarez v. T-Mobile*

24   *USA, Inc.*, No. CIV. 2:10-2373 WBS GGH, 2011 WL 6702424, at *13 (E.D. Cal. Dec. 20, 2011)

25   (false advertising claims were within scope of agreement to arbitrate disputes "related to or

26   concerning the [service] agreement, our services, devices or products") (quoting *Arellano v. T-*

27   *Mobile USA, Inc.*, No. C-10-05663 WHA, 2011 WL 362165, at *7 (N.D. Cal. Apr. 11, 2011)).

28         Under the FAA, a court must compel arbitration "unless it may be said with positive

1    assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted

2    dispute . . . ." *AT&T Techs., Inc.*, 475 U.S. at 650 (quoting *Steelworkers*, 363 U.S. at 582-83).

3    Moreover, "any doubts concerning the scope of arbitrable issues should be resolved in favor of

4    arbitration." *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 24-25.  Consequently, the arbitration

5    agreement encompasses Plaintiff's claims in this case.

6                    **D.      The Arbitration Agreement Is Not Unconscionable**

7              It is well established that "the party opposing arbitration bears the burden of proving any

8    defense, such as unconscionability." *Pinnacle Museum Towers Ass'n v. Pinnacle Market Dev.,*

9    *LLC*, 55 Cal. 4th 223, 236 (2012).  In the present case, if Plaintiff were to pursue this defense, the

10   argument is unavailing.

11             On the question of unconscionability, the Court's analysis is limited to the issue of

12   whether the arbitration provision, by itself, is unconscionable.  *See Rent-A-Center W., Inc. v.*

13   *Jackson*, 561 U.S. 63, 70-71 (2010) ("[A] party's challenge to another provision of the contract,

14   or to the contract as a whole, does not prevent a court from enforcing a specific agreement to

15   arbitrate.").  Moreover, under California law, "a contract provision is unenforceable due to

16   unconscionability only if it is both procedurally and substantively unconscionable." *Bosinger v.*

17   *Belden CDT, Inc*., 358 F. App'x. 812, 814 (9th Cir. 2009) (quoting *Shroyer v. NewCingular*

18   *Wireless Servs., Inc.*, 498 F.3d 976, 981 (9th Cir. 2007)).  That means Plaintiff must show that the

19   arbitration clause is "so one-sided as to shock the conscience." *Pinnacle,* 55 Cal. 4th at 246

20   (internal quotations omitted).  Plaintiff cannot come close to meeting her burden.

21             Far from being "unjustifiably one-sided," the Dispute Resolution section of Fitbit's Terms

22   of Service is bilateral and replete with user safeguards.  For example, the Terms of Service

23   provide that the user may easily opt out of the agreement by contacting Fitbit:  "You can decline

24   this agreement to arbitrate by contacting legal@fitbit.com within 30 days of first accepting these

25   Terms and stating that you (include your first and last name) decline this arbitration agreement."

26   (Kershner Decl. Ex. 2 at 4.)  In addition, the Terms of Service ensure an appropriate forum for

27   consumer disputes, providing that the "American Arbitration Association (AAA) will administer

28   the arbitration under its Commercial Arbitration Rules and the Supplementary Procedures for

1  Consumer Related Disputes."  (*Id.*)  Moreover, the Terms of Service provide that if a user's claim

2  for damages does not exceed $75,000, Fitbit will pay "all arbitration fees" and will not seek

3  attorneys' fees and costs for non-frivolous claims.  (*Id.*)  Lastly, the Terms of Service allow the

4  user to bring a claim in small claims in San Francisco or any county where the user lives or works

5  instead of pursuing arbitration.  (*Id.*)

6          These provisions comprehensively safeguard the user's access to the arbitral forum on an

7  individual basis, and go well beyond what is required to survive a challenge based on alleged

8  unconscionability.  *See Ulbrich v. Overstock.com, Inc.*, 887 F. Supp. 2d 924, 933-34 (N.D. Cal.

9  2012) (rejecting unconscionability challenge even where arbitration provision required employees

10  to share in costs of arbitration and to attend the arbitration at an out-of-state location, and lacked

11  complete mutuality in the remedies available to the parties); *see also Crook v. Wyndham Vacation

12  Ownership, Inc.*, No. 13-CV-03669 WHO, 2013 WL 6039399, at *5 (N.D. Cal. Nov. 8, 2013)

13  (enforcing arbitration agreement despite plaintiffs' argument that agreement was unconscionable

14  because it (i) contemplated that the parties would share some of the fees and costs of arbitration,

15  (ii) incorporated the AAA Rules, and (iii) required travel to an arbitration forum outside

16  plaintiffs' home county).

