WILLIAM L. STERN (CA SBN 96105)
WStern@mofo.com
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, California  94105
Telephone: 415.268.7000

JAMES W. HUSTON (CA SBN 115596)
JHuston@mofo.com
ERIN M. BOSMAN (CA SBN 204987)
EBosman@mofo.com
JULIE Y. PARK (CA SBN 259929)
JuliePark@mofo.com
MORRISON & FOERSTER LLP
12531 High Bluff Drive
San Diego, California  92130-2040
Telephone: 858.720.5100
Facsimile: 858.720.5125

Attorneys for Defendant
FITBIT, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMES P. BRICKMAN, individually and as a representative of all others similarly situated,<br><br>                              Plaintiff,<br><br>        v.<br><br>FITBIT, INC.,<br><br>                              Defendant. | Case No. 3:15-cv-2077-JD<br><br>**DEFENDANT FITBIT, INC.'S REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT**<br><br>Date:      November 10, 2015<br>Time:      10:00 a.m.<br>Ctrm:      11, 19th Floor<br><br>The Honorable James Donato<br><br>Date Action Filed:      May 8, 2015 |

FITBIT'S REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT
Case No. 3:15-cv-2077-JD
sf-3586117

**TABLE OF CONTENTS**

**Page**

I.    INTRODUCTION .................................................................................................... 1

II.    ARGUMENTS IN REPLY ...................................................................................... 1

    A.    Plaintiffs Do Not State a Plausible Claim of Deception ........................... 1

        1.    Fitbit's Activity Trackers Track Sleep, as Advertised .............................. 2

        2.    Nearly Identical Claims Against a Sleep-Tracking Device Have Been Dismissed by a Court in This District .................................................. 3

        3.    Fitbit's General Product Statements Are Puffery ....................................... 5

        4.    Fitbit's Flex Tracks Sleep ........................................................................ 6

        5.    There Is No Standard Criteria for Comparing Sleep Tracking Devices to PSG Studies .......................................................................... 7

    B.    Plaintiffs' Fraud-Based Claims Lack Specific and Actionable Allegations of Fraud .............................................................................. 8

    C.    Plaintiffs' Warranty Claims Fail .............................................................. 9

        1.    There Is No Actual Defect ........................................................................ 9

        2.    Plaintiffs Do Not Plead a Particular Purpose ......................................... 10

        3.    Plaintiffs' Magnuson-Moss Warranty Act Claim Also Fails .................... 10

III.    CONCLUSION ..................................................................................................... 10

# **TABLE OF AUTHORITIES**

**Page(s)**

**CASES**

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .................................................................................................. 9

*Berenblat v. Apple, Inc.*,
No. 08-04969 JF (PVT), 2009 WL 2591366 (N.D. Cal. Aug. 21, 2009) ................................ 4

*Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv. Inc.*,
911 F.2d 242 (9th Cir. 1990).................................................................................... 6

*Frenzel v. Aliphcom*,
76 F. Supp. 3d 999 (N.D. Cal. 2014) ("*Frenzel I*").............................................. 1, 5

*Frenzel v. Aliphcom*,
No. 14-cv-03587-WHO, 2015 WL 4110811 (N.D. Cal. Jul. 7, 2015) ("*Frenzel II*")...... *passim*

*In re All Terrain Vehicle Litig.*,
771 F. Supp. 1057 (C.D. Cal. 1991).......................................................................... 5

*In re GlenFed, Inc. Sec. Litig.*,
42 F.3d 1541 (9th Cir. 1994)...................................................................................... 8

*In re iPhone 4S Consumer Litig.*,
No. C 12-1127 CW, 2014 WL 589388 (N.D. Cal. Feb. 14, 2014) ............................... 4

*In re MyFord Touch Consumer Litig.*,
46 F. Supp. 3d 936 (N.D. Cal. 2014) ......................................................................... 4

*Long v. Hewlett-Packard Co.*,
No. C 06-02816 JW, 2007 WL 2994812 (N.D. Cal. July 27, 2007) *aff'd*, 316 F. App'x
585 (9th Cir. 2009)...................................................................................................... 6

*McKinney v. Google, Inc.*,
No. 5:10-CV-01177 EJD (PSG), 2011 WL 3862120 (N.D. Cal. Aug. 30, 2011) .................... 9

