Patrick J. Perotti (Ohio Bar No. 0005481)
Frank A. Bartela (Ohio Bar No. 0088128)
DWORKEN & BERNSTEIN CO., L.P.A.
60 South Park Place
Painesville, Ohio 44077
Telephone: (440) 352-3391
Facsimile: (440) 352-3469
Email: pperotti@dworkenlaw.com
        fbartela@dworkenlaw.com

John A. Kithas (California Bar No. 64284)
Christopher Land (California Bar No. 238261)
LAW OFFICES OF JOHN A. KITHAS
One Embarcadero Center, Suite 1020
San Francisco, CA 94111
Telephone: (415) 788-8100
Facsimile: (415) 788-8001
Email: john@kithas.com
        chris@kithas.com

Christopher J. Morosoff, Esq. (SBN 200465)
LAW OFFICE OF CHRISTOPHER J. MOROSOFF
77-760 Country Club Drive, Suite G
Palm Desert, California 92211
Telephone: (760) 469-5986
Facsimile: (760) 345-1581
Email: cjmorosoff@morosofflaw.com

Attorneys for Plaintiffs

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMES P. BRICKMAN, individually and as a representative of all others similarly situated, <br><br> and <br><br> Margaret Clingman, individually and as a representative of all others similarly situated, 527 Sandpiper Circle, Lodi California, 95240 <br><br> Plaintiffs, <br><br> v. <br><br> FITBIT, INC., <br><br> Defendant. | Case No. 3:15-cv-02077-JD <br><br> FOURTH AMENDED COMPLAINT CLASS ACTION <br><br> DEMAND FOR JURY TRIAL |

Now come Plaintiffs James P. Brickman and Margaret Clingman, individually and as representatives of all others similarly situated, and for this Fourth Amended Class Action Complaint state:

## <u>INTRODUCTION</u>

1. This is a class action brought by James P. Brickman and Margaret Clingman ("Plaintiffs"), individually and as putative class representatives, against Fitbit, Inc. ("Defendant" and/or "Fitbit").

2. Defendant sells wearable, wireless-enabled devices that purportedly track exercise and other fitness and physical activity to measure data such as the number of steps walked, calories burned, and other similar personal metrics.

3. This lawsuit does not challenge any of those functions. Recently however, Defendant has made specific advertisement claims that for an extra charge, the customer can purchase a device which also contains a "sleep-tracking" function which will track "hours slept," "times woken up," and "sleep quality."

4. In fact, the sleep-tracking function does not and cannot do these things because the Fitbit devices can only measure movement and not sleep.

5. These devices do not perform as advertised.

6. Defendant represents a material fact: that these devices track sleep.

7. That material representation is false.

8. The device does not, and cannot, track sleep.

9. The Fitbit devices do not record anything other than movement, while Polysomnography, the accepted scientific standard for sleep tracking, accurately tracks sleep by monitoring many body functions during sleep including brain waves, eye movements, muscle activity, heart rhythm, and more, to diagnose and/or rule out sleep disorders.

10. Further, customer reviews reiterate the fact that the sleep tracking function does not work.[1]

11. A doctor with the London Sleep Center reiterated that Fitbit's representation of ability to measure sleep is false. Devices such as Fitbit's are "not measuring sleep, simply motion – not muscle tone, brain waives, heart rate or eye movement. You cannot infer quality of sleep from motion and tell what is crucial REM [rapid eye movement] sleep and what is not." See *Sleep sensors: Waking up to the need to study our night's rest*, THE GUARDIAN, Aug. 22, 2014 *available at* (http://www.theguardian.com/lifeandstyle/2014/aug/22/sleep-trackers-to-boost-health-fitness) (last visited Nov. 24, 2015) (quoting Dr. Irshaad Ebrahim).

12. Similarly, Plaintiff Brickman personally avers that the representation of the Fitbit device's ability to track sleep is false.  Plaintiff Brickman wore the device after his purchase to track his daily activity as well as his sleep. After a short period of wearing the device, it became obvious to Plaintiff Brickman that the device only tracked his motion and did not actually track the hours he slept, the times he awoke during sleep, or the quality of his sleep.

13. Plaintiff Clingman similarly avers that the representation of the Fitbit device's ability to track sleep is false.  Clingman wore the device after her purchase to track her daily activity as well as her sleep. After a short period of wearing the device, it became obvious to Plaintiff Clingman that the device only tracked her motion and did not actually track the hours she slept, the times she awoke during sleep, or the quality of her sleep.

14. Thus, consumers who purchase these products and pay the extra amount for the function being factually represented by Defendant as able to track sleep are being lied-to, and do not receive the function for which they paid.

---

[1] A significant amount of anecdotal evidence from consumers as well as sleep-scientists criticizes the Fitbit devices' sleep-tracking function as not tracking sleep. See http://www.theguardian.com/lifeandstyle/2014/aug/22/sleep-trackers-to-boost-health-fitness (last visited October 28, 2014); http://www.livescience.com/42710-fitness-trackers-sleep-monitoring-accuracy.html (last visited October 28, 2014); http://www.huffingtonpost.com/2014/01/22/fitness-trackers-sleep_n_4637328.html (last visited October 28, 2014); http://www.usatoday.com/story/news/nation/2013/03/24/sleep-tracking-devices/2007085/ (last visited October 28, 2014); http://techcrunch.com/2012/11/18/fitbit-one-review-slightly-flawed-but-still-a-great-way-to-quantify-yourself/ (last visited October 28, 2014); http://gizmodo.com/fitbit-force-review-a-health-tracker-youd-actually-ke-1454962288 (last visited October 28, 2014); http://gizmodo.com/5954563/fitbit-one-review-a-great-way-to-monitor-your-wretched-laziness (last visited October 28, 2014).

15. By advertising this sleep-tracking function falsely and without actually providing this function to its customers, Defendant is violating California and Florida law. This lawsuit is to stop this unlawful practice, force the Defendant to return and disgorge its inequitable profits, and recover for customers the overcharges which they paid.

**PARTIES**

16. Plaintiff James P. Brickman is an individual and resident of the State of Florida, County of Hernando, City of Spring Hill.

17. Plaintiff Margaret Clingman is an individual and resident of the State of California, County of San Joaquin, City of Lodi.

18. Defendant Fitbit, Inc. is a corporation organized under the laws of Delaware, headquartered in San Francisco, CA, and registered to do business with the Secretary of State of California.  Defendant operates its website and online store (www.fitbit.com) from California, through which Defendant sells its consumer fitness devices. Defendant also sells these devices at national brick-and-mortar retailer stores, including Apple stores, AT&T and Verizon stores, Best Buy, Brookstone, Dick's Sporting Goods, RadioShack, REI, Target, and more (see http://www.fitbit.com/where-to-buy).

**JURISDICTION & VENUE**

19. Defendant is a citizen of the State of California.

20. Plaintiff Clingman is a citizen of the State of California

21. Plaintiff Brickman is a citizen of the State of Florida.

22. This is a putative class action which involves more than 100 class members and more than $5,000,000.00 in controversy.

23. This Court has jurisdiction over the present matter pursuant to 28 U.S.C. §1332 et seq.

24. Venue is proper in this Court pursuant to 28 U.S.C. §1391(b)(1) because Defendant has its headquarters in this District.

9b.     Intradistrict Assignment: Assignment to the San Francisco Division is proper because a substantial part of the events or omissions which give rise to the claim occurred in this county.

---

## INTRODUCTION AND FACTS OF MISREPRESENTATION

25. Plaintiffs reallege and incorporate herein all previous paragraphs of this Complaint.

26. Defendant markets and sells to consumers, directly and through large retail stores in California and Florida, distinctly branded personal fitness-tracking devices. These are called the Fitbit Force, Fitbit Flex, Fitbit One, Fitbit Zip, and Fitbit Ultra; as well as Fitbit's second-generation products, the Fitbit Charge, Fitbit Charge HR, and Fitbit Surge.

27. The basic model of the devices, the Fitbit Zip, does not have the 'sleep-tracking function' and the price for this base-model device does not reflect any extra charge for that function.

28. In contrast, the non-Zip Fitbit devices –  the Fitbit Force, Fitbit Flex, Fitbit One, Fitbit Ultra, Fitbit Charge, Fitbit Charge HR, and Fitbit Surge (herein "Fitbit devices") – charge at least an additional $30 for the 'sleep tracker' function which is not available on the Fitbit Zip. The Fitbit Force, Fitbit Flex, Fitbit One, Fitbit Ultra, Fitbit Charge, Fitbit Charge HR, and Fitbit Surge all represent factually that they specifically track "hours slept," "times woken up", and the "quality of sleep" of the individual wearing the device. These claims are on the actual physical packaging of the device itself.

29. Fitbit claims that these sleep-tracking devices will "measure your sleep quality. Once the data syncs, graphs on your (device) dashboard will reveal how long you slept and the number of times you woke up, giving you a 'sleep quality score.'"

30. The Fitbit devices' packaging includes factual representations in the form of pictures and examples of the "dashboard" which is used by individuals after they purchase the Fitbit device. The pictures and examples of the dashboard demonstrate that the Fitbit is advertised as specifically tracking the amount of time an individual wearing such device sleeps, the times an individual awakens, and the quality of the individual's sleep.



**TRACK YOUR DAY**

Steps
Distance

Calories burned
Active minutes

**TRACK YOUR NIGHT**

Hours slept
Times woken up

Sleep quality
Silent vibrating
alarm

**SET A GOAL & GET MOVING**

LED lights show you how your day is
stacking up against your goal.

Lights indicate
progress to goal

# SYNC YOUR STATS REAL-TIME

## Automatically syncs wirelessly to
## select smartphones & computers.



31. The images of the "dashboard" on the packaging depict specific numbers presented to the consumer as exact times.

32. However, the Fitbit sleep-tracking technology cannot and does not perform these functions as represented.

<u>Measurement of Sleep versus Measurement of Movement</u>

33. Polysomnography is a scientifically accepted form of sleep-monitoring technology. In polysomnography, a patient is hooked up to electrodes which report information back to a technician or doctor who, in real time, monitors the scientific equipment. This method accurately monitors many body functions during sleep, including brain waves, eye movements, muscle activity, heart rhythm, and more, to diagnose and/or rule out sleep disorders.

34. The Fitbit devices do not record any of those functions, and only uses an accelerometer (a "3-axis accelerometer" according to the device specs). But, that only tracks a wearer's movement, not sleep and as indicated above by scientists in this field, tracking movement is "not measuring sleep, simply motion."

35. Fitbit's packaging affirmatively represents to consumers that Fitbit's "sleep-tracking" function will track "hours slept," "times woken up," and "sleep quality," but movement is not sleep.

36. Fitbit does not tell consumers that the device cannot actually track an individual's sleep length, number of times an individual wakes up, or the quality of an individual's sleep. Despite Fitbit's specific representations that the Fitbit sleep-tracking function can and does track and provide precise and accurate numbers, down to the minute, of how much sleep a user gets, the Fitbit sleep-tracking function simply does not and cannot accurately provide these numbers.

37. Fitbit goes beyond even those exact, mathematical misrepresentations and further represents to consumers that the sleep-tracking function can take those numbers and determine the quality of the consumer's sleep.

38. Facts exist to allow a reasonable fact finder to conclude that the Fitbit misrepresents to customers what the device will do, and that the devices cannot track sleep and rather only movement:

a. Dr. Irshaad Ebrahim, of the London Sleep Center, noted that devices such as Fitbit's are "not measuring sleep, simply motion – not muscle tone, brain waives, heart rate or eye movement. You cannot infer quality of sleep from motion and tell what is crucial REM [rapid eye movement] sleep and what is not." See *Sleep sensors: Waking up to the need to study our night's rest*, THE GAURDIAN, Aug. 22, 2014 *available at* http://www.theguardian.com/lifeandstyle/2014/aug/22/sleep-trackers-to-boost-health-fitness (last visited Nov. 24, 2015).

b. A tested Fitbit device with the sleep tracking function never provided reviewer with informative sleep tracking data. *Fitbit One Review: Slightly Flawed, But Still A Great Way to Quantify Yourself*, TECH CRUNCH, Nov. 18, 2012 available at http://techcrunch.com/2012/11/18/fitbit-one-review-slightly-flawed-but-still-a-great-way-to-quanitfy-yourself (last visited Nov. 24, 2015).

c. The Fitbit device does not measure sleep and only "guesses" the amount of time that a user sleeps. *Fitbit One Review: A great way to monitor your wretched laziness*, GIZMODO, Oct. 24, 2012 *available at* http://gizmodo.com/5954563/fitbit-one-review-a-great-way-to-monitor-your-wretched-laziness (last visited Nov. 24, 2015).

39. Fitbit has misrepresented the ability of the Fitbit sleep-tracking function to perform as advertised. Defendant has also failed to disclose and/or has concealed material facts from consumers, namely, the limitations of the sleep-tracking function of these devices.

40. Reasonable consumers are likely to be deceived by Defendant's representations, because they represent that the device would track sleep, customers paid extra for that function, but the device does not track sleep.

41. Moreover, Plaintiffs and the putative class members have been harmed in that they paid extra for this sleep-tracking function, which was promised to them by Defendant through advertising, packaging, and other public and direct representations, but have not received the function for which they have paid.

**PLAINTIFF BRICKMAN'S PURCHASE**

42. Plaintiff realleges and incorporates herein all previous paragraphs of this Complaint.

43. On or about November 29, 2013, Plaintiff Brickman purchased a Fitbit Flex device, which includes the sleep-tracking function challenged in this action.

44.  Plaintiff Brickman purchased said device for $99.00, which Defendant had represented through advertising, especially on the packaging of the device itself, and other public and direct representations, to include a sleep-tracking function as described above.

45. Plaintiff Brickman's receipt is attached hereto as Exhibit A and incorporated herein.

46. Images of the packaging for Plaintiff Brickman's purchased Fitbit Flex are attached hereto as Exhibit B and incorporated herein.

47. Plaintiff Brickman encountered and relied on Defendant's representations as to the Fitbit Flex's sleep-tracking function, as described above, including, but not limited to, Defendant's representations through advertising, especially on the packaging of the device he purchased, and other public and direct representations including that the device would track his "hours slept," "times woken up," and/or his "sleep quality." See ¶¶ 10 – 15, above.

48. Plaintiff Brickman began wearing the device after his purchase to track his daily activity as well as his sleep.

49. After a short period of wearing the device, it became obvious to Plaintiff Brickman that the device only tracked his motion and did not actually track the hours he slept, the times he awoke during sleep, or the quality of his sleep.

50. Defendant's representations that Plaintiff Brickman would receive a working and functional sleep-tracking feature were false. The product Plaintiff Brickman purchased did not perform as advertised.

51. Defendant's representations as to the Fitbit Flex's sleep-tracking function, as described above, played a substantial role in Plaintiff Brickman's decision to purchase the Fitbit Flex, and Plaintiff would not have purchased the Fitbit Flex in the absence of Defendant's misrepresentations.

### PLAINTIFF CLINGMAN'S PURCHASE

52. Plaintiffs reallege and reincorporate herein all previous paragraphs of this Complaint.

53. In or around June of 2014, Plaintiff Clingman purchased a Fitbit Flex which includes the sleep tracking function challenged in this action.

54. Plaintiff Clingman purchased said device for approximately $120, which Defendant had represented through advertising, especially on the packaging of the device itself, and other public and direct representations, to include a sleep-tracking function as described above.

55. Plaintiff Clingman began using the device and signed up for a Fitbit account in June of 2014. A screenshot of the date that Plaintiff Clingman activated her Fitbit account is attached hereto as Exhibit C and incorporated herein.

56. Plaintiff Clingman encountered and relied on Defendant's representations as to the Fitbit Flex's sleep-tracking function, as described above, including, but not limited to, Defendant's representations through advertising, especially on the packaging of the device she purchased, and other public and direct representations. See ¶¶ 10 – 15, above.

57. Defendant's representations that Plaintiff Clingman would receive a working and functional sleep-tracking feature were false. The product Plaintiff Clingman purchased did not perform as advertised.

58. Defendant's representations as to the Fitbit Flex's sleep-tracking function, as described above, played a substantial role in Plaintiff Clingman's decision to purchase the Fitbit Flex, and Plaintiff would not have purchased the Fitbit Flex in the absence of Defendant's misrepresentations.

## CLASS ALLEGATIONS

59. Plaintiffs reallege and incorporate herein all previous paragraphs of this Complaint.

60.    Plaintiff Clingman brings this action on behalf of herself and all other similarly situated persons (hereinafter referred to as "California class members"), to wit:

> All California residents who have purchased and registered online with Fitbit a Fitbit Force, a Fitbit Flex, a Fitbit One, a Fitbit Ultra, a Fitbit Charge, a Fitbit Charge HR, and/or a Fitbit Surge, in the State of California, before October 27, 2014 and within the applicable statute of limitations.

61.    Plaintiff Brickman brings this action on behalf of himself and all other similarly situated persons (hereinafter referred to as "Florida class members"), to wit:

> All Florida residents who have purchased and registered online with Fitbit a Fitbit Force, a Fitbit Flex, a Fitbit One, a Fitbit Ultra, a Fitbit Charge, a

Fitbit Charge HR, and/or a Fitbit Surge, in the State of Florida, before October 27, 2014 and within the applicable statute of limitations.

62.     The classes number over one-hundred (100) persons and are so numerous that joinder of all members is impracticable, and it is further impracticable to bring all such persons before this Court.

63.     The injuries and damages to these class members present questions of law and fact that are common to each class member, and that are common to the class as a whole.

64.     Defendant has engaged in the same conduct regarding all of the other members of the Florida and California classes.

65.     The claims, defenses, and injuries of the representative Plaintiffs are typical of the claims, defenses, and injuries of all those in the Florida and California classes that they respectively represent, and the claims, defenses, and injuries of each class member are typical of those of all other members in the respective classes.

66.     The representative Plaintiffs will fully and adequately protect and represent the entire Florida and California classes, and all of each classes' putative class members.

67.     The identity of all members of each respective class cannot be determined at this time, but will be so determined at a later time upon obtaining discovery from Defendant and others.

68.     The prosecution of separate actions by each member of the Florida and California classes would create a substantial risk of inconsistent or varying adjudications with regard to individual members of each respective class that would establish incompatible standards of conduct for Defendant.

69.     The prosecution of separate actions would also create a substantial risk of adjudication with respect to individual members of each respective class which, as a practical matter, would be dispositive of the interest of other members not parties to the adjudication, thereby substantially impairing and impeding their ability to protect these interests.  Further, the maintenance of this suit as a class action is the superior means of disposing of the common questions which predominate herein.

## **FIRST CLAIM FOR RELIEF**

**California's Unfair Competition Law**
**Bus & Prof. Code, § 17200 *et seq*.**
**California Class**

70.     Plaintiff Clingman realleges and incorporates herein all previous paragraphs of this Complaint.

71.     At all times relevant hereto, Defendant's alleged actions constitute a business practice under California law.

72.     The California Unfair Competition Law ("UCL") defines unfair business competition to include "unlawful, unfair, or fraudulent" acts or practices, as well as any unfair, deceptive, untrue, or misleading advertising. Bus & Prof. Code, § 17200.

73.     The California Supreme Court has emphasized that the "[s]ubstantive right extended to the public by the UCL is the right to protection from fraud, deceit, a nd unlawful conduct, and the focus of the statute is on the defendant's conduct."

a.     "Unlawful" Prong of the UCL

74.     Plaintiff Clingman realleges and incorporates herein all previous paragraphs of this Complaint.

75.     A business act or practice is "unlawful" if it violates any established state or federal law.

76.     The Federal Trade Commission Act prohibits unfair methods of competition, and unfair or deceptive acts or practices in or affecting commerce, which includes, inter alia, false advertising. 15 U.S.C. § 41 et seq.; 15 U.S.C. § 52(a) & (b).

77.     Defendant has violated and continues to violate the "unlawful" prong of the UCL by violating the FTC Act's prohibition on false advertising and deceptive acts and practices when it represented to consumers that the sleep-tracking function of its Fitbit devices can and does make specific, mathematical measurements and calculations as to the amount and quality of the wearer's sleep, as stated above.

78.     As detailed in Plaintiffs' Second Claim for Relief, below, Cal. Bus. & Prof. § 17500 (California False Advertising Law aka "FAL") prohibits unfair, deceptive, untrue, or misleading advertising, including, but not limited to, making untrue or misleading statements in advertising.

79.     Defendant has violated and continues to violate the "unlawful" prong of the UCL by violating the FAL. See ¶¶ 87 – 91, below.

80.     Moreover, as detailed in Plaintiffs' Third Claim for Relief, below, Cal. Civ. Code §1770 (California Legal Remedies Act aka "CLRA") section (a)(5) prohibits a business from "representing that goods… have… characteristics,… uses,  [or] benefits… which they do not have"; Section (a)(7) prohibits a business from representing that its devices are "of a particular standard or quality, when they are of another"; and §1770(a)(9) prohibits a business from "advertising goods or services with intent not to sell them as advertised."

81.     Defendant has violated and continues to violate the "unlawful" prong of the UCL by violating the CLRA. See ¶¶ 92 – 97, below.

82.     As a direct and proximate result of Defendant's violations, Plaintiff Clingman and the California class members have suffered injury in fact in an amount to be established at trial. For instance, Defendant markets and sells the Fitbit Zip, which contains the same fundamental features of the other Fitbit devices EXCEPT the sleep-tracking function. The Fitbit devices with the sleep-tracking function are at least $30 more than the Fitbit device without the sleep-tracking function.

83.     Through its unlawful acts and practices, Defendant has obtained, and continues to unfairly obtain, money from members of the putative class. As such, Plaintiff Clingman requests that this Court restore this money to Plaintiff and all putative class members, to disgorge the profits Defendant has made on its sleep-tracking function, and to enjoin Defendant from continuing to violate the UCL as discussed herein.

    b.  "Unfair" Prong of the UCL

84.     Plaintiffs reallege and incorporate herein all previous paragraphs of this Complaint.

85.     A business act or practice is "unfair" if the reasons, justifications, and motives of the alleged wrongdoer are outweighed by the gravity of the harm to the alleged injured party.

86.     Defendant has violated and continues to violate the "unfair" prong of the UCL by falsely representing that the sleep-tracking function of its Fitbit devices can make specific, mathematical measurements and calculations as to the amount and quality of the wearer's sleep as stated above.

87.     These acts and practices are unfair because they are likely to cause consumers to falsely believe that Defendant is offering a function that will track, to the minute, the amount they sleep and the quality and efficiency, to an exact percentage point, of that sleep.

88.     The gravity of the harm to Plaintiff Clingman and the California class members outweighs any conceivable reasons, justifications, and/or motives of Defendant to overstate the Fitbit devices' sleep function capabilities (i.e. Defendant's profit motive).

89.     As a direct and proximate result of Defendant's violations, Plaintiff Clingman and the California class members have suffered injury in fact in an amount to be established at trial. For instance, Defendant markets and sells the Fitbit Zip, which contains the same fundamental features of the other Fitbit devices EXCEPT the sleep-tracking function. The Fitbit devices with the sleep-tracking function are at least $30 more than the Fitbit device without the sleep-tracking function.

90.     Through its unfair acts and practices, Defendant has obtained, and continues to unfairly obtain, money from members of the putative class. As such, Plaintiff requests that this court restore this money to Plaintiff and all putative class members, to disgorge the profits Defendant has made on its sleep-tracking function, and to enjoin Defendant from continuing to violate the UCL as discussed herein.

c.   "Fraudulent" Prong of the UCL

91.     Plaintiffs reallege and incorporate herein all previous paragraphs of this Complaint.

92.     A business act or practice is "fraudulent" under the UCL if it is likely to deceive members of the consuming public.

93.     Defendant's acts and practices of overstating the Fitbit sleep function's capabilities and misrepresenting that the function will track, to the minute, the amount a user sleeps and the

efficiency, to an exact percentage point, of that sleep have the likely effect of misleading consumers into believing, simply, that the function can do things it cannot. See ¶¶ 10 – 15.

94.     To reiterate, Defendant makes numerous very specific representations that the devices can and do track and provide precise and accurate numbers, down the minute, of how much sleep a user would get. The Fitbit sleep-tracking function simply does not and cannot accurately provide these numbers. See ¶¶ 10 – 15.

95.     What's more, Defendant goes beyond even those exact, mathematical representations, and represents to consumers that the sleep-tracking function can actually take those numbers that the function itself carefully worked out to determine, to an exact percentage, the quality of the consumer's sleep. See ¶¶ 10 – 15.

96.     The Fitbit sleep function cannot and does not do this.

97.     As a direct and proximate result of Defendant's violations, Plaintiff Clingman and the California class members have suffered injury in fact in an amount to be established at trial. For instance, Defendant markets and sells the Fitbit Zip, which contains the same fundamental features of the other Fitbit devices EXCEPT the sleep-tracking function. The Fitbit devices with the sleep-tracking function are at least $30 more than the Fitbit device without the sleep-tracking function.

98.     Through its fraudulent acts and practices, Defendant has obtained, and continues to unfairly obtain, money from members of the putative class. As such, Plaintiff requests that this court restore this money to Plaintiff and all putative class members, to disgorge the profits Defendant has made on its sleep-tracking function, and to enjoin Defendant from continuing to violate the UCL as discussed herein.

### SECOND CLAIM FOR RELIEF
**California False Advertising Law, Cal. Bus. & Prof. Code § 17500 et seq.**
**California Class**

99.     Plaintiffs reallege and incorporate herein all previous paragraphs of this Complaint.

100.    The California False Advertising Law (FAL) prohibits unfair, deceptive, untrue, or misleading advertising.

101.     Defendant's practice of overstating the Fitbit sleep function's capabilities and misrepresenting that the function will track, to the minute, the amount a user sleeps and the quality and efficiency of that sleep is an unfair, deceptive, and misleading advertising practice because it gives the false impression that the Fitbit sleep-tracking function can do things that it simply cannot do.

102.     As a direct and proximate result of Defendant's violations, Plaintiff Clingman and the California class members have suffered injury in fact in an amount to be established at trial. For instance, Defendant markets and sells the Fitbit Zip, which contains the same fundamental features of the other Fitbit devices EXCEPT the sleep-tracking function. The Fitbit devices with the sleep-tracking function are at least $30 more than the Fitbit device without the sleep-tracking function.

103.     Through its deceptive advertising practices, Defendant has obtained, and continues to unfairly obtain, money from members of the putative class. As such, Plaintiff requests that this court restore this money to Plaintiff Clingman and all California class members, to disgorge the profits Defendant has made on its sleep-tracking function, and to enjoin Defendant from continuing to violate the FAL as discussed herein.

### THIRD CLAIM FOR RELIEF
**Consumer Legal Remedies Act, Cal Civ. Code § 1750 et seq.**
**California Class**

104.     Plaintiff realleges and incorporates herein all previous paragraphs of this Complaint.

105.     At all relevant times hereto, including at all times during the transactions between Plaintiff Clingman and Defendant, and the consumer transactions between the California class members and Defendant, Plaintiff Clingman and each of the California class members were "consumers", and the transactions were "consumer transactions", within the meaning of the CLRA.

106.     In connection with the consumer transactions alleged herein, including the consumer transaction between Plaintiff Clingman and Defendant, and the consumer transactions between the putative class members and Defendant, Defendant's representations, acts, and/or practices regarding the Fitbit sleep-tracking function's purported abilities were unfair and deceptive, to wit:

    a.   Defendant made very specific representations that the Fitbit sleep function will precisely track, to the minute, the amount a user sleeps and the quality and efficiency, to an exact percentage point, of that sleep.

    b.   Defendant goes beyond even those exact, mathematical representations, though, and represents to consumers that the sleep-tracking function can actually take those numbers, the numbers that the function itself purportedly carefully works out, to determine the quality of the consumer's sleep.

    c.   Defendant specifically represents and provides to consumers exact numbers for "actual sleep time, X hrs X mins," "bed time XX:XX p.m.," "fell asleep in X minutes," "awakened X times," "sleep efficiency X%," "X minutes awake," "X restless minutes," and how many times the user was awake and/or restless over the course of the wearer's night of sleep.

107.   Defendant's deceptive representations were material to the consumer transaction between Plaintiff Clingman and Defendant, as well as the California class members and Defendant.

108.   As a result of the conduct described herein, Defendant has engaged in unfair and deceptive sales practices in violation of the CLRA, to wit:

    a.   Defendant, by advertising that the Fitbit sleep-tracking function could perform tasks that it in fact could not, was thus representing that its goods had characteristics, uses, and/or benefits that they did not have, which is a violation of CLRA §1770(a)(5);

    b.   Defendant, by advertising that the Fitbit sleep-tracking function could perform tasks that it in fact could not, and not being able to provide consumers with a product with a function that could perform as advertised, Defendant was thus representing that its devices were of a particular standard or quality, when they are of another, which is a violation of CLRA §1770(a)(7).

    c.   Defendant, by advertising that the Fitbit sleep-tracking function could perform tasks that it in fact could not, and not being able to provide consumers with a product with a function that could perform as advertised, Defendant was thus advertising goods or services with intent not to sell them as advertised, which is a violation of CLRA §1770(a)(9).

109.   As a direct and proximate result of Defendant's violations, Plaintiff Clingman and the California class members have suffered injury in fact in an amount to be established at trial.  For instance, Defendant markets and sells the Fitbit Zip, which contains the same fundamental features of the other Fitbit devices EXCEPT the sleep-tracking function. The Fitbit devices with the sleep-tracking function are at least $30 more than the Fitbit device without the sleep-tracking function.

---

**FOURTH CLAIM FOR RELIEF**
**Violation of the Magnuson-Moss Warranty Act,**
**15 U.S.C. § 2301, et. seq.**
**California Class**

110.    Plaintiffs reallege and incorporate herein all previous paragraphs of this Complaint.

111.    At all times relevant hereto, there was in full force and effect the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301, et seq. (the "MMWA").

112.    The Fitbit products are consumer products within the meaning of 15 U.S.C. § 2301(1).

113.    Plaintiff Clingman and the California class members are consumers as defined in 15 U.S.C. § 2301(3). They are consumers because they are persons entitled under applicable state law to enforce against the warrantor the obligations of its warranties.

114.    Defendant is a supplier and warrantor within the meaning of 15 U.S.C. § 2301(4) and (5).

115.    Pursuant to 15 U.S.C. § 2310(e), Plaintiff Clingman is entitled to bring this class action and is not required to give Defendant notice or an opportunity to cure until such time as the Court determines the representative capacity of Plaintiff pursuant to Rule 23 of the Federal Rules of Civil Procedure.

116.    In connection with its sale of the Fitbit products, Defendant gave an implied warranty as defined in 15 U.S.C. § 2301(7); namely, the implied warranty of merchantability. As a part of the implied warranty of merchantability, Defendant warranted that the sleep-tracking function of the Fitbit devices were fit for their ordinary purpose, would pass without objection in the trade as designed, manufactured and marketed, and were adequately contained, packaged and labeled. Cal. Civ. Code § 1790 et seq. (Song-Beverly Consumer Warranty Act); UCC 2-314.

117.    Defendant is liable to Plaintiff and the putative class members pursuant to 15 U.S.C. § 2310(d)(1), because it breached its implied warranty of merchantability.

118.   Defendant breached its implied warranty of merchantability to Plaintiff and putative class members because the sleep-tracking function of the Fitbit devices were not fit for the ordinary purposes for which they are used – accurately tracking the user's sleep.

119.   Defendant further breached its implied warranty of merchantability to Plaintiff and the putative class members because the Fitbit devices were not adequately contained, packaged, and labeled. The representations that accompanied the sleep-tracking function of the Fitbit devices did not adequately instruct Plaintiff or the putative class members on the proper use of the sleep-tracking function in light of the function's inability to accurately give exact, mathematical representations, as well as the sleep-tracking function's inability to take those supposedly precise numbers, the numbers that the function itself purportedly carefully works out, to determine, to an exact percentage, the quality and efficiency of the consumer's sleep.

120.   Pursuant to 15 U.S.C. § 2310(d)(1), Defendant caused Plaintiff and the putative class members foreseeable harm, to wit: the difference in value between the Fitbit devices as sold and the Fitbit devices as actually delivered – without a functioning sleep-tracking device (i.e. a partial refund of the purchase price of the Fitbit devices equal to the value of the sleep-tracking function each consumer should have received).

121.   In addition, pursuant to 15 U.S.C. § 2310(d)(2), Plaintiff and the putative class members are entitled to recover a sum equal to the aggregate amount of costs and expenses (including attorneys' fees based on actual time expended) determined by the Court to have been reasonably incurred by Plaintiff and the putative class members in connection with the commencement and prosecution of this action.

**FIFTH CLAIM FOR RELIEF**
**Breach of Implied Warranties**
**Common Law, UCC, and/or Cal. Civ. Code § 1790 et seq.**
**California Class**

122.   Plaintiffs reallege and incorporate herein all previous paragraphs of this Complaint.

123.    At all times relevant, Defendant was a "merchant" and/or a "manufacturer," and the Fitbit products were "consumer goods" "sold" at retail.

124.    At no relevant time did Defendant state, orally or in writing, "as is" or "with all faults" on the Fitbit products or the product packaging.

125.    Defendant made promises and affirmations of fact through its marketing campaign, as alleged above, including, but not limited to, representing that the product had a sleep-tracking function that would perform as advertised.

126.    This product advertising constitutes promises and assurances including, but not limited to, implied warranties of merchantability and fitness for a particular purpose.

127.    Defendant's advertising constitutes warranties, became part of the basis of the bargain, and is part of the contract between Plaintiff  and the putative members of the class on the one hand, and Defendant on the other.

128.     The affirmations of fact made by Defendant were made to induce Plaintiff Clingman and the California class members to purchase the products.

129.    Plaintiff Clingman and the California class members have relied on Defendant's affirmations of fact.

130.    All conditions precedent to Defendant's liability under the warranties have been performed by Plaintiff Clingman and the California class members or have been waived.

131.    Defendant breached the terms of the implied warranty of merchantability because the Fitbit products were not adequately packaged or labeled, nor did the promises or affirmations found on the packaging conform to the actual efficacy of the sleep-tracking function.

132.    Moreover, the Fitbit devices were designed for, inter alia, the particular purpose of tracking the consumer's sleep. As such, by failing to provide a sleep-tracking function that performs as represented, Defendant has breached its implied warranty that the product is fit for that purpose.

133.    As a direct and proximate result of Defendant's breach of warranties, Plaintiff Clingman and the California class members have been damaged in an amount to be established at trial. For instance, Defendant markets and sells the Fitbit Zip, which contains the same fundamental

features of the other Fitbit devices EXCEPT the sleep-tracking function. The Fitbit devices with the sleep-tracking function are at least $30 more than the Fitbit device without the sleep-tracking function.

**SIXTH CLAIM FOR RELIEF**
**Violation of Florida's Deceptive and Unfair Trade Practices Act**
**Fla. Stat. 501.201 et. seq.**
**Florida Class**

134.    Plaintiffs reallege and incorporate herein all previous paragraphs of this complaint.

135.    Plaintiff Brickman and the Florida class members are consumers as defined under the Florida Deceptive and Unfair Trade Practices Act, § 501.203(7).

136.    Under the Florida Deceptive and Unfair Trade Practices Act, a business act or practice is unlawful if it violates any established state or federal law.

137.    The Federal Trade Commission Act prohibits unfair methods of competition, and unfair or deceptive acts or practices in or affecting commerce, which includes that a seller or manufacturer should advertise that its product is warranted or contained a guarantee, if the seller and/or manufacturer intends to fully perform said guarantee. See 16 CFR § 239.5.

138.    Defendant has violated and continues to violate the FTC Act's prohibition on failing to fulfill advertised guarantees with respect to a product when it represented to consumers that the sleep-tracking function of its Fitbit devices can and does make specific, mathematical measurements and calculations as to the amount and quality of the wearer's sleep, as stated above, which it does not.

139.    As a direct and proximate result of Defendant's violations, Plaintiff Brickman and the Florida class members have suffered injury in fact in an amount to be established at trial. For instance, Defendant markets and sells the Fitbit Zip, which contains the same fundamental features of the other Fitbit devices except the sleep-tracking function. The Fitbit devices with the sleep-

tracking function are at least $30 more expensive than the devices without the sleep-tracking function.

140.    Through its unlawful acts and practices, Defendant has obtained, and continues to unfairly obtain, money from members of the putative class. As such, Plaintiff requests that this court restore this money to Plaintiff Brickman and all Florida class members, to disgorge the profits Defendant has made on the sleep-tracking function, and to enjoin Defendant from continuing to violate the Florida Deceptive and Unfair Trade Practices Act as discussed herein.

**SEVENTH CLAIM FOR RELIEF**
**Common Law Fraud**
**Florida and California Class**

141.    Plaintiffs reallege and incorporate herein all previous paragraphs of this Complaint.

142.    Defendant willfully, falsely, and knowingly misrepresented material facts relating to the character and quality of the sleep-tracking function, as stated above. These misrepresentations are contained in various media advertising and packaging disseminated or caused to be disseminated by Defendant, and such misrepresentations were reiterated and disseminated by officers, agents, representatives, servants, or employees of Defendant, acting within the scope of their authority, and employed by Defendant to merchandise and market Fitbit products.

143.    Defendant's misrepresentations were the type of misrepresentations that are material (i.e., the type of misrepresentations to which a reasonable person would attach importance and would be induced to act thereon in making purchase decisions).

144.    Defendant knew that the misrepresentations alleged herein were false at the time it made them and/or acted recklessly in making such misrepresentations.

145.    Defendant intended that Plaintiff and the putative class members rely on the misrepresentations alleged herein and purchase the Fitbit products containing a sleep-tracking function.

146.    Plaintiffs and the California and Florida class members reasonably and justifiably relied on Defendant's misrepresentations when purchasing the Fitbit products containing a sleep-

tracking function, were unaware of the existence of facts that Defendant suppressed and failed to disclose, and, had the facts been known, would not have purchased products and/or would not have purchased them at the prices at which they were offered.

147.    As a direct and proximate result of Defendant's fraudulent misrepresentations, Plaintiffs and the California and Florida class members have been damaged in an amount to be established at trial. For instance, Defendant markets and sells the Fitbit Zip, which contains the same fundamental features of the other Fitbit devices EXCEPT the sleep-tracking function. The Fitbit devices with the sleep-tracking function are at least $30 more than the Fitbit device without the sleep-tracking function.

148.    Moreover, in that, at all times herein mentioned, Defendant intended to cause or acted with reckless disregard of the probability of causing damage to Plaintiff and the putative class members, and because Defendant was guilty of oppressive, fraudulent, and/or malicious conduct, Plaintiff and the putative class members are entitled to an award of exemplary or punitive damages against Defendant in an amount adequate to deter such conduct in the future.

**EIGHTH CLAIM FOR RELIEF**
**Negligent Misrepresentation**
**Florida and California Classes**

149.    Plaintiffs reallege and incorporate herein all previous paragraphs of this Complaint.

150.    Defendant, directly or through its agents and employees, made false representations of material facts, as described above, to Plaintiffs and the Florida and California class members.

151.    Defendant had no reasonable grounds for believing these representations to be true when it made them.

152.    In making these representations, Defendant intended to induce the reliance of Plaintiffs and the Florida and California class members.

153.    Plaintiffs and the Florida and California class members reasonably and justifiably relied on Defendant's misrepresentations when purchasing the products and, had the facts been

known, they would not have purchased a Fitbit product with a sleep-tracking function at the price at which they were offered.

154.    As a direct and proximate result of Defendant's negligent misrepresentations, Plaintiffs and the Florida and California class members have been damaged in an amount to be established at trial. For instance, Defendant markets and sells the Fitbit Zip, which contains the same fundamental features of the other Fitbit devices EXCEPT the sleep-tracking function. The Fitbit devices with the sleep-tracking function are at least $30 more than the Fitbit device without the sleep-tracking function.

### NINTH CLAIM FOR RELIEF
### Unjust Enrichment/Restitution/Quasi-Contract
### California and Florida Classes

155.    Plaintiffs reallege and incorporate herein all previous paragraphs of this Complaint.

156.    This claim asserts that it is unjust to allow Defendant to retain profits from its deceptive, misleading, and unlawful conduct alleged herein.

157.    Defendant charged Plaintiffs and the Florida and California class members for the sleep-tracking function.

158.    Defendant represented that this function would perform as stated in its advertising and as alleged above.

159.    As detailed above, the sleep-tracking function does not actually work as represented by Defendant.

160.    Because the sleep-tracking function was advertised as being able to perform in very specific ways when, in reality, it cannot, Defendant collected profit for this ineffective function.

161.    As a result of these actions, Defendant received benefits under circumstances where it would be unjust to retain these benefits.

162.    Defendant has knowledge or an appreciation of the benefit conferred upon it by Plaintiff and the putative class members.

163.    Defendant has been unjustly enriched.

164.   Plaintiffs and the Florida and California class members are entitled to restitution and/or disgorgement of all profits, benefits, and other compensation obtained and retained by the Defendant from its deceptive, misleading, and unlawful conduct. For instance, Defendant markets and sells the Fitbit Zip, which contains the same fundamental features of the other Fitbit devices EXCEPT the sleep-tracking function. The Fitbit devices with the sleep-tracking function are at least $30 more than the Fitbit device without the sleep-tracking function.

## **PRAYER FOR RELIEF**

**WHEREFORE** Plaintiffs demand judgment as follows:

1.   For an Order determining at the earliest possible time that this matter may proceed as a class action under Civil Rule 23 and certifying this case as such;

2.   For compensatory damages, restitution, and/or recovery of such relief as permitted by law in kind and amount;

3.   For punitive damages pursuant to common law and/or statutory law;

4.   For reasonable costs and attorney fees necessarily incurred herein pursuant to common law and/or statutory law;

5.   For trial by jury on all issues;

For such other or further relief as this Honorable Court deems Plaintiffs and the putative classes are entitled.

DATED: December 22, 2015                    DWORKEN & BERNSTEIN CO., L.P.A.;
                                            LAW OFFICES OF JOHN A. KITHAS;
                                            LAW OFFICE OF CHRISTOPHER J.
                                            MOROSOFF

                                            Attorneys for Plaintiffs


                                             _/s/ Patrick J. Perotti_____
                                            By Patrick J. Perotti