1   WILLIAM L. STERN (CA SBN 96105)
    WStern@mofo.com
2   MORRISON & FOERSTER LLP
    425 Market Street
3   San Francisco, California 94105
    Telephone: 415.268.7000
4
    JAMES W. HUSTON (CA SBN 115596)
5   JHuston@mofo.com
    ERIN M. BOSMAN (CA SBN 204987)
6   EBosman@mofo.com
    JULIE Y. PARK (CA SBN 259929)
7   JuliePark@mofo.com
    MORRISON & FOERSTER LLP
8   12531 High Bluff Drive
    San Diego, California 92130-2040
9   Telephone: 858.720.5100
    Facsimile: 858.720.5125
10

11  Attorneys for Defendant
    FITBIT, INC.
12

13              UNITED STATES DISTRICT COURT

14              NORTHERN DISTRICT OF CALIFORNIA

15

16  JAMES P. BRICKMAN, individually and as a      Case No. 3:15-cv-2077-JD
    representative of all others similarly situated,
17
                            Plaintiff,           **DEFENDANT FITBIT, INC.'S NOTICE
18                                               OF MOTION AND MOTION TO
            v.                                   DISMISS PLAINTIFFS' FOURTH
19                                               AMENDED COMPLAINT;
    FITBIT, INC.,                                MEMORANDUM OF POINTS AND
20                                               AUTHORITIES IN SUPPORT THEREOF**
                            Defendant.
21                                               Date:    March 16, 2016
                                                 Time:    10:00 a.m.
22                                               Ctrm:    11, 19th Floor
23                                               The Honorable James Donato
24                                               Date Action Filed:    May 8, 2015
25

26

27

28

# TABLE OF CONTENTS

Page

NOTICE OF MOTION AND MOTION ....................................................................... iv

STATEMENT OF THE ISSUES TO BE DECIDED ........................................................ v

I.      INTRODUCTION ........................................................................................... 1

II.     FACTUAL BACKGROUND AND PROCEDURAL HISTORY ................................. 1

        A.      Fitbit's Wide Range of Activity and Fitness Trackers ........................... 1

        B.      Plaintiffs' Activity Trackers ............................................................... 2

        C.      Fitbit's Advertisements and Statements on Sleep Tracking .................. 2

        D.      Using Movement to Track Sleep ......................................................... 3

        E.      Plaintiffs' Allegations ....................................................................... 3

        F.      Procedural History ........................................................................... 4

III.    ARGUMENT .................................................................................................. 5

        A.      Plaintiffs' Claims of Deception Are Not Plausible ............................... 5

                1.      The Sole Basis for Plaintiffs' Claims Is a False Premise ........... 6

                2.      Plaintiffs' Additional "Factual" Allegations Are Simply Conclusory
                        Statements That Fail to Meet The Pleading Burden ................. 7

                3.      Fitbit's Trackers Do What They Claim To Do ........................... 9

                4.      Fitbit's General Statements Are Puffery ................................. 10

                5.      No Reasonable Consumer Would Have Been Deceived By the
                        Online Dashboard Depicted on the Product Packaging ............ 11

        B.      Plaintiffs' Fraud-Based Claims Lack Specificity ................................ 12

        C.      Plaintiffs' Warranty Claims Fail and Should Be Dismissed ................. 14

                1.      There Is No Defect ............................................................. 14

                2.      Plaintiffs' MMWA Claim Also Fails ....................................... 15

IV.     CONCLUSION .............................................................................................. 15

# TABLE OF AUTHORITIES

Page(s)

CASES

*Ang v. Whitewave Foods Co.*,
No. 13-cv-1953, 2013 WL 6492353 (N.D. Cal. Dec. 10, 2013).................................................5

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ..........................................................................................................5, 14

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ...................................................................................................................5

*Block v. eBay, Inc.*,
747 F.3d 1135 (9th Cir. 2014)...................................................................................................9

*Clemens v. DaimlerChrysler Corp.*,
534 F.3d 1017 (9th Cir. 2008)..................................................................................................15

*Cook, Perkiss, & Liehe v. N. Cal. Collection Serv.*,
911 F.2d 242 (9th Cir. 1990)....................................................................................................11

*Frenzel v. Aliphcom*,
76 F. Supp. 3d 999 (N.D. Cal. 2014) ("*Frenzel I*").....................................................1, 11, 12

*Frenzel v. Aliphcom*,
No. 14-cv-03587-WHO, 2015 WL 4110811
(N.D. Cal. Jul. 7, 2015) ("*Frenzel II*") ...............................................................1, 12, 13, 14

*Glen Holly Entm't, Inc. v. Tektronix, Inc.*,
352 F.3d 367 (9th Cir. 2003)......................................................................................................6

*Henderson v. Gruma Corp.*,
No. CV 10-04173 AHM, 2011 WL 1362188 (C.D. Cal. Apr. 11, 2011) ..............................5, 9

*Hill v. Hoover Co.*,
899 F. Supp. 2d 1259 (N.D. Fla. 2012).....................................................................................12

*In re All Terrain Vehicle Litig.*,
771 F. Supp. 1057 (C.D. Cal. 1991) .........................................................................................11

*In re iPhone 4S Consumer Litig.*,
No. C 12-1127 CW, 2014 WL 589388 (N.D. Cal. Feb. 14, 2014) ...........................................13

*In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*,
996 F. Supp. 2d 942 (S.D. Cal. 2014) ........................................................................................9

*Jovine v. Abbott Labs., Inc.*,
  795 F. Supp. 2d 1331 (S.D. Fla. 2011) .......................................................... 6, 7, 12

*Kearns v. Ford Motor Co.*,
  567 F.3d 1120 (9th Cir. 2009)................................................................................ 12

*McKinney v. Google, Inc.*,
  No. 5:10-CV-01177 EJD (PSG), 2011 WL 3862120 (N.D. Cal. Aug. 30, 2011) ........... 13, 14

*Minkler v. Apple, Inc.*,
  65 F. Supp. 3d 810 ................................................................................... 13, 14, 15

*Newcal Indus., Inc. v. Ikon Office Solution*,
  513 F.3d 1038 (9th Cir. 2008)........................................................................... 10, 11

*Stearns v. Select Comfort Retail Corp.*,
  No. 08-2746 JF, 2009 WL 1635931 (N.D. Cal. June 5, 2009) ........................ 11, 12

*Tietsworth v. Sears, Roebuck and Co.*,
  720 F. Supp. 2d 1123 (N.D. Cal. 2010) ........................................................... 11, 14

*Vess v. Ciba-Geigy Corp.*,
  317 F.3d 1097 (9th Cir. 2003)........................................................................... 12, 13

*Werbel v. Pepsico, Inc.*,
  No. C 09-04456 SBA, 2010 WL 2673860, at *3 (N.D. Cal. July 2, 2010) ............................. 5

*Williamson v. Apple, Inc.*,
  No. 5:11-cv-00377 EJD, 2012 WL 3835104 (N.D. Cal. Sept. 4, 2012) ................................. 5

**STATUTES**

15 U.S.C.
  § 2310(d)(1) ...................................................................................................... 15

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## NOTICE OF MOTION AND MOTION

**PLEASE TAKE NOTICE** that on March 16, 2016 at 10:00 a.m. or as soon thereafter as the matter may be heard, in the United States District Court for the Northern District of California, Defendant Fitbit, Inc. ("Fitbit") will, and hereby does, move to dismiss the Fourth Amended Complaint ("4AC") of Plaintiffs James P. Brickman and Margaret Clingman ("Plaintiffs") pursuant to Rules 12(b)(6) and 9(b) of the Federal Rules of Civil Procedure on the grounds that the 4AC fails to state a claim upon which relief can be granted and Plaintiffs' fraud-based claims fail to meet the federal standard for pleading fraud with particularity.

This motion is based on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the concurrently filed Request for Judicial Notice (RJN) and Declaration of Julie Y. Park, and on such other written and oral argument as may be presented to the Court.

Dated: January 8, 2016     MORRISON & FOERSTER LLP

            By: <u>s/ Erin M. Bosman</u>
              Erin M. Bosman

              Attorneys for Defendant
              FITBIT, INC.

# STATEMENT OF THE ISSUES TO BE DECIDED

This motion raises the following issues:

1. **Implausibility**. Can Plaintiffs state a claim where no reasonable consumer would have been deceived by Fitbit's conduct?

2. **Rule 9(b) Particularity**. Can Plaintiffs meet the Rule 9(b) pleading standard for fraud where Defendant has made no representations about the accuracy of its sleep tracking features and Plaintiffs fail to plausibly allege that Defendant's statements are false?

3. **Breach of Warranties**. Can Plaintiffs' breach of warranty claims survive even though they have not alleged a product defect?

## I.    INTRODUCTION

Plaintiffs have amended their complaint once more in an attempt to bring their claims within the realm of plausibility.  Once more they have failed.  According to Plaintiffs, everyone who bought a Fitbit device with a sleep tracking function was deceived because the device tracks only movement and not sleep.  The crux of their claim is that movement *is unrelated to sleep*. Plaintiffs are wrong.  Using movement is a scientifically accepted way to measure sleep, which has been recognized by the American Academy of Sleep Medicine.

Plaintiffs' entire 4AC relies on the false premise that indirect measurements are necessarily misleading.  Any reasonable consumer can appreciate that this premise is false—it would mean, for example, that a thermometer doesn't measure temperature and is fraudulent because it only measures the expansion of mercury.  Like the 4AC, such a position is not just wrong, but absurd on its face and contrary to scientific knowledge and common sense.

Nearly identical claims have already been dismissed with prejudice by Judge Orrick. *Frenzel v. Aliphcom*, 76 F. Supp. 3d 999 (N.D. Cal. 2014) ("*Frenzel I*"); *Frenzel v. Aliphcom*, No. 14-cv-03587-WHO, 2015 WL 4110811 (N.D. Cal. Jul. 7, 2015) ("*Frenzel II*").  Encompassing the same set of facts and claims as *Frenzel*, Plaintiffs' 4AC should meet the same fate.

Nothing that Plaintiffs allege in their 4AC changes the fact that Plaintiffs and every putative class member received exactly what they paid for:  a novel, wrist-based activity tracker that does exactly what Fitbit says it does.  For these reasons, Fitbit respectfully asks this Court to dismiss the 4AC with prejudice.

## II.    FACTUAL BACKGROUND AND PROCEDURAL HISTORY

### A.    Fitbit's Wide Range of Activity and Fitness Trackers

Fitbit is the market leader in activity and fitness trackers.  Fitbit's current fitness tracker lineup includes Zip, One, Flex, Force, Charge, Charge HR, and Surge.  (RJN Ex. A at 1.)  All of Fitbit's trackers count steps (*id.*) and sync wirelessly to leading smartphones and computers (*see, e.g., id.* Ex. B at 8.)  By syncing their trackers, users have access to Fitbit's online application ("app"), which has a dashboard with tools for users to "[v]iew your progress and analyze your trends with easy-to-read charts and graphs." (*Id.* Ex. D at 9.)

Other features vary among trackers.  Zip, the lowest priced tracker, has a clip-on design, a replaceable battery that lasts up to six months, and an LCD display.  (RJN Ex. B at 2, 8.)  Designed with simplicity in mind, Zip tracks activity, but does not track floors climbed or sleep.  (*Id.* Ex. A at 1.)  Zip retails at least $30 less than any other Fitbit tracker.  (4AC ¶ 28.)

Fitbit One, like Zip, is a clip-on tracker that counts steps.  But it contains a number of other features, including sleep tracking.  (*Id.*)  Branded as "One powerful, motivating tracker," One tracks the number of floors climbed.  (RJN Ex. C at 2.)  It features an OLED display that can be read in the dark and has a rechargeable battery.  (*Id.* Ex. C at 9.)  In addition to tracking sleep, One contains a vibrating motor that powers its silent alarm.  (*Id.*)

### B.  Plaintiffs' Activity Trackers

Plaintiffs purchased Fitbit Flex products in November 2013 and June 2014 for $99-$120.  (4AC ¶¶ 43-44, 54.)  Flex debuted in May 2013 as Fitbit's first wrist-worn activity and fitness tracker.  In addition to tracking steps and sleep (RJN Ex. A at 1), it has an LED light display that shows progress toward a user's daily step goal (*id.* Ex. D at 10).  Like One, Flex has a silent alarm.  (*Id.* Ex. A at 1.)  Flex is unique among Fitbit trackers in having interchangeable bands, (*id.* Ex. D at 6), which come in different colors and styles, introducing yet another dimension of enjoyment and novelty for Fitbit users (*id.* Ex. H at 1).

### C.  Fitbit's Advertisements and Statements on Sleep Tracking

Fitbit's advertising highlights each product's unique feature set as part of a complete package with sleep tracking as just one component.  For example, Fitbit urges users to "Get fit.  Sleep better.  All in one."  (RJN Ex. C at 1.)  "Flex never sleeps—even when you do.  Wear it all night to measure your sleep quality and how long you slept.  Then, wake with a silent, vibrating alarm to start your day stepping on the right foot."  (*Id.* Ex. D at 5.)  The packaging boasts that Flex helps "TRACK YOUR DAY" with steps, distance, calories burned, and active minutes.  (4AC Ex. 2.)  It also states that Flex helps users "TRACK YOUR NIGHT" with hours slept, times woken up, sleep quality, and a silent vibrating alarm.  (*Id.* ¶ 13; *id.* Ex. 2.)

After a user has registered and synced a device to his Fitbit account, the online dashboard displays information about the amount and quality of sleep.  (*Id.* ¶¶ 15-16.)  An image of the

dashboard appears on Flex's packaging to convey that users can "SYNC YOUR STATS REAL-TIME"—i.e., that users can sync the device wirelessly to their smartphones or computers. (*Id.*) Contrary to Plaintiffs' allegations, the dashboard graphic on the product packaging clearly is not intended to convey "factual representations." (*See* 4AC ¶ 30.) This is evident from the small size of the graphic on the packaging, which has been magnified nearly threefold on Page 6 of the 4AC. On the Flex product packaging, that image fits into a space that is 2 inches tall and 2 ¼ inches wide. (*See* 4AC Ex. 2.) Indeed, any phantom of "factual information" presented by this graphic is so small as to be illegible. (*See id.*)

**D.    Using Movement to Track Sleep**

The Fitbit trackers use a 3-axis accelerometer to measure movement and translate that movement—or lack thereof—into sleep. (4AC ¶ 34.) In this way, the Fitbit trackers mimic actigraphy, which "uses accelerometers to detect . . . movement" and "is a method used to study sleep-wake patterns and circadian rhythms by assessing movement, most commonly of the wrist." (RJN Ex. K at 337-38.) "Sleep-wake patterns are estimated from periods of activity and inactivity based on this movement." (*Id.* at 337.) According to the American Academy of Sleep Medicine, "[a]ctigraphy is reliable and valid for detecting sleep in normal, healthy adult populations." (*Id.* at 338.) At least one scientific paper has compared Fitbit's sleep tracking to both actigraphy and polysomnography, the latter of which is "the accepted scientific standard for sleep tracking" that monitors "brain waves, eye movements, muscle activity, heart rhythm, and more, to diagnose and/or rule out sleep disorders." (4AC ¶ 9; RJN Ex. N.) That paper, by Dr. Montgomery-Downs, noted that "[s]imilar to actigraphy, the Fitbit system relies on movement and absence of movement to infer sleep and wake." (*Id.* at 916.) In addition, "Fitbit devices show acceptable reliability between devices, demonstrating that different devices perform consistently compared to each other." (*Id.*) The Fitbit devices do, in fact, track sleep.

**E.    Plaintiffs' Allegations**

Despite the documented ability of Fitbit trackers to measure sleep, Plaintiffs introduce a false premise to support their claim that Fitbit's "representations that Plaintiff [] would receive a working and functional sleep-tracking feature were false." (4AC ¶¶ 50, 57.) This premise is that

any indirect measurement of an output is necessarily deceptive. In addition to their claims of misrepresentation, Plaintiffs insist that Fitbit Zip "contains the same fundamental features of the other Fitbit devices EXCEPT the sleep-tracking function." (*See, e.g.*, *id.* ¶ 89.) On that basis, Plaintiffs claim, they paid at least $30 more than they would have paid for Zip in reliance on representations made in Fitbit's product packaging. (*Id.* ¶¶ 47, 56.) Plaintiffs further claim that Fitbit misrepresented "what the device will do, and that the devices cannot track sleep and rather only movement" (*id.* ¶ 38), despite the proven ability of actigraphy to measure sleep by measuring movement. In support of their claims, Plaintiffs proffer two kinds of "factual" allegations that were not pled in the First Amended Complaint. The first comprises news articles and product reviews, none of which demonstrate that the products Plaintiffs bought cannot track sleep. (*Id.*) The second comprises conclusory—and identical—allegations that "[a]fter a short period of wearing the device, it became obvious to Plaintiff [] that the device only tracked [his/her] motion and did not actually track the hours [he/she] slept, the times [he/she] awoke during sleep, or the quality of [his/her] sleep." (*Id.* ¶¶ 12-13, 49.) Nowhere does either Plaintiff support this conclusion with facts.

Based on the alleged misrepresentations, Plaintiffs have pled nine causes of action against Fitbit individually and on behalf of two putative classes, one comprising California residents and one comprising Florida residents.

### F.     Procedural History

Plaintiff Brickman filed his original Complaint on May 8, 2015. Fitbit moved to dismiss for failure to state a claim, in part because California law did not apply to the Florida resident's claims. (ECF No. 21.) Rather than oppose Fitbit's motion, Plaintiff filed a First Amended Complaint ("FAC"), adding a California-resident plaintiff, Stephanie Mallick, and amending the causes of action to bring additional claims under Florida law and drop the claim for breach of express warranty. (ECF No. 32.) Fitbit moved to compel arbitration of Plaintiff Mallick's claims and again moved to dismiss the FAC for failure to state a claim. (ECF Nos. 34, 39.) At oral argument, Plaintiffs agreed to substitute a different California plaintiff for Ms. Mallick in order to avoid an order granting Fitbit's motion to compel arbitration. Fitbit in turn agreed to withdraw its

1    motion.  The Court took Fitbit's motion to dismiss under submission after urging Plaintiffs'

2    counsel to "plausibly plead" Plaintiffs' claims.  (Hearing Tr. 21:23-22:25, Nov. 10, 2015.])

3        Plaintiffs filed a Second Amended Complaint ("2AC"), revising their allegations and

4    removing plaintiff Stephanie Mallick.  (ECF No. 54.)  The Third Amended Complaint ("3AC")

5    and 4AC merely substituted a series of California plaintiffs.  (ECF Nos. 57, 60.)  In light of the

6    amendments made in the 2AC and the addition of a new California plaintiff in the 3AC, the Court

7    denied Fitbit's motion to dismiss the FAC as moot.  (ECF No. 58.)  Plaintiffs' revised allegations,

8    however, rely on a false premise and do nothing more to push Plaintiffs' claims into the realm of

9    plausibility.  Accordingly, the 4AC should be dismissed.

10   **III.    ARGUMENT**

11       **A.    Plaintiffs' Claims of Deception Are Not Plausible**

12       A complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to

13   relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation

14   omitted).  The 4AC does not.  A "plaintiff [must] plead[] factual content that allows the court to

15   draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*; *see*

16   *also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  Plaintiffs have failed to do so.

17       Moreover, "statements are only actionable under [the UCL, CLRA, and FAL] if they are

18   likely to deceive a reasonable consumer," which requires "the plaintiff [to] 'show that members

19   of the public are likely to be deceived.'"  *Henderson v. Gruma Corp.*, No. CV 10-04173 AHM

20   (AJWx), 2011 WL 1362188, at *10 (C.D. Cal. Apr. 11, 2011) (citing *Freeman v. Time, Inc.*, 68

21   F.3d 285, 289 (9th Cir. 1995)).  "[W]here a court can conclude as a matter of law that members of

22   the public are not likely to be deceived by the product packaging, dismissal is appropriate."

23   *Werbel v. Pepsico, Inc.*, No. C 09-04456 SBA, 2010 WL 2673860, at *3 (N.D. Cal. July 2, 2010);

24   *see also Williamson v. Apple, Inc.*, No. 5:11-cv-00377 EJD, 2012 WL 3835104, at *6 (N.D. Cal.

25   Sept. 4, 2012) (dismissing CLRA, UCL, FAL, and breach of express warranty claim based on

26   allegations that defendant represented that the glass housing on its phone was drop-proof because

27   "it is a well-known fact of life that glass can break under impact, even glass that has been

28   reinforced"); *Ang v. Whitewave Foods Co.*, No. 13-cv-1953, 2013 WL 6492353, at *4 (N.D. Cal.

Dec. 10, 2013) (dismissing UCL, FAL, and CLRA claims for lack of plausibility where plaintiffs asserted consumers would confuse soy milk or almond milk for dairy milk).

The same standard applies to claims brought under the FDUTPA. *Jovine v. Abbott Labs., Inc.*, 795 F. Supp. 2d 1331, 1342 (S.D. Fla. 2011) (noting that "in a FDUTPA action the issue is not reliance, but whether the practice was likely to deceive a consumer acting reasonably in the same circumstances" (quotation omitted)).

A plausible claim of deception is also a necessary element of Plaintiffs' fraud and negligent misrepresentation claims. *See Glen Holly Entm't, Inc. v. Tektronix, Inc.*, 352 F.3d 367, 379 (9th Cir. 2003) ("both fraud and negligent misrepresentation as causes of action require [plaintiff] to demonstrate it justifiably relied on [defendant's] misrepresentations"); *Jovine*, 795 F. Supp. 2d at 1338 (essential element of negligent misrepresentation is that "injury must result to the party acting **in justifiable reliance** on the misrepresentation" (emphasis added)).

Finally, Plaintiffs' unjust enrichment claim relies on a plausible allegation of deception as Plaintiffs seek recovery for the profits retained from the "conduct alleged herein," all of which is based on Fitbit's alleged misrepresentations. (4AC ¶ 156.)

Plaintiffs cannot show that a reasonable consumer would be deceived by Fitbit's statements about sleep tracking because no "deception" is even explained by the 4AC. Their claims of deception are implausible as a matter of law for five reasons.

### 1.    The Sole Basis for Plaintiffs' Claims Is a False Premise

Plaintiffs rely on a false premise:  that indirect measurements cannot be valid.  Therefore, because "movement is not sleep," the Fitbit products do not track sleep.  This premise is completely false and is the only "factual" support for Plaintiffs' claims.  On this basis alone, Plaintiffs' 4AC should be dismissed.

Why stop at Fitbit?  If using an accelerometer to detect sleep can be considered false advertising, everyday products are risk.  As mentioned in the introduction, Plaintiffs' argument is equivalent to arguing that a thermometer does not truly measure "temperature" because it only marks the expansion of mercury inside the thermometer.  But just as movement is an accepted surrogate for measuring sleep, the expansion of mercury is an accepted surrogate for measuring

temperature. No reasonable consumer would find a thermometer reading deceptive simply because the thermometer does not measure "temperature." Similarly, an automobile's speedometer does not measure "speed," but only measures the rotation of the wheel assembly. The only "true" way to measure "speed" directly is by radar; one must conclude based on Plaintiffs' premise that the speedometer reading on a car is false and deceptive. Accusing these products of being deceptive defies science and logic and insults the common consumer experience.

In fact, polysomnography—which Plaintiffs insist is the "accepted scientific standard for sleep tracking" (4AC ¶ 9)—does not measure "sleep" either. It measures "brain waves, eye movements, muscle activity, heart rhythm, and more," according to Plaintiffs (*id.*). Conspicuously absent from this list of metrics is "sleep."

Plaintiffs' 4AC demonstrates a complete misunderstanding of the fact that a reasonable conclusion drawn from a measurement *can also be a measurement*. By setting forth this false premise, the 4AC is more deceptive than the conduct Plaintiffs allege Fitbit has engaged in. To allow these claims to survive and to allow discovery on the issue of whether movement can be a proxy for sleep—a scientifically accepted premise—would be a waste of judicial resources.

### 2. Plaintiffs' Additional "Factual" Allegations Are Simply Conclusory Statements That Fail to Meet The Pleading Burden

Despite the Court's guidance at the November 10, 2015 hearing (*see* Hearing Tr. 21:25-22:14), Plaintiffs have failed to amend their pleading with any factual allegations beyond their false premise and their conclusory statements that Fitbit's sleep tracking does not work. As the Court noted, Plaintiffs must "show [] the facts that make your story plausible." (*Id.* 21:4-5.) The Court went on to observe such facts were absent and that Plaintiffs needed to plead *why* or *how* "we know that or we believe that Fitbit cannot track in the way that it represents." (*Id.* 20:9-11.) In response, Plaintiffs added two categories of "facts": online reports that lend no factual support and self-serving "averments" that are nothing more than legal conclusions.

First, Plaintiffs cite three online articles discussing the Fitbit One—not the Fitbit Flex they purchased—that fail to provide factual support for their claims. (*Id.* ¶ 38; RJN Ex. J.) One article

published online in *The Guardian* quotes a researcher as stating that motion trackers do not "measure[e] sleep, simply motion," but clarifies that because the motion trackers do not measure "muscle tone, brain waves, heart rate or eye movement," they cannot distinguish between stages of sleep. (4AC ¶ 38.)[1] This article simply underscores the point that a reasonable consumer would agree with the Court, which recognized, "I think we all get . . . the Fitbit is not a sleep lab on your wrist." (Hearing Tr. 14:3-4.) The article does *not* support the conclusion that motion cannot be used to track sleep. Equally off-point are the two product reviews Plaintiffs cite, from Gizmodo and Tech Crunch. (4AC ¶ 38.) Both reviewed Fitbit One (which neither Plaintiff purchased) in 2012 (more than a year before Plaintiffs' purchases). (*Id.*) Even if the reviews applied to Plaintiffs' products, they provide no specific allegations supporting Plaintiffs' claims.[2]

These "facts" miss the mark. One reviewer *thought* that a product Plaintiffs never purchased might be inaccurate; another reviewer conceded that Fitbit One tracks sleep; and a news article bemoaned the inability of motion trackers to detect sleep stages or REM sleep. These allegations do not support Plaintiffs' claim that Fitbit's trackers cannot track sleep because they only track movement. Indeed, it is well established that tracking motion is a valid way of tracking sleep. (RJN at 4-5.)

Lacking factual support for their claims, Plaintiffs' resort to conclusory "averments." Both Plaintiffs claim that "it became obvious . . . that the device only tracked [his/her] motion and did not actually track the hours [he/she] slept, the times [he/she] awoke during sleep, or the quality of [his/her] sleep." (4AC ¶¶ 12-13, 49.) These identical averments by Plaintiffs are nothing more than legal conclusions drawn up by counsel and differ in no way from the "lawyerly fiat" that the Court indicated was unlikely to state a plausible claim. (Hearing Tr. 20:1-7.)

---

[1] Plaintiffs also cite to this article for its statement that "You cannot infer quality of sleep from motion." (4AC ¶ 38.) However, this clearly refers to the stages of sleep and different sleep cycles, which Fitbit does not claim to track or measure.

[2] The Gizmodo reviewer complained that the Fitbit One "guesses" sleep time if not manually inputted. He later updated his review to note that he learned how to activate sleep-tracking mode, implicitly acknowledging that the product tracked sleep. (RJN Ex. J.) Notably, Fitbit has never offered automatic sleep tracking for Fitbit One. (RJN Ex. C.) Plaintiffs assert that the Tech Crunch reviewer never received "informative sleep tracking data," but cite no statement that the Fitbit One cannot track sleep. (4AC ¶ 38.)

In light of the fact that tracking motion *is* a valid method of tracking sleep, Plaintiffs cannot plausibly allege that a reasonable consumer would be misled by Fitbit's statements that its activity trackers track sleep. *See, e.g. Henderson*, 2011 WL 1362188, at *10. They have failed to allege a "plausible fact story," as this Court required them to do. (Hearing Tr. 20:18.) Therefore, Plaintiffs fall short of bringing their claims into the realm of plausibility required by *Twombly* and *Iqbal* and the 4AC should be dismissed.

### 3. Fitbit's Trackers Do What They Claim To Do

Plaintiffs further allege that Fitbit made "specific representations" about the accuracy of the sleep-tracking feature. (*See, e.g.*, 4AC ¶ 106.) This premise is misplaced. A plaintiff may not bring a UCL or CLRA claim based on false advertising where the plaintiff unjustifiably exaggerates the defendant's statements. In *Block v. eBay, Inc.*, 747 F.3d 1135, 1140 (9th Cir. 2014), the Ninth Circuit held that a reasonable person could not have relied on conversational representations that eBay is "not involved" and has "no agency" to believe that eBay would not offer automatic bids on customers' behalf. In *In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*, 996 F. Supp. 2d 942, 990 (S.D. Cal. 2014), Sony represented that access to the "Play Station Network" and online connectivity were features of the console. The court held this could not be interpreted to mean that network access would be uninterrupted. *Id.*

Here, Plaintiffs have similarly exaggerated Fitbit's statement in an attempt to bolster their claims. According to the 4AC, Fitbit represented that its "devices can make specific, mathematical measurements and calculations as to the amount and quality of the wearer's sleep." (4AC ¶ 86.) This is simply not true. Plaintiffs further assert that consumers are "likely" to believe that Fitbit's trackers "will track, to the minute, the amount they sleep and the quality and efficiency to an exact percentage point, of that sleep." (*Id.* ¶ 87.) Not one of these allegations is plausible. Fitbit's statements that the products can track "hours slept," "times woken up," or "sleep quality" do not promise scientifically calibrated or medical device level accuracy. They do not even promise to track sleep down "to the minute," contrary to Plaintiffs' allegations. (*Compare id.* ¶ 87 *with id.* Ex. 2.) Fitbit only promises that its trackers can track sleep. The fact that Fitbit uses movement to measure sleep is immaterial in light of the accepted validity of using

movement to track sleep. Just as in *Block* and *Sony*, Plaintiffs should not be permitted to turn Fitbit's representations into something they are not.

No reasonable consumer could share Plaintiffs' alleged expectation that Fitbit's $99-$120 fitness trackers were intended to deliver the precision of polysomnography, which monitors numerous body functions, often requires an overnight stay at a research facility, and costs significantly more. (*See* 4AC ¶ 4; RJN Exs. K, N.) A reasonable consumer would expect that Fitbit's products are what they claim to be: activity and fitness trackers featuring step-tracking, sleep-tracking, an LED progress light, a silent alarm, and interchangeable bands.[3]

### 4.    Fitbit's General Statements Are Puffery

General statements that would not induce consumer reliance are non-actionable puffery. Fitbit's statements about sleep tracking are exactly the type of "general, subjective claim[s] about a product" on which a deception claim cannot be based. "[T]he determination of whether an alleged misrepresentation 'is a statement of fact' or is instead 'mere puffery' is a legal question that may be resolved on a Rule 12(b)(6) motion." *Newcal Indus., Inc. v. Ikon Office Solution*, 513 F.3d 1038, 1053 (9th Cir. 2008) (citations omitted). In the Ninth Circuit:

> A statement is considered puffery if the claim is extremely unlikely to induce consumer reliance . . . . The common theme that seems to run through cases concerning puffery in a variety of contexts is that consumer reliance will be induced by specific rather than general assertions. Thus, a statement that is quantifiable, that makes a claim as to the specific or absolute characteristics of a product, may be an actionable statement of fact while a general, subjective claim about a product is non-actionable puffery.

*Id.* (internal citations and quotation marks omitted) (citing *Cook, Perkiss, & Liehe v. N. Cal. Collection Serv.*, 911 F.2d 242, 245-46 (9th Cir. 1990)).

Fitbit advertised that the devices "'track hours slept,' track 'times woken up', and track

---

[3] That Plaintiffs were harmed $30 is similarly implausible. Plaintiffs calculate this amount by wrongly concluding that Zip differs from other trackers only due to the sleep tracking function. Compared to Flex, Zip cannot be worn on the wrist and lacks an LED display, silent alarm, and interchangeable bands. (*Compare* RJN Ex. B *with* RJN Ex. D.) The Gizmodo reviewer agreed, noting that "the $40 is worth it for the added functionality." (*Id.* Ex. J.) A reasonable consumer would expect and understand that the purchase price includes all of these features. Plaintiffs should have understood this, too.

the 'quality of sleep.'" (4AC ¶ 28 (citing product packaging).) According to the 4AC, Fitbit states in an unspecified place that its products "'measure your sleep quality,' and '[o]nce the data syncs, graphs on your (device) dashboard will reveal how long you slept and the number of times you woke up, giving you a 'sleep quality score.'" (*Id.* ¶ 29.) Plaintiffs embellish Fitbit's claims. Fitbit simply promises that users will generally be able to track sleep and the "quality of sleep," without quantifying what type of "score" the activity trackers can provide or on what basis the "quality of sleep" will be measured.

Courts have routinely held that general representations such as Fitbit's constitute non-actionable puffery. *See, e.g.*, *Cook, Perkiss & Liehe*, 911 F.2d at 246 (finding it was "beyond the realm of reason to assert" that a reasonable consumer would interpret as a factual claim the statement that "we're the low cost commercial collection experts"); *Tietsworth v. Sears, Roebuck and Co.*, 720 F. Supp. 2d 1123, 1136 (N.D. Cal. 2010) (statements that washing machines were "designed and manufactured for years of dependable operation" and "save you time by allowing you to do fewer, larger loads" were puffery); *Frenzel I*, 76 F. Supp. 3d at 1011 (general statement that activity tracker helps users "understand your sleep and wake up refreshed" constitutes "the sort of vague statements about general functionality that are not actionable under California's consumer protection statutes."); *In re All Terrain Vehicle Litig.*, 771 F. Supp. 1057, 1061 (C.D. Cal. 1991) (use of name "all terrain vehicle" or "all-weather tires" is puffery, as is statement that vehicle is "precisely balanced in the frame for superb handling"); *Stearns v. Select Comfort Retail Corp.*, No. 08-2746 JF, 2009 WL 1635931, at *11 (N.D. Cal. June 5, 2009) (statement that bed would be "maintenance free" and provide "constant and wear free support night after night" were puffery despite fact that beds need to be cleaned periodically because "no consumer reasonably could have [] expectation" that any product would be maintenance free). Similarly, Fitbit's general statements about sleep tracking would not mislead a reasonable consumer to believe that a Fitbit activity tracker could measure sleep or sleep quality with the precision of a sleep lab.

### 5. No Reasonable Consumer Would Have Been Deceived By the Online Dashboard Depicted on the Product Packaging

Plaintiffs cite to the online dashboard shown on the product packaging in support of their

claims: "The images of the 'dashboard' on the packaging depict specific numbers presented to the consumer as exact times." (4AC ¶ 31.) There are two problems with this allegation. First, a reasonable consumer would not read all of the words contained in this graphic, which is clearly intended to illustrate wireless synchronization capabilities. The words are simply too small. (*See id.* Ex. 2.) Second, "specific" and "exact" are Plaintiffs' words, not Fitbit's. Nowhere does Fitbit advertise that its devices' sleep-tracking feature can track every second of sleep. (*See generally id.*) Nor, as discussed above, would a reasonable consumer have so believed.

Plaintiffs' claims of deception are implausible. On this basis, their UCL, FAL, CLRA, FDUTPA, fraud, negligent misrepresentation, and unjust enrichment claims should be dismissed.

### B. Plaintiffs' Fraud-Based Claims Lack Specificity

Plaintiffs' first, second, and third causes of action (violation of the UCL, FAL, and CLRA), sixth cause of action (violation of the FDUTPA), and seventh cause of action (fraud) are all fraud-based claims subject to the heightened pleading standard of Rule 9(b). *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1126-27 (9th Cir. 2009) (consumer deception claims that rely on allegations of fraudulent conduct are subject to Rule 9(b) heightened pleading standards); *see also Frenzel I*, 76 F. Supp. 3d at 1011 (dismissing plaintiff's fraud-based UCL, FAL, and CLRA claims for failure to meet Rule 9(b) pleading standard); *Jovine*, 795 F. Supp. 2d at 1343 n.9 (applying the Rule 9(b) heightened pleading standard for a FDUTPA claim based on *fraudulent* conduct); *but see Hill v. Hoover Co.*, 899 F. Supp. 2d 1259, 1263 (N.D. Fla. 2012) (Rule 9(b) standard does not apply to FDUTPA claims based on *unfair* or *unlawful* conduct). As such, plaintiffs must "state with particularity the circumstances constituting fraud." *Kearns.*, 567 F.3d at 1126 (quoting Fed. R. Civ. P. 9(b)). This heightened pleading standard requires plaintiffs to allege "the who, what, when, where, and how" of the fraud. *Vess v. Ciba-Geigy Corp.,* 317 F.3d 1097, 1106 (9th Cir. 2003).

Under this standard, Plaintiffs' claims fail to the extent they still claim that Fitbit misrepresented the accuracy of its sleep-tracking feature. Nowhere have Plaintiffs alleged that they relied on any claims of "accuracy." Plaintiffs quote no specific statements by Fitbit about sleep-tracking accuracy or comparing the accuracy to that of polysomnography. In *Frenzel II*,

Judge Orrick dismissed nearly identical claims against an activity tracker manufacturer. *Frenzel II*, 2015 WL 4110811, at *12. Just like Plaintiffs here, the only representations the *Frenzel* plaintiff alleged he relied on "were those on the [product] box, none of which used the word 'accurately.'" *Id.* Instead, the product packaging used terms such as "measure" and "track" to describe what the activity tracker could do. *Id.* Because the *Frenzel* plaintiff never relied on a representation that the tracker would "accurately" measure any metric, the court dismissed his CLRA, UCL, and FAL claims with prejudice, to the extent they were based on misrepresentations regarding accuracy. *Id.*

Plaintiffs' fraud-based claims against Fitbit should be dismissed for the same reasons. Plaintiffs still complain that Fitbit promised to provide "accurate" sleep-tracking statistics. (*See, e.g.*, 4AC ¶ 36.) These are Plaintiffs' words, not Fitbit's. Just as in *Frenzel II*, Plaintiffs only allege that they relied on the product packaging.[4] Just as in *Frenzel II*, nowhere on the packaging does Fitbit claim to deliver "accurate" sleep-tracking information. Just as in *Frenzel II*, Fitbit promises only to "track" the user's activity and sleep. Only one conclusion follows: just as in *Frenzel II*, Plaintiffs' claims should be dismissed with prejudice.

Other courts have dismissed similar fraud claims where the complaint lacked specific statements that a particular product feature would work flawlessly. *See, e.g.*, *Minkler v. Apple, Inc.*, 65 F. Supp. 3d 810, 821 (N.D. Cal. 2014) (dismissing fraud claim based on inconsistencies in the Apple Maps application because plaintiff "failed to identify any specific statement by Apple that expressly indicates that Apple Maps would always work flawlessly and without error."); *In re iPhone 4S Consumer Litig.*, No. C 12-1127 CW, 2014 WL 589388, at *6 (N.D. Cal. Feb. 14, 2014) ("Plaintiffs do not allege any specific statement by Apple that expressly indicates that Siri would be able to answer every question, or do so consistently."); *McKinney v. Google,*

---

[4] Plaintiffs quote one statement of Fitbit's not on the packaging: "Once the data syncs, graphs on your (device) dashboard will reveal how long you slept and the number of times you woke up, giving you a 'sleep quality score.'" (4AC ¶ 29.) Plaintiffs have not alleged where this representation was made, nor does it appear on the product packaging attached to the 4AC as Exhibit 2. To the extent Plaintiffs claim to have relied on this representation, such claim omits the requisite "when, where, and how" and therefore fails to meet Rule 9(b)'s heightened pleading standard. *See Vess*, 317 F.3d at 1106

*Inc.*, No. 5:10-CV-01177 EJD (PSG), 2011 WL 3862120, at *5 (N.D. Cal. Aug. 30, 2011) (dismissing fraud claim where plaintiff failed to plead facts sufficient to show a representation that "the Nexus One would maintain consistent 3G connectivity"). Here, the 4AC cites no such representations about the performance of Fitbit's sleep tracking feature, warranting dismissal of Plaintiffs' fraud-based claims.

Finally, the 4AC lacks specific allegations of the "circumstances indicating falseness" necessary to satisfy the heightened pleading standard. *Frenzel II*, 2015 WL 4110811, at *5 (citing *In re GlenFed, Inc. Sec. Litig.*, 42 F.3d 1541, 1547-48 (9th Cir. 1994)). Plaintiffs allege misrepresentation on the bases that "the devices cannot track sleep and rather only movement" (4AC ¶ 38), and that the packaging represented that the product could track a user's "hours slept," "times woken up," and the "sleep quality" (*id.* ¶ 47). As already discussed, no facts in Plaintiffs' 4AC lend credence to their claims that "[d]efendant's representations that Plaintiff[s] would receive a working and functional sleep-tracking feature were false" and "[t]he product Plaintiff[s] purchased did not perform as advertised." (4AC ¶¶ 50, 57; *see* Section II.A., *supra*.) Absent embellishment, Plaintiffs cannot credibly plead that Fitbit made specific representations about the accuracy of the sleep-tracking feature rather than general, broad statements about how the product would perform. (*See* Section II.A.4., *supra*.) Plaintiffs have not and cannot plead facts with sufficient particularity to support their fraud-based claims, and the Court should not accept Plaintiffs' conclusory allegations and conclusions of law. *See Iqbal*, 556 U.S. at 678. Plaintiffs' UCL, FAL, CLRA, FUDTPA, and fraud claims should be dismissed.

### C. Plaintiffs' Warranty Claims Fail and Should Be Dismissed

#### 1. There Is No Defect

To establish a breach of implied warranty of merchantability, Plaintiffs must allege a "fundamental defect that renders the product unfit for its ordinary purpose." *Tietsworth,* 720 F. Supp. 2d at 1142; *see also Minkler*, 2014 WL 4100613. In *Minkler*, the plaintiff sued for breach of implied warranty of merchantability over the functionality of the Apple Maps application. *Id.* at *2. The court dismissed the plaintiff's claim for two reasons. First, the plaintiff did not "allege that the ordinary purpose of the iPhone 5 was navigational capability. The iPhone 5 has a

multitude of uses." *Id.* at \*5.  Second, the plaintiff did not "allege a fundamental defect in the software.  Although she alleges several problems exist in the software, she has not alleged that Apple Maps failed to work at all or even that it failed to work a majority of the time." *Id.*

The same logic applies here.  Replace "iPhone 5" with "Flex" and "navigation" and "Apple Maps" with "sleep tracking," and *Minkler* turns into this case.  Like the iPhone, Fitbit's trackers have a multitude of uses—step count, silent alarm, floors climbed, time of day.  Sleep tracking is not the only function of Fitbit's products.  Nor have Plaintiffs plausibly alleged that the sleep tracking function failed to work at all.  Just as the *Minkler* plaintiff failed to state a claim, Plaintiffs here "has not alleged a plausible claim for relief under breach of implied warranty," and this cause of action should be dismissed.  *Id.*[5]

### 2.  Plaintiffs' MMWA Claim Also Fails

The MMWA provides that "a consumer who is damaged by the failure of a supplier, warrantor, or service contractor to comply with any obligation under this chapter, or under a written warranty, implied warranty, or service contract, may bring suit for damages and other legal and equitable relief." 15 U.S.C. § 2310(d)(1).  Here, Plaintiffs' warranty allegations arise exclusively under state law.  Accordingly, Plaintiffs' MMWA claims will "stand or fall with his express and implied warranty claims under state law." *Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1022 (9th Cir. 2008).  Because Plaintiffs have failed to state a claim for breach of warranty under state law, their MMWA claim should be dismissed as well.

### IV.  CONCLUSION

For all of the foregoing reasons, Fitbit respectfully asks the Court to dismiss Plaintiffs' 4AC in its entirety, without leave to amend.

---

[5] Plaintiffs previously conceded "that they have not pled a particular purpose, and are not pursuing their claim for breach of warranty of fitness for a particular purpose."  (ECF No. 42 at 4.)  Fitbit does not address Plaintiffs' allegations for breach of implied warranty of fitness for a particular purpose on the assumption that they were inadvertently re-pled.  (*See*, *e.g.*, 4AC ¶¶ 126, 132.)

Dated: January 8, 2016                    MORRISON & FOERSTER LLP


                                          By: s/Erin M. Bosman
                                              Erin M. Bosman

                                              Attorneys for Defendant
                                              FITBIT, INC.