17          Finally, to the extent Plaintiff may contend that the class action waiver is unconscionable,

18  any such contention is precluded by Supreme Court and Ninth Circuit precedent.  *Concepcion*,

19  131 S. Ct. at 1748 (A state rule barring class action waivers "interferes with fundamental

20  attributes of arbitration and thus creates a scheme inconsistent with the FAA"); *Mortensen*, 722

21  F.3d at 1160 ("In our view, *Concepcion* crystalized the directive . . . that the FAA's purpose is to

22  give preference (instead of mere equality) to arbitration provisions.") (citation omitted).

23          The arbitration agreement thus is not unconscionable and should be enforced.

24          **E.     The Court Should Compel Arbitration and Dismiss Litigation of
                     Plaintiff's Claims**

25

26          The purpose of the FAA was to abolish any hostility by courts with respect to arbitration

27  and to give arbitration agreements the same force as other contracts.  *Concepcion*, 131 S. Ct. at

28  1745-46.  Thus, under federal law, courts are required to "rigorously enforce agreements to

arbitrate." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 221 (1985). The standard for demonstrating arbitrability "is not high." *Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716, 719 (9th Cir. 1999). Indeed, the FAA "leaves no place for the exercise of discretion by the district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Rep. of Nicar. v. Standard Fruit Co*., 937 F.2d 469, 475 (9th Cir. 1991) (quoting *Dean Witter Reynolds*, 470 U.S. at 218).

Fitbit has established that the arbitration agreement is valid and covers the dispute at issue in Plaintiff's claims. Fitbit's records also indicate that Plaintiff assented to the agreement when she registered her device on February 4, 2015. (Kershner Decl. ¶ 7.) Therefore, established precedent compels the conclusion that Plaintiff is bound by the Terms of Service to resolve this dispute in arbitration.

Courts in the Ninth Circuit have routinely held that dismissal of claims brought on behalf of a putative class is proper upon granting a motion to compel arbitration with respect to the named plaintiff. *See Sheffer v. Samsung Telecomms. Am., LLC*, No. CV-13-3466 GW (AJWx), 2014 WL 792124, at *1 (C.D. Cal. Feb. 6, 2014) ("Because the arbitration agreement calls for individual arbitration of all of Plaintiff's claims in this action, Plaintiff's class-based claims are dismissed with prejudice."); *see also Dang v. Samsung Elecs. Co.*, No. 14-CV-00530 LHK, 2015 WL 4735520, at *11 (N.D. Cal. Aug. 10, 2015) (quoting *Sparling v. Hoffman Constr. Co.*, 864 F.2d 635, 638 (9th Cir. 1988) (explaining that dismissal is appropriate where "the arbitration clause [is] broad enough to bar all of the plaintiff's claims"); *Graf v. Match.com, LLC*, No. CV-15-3911 PA (MRWx), 2015 WL 4263957, at *6 (C.D. Cal. July 10, 2015) ("Given that all of Plaintiff's claims are subject to arbitration, this [putative class] action is dismissed.") (citation omitted); *Murphy v. DIRECTV, Inc.*, No. 2:07-CV-06465 JHN-VBKx, 2011 WL 3319574, at *5 (C.D. Cal. Aug. 2, 2011) (finding that "the broadly-worded arbitration clause mandates the submission of these [putative class] claims to arbitration") (quoting *Simula*, 175 F.3d at 726), *aff'd*, 724 F.3d 1218 (9th Cir. 2013).

In the present case, dismissal of putative class claims is also proper because Plaintiff assented to the class action waiver in the Terms of Service. *See Dauod v. Ameriprise Fin. Servs.*,

1   *Inc.*, No. 8:10-CV-00302 CJC (MANx), 2011 WL 6961586, at *6 (C.D. Cal. Oct. 12, 2011)

2   (noting that the class action waiver in the arbitration provision was enforceable and dismissing

3   action where individual claims are subject to arbitration).

4       Therefore, this Court should find that Plaintiff's claims must be resolved in arbitration and

5   dismissed from the present action.

6   **V.   CONCLUSION**

7       Having voluntarily entered into a valid arbitration agreement covering the disputes

8   currently before this Court, Plaintiff should be compelled to arbitrate her claims against Fitbit.

9   Fitbit respectfully requests that this Court grant its motion to compel arbitration and dismiss

10  litigation of Plaintiff's claims.

11

12

13  Dated: September 30, 2015                MORRISON & FOERSTER LLP

14

15                                    By:    s/ Erin M. Bosman
                                            Erin M. Bosman
16                                          Attorneys for Defendant
                                            FITBIT, INC.
17

18

19

20

21

22

23

24

25

26

27

28