*Oestreicher v. Alienware Corp.*,
544 F. Supp. 2d 964 (N.D. Cal. 2008) ....................................................................... 6

*Provencio v. Vazquez*,
No. 1:07-CV00069-AWI-BAK, 2010 WL 653881 (E.D. Cal. Feb. 19, 2010)..................... 2

*Smith v. LG Elecs. U.S.A., Inc.*,
No. C 13-4361 PJH, 2014 WL 989742 (N.D. Cal. Mar. 11, 2014) ..................................... 10

**TABLE OF AUTHORITY**
**(continued)**

**Page(s)**

*Stearns v. Select Comfort Retail Corp.*,
  No. 08-2746 JF, 2009 WL 1635931 (N.D. Cal. June 5, 2009) .................................................. 5

*Summit Tech. v. High-Line Med. Instruments*,
  933 F. Supp. 918 (C.D. Cal. 1996)........................................................................................... 6

*Tietsworth v. Sears, Roebuck and Co.*,
  720 F. Supp. 2d 1123 (N.D. Cal. 2010) ................................................................................... 9

*Vitt v. Apple Computer, Inc.*,
  469 F. App'x 605 (9th Cir. 2012) ............................................................................................. 6

*Werbel v. Pepsico, Inc.*,
  No. C 09-04456 SBA, 2010 WL 2673860 (N.D. Cal. July 2, 2010) ........................................ 2

## I.    INTRODUCTION

Plaintiffs' opposition is eye-opening.  Not so much for what it says, but for what it omits.  Plaintiffs must have decided that by ignoring anything that is inconvenient, the Court will overlook it too.

As Fitbit showed in its Opening Memorandum, the First Amended Complaint (FAC) relies heavily on the Montgomery-Downs Paper, but Fitbit showed why that study dooms Plaintiffs' theory.  In their Opposition, Plaintiffs never mention the Montgomery-Downs study.  Their silence is telling.

Fitbit also showed that this case is indistinguishable from the *Frenzel* case before Judge Orrick, which also challenged claims made by a manufacturer of a sleep-tracking device; Judge Orrick dismissed those claims with prejudice.  *See Frenzel v. Aliphcom*, 76 F. Supp. 3d 999 (N.D. Cal. 2014) ("*Frenzel I*"); *Frenzel v. Aliphcom*, No. 14-cv-03587-WHO, 2015 WL 4110811 (N.D. Cal. Jul. 7, 2015) ("*Frenzel II*").  In response, Plaintiffs do not attempt to distinguish *Frenzel*—in fact, they never even mention it.  Their omission implicitly admits their inability to survive this motion to dismiss in light of *Frenzel*.

What Plaintiffs do address is unconvincing and off-point.  As Fitbit pointed out, the FAC already attempted to rewrite Fitbit's statements in support of Plaintiffs' theory that Fitbit promised highly accurate sleep-tracking.  But Fitbit made no such representations.  Rather than defend the allegations they already made, Plaintiffs now rewrite their own FAC.  They no longer claim that Fitbit's sleep tracking is inaccurate; they now claim that Fitbit's tracker simply cannot track sleep.  This, too, is refuted by Plaintiffs' own allegations in the FAC, as well as the Montgomery-Downs Paper that Plaintiffs chose to ignore in their Opposition.

Plaintiffs' claims—either as pled or rewritten—do not withstand scrutiny.  The Court should dismiss the FAC with prejudice.

## II.    ARGUMENTS IN REPLY

### A.    Plaintiffs Do Not State a Plausible Claim of Deception

As explained in Fitbit's Opening Memorandum, the majority of Plaintiffs' FAC fails absent a plausible claim that a reasonable consumer will be deceived.  (ECF No. 31 ("Mem."))

6:18-7:24.)  It is well established in this Circuit that "where a court can conclude as a matter of law that members of the public are not likely to be deceived by the product packaging, dismissal is appropriate."  *Werbel v. Pepsico, Inc.*, No. C 09-04456 SBA, 2010 WL 2673860, at *3 (N.D. Cal. July 2, 2010) (collecting cases).  Plaintiffs' claim of deception is implausible as a matter of law for five reasons.  Plaintiffs' Opposition fails to show otherwise.

### 1.      Fitbit's Activity Trackers Track Sleep, as Advertised

Plaintiffs' Opposition retreats from the FAC.  According to the FAC, Fitbit represented that its "devices can make specific, mathematical measurements and calculations as to the amount and quality of the wearer's sleep."  (FAC ¶ 74.)  Plaintiffs further alleged that consumers are "likely" to believe that Fitbit's trackers "will track, to the minute, the amount they sleep and the quality and efficiency, to an exact percentage point, of that sleep."  (*Id.* ¶ 75.)  Fitbit's product packaging does not make such representations.  (*See* Mem. 8:8-22; *see also* FAC Ex. B.)  Now, Plaintiffs abandon their "inaccuracy" theory and instead assert that "[t]he issue is whether it tracks sleep at all.  And, the answer is that the Fitbit sleep devices do not."  (ECF No. 42 ("Opposition" or "Opp'n") 2:13-14.)  In other words, because "[m]ovement is not sleep" (*id.* at 2:6, 7:20, 8:20), Plaintiffs claim that the device *cannot* track sleep and use this "fact" to support their allegation that Fitbit's representations were fraudulent.

Opposing a motion to dismiss is not the time to shift course.  Plaintiffs should have sought leave to amend if they wanted to plead a new theory of liability.  *See, e.g., Provencio v. Vazquez*, No. 1:07-CV00069-AWI-BAK, 2010 WL 653881, at *1 (E.D. Cal. Feb. 19, 2010).

In any event, Plaintiffs' new theory is no better than their old one.  The assertion that Fitbit's activity trackers do not track sleep is impeached by the FAC.  There, Plaintiffs acknowledged that actigraphy is a "is a scientifically accepted technology," a "standard method" of sleep tracking that "involves attaching an actimetry sensor to the patient to measure gross motor activity."  (FAC ¶ 20.)[1]  They found support for this in the Montgomery-Downs Paper,

---

[1] Plaintiffs attempt to differentiate actigraphy from Fitbit's method by referring to an "actimetry sensor."  However, the Montgomery-Downs Paper explains that actigraphy "uses an internal

(Footnote continues on next page.)

cited extensively throughout the FAC.  (*See generally* FAC; *see also* ECF No. 34-4, Ex. I.)  That study compared the performance of a Fitbit tracker with polysomnography (PSG), an advanced laboratory method for detecting sleep; and actigraphy, a more portable technology that, like Fitbit's devices, uses an accelerometer to detect sleep and waking periods.  The study explained that "[s]imilar to actigraphy, the Fitbit system relies on *movement and absence of movement* to infer sleep and wake."  (ECF No. 34-4, Ex. I at 916 (emphasis added).)  The study concluded that both Fitbit and actigraphy have high sensitivity—i.e., the ability to accurately identify sleep periods.  (*Id.* ("Consistently, both Fitbit and actigraph have high sensitivity (ability to accurately identify sleep epochs)").)

In other words, the very study cited by Plaintiffs concludes that tracking movement (and its absence) *does* measure sleep.  It comes as no surprise, then, that the Montgomery-Downs Paper, which played such a prominent role in the FAC, receives no mention in Plaintiffs' Opposition.  A reasonable consumer would not have been deceived, not when Fitbit's trackers track sleep as advertised.  Plaintiffs' complete retreat from the FAC's allegations underscores the implausibility of their original claims.

### 2. Nearly Identical Claims Against a Sleep-Tracking Device Have Been Dismissed by a Court in This District

Plaintiffs' Opposition also omits mention of Judge Orrick's dismissal with prejudice of virtually identical claims against another manufacturer of sleep-tracking devices that use an accelerometer.  In *Frenzel II*, Judge Orrick examined allegations that defendant Jawbone misrepresented that its Jawbone UP tracker "would accurately 'track' and 'measure' a user's movement, sleep patterns, and calorie intake."  *Frenzel II*, 2015 WL 4110811, at *10.  In doing so, he made two findings that are directly on point here.

First, Judge Orrick found that plaintiff—just as Plaintiffs here have pled—relied only on representations on the product box in making his purchase, none of which used the word

(Footnote continued from previous page.)

piezoelectric accelerometer" to identify three-dimensional movement and that Fitbit's device "is also an accelerometer."  (ECF No. 34-4, Ex. I at 914.)

FITBIT'S REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT
Case No. 3:15-cv-2077-JD
sf-3586117

3

"accurately." *Id.* (*Cf.* FAC ¶¶ 36-44.) Instead, the product packaging included the statements "[t]rack your daily activity food and sleep" and "[t]rack how you sleep, move, and eat." *Frenzel II*, 2015 WL 4110811, at *12 (*Cf.* FAC Ex. B (Fitbit's packaging states "Track your day" and "Track your night").) Judge Orrick concluded that the plaintiff could not bring CLRA, UCL, and FAL claims based on the allegation that Jawbone misrepresented the accuracy of its tracking functions. *Frenzel II*, 2015 WL 4110811, at *12. The same reasoning applies here.

Second, Judge Orrick dismissed the "functionality theory" raised by the plaintiff for the first time in his opposition brief, exactly as the Plaintiffs do here. *Id.* In his opposition, the *Frenzel* plaintiff "reframe[d] the theory as a claim that 'as soon as [a Jawbone UP] comes out of the box,' it 'cannot and does not function as advertised' in that it does not perform the promised tracking and measuring functions." *Id.* Judge Orrick dismissed this theory because the original allegations complained about the accuracy of tracking, never alleging that the device failed to record sleep patterns at all. *Id.*

Judge Orrick reiterated that courts in this district have routinely held that general statements about a product's functionality—as opposed to statements regarding the product's quality or reliability—do not become actionable on an affirmative misrepresentation theory merely because the product fails to work perfectly. *Id.*; *see also In re MyFord Touch Consumer Litig.*, 46 F. Supp. 3d 936, 954-55 (N.D. Cal. 2014) (finding no deception where statements about vehicle's navigation and entertainment system features contained no representations about quality or reliability of performance); *In re iPhone 4S Consumer Litig.*, No. C 12-1127 CW, 2014 WL 589388 at *6-*7, (N.D. Cal. Feb. 14, 2014) (rejecting misrepresentation claim regarding iPhone's Siri feature due to lack of "any specific statement by Apple that expressly indicates that Siri would be able to answer every question, or do so consistently"); *Berenblat v. Apple, Inc.*, No. 08-04969 JF (PVT), 2009 WL 2591366, at *6 (N.D. Cal. Aug. 21, 2009) (dismissing CLRA claims based on laptop's allegedly defective memory slot where "[t]he complaint does not allege that [defendant] made any specific representation" with respect to the durability or reliability of the memory slot).

Plaintiffs never mention *Frenzel II* or these cases. Instead, they offer head-scratching

analogies to shoe-measuring devices that masquerade as scales, toy lawn mowers used to mow real lawns (Opp'n 2:15-27), and probiotic nutritional supplements (*id.* 4:5-16). These are empty distractions. This case is about the actual statements Fitbit made and whether they are misleading. They are not. Fitbit's statements are indistinguishable from those that Judge Orrick found non-actionable in *Frenzel II*. Just as in *Frenzel II*, Plaintiffs' claims should be dismissed with prejudice.

### 3. Fitbit's General Product Statements Are Puffery

In its Opening Memorandum, Fitbit showed that its general statements about product functions and features are non-actionable puffery. (Mem. 9:11-10:28.) Nothing in the Opposition Memorandum detracts from this conclusion.

Plaintiffs' response to this argument is simply to reassert that Fitbit's "sleep-tracking device is not functional." (Opp'n 3:17.) On this basis, they attempt to distinguish applicable case law. (*Id.* 3:5-16 (citing *In re All Terrain Vehicle Litig.*, 771 F. Supp. 1057, 1060 (C.D. Cal. 1991), and *Stearns v. Select Comfort Retail Corp.*, No. 08-2746 JF, 2009 WL 1635931, at *11 (N.D. Cal. June 5, 2009).) According to Plaintiffs, the statements at issue in these similar cases were puffery because the products "still could perform the essential function for which they were bought." (*Id.* 3:14-16.) Fitbit's products, they claim, do not. (*Id.* 3:17.) As discussed above, this argument is not only improperly raised in their Opposition, but also unequivocally precluded by the FAC and the Montgomery-Downs Paper. Fitbit's devices do track sleep and even offer advantages over the more expensive laboratory PSG equipment.

Plaintiffs further assert that statements on the packaging that Fitbit's activity trackers track "hours slept," "times woken up," and "sleep quality" are not mere puffery. (Opp'n 5:2-3.) Once more, this Court need look no further than Judge Orrick's orders in the *Frenzel* sleep tracker case to dismiss these claims. Judge Orrick held that statements that the activity tracker helps users "understand your sleep and wake up refreshed" constitute "the sort of vague statements about general functionality that are not actionable under California's consumer protection statutes." *Frenzel I*, 76 F. Supp. 3d at 1011.

Nor do Fitbit's statements constitute "specific factual assertions" that, according to

FITBIT'S REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT
Case No. 3:15-cv-2077-JD
sf-3586117

5

Plaintiffs, warrant discovery. (Opp'n 5:8-9.) The Ninth Circuit used the following example to illustrate the distinction between the type of general statement that constitutes puffery and an objective, quantifiable representation: an advertiser's statement that its lamps were "far brighter than any lamp ever before offered for home movies" was puffery; however, when the advertiser specifically quantified the alleged superior brightness with statements such as "35,000 candle power and 10-hour life," the statement could be actionable. *Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv. Inc.*, 911 F.2d 242, 246 (9th Cir. 1990) (citation omitted). Following this reasoning, courts have routinely held that general statements about product features constitute non-actionable puffery. *See, e.g.*, *Oestreicher v. Alienware Corp.*, 544 F. Supp. 2d 964, 973-74 (N.D. Cal. 2008) (finding that manufacturer claims of "higher performance," "longer battery life," "richer multimedia experience." and "faster access to data" were all non-actionable puffery); *Vitt v. Apple Computer, Inc.*, 469 F. App'x 605, 607 (9th Cir. 2012) (finding claims that a product was "mobile," "durable," "portable," "rugged," "built to withstand reasonable shock," "reliable," "high performance," "high value," an "affordable choice," and an "ideal student laptop" to be puffery); *Long v. Hewlett-Packard Co.*, No. C 06-02816 JW, 2007 WL 2994812, at *7 (N.D. Cal. July 27, 2007) *aff'd*, 316 F. App'x 585 (9th Cir. 2009) (finding claims that the product is a "reliable mobile computing solution" and allows the user to "do more on the move" to be puffery); *Summit Tech. v. High-Line Med. Instruments*, 933 F. Supp. 918, 931 (C.D. Cal. 1996) (finding "reliable" and "perfectly reliable" non-actionable).

Here, Fitbit made no representation that its sleep-tracking function would meet any specific, quantifiable standard such as the "35,000 candle power and 10-hour life" example cited by the Ninth Circuit. *See Cook, Perkiss & Liehe*, 911 F.2d at 246. Instead, Fitbit's packaging merely states that it can help users "Track Your Day" and "Track Your Night." (FAC Ex. B.) These general statements would not mislead a reasonable consumer to believe that a Fitbit device can provide sleep measurements with scientific accuracy.

### 4.    Fitbit's Flex Tracks Sleep

Plaintiff Brickman's Fitbit Flex tracker relies on user input to track sleep because the user must "tell" the Flex to enter sleep or wake mode by tapping it "rapidly for one or two seconds" or

else manually enter the time he slept. (*See* ECF No. 34-4, Ex. J at 11.) In its Opening Memorandum, Fitbit explained that a reasonable consumer would not expect the Fitbit Flex to track "to the minute, the amount they sleep and the quality and efficiency, to an exact percentage point, of that sleep" when the user is responsible for activating the sleep mode, as alleged in the FAC. (Mem. 11:17-12:3 (quoting FAC ¶ 75.)) On this point, too, Plaintiffs have discarded their allegations that Fitbit misrepresented the accuracy of its sleep-tracking function. Instead, Plaintiffs assert that because Flex employs user input to bookend the sleep period, it "couldn't possibly work" and is "worthless." (Opp'n 8:20, 8:1.) This change of position does not rescue Plaintiffs' claims.

The Montgomery-Downs Paper explains that, like actigraphy, the Fitbit system relies on movement and absence of movement to infer sleep and wake periods. (ECF No. 34-4, Ex. I at 916.) The study further explains that, like actigraphy, Fitbit's tracker uses an accelerometer and a sophisticated mathematical algorithm to measure activity over multiple time segments and to calculate sleeping and waking thresholds. (*Id*. at 914.) Plaintiffs admit that accelerometer-based actigraphy method "is a scientifically accepted technology." (FAC ¶ 20.) Like the actigraphy, the Fitbit Flex tracks how much the user is moving in both in sleep and wake modes, and records whether the user's designated "sleep" time has been restful or restless with tossing and turning. The user only designates the start and end of the "sleep" period.

Therefore, Plaintiffs' contention that the Fitbit Flex "could never actually do what it claims" (Opp'n 8:21) is baseless in view of the very allegations made by Plaintiffs in their FAC.

### 5.    There Is No Standard Criteria for Comparing Sleep Tracking Devices to PSG Studies

Fitbit showed in its Opening Memorandum that Plaintiffs have no basis for challenging accuracy claims in light of the fact that "the sleep field has not established standard criteria for agreement between PSG and new technologies." (Mem. 11:1-4 (quoting ECF No. 34-4, Ex. I at 917).) This is due in part to the "laboratory first-night effect" of PSG, where sleep is disturbed by the novel environment and intrusive PSG instrumentation. (ECF No. 34-4, Ex. I at 914, 917.) Thus, the comparison between PSG and Fitbit tracking methods suffers from methodological

flaws that have not yet been addressed in scientific studies.

Plaintiffs respond that "Fitbit's device tracks movement, not sleep, so whatever standard is eventually developed will not apply to the Fitbit device." (Opp'n 7:19-21.) Again, the Montgomery-Downs Paper establishes that Fitbit's activity trackers do track sleep using the same methodology as the validated actigraphy method. Moreover, as a matter of law, there cannot be a claim for consumer deception where there is no standard for accuracy of sleep tracking devices and where Fitbit made no representations about the accuracy of its sleep tracking function.

Plaintiffs' Opposition relies almost entirely on the new theory that Fitbit's devices cannot track sleep. Plaintiffs' failure to defend their original allegations is a tacit admission that those allegations were implausible. Nor can their new theory stand in the face of the directly contradictory allegations in their FAC. Because they lack any plausible basis for claims of deception, Plaintiffs' UCL, FAL, CLRA, FDUTPA, fraud, negligent misrepresentation, and unjust enrichment claims should be dismissed.

### B.   Plaintiffs' Fraud-Based Claims Lack Specific and Actionable Allegations of Fraud

In its Opening Memorandum, Fitbit showed that Plaintiffs' UCL, FAL, CLRA, FDUTPA, and fraud causes of action fail to meet the heightened pleading standard of Rule 9(b) because Plaintiffs have not alleged that they relied on any claims of "accuracy." (Mem. 12:5-12:28.) Plaintiffs have abandoned their theory that Fitbit misrepresented the accuracy of its devices. Instead they try to pin their fraud claim on the notion that "Fitbit represented that its sleep-tracking device could track sleep, when in fact, it can only track movement." (Opp'n 9:19-20.)

Neither the Plaintiffs' FAC nor the Opposition contains any specific allegations of the "circumstances indicating falseness" necessary to satisfy the heightened pleading standard. *Frenzel II*, 2015 WL 4110811, at *5 (citing *In re GlenFed, Inc. Sec. Litig.*, 42 F.3d 1541, 1547-48 (9th Cir. 1994)). Plaintiffs' FAC alleged only that "[d]efendant's representations that Plaintiff Brickman would receive a working and functional sleep-tracking feature were false" and "[t]he product Plaintiff Brickman [and Plaintiff Mallick] purchased did not perform as advertised." (FAC ¶¶ 37, 45.) These statements are nothing more than unsupported conclusions. Plaintiffs do

not allege how their personal Fitbit activity trackers failed to perform as advertised. Plaintiffs' original fraud claim theory hinges on the accuracy of Fitbit trackers and does not survive the simple fact that Fitbit made no representations of accuracy.

Plaintiffs' new theory is equally conclusory and unsupported by any factual allegations. Even worse, the factual allegations Plaintiffs made in the FAC demonstrate that this new theory is wrong. Plaintiffs claim that the Fitbit devices do not track sleep for the sole reason that the devices employ accelerometer technology. (Opp'n 9:5-6; FAC ¶ 21.) Yet the Montgomery-Downs Paper established and Plaintiffs have acknowledged that accelerator-based actigraphy is recognized as a valid method of tracking sleep. (ECF No. 34-4, Ex. I at 916; FAC ¶ 20.) Even if Plaintiffs had properly pled their new theory, they have not and cannot plead facts with sufficient particularity to support their fraud-based claims, and the Court should not accept Plaintiffs' conclusory allegations and conclusions of law. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Plaintiffs' UCL, FAL, CLRA, FUDTPA, and fraud claims should be dismissed.

### C.   Plaintiffs' Warranty Claims Fail

#### 1.   There Is No Actual Defect

In its Opening Memorandum, Fitbit showed that to establish a breach of implied warranty of merchantability, Plaintiffs must allege a "fundamental defect that renders the product unfit for its ordinary purpose." (Mem. 14:7-16 (citing *Tietsworth v. Sears, Roebuck and Co.*, 720 F. Supp. 2d 1123, 1142 (N.D. Cal. 2010).) Plaintiffs again respond that Fitbit trackers "can't actually track sleep." (Opp'n 6:18-19.) As discussed above, this claim is not plausible in light of the Montgomery-Downs Paper.

Plaintiffs analogize Fitbit's sleep-tracking function to a mobile phone "with an advertised internet connection function for which the customer was charged and paid an additional $30, yet the product could not actually connect to the internet and could only place phone calls." (Opp'n 7:14-16.) The analogy falls flat because the Montgomery-Downs Paper establishes that Fitbit's devices do track sleep. Further, a court in this district *had* Plaintiffs' hypothetical phone case—and dismissed breach of implied warranty claims against the phone manufacturer because the plaintiff did not plead any "actual defects of the phone." *McKinney v. Google, Inc.*, No. 5:10-

CV-01177 EJD (PSG), 2011 WL 3862120, at *3 (N.D. Cal. Aug. 30, 2011) (dismissing warranty claim regarding a phone that offered a 3G wireless connection yet did not deliver consistent 3G performance).  Here, Plaintiffs have similarly failed to plead any actual defect of the Fitbit activity tracker.  The new allegations in their Opposition cannot remedy this deficiency.  Accordingly, Plaintiffs' breach of implied warranty of merchantability claim should be dismissed.

### 2. Plaintiffs Do Not Plead a Particular Purpose

As established in Fitbit's Opening Memorandum, Plaintiffs' claim for breach of implied warranty of fitness for a particular purpose is deficient because it fails to plead a "particular purpose" that differs from "the ordinary purpose for which the goods are used."  (Mem. 14:25-15:14 (citing *Smith v. LG Elecs. U.S.A., Inc.*, No. C 13-4361 PJH, 2014 WL 989742, at *7 (N.D. Cal. Mar. 11, 2014).)

Plaintiffs offer no response to Fitbit's argument that sleep tracking is an ordinary purpose of the Fitbit trackers.  Their silence is a tacit admission that they used their Fitbit trackers for their ordinary purpose.  Plaintiffs' claim for breach of implied warranty of fitness for a particular purpose should be dismissed.

### 3. Plaintiffs' Magnuson-Moss Warranty Act Claim Also Fails

In its Opening Memorandum at, Fitbit further established that Plaintiffs' Magnuson-Moss Warranty Act ("MMWA") claims will "stand or fall with his express and implied warranty claims under state law."  (Mem. 15:16-23 (quoting *Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1022 (9th Cir. 2008).)  Because Plaintiffs have failed to state a claim for breach of warranty under state law, their MMWA claim should be dismissed as well.

### III. CONCLUSION

Plaintiffs failed to defend their original allegations regarding accuracy, and the Montgomery-Downs Paper impeaches their new functionality allegations.  Accordingly, Fitbit respectfully asks the Court to dismiss Plaintiffs' FAC in its entirety, without leave to amend.

Dated: October 20, 2015                    MORRISON & FOERSTER LLP


                                    By:  s/Erin M. Bosman
                                         Erin M. Bosman

                                         Attorneys for Defendant
                                         FITBIT, INC.