Patrick J. Perotti (Ohio Bar No. 0005481)
Frank A. Bartela (Ohio Bar No. 0088128)
DWORKEN & BERNSTEIN CO., L.P.A.
60 South Park Place
Painesville, Ohio 44077
Telephone: (440) 352-3391
Facsimile: (440) 352-3469
Email: pperotti@dworkenlaw.com
       fbartela@dworkenlaw.com

John A. Kithas (California Bar No. 64284)
Christopher Land (California Bar No. 238261)
LAW OFFICES OF JOHN A. KITHAS
One Embarcadero Center, Suite 1020
San Francisco, CA 94111
Telephone: (415) 788-8100
Facsimile: (415) 788-8001
Email: john@kithas.com
       chris@kithas.com

Christopher J. Morosoff, Esq. (SBN 200465)
LAW OFFICE OF CHRISTOPHER J. MOROSOFF
77-760 Country Club Drive, Suite G
Palm Desert, California 92211
Telephone: (760) 469-5986
Facsimile: (760) 345-1581
Email: cjmorosoff@morosofflaw.com

Attorneys for Plaintiffs JAMES P. BRICKMAN
and MARGARET CLINGMAN, et al.

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| JAMES P. BRICKMAN, individually and as a representative of all others similarly situated,<br><br>    Plaintiff,<br><br>v.<br><br>FITBIT, INC.,<br><br>    Defendant. | Case No. 3:15-cv-2077-JD<br><br>PLAINTIFF'S BRIEF IN OPPOSITION TO FITBIT'S MOTION TO DISMISS AND MOTION FOR JUDICIAL NOTICE |

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................ ii

I. Introduction..................................................................................................1

II. Fitbit's motion for judicial notice and attached documents.....................2

III. Argument .....................................................................................................5

   A. The Plaintiffs' claims of deception are plausible...............................5

   B. Fitbit cannot disclaim its own representations ...................................7

   C. Fitbit devices do not do what they claim to do ..................................7

   D. A reasonable consumer would expect Fitbit devices to perform as promised... 8

   E. Whether a representation would mislead a reasonable consumer is normally a question of fact...................................................................................8

   F. Fitbit's representations that its devices could track sleep and sleep quality were not puffery.........................................................................................9

   G. The Plaintiffs have pled fraud with sufficient specificity ................11

   H. There is a defect; therefore, Plaintiffs' warranty claims, including their MMWA claim, do not fail ...............................................................................13

IV. Conclusion ................................................................................................14

# TABLE OF AUTHORITIES

**Cases**

*Ashcroft v. Iqbal,* 556 U.S. 662 (2009) .................................................................................. 5

*Chacanaca v. Quaker Oats Co.,* 752 F. Supp. 2d 1111 (N.D. Cal. 2010) ......................... 10

*Delarosa v. Boiron, Inc.*, 275 F.R.D. 582 (C.D. Cal. 2011) ........................................ 2, 13

*Dorsey v. Rockhard Laboratories, LLC,* No. CV 13-07557 DDP (RZx), 2014 U.S. Dist. LEXIS 132161 (C.D. Cal. Sept. 19, 2014) ............................................................ 10, 11

*Elements Spirits v. Iconic Brands,* No. CV 15-02692 DDP, 2015 U.S. Dist. LEXIS 124645 (C.D. Cal. Sept. 17, 2015)................................................................................ 11

*Fitzpatrick v. General Mills, Inc.*, 263 F.R.D. 687 (S.D. Fla. 2010) ............................ 2, 13

*Frenzel v. AliphCom,* 76 F. Supp. 3d 999 (N.D. Cal. 2014).................................................. 9

*Henderson v. Gruma Corp.,* CV 10-04173 AHM (AJWx), 2011 U.S. Dist. LEXIS 41077 (C.D. Cal. Apr. 11, 2011) ........................................................................................ 5

*In re iPhone 4S Consumer Litigation,* No. C 12-1127 CW, 2014 WL 589388 (N.D. Cal. Feb. 14, 2014) ........................................................................................................ 12

*In re Scotts EZ Seed Litig.*, 304 F.R.D. 397 (S.D.N.Y. 2015) ...................................... 2, 13

*Minkler v. Apple, Inc.,* 65 F. Supp. 3d 810 (N.D. Cal. 2014) ..................................... 12, 14

*Newcal Indus. Inc. v. Ikon Office Solution,* 513 F.3d 1038 (9th Cir. 2008) ....................... 9

*Pratt v. Whole Food Market California, Inc.,* No. 5:12-cv-05652-EJD, 2015 U.S. Dist. LEXIS 134968 (N.D. Cal. Sept. 30, 2015) .................................................................... 8

*Rikos v. The Proctor & Gamble Co.*, 2015 U.S. App. LEXIS 14613 (6th Cir. 2015)... 1, 13

*Salzman v. Bowen,* No. 2:07-CV-854-CW, 2010 U.S. Dist. LEXIS 2692 ....................... 13

*Torrent v. Yakult U.S.A., Inc.,* No. SACV 15-00124-CJC(JCGx), 2015 U.S. Dist. LEXIS 92142 (C.D. Cal. July 14, 2015) ............................................................................... 10

*Werbel ex rel. v. Pepsico inc.,* No. 09-cv-04456-SBA, 2010 U.S. Dist. LEXIS 76289 (N.D. Cal. July 2, 2010) .............................................................................................. 8

*Williamson v. Apple, Inc.,* No. 5:11-cv-00377 EJD, 2012 U.S. Dist. LEXIS 125368 (N.D. Cal. Sept. 2, 2012)......................................................................................................... 8

**Rules**

F.R.C.P. Rule 12 ............................................................................................................ 7

F.R.C.P., Rule 9 ........................................................................................................... 11

## I. Introduction.

This case relates to the Fitbit sleep tracker. For an additional $30, Fitbit sells customers the sleep tracker. Its *sole* purpose is tracking the person's sleep.

A cause of action exists for a product which does not perform as advertised. *Rikos v. The Proctor & Gamble Co.*, 2015 U.S. App. LEXIS 14613 (6th Cir. 2015). Fitbit promises to track a consumer's sleep, both hours slept and quality of sleep. Complaint ¶ 35. Those representations are specifically contained on the device packaging. *Id*. This lawsuit avers that those representations are false. It avers that the device cannot and does not differentiate between lack of movement and sleep. Not for some people, but for everyone. If a "sleep-tracking" device cannot tell the difference between someone who is sitting still, versus someone who is sleeping, what can it tell the wearer about "hours slept," "times woken up," or "quality of sleep"? Nothing.

Fitbit argues Plaintiffs' fraud claims fail because the Plaintiffs have not alleged that they relied on any misrepresentations as to the accuracy of the sleep-tracking devices. Defendant's Brief, p. 12. Further, Fitbit insists that the inability of its device to distinguish between sleep and wake is simply an "accuracy" issue. The Plaintiffs disagree. Their position is simple: representing that a device tracks sleep, when that device actually cannot distinguish between someone who is sitting still, but wide awake, and someone who is sleeping, is not about accuracy. The device does not work. And the sole promise made on the packaging to the customer--not that the device will track movement, but that it will track sleep--is false.

The Sixth Circuit recently explained this kind of fraud claim clearly in *Rikos v. The Proctor & Gamble Co.*, 2015 U.S. App. LEXIS 14613 (6th Cir. 2015). There the court noted an established category of fraud sometimes referred to as 'snake oil' claims where a product cannot ever do what it claims. *Id*. at *12. "[Defendant's] argument attacks a theory of liability that Plaintiffs have not actually presented –that [the product] is not effective unless it works for 100% of consumers who take it. However, what Plaintiffs actually argue is that it has not been shown that [the product] works for *anyone*, i.e. that [the product] is 'snake oil.'" *Id*. at 47-48 (citing other cases that involve similar 'snake oil' claims including *In re Scotts EZ Seed Litig*., 304 F.R.D. 397, 408 (S.D.N.Y.

2015); *Delarosa v. Boiron, Inc.*, 275 F.R.D. 582, 594 (C.D. Cal. 2011); *Fitzpatrick v. General Mills, Inc.*, 263 F.R.D. 687, 701 (S.D. Fla. 2010)).

The claim stated in this case is the same. Fitbit charges its customers extra, and they pay that extra amount, for one purpose only. To track sleep. Fitbit sells the product with that clear representation on every package. That it will track sleep. Every consumer understands what sleep is. Someone awake and lying still in bed, or sitting in a chair without moving, is not sleeping. But that is all Fitbit's device can and does track. It does not and cannot track the hours a wearer sleeps, the times the wearer wakes up, nor the quality of the wearer's sleep--as Fitbit promises it will. Reduced to the essence of this suit, tracking movement is not tracking sleep.

## II. Fitbit's motion for judicial notice and attached documents.

In response to the Plaintiffs' allegations, Fitbit has asked this Court to take judicial notice of a slew of documents. Of course, that is improper since a Rule 12 motion is not based on facts and evidence extrinsic to the complaint. The Defendant's motion for judicial notice of an otherwise disputed fact should therefore be denied. Instead, Plaintiff contends that the parties can address the veracity of the outside sources relied upon by the Defendant during the course of discovery and present arguments to the Court in a Rule 56 proceeding.

Further, even if reviewed at this stage, the material does not help Fitbit, since these documents say the exact same thing as Plaintiffs' complaint alleges. The documents do not change the factual thrust of Plaintiffs' suit that the sleep tracker does not track sleep. Just the opposite, the documents reiterate that this is exactly what Fitbit represents to its customers the device will do.

*Fitbit claims to track sleep and sleep quality*. At Exhibit I, the Defendant has submitted the product manual for the Fitbit Flex. The manual explicitly represents: "Your Flex can track the length and quality of your sleep to help you improve your sleeping habits." Doc 63-11, page 6 of 6. At Exhibit D, the Defendant has submitted the material from the Fitbit Flex website. The website identically represents that the device can and will measure sleep: "Flex never sleeps—even when you do. Wear it all night to measure your sleep quality and how long you slept." Doc 63-6, page 6

of 11. Similarly, at Exhibit G, Fitbit has submitted website materials for the Fitbit Surge. The website identically represents: "Quantified sleep. Quality data. Make the most of your day by getting more out of your night. Surge automatically monitors how long and how well you slept." Doc 63-9, page 10 of 13.

*The Fitbit sleep-tracking device does not measure sleep*. Various materials submitted by Fitbit are scientific studies about sleep measurement. Rather than supporting Fitbit, the materials confirm that the devices cannot and do not measure sleep. Defendant's Exhibit N states: "Similar to actigraphy, the Fitbit system relies on movement and absence of movement to infer sleep and wake." Ex. N, Doc 63-16, page 5 of 6. Defendant's Exhibit M states: "With actigraphy, because sleep is inferred from lack of movement, subjects who are awake but lie motionless can be classified incorrectly as being asleep[.]" Ex. M, Doc 63-15, page 12 of 15. Because actigraphy "simply measures movement of a limb," it "does not measure sleep as it is commonly defined and does not measure the subjective experience of sleep[.]" Defendant's Ex. L, Doc 63-14, page 4 of 12.

*The Fitbit sleep-tracking device does not measure sleep quality*. Fitbit represents to customers their device tracks sleep quality. Again, the experts from the materials submitted by Fitbit point to the opposite conclusion. As the Complaint in this matter avers, the device does not and cannot do so. Professor Montgomery-Downs, one of the authors of Defendant's Exhibit N, stated "as far as distinguishing sleep stages, trackers that include only an accelerometer as their sensor, 'can't do what they claim[.]' … That's because although an accelerometer monitors your movement, 'you move the same amount whether you're in deep sleep, or lighter stages of sleep[.]'" Rachel Rettner, *Fitness Trackers & Sleep*: *How Accurate Are They?*, January 20, 2014, *available at http://www.livescience.com/42710-fitness-trackers-sleep-monitoring-accuracy.html* (Complaint, ¶ 10 (n. 1), attached hereto as Plaintiffs' Exhibit 1). And, Dr. Lisa Meitzer, a sleep researcher, noted that studies of sleep trackers using accelerometers show that these devices provide "misleading information[.]" *Id*. But maybe these researchers are just too picky, and the consumer experience has been one of satisfaction.

*Reviewers similarly complain the Fitbit sleep tracking device doesn't work.* Defendant's Exhibit J is a review of the Fitbit One written by Brent Rose, and published in Gizmodo. Mr. Rose wrote: "The sleep monitoring is buggy." Ex. J, Doc 63-12, Page 4 of 7. Mr. Rose describes the data from the sleep tracking device as having "such a gigantic margin of error [that] one has to assume this data is essentially unusable." Ex. J, Doc 63-12, Page 5 of 7. Similarly, Chris Velazco, a reviewer for TechCrunch, explained the device did not track his sleep. "I could never get the Fitbit to proffer an amount time of time slept that matched up with how much sleep I thought I got." http://techcrunch.com/2012/11/18/fitbit-one-review-slightly-flawed-but-still-a-great-way-to-quantify-yourself/ (Complaint ¶ 10 (n. 1), attached hereto as Plaintiffs' Exhibit 2.)

Fitbit compares the Fitbit sleep tracking device to a speedometer or a thermometer. Defendant's Brief, Doc 63, page 12 of 22. That's an interesting comparison. Would consumers be satisfied with a speedometer that told them they were traveling at 50 mph while parked in their garage? (Fitbit would insist that the speedometer works, it's just not "accurate.") How about a thermometer that told them that their child had a fever of 105 degrees, when, in fact, he had no fever at all? That's the problem with the Fitbit movement tracker—it tells consumers that they were sleeping when, in fact, they are awake.

Fitbit's response is that "[n]o reasonable consumer could share Plaintiff's alleged expectation that Fibit's $99-$120 fitness trackers were intended to deliver the precision of polysomnography[.]" Defendant's Brief, Doc 63, page 16 of 22. Nice try, but this case is about snake oil—not precision. Fitbit could try to get customers to pay an extra $30 to add a feature which tracks movement in bed. That is what the device does. What it does not do is track sleep.

As to what reasonable consumers expect, they expect a lot from battery-operated devices. Putative class members carry a battery-operated phone that has more computing power than all of NASA possessed when it first put a man on the moon. Therefore, they would reasonably expect manufacturers of electronic devices to deliver on their promises. Further, it is not as if Fitbit will develop evidence that consumers have priced polysomnography equipment at Best Buy, but settled on a Fitbit sleep tracker instead for approximately $100. The reality is that consumers who never

considered tracking their sleep, and most likely have never heard of polysomnography, were sold on the concept of tracking sleep by Fitbit. After selling consumers on the concept of tracking sleep and sleep quality, and thereby setting consumer expectations, Fitbit wants to backtrack and argue that consumers should have known better than to believe that that its devices track sleep and sleep quality, versus only movement.

**III.   Argument.**

    **A.   The Plaintiffs' claims of deception are plausible.**

Fitbit argues the complaint is conclusory, in violation of *Iqbal* and *Twombly*. Fitbit insists that Plaintiffs' claims are not plausible, and plaintiffs have cited no 'facts' to buttress the assertion the device does not work.

"To determine whether a complaint states a claim sufficient to withstand dismissal, a court considers the contents of the complaint and its attached exhibits, documents incorporated into the complaint by reference and matters properly subject to judicial notice." *Henderson v. Gruma Corp.*, CV 10-04173 AHM (AJWx), 2011 U.S. Dist. LEXIS 41077, *6 (C.D. Cal. Apr. 11, 2011). And, the "court must accept as true all factual allegations contained in the complaint." *Id*. Here, the Plaintiffs have alleged multiple times that the Fitbit device does not track sleep or quality of sleep. They have supported those allegations, which must be accepted as true, with statements from professionals who study sleep and with consumer reviews. The Defendant argues that "[t]hese 'facts' miss the mark." Defendant's Brief, Doc 63, page 14 of 22. But a plaintiff's well-supported factual allegations does not "miss the mark," simply because a defendant proposes a different set of facts

In *Iqbal*, the Supreme Court held that "[w]hile legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

Fitbit makes uniform claims that its devices with a sleep-tracking function track hours slept and quality of sleep. This is represented on the packaging of the Fitbit device. The promise to

track sleep is what this case asserts Fitbit devices do not and cannot do. Defendant's contention that Plaintiff's complaint contains only conclusory averments, and pleads no facts in support, is wrong. The complaint avers multiple and specific facts confirming this issue, including reports from experts, consumer complaints, customer reviews, and others. Complaint, ¶¶ 10 (n. 1), 11, 12, 13, and 38(a) – (c).

For instance, Dr. Irshaad Ebrahim from the London Sleep Centre explained that motion trackers are "not measuring sleep, simply motion—not muscle tone, brain waves, heart rate or eye movement. You cannot infer quality of sleep from motion and tell what is crucial REM … sleep and what is not." *Sleep sensors*: *Waking up to the need to study our night's rest*, THE GUARDIAN, Aug. 22, 2014, Complaint ¶¶ 11 and 38(a) attached hereto as Plaintiffs' Exhibit 3. Dr. Michael Breus said that using motion trackers to purportedly track sleep is not dangerous, "but it's a garbage-in, garbage out situation[.]" *Id*. And, while two studies of Fitbit One's sleep tracking function found that it both overestimated and underestimated sleep, according to Dr. Lisa Meltzer, the studies were consistent in that the Fitbit provided "misleading information[.]" *Id*.

Consumers who reviewed the Fitbit sleep-tracking device likewise complained it didn't track their sleep. Complaint, ¶¶ 10, 38, Doc 60; Defendant's Ex J; Plaintiffs' Ex 2. The Complaint quotes the statements of Dr. Ebrahim that the Fitbit devices do not measure sleep or quality of sleep. Complaint, ¶¶ 11, 38, Doc 60. The Complaint specifically references independent reviews indicating that the sleep-tracking function does not work. Complaint, ¶¶ 10, 38, Doc 60. Fitbit's contention that these are not well-pled facts and are conclusory is incorrect. Defendant's Brief, Doc 63, p. 14 of 22.

Here, the Plaintiffs factually allege Defendant represented that its device could track sleep. This allegation is not conclusory, and rather is supported by numerous documents, including exhibits filed by the Defendant itself. The Plaintiffs further allege that the Fitbit devices do not and cannot track sleep. This allegation is also not conclusory, and rather is supported by numerous documents, including exhibits filed by the Defendant itself. The factual support is from users, reviewers, and sleep professionals that explain why these devices cannot and do not track sleep or

sleep quality. Complaint ¶¶ 10 (n.1), 11, 12, 13, 38(a)-(c), 49, 57. So, the Plaintiffs allegations are neither "implausible" nor "conclusory."

### B. Fitbit cannot disclaim its own representations.

Fitbit argues that the Plaintiffs do not challenge the ability of the device to track sleep, but instead challenge the accuracy of the device to the minute, and to specific percentages on the effectiveness of periods of sleep. Defendant's Brief, Doc 63, p. 9 of 22. But those statements do not come from Plaintiffs. They are directly from the representations on the Fitbit packaging, which states "Track your night" and lists "[h]ours slept," "times woken up," and "sleep quality." Further, the packaging clearly includes an image labeled "sleep" with a clock underneath purportedly tracking hours and minutes. Complaint, Ex. 2 (Doc. 60-2).

Fitbit knows that the instant case isn't about minutes or percentages. If the device does not track sleep *at all*, then seconds, minutes, hours and percentages are irrelevant.

Fitbit diligently tries to cloud the issue, but finally concedes the controlling issue very accurately in its own brief when it states that Fitbit "only promises that its trackers can track sleep." Defendant's Brief, Doc 63, p. 15 of 22. The factual issue in this case is whether that representation, which forms the sole basis to pay more for this product, is true or false.

### C. Fitbit devices do not do what they claim to do.

Fitbit argues that what it really meant to say was not that Fitbit can track sleep, but rather, that Fitbit can track motion, and from that you can infer sleep. That is not what Fitbit represented to its customers. It collected millions from its customers to track their sleep. Can the device do so? Plaintiffs assert it cannot. Defendant disagrees. That factual dispute is not the basis for a dismissal under Rule 12.

The argument that tracking movement should be treated as a proxy for tracking sleep fails. Fitbit repeatedly represents that its device can track "hours slept," and measure "sleep quality," however "[y]ou cannot infer quality of sleep from motion[.]" Complaint ¶¶ 11 and 38, Doc 60, quoting Dr. Irshaad Ebrahim of the London Sleep Center. Consumers who have reviewed the device have found that, not only cannot track sleep quality, it cannot even track how long the user

OPPOSITION TO MOTION TO DISMISS
Case No. 3:15-cv-2077-JD                                                                    Page - 7 -

slept. Complaint ¶ 38, Doc 60. These reviews are consistent with the named Plaintiffs' experience using their Fitbit devices. Complaint ¶¶ 12 and 13, Doc 60.

**D.  A reasonable consumer would expect Fitbit devices to perform as promised.**

Fitbit asks this court at page 16 of its brief to conclude that because it now admits (contrary to its packaging, dashboard, website, etc.) that its devices only track movement, and not sleep, it is unreasonable for consumers to expect the devices to do what Fitbit promised, and track their sleep. Defendant's Brief, Doc 63, p. 16 of 22. No legal support is given for this. Fitbit could honestly and lawfully market its device as being able to 'track movement while in bed.' It did not market the devices in this way because movement is not sleep, and you cannot infer sleep quality from movement. That is merely "a garbage-in, garbage-out situation[.]" *Sleep sensors*: *Waking up to the need to study our night's rest*, THE GUARDIAN, Aug. 22, 2014, attached as Plaintiffs' Ex. 3.

**E.  Whether a representation would mislead a reasonable consumer is normally a question of fact.**

"Whether a product label is deceptive so as to mislead a reasonable consumer is normally a question of fact incapable of resolution on a motion to dismiss." *Pratt v. Whole Food Market California, Inc.*, No. 5:12-cv-05652-EJD, 2015 U.S. Dist. LEXIS 134968, at *15 (N.D. Cal. Sept. 30, 2015). Only in rare cases will a court find a lack of deception as a matter of law. *Id.* at *15-16. That rare exception applies to well-known facts of life, such as the fact that glass can break under impact. *Id.* at *16, citing *Williamson v. Apple, Inc.*, No. 5:11-cv-00377 EJD, 2012 U.S. Dist. LEXIS 125368, at *17-18 (N.D. Cal. Sept. 2, 2012); see *Werbel ex rel. v. Pepsico inc.*, No. 09-cv-04456-SBA, 2010 U.S. Dist. LEXIS 76289, at *10 (N.D. Cal. July 2, 2010) ("There are no representations that the Crunch Berries are derived from real fruit nor are there any depictions of any fruit on the cereal box. To the contrary, the packaging clearly states that [the] product is a 'SWEETENED CORN & OAT CEREAL.' In short, no reasonable consumer would be deceived into believing that Cap'n Crunch 'has some nutritional value derived from fruit.'").

Unlike glass, which has been used by consumers for hundreds of years, personal sleep-tracking devices are new to the market, and consumer expectations are formed by manufacturers'

representations. The Defendant represented to consumers that its products would track sleep and measure sleep quality. Consumers had no way to know that those representations were false. Therefore, this case is not one of those rare cases where a court may find a lack of deception as a matter of law.

**F.  Fitbit's representations that its devices could track sleep and sleep quality were not puffery.**

Fitbit also claims its product packaging is only puffery and not specific factual representations. Fitbit markets the product on the packaging and its website that its devices will track hours slept and sleep quality. Complaint, ¶¶ 30, Doc 60; Defendant's Ex. G, Doc 63-9, page 10 of 13. Fitbit cites the Ninth Circuit for the proposition that a "statement is considered puffery if the claim is extremely unlikely to induce consumer reliance[.]" *Newcal Indus. Inc. v. Ikon Office Solution*, 513 F.3d 1038, 1053 (9th Cir. 2008). The sleep tracker does not fit into that description at all. The product is sold only for the purpose of tracking sleep. Fitbit does not explain why those statements would be "extremely unlikely to induce consumer reliance." After all, if a sleep-tracking device cannot track sleep or measure quality of sleep, what would be the purpose of paying for it? Fitbit doesn't say.

The Defendant cites *Frenzel v. AliphCom*, 76 F. Supp. 3d 999 (N.D. Cal. 2014) for the proposition that statements that its device can track sleep are mere puffery. In *Frenzel*, the plaintiff claimed that the Jawbone device had power problems, so the representations regarding the functionality of the device constituted "affirmative representations regarding Jawbone UP's reliability" which were not true. *Id.* at 1011. The court held: "Frenzel's attempt to characterize the statements on the Jawbone UP box as affirmative representations regarding the product's reliability is not supported by what the statements actually say. A reasonable consumer would not understand the statement, 'KNOW YOURSELF, LIVE BETTER,' for example, to represent a guarantee regarding Jawbone UP's quality or reliability." *Id.* at 1012.

The issue here is not accuracy or reliability. It is the sole, specific characteristic of the product for which the consumer pays a $30 premium: tracking sleep. If the product does not do

so, the representation is materially false, not immaterial puffery. Here, Fitbit offered inaccurate descriptions of its product's specific characteristics. Such inaccurate descriptions are actionable. *Chacanaca v. Quaker Oats Co.*, 752 F. Supp. 2d 1111, 1125 (N.D. Cal. 2010). In *Chacanaa*, the district court declined to hold that the word "wholesome" was non-actionable puffery, noting that an "insistence that a product with (allegedly) dangerous additives is nonetheless 'wholesome,' … arguably *could* mislead a reasonable consumer." (Emphasis sic.) *Id*. at 1125-26. The court also held that a reasonable consumer "might be duped" by an inference that healthy children are fueled with Chewy Bars based on photographic depictions of oats, nuts, and children in soccer uniforms that appeared on product packaging. *Id*. at 1126. The representation that the Fitbit is being purchased to "track sleep" is far more specific, material, and critical than a general representation of "wholesomeness."

In *Torrent v. Yakult U.S.A., Inc.*, No. SACV 15-00124-CJC(JCGx), 2015 U.S. Dist. LEXIS 92142 (C.D. Cal. July 14, 2015), the court held that statements that Yakult contains a "unique strain of probiotic bacteria" that helps to "balance [one's] digestive system" were "specific and detailed factual assertions that a consumer could rely on, not vague or outrageous generalizations." *Id*. at *8-9. The statements dealt with the products essential characteristic, which the complaint asserted did not work, was not true. That is the instant suit against Fitbit.

In *Dorsey v. Rockhard Laboratories, LLC*, No. CV 13-07557 DDP (RZx), 2014 U.S. Dist. LEXIS 132161 (C.D. Cal. Sept. 19, 2014), the defendants represented that their product was a "Sexual Performance Enhancer for Men" that was "Fast & Effective," with "Rockhard Results." *Id*. at *14. The district court held that those representations were not puffery. *Id*. In rejecting the defendant's puffery argument, the *Dorsey* court observed that when the statements were "taken as a whole and in context", the defendant made "specific claims regarding the benefits of taking [its product]. These statements create the impression that, by taking the product, a consumer will have enhanced sexual performance, that the effect will happen quickly, and that the consumer can expect to have a 'Rockhard' erection." *Id*. at *15.

Fitbit's repeated assertions that its sleep-tracking devices can and do track sleep, measuring how long the wearer slept, the times the wearer woke up in a night, and the quality of that sleep, are not vague puffery generalizations.

**G. The Plaintiffs have pled fraud with sufficient specificity.**

Following objection by Defendant, Plaintiffs filed an amended pleading providing facts and evidence dealing with the Rule 9 elements of fraud, to allege fraud with specificity. Plaintiffs allege that the sleep-tracking device cannot track hours slept, times woken up, or sleep quality, because the Fitbit device can only measure movement and not sleep. Complaint, ¶¶ 3, 4, and 9, Doc 60. Plaintiffs allege that the device "cannot infer quality of sleep from motion and tell what is crucial REM [rapid eye movement] sleep and what is not." Complaint, ¶ 11, Doc 60. The complaint avers that Fitbit factually represents that the sleep-tracking devices could track hours slept, times woken up, and quality of sleep and further specifies that those representations "appear on the actual physical packaging of the device itself." Complaint, ¶ 8, Doc 60. The complaint alleges that "consumers who purchase these products and pay the extra amount for the function being factually represented by Defendant as able to track sleep are being lied to, and do not receive the function for which they paid." Complaint, ¶ 14, Doc 60.

The Complaint provides facts allowing a reasonable fact finder to conclude that the device did not work by complaints from customers; consumer reviews of the failure; and expert opinions confirming the Fitbit does not and cannot track sleep. Complaint ¶¶ 10 (n. 1), 11, 12, 13, 38(a) – (c).

Generally, to satisfy Rule 9(b), a plaintiff must identify who, what, when, where, and how of the misconduct charged as well as what is false or misleading about the statement, and why it is false. *Elements Spirits v. Iconic Brands*, No. CV 15-02692 DDP, 2015 U.S. Dist. LEXIS 124645, *6 (C.D. Cal. Sept. 17, 2015). The Plaintiffs have met that standard.

- Who? Fitbit.
- What? Lied about the ability of its sleep-tracking device to measure a user's hours slept, times woken up, and quality of sleep.

- When? Continuously.
- Where? On its packaging. Complaint, ¶¶ 28, 30, Doc 60.
- How? Fitbit represented that its sleep-tracking device could track sleep and measure sleep quality, when in fact, it only attempts to track movement. Complaint, ¶¶ 35, 36, 38.
- Fitbit's representations are false and misleading because its sleep-tracking device cannot and does not track sleep, with lay, expert, and customer factual materials that it does not.

Fitbit argues that *more* is required. Fitbit argues that the Plaintiffs also must allege that this case is about accuracy, and that Plaintiffs relied on accuracy. Defendant's Brief, Doc 63, page 19 of 22. A claim that a product does not work, at all, is not about accuracy. This product was sold upon the representation that it tracked sleep and sleep quality. That is the only thing the sleep tracking function is to do. It is impossible for the plaintiffs and ***every*** customer to ***not*** have relied on that representation, for it is the sole reason to pay the increased price. The Complaint gives Fitbit clear notice of the nature of this claim, and alleges each element.

In support of its position, Fitbit cites to *Minkler v. Apple, Inc.*, 65 F. Supp. 3d 810 (N.D. Cal. 2014). In that case, the court framed the fraud issue as whether, "Apple Maps would always work flawlessly and without error." *Id.* at 821. In other words, the plaintiff conceded that Apple Maps could work and did work on occasion. Here, the Plaintiffs allege that the sleep-tracking function does not work on any occasion because it does not track sleep, only motion. Also, in *Minkler*, the plaintiff did not identify "with particularity the actual defect she experienced." *Id.* Here, the Plaintiffs have alleged with particularity that an accelerometer, which specifically tracks movement, cannot track sleep as represented on Fitbit's product packaging.

Fitbit also cites *In re iPhone 4S Consumer Litigation*, No. C 12-1127 CW, 2014 WL 589388 (N.D. Cal. Feb. 14, 2014). In that case, the court rejected the fraud allegation because the plaintiffs did "not allege any specific statement by Apple that expressly indicates that Siri would be able to answer every question or do so consistently." *Id.* at *6. In other words, Siri was functional—the software could answer some questions—just not perfectly. Here, Fitbit's

accelerometer does not track sleep. It does not measure the quality of sleep. As a sleep-tracking device, it is not functional.

This issue comes back to Fitbit's speedometer analogy. If your speedometer tells you that you are traveling at 50 mph while you are parked, is that an "accuracy" issue, with the only problem being that you are simply too picky? Or, has the company committed fraud when it represents that its speedometers track speed, when it cannot do so? Fitbit's position would be that you do not have a claim, because you are complaining about "accuracy." That is incorrect. *Rikos v. The Proctor & Gamble Co.*, 2015 U.S. App. LEXIS 14613 (6th Cir. 2015). "[Defendant's] argument attacks a theory of liability that Plaintiffs have not actually presented–that [the product] is not effective unless it works for 100% of consumers who take it. However, what Plaintiffs actually argue is that it has not been shown that [the product] works for *anyone*, i.e. that [the product] is 'snake oil.'" *Id*. at 47-48.

**H.    There is a defect; therefore, Plaintiffs' warranty claims, including their MMWA claim, do not fail.**

The Plaintiffs have alleged that Fitbit charges consumers $30 additional to purchase sleep-tracking. Complaint, ¶ 82, Doc 60. Sleep tracking is therefore an essential function of the device. The idea that sleep tracking is a key function of the device is supported by Fitbit's marketing, which shows the Fitbit products as providing two core functions: tracking your day, and tracking your night. Complaint, ¶ 30, Doc 60. Because the Fitbit products can't track sleep, they have lost half their promised functionality. Also, it should be undisputed that a sleep-tracking device that can't track sleep is defective. See *Salzman v. Bowen*, No. 2:07-CV-854-CW, 2010 U.S. Dist. LEXIS 2692, *12-13 ("a flaw that reduces the utility of the covered item would qualify as a 'defect'").

The Defendant cites *Minkler v. Apple, Inc.*, 65 F. Supp. 3d 810 (N.D. Cal. 2014) for the proposition that its devices are not defective simply because the sleep-tracking device doesn't work. In *Minkler*, the plaintiff alleged that Apple breached its iPhone 5 warranty because its Apple Maps software didn't work. *Id*. at 814.

Apple Maps was a single, non-essential software program (among many) in the iPhone 5. When it failed, Apple told its customers to use other mapping software in lieu of Apple Maps: "Apple CEO Tim Short posted a letter apologizing for Apple Maps' shortfalls and suggesting that customers use other applications or websites while Apple worked to improve the application." *Id*. at 814. In other words, consumers, while still using their iPhone 5s, could use Google Maps, or MapQuest instead of Apple Maps.

Here, Fitbit users were charged an extra amount solely for sleep tracking. Fitbit users do not have access to a free, alternative sleep-tracking device through their Fitbit. When the Fitbit sleep-tracking device cannot track users' sleep, the Fitbit product failed to perform a key function. So, the better analogy would be to compare the defect with Fitbit's sleep-device to an iPhone that could not place phone calls, but still allowed users to take selfies and surf the web.

**III. Conclusion.**

This matter is simple. Either Fitbit devices can track sleep, or they can't. If they can't perform the sole function promised on the package for which the extra is paid, this complaint states a claim upon which relief may be granted. Here, the fact that Fitbit's sleep-tracking device cannot distinguish between a user who is sitting still and a user who is sleeping is undisputed.

Fitbit insists that its representation that its device will track hours slept and measure quality of sleep is puffery. If that's true, then what exactly are consumers paying the extra $30 for when they buy the sleep-tracking function? A claim that a product can perform its essential function cannot be puffery. If a sleep-tracker cannot track sleep, it is hardly plausible for the manufacturer of that product to claim that it is not defective. So, while the Defendant would like to pretend that, even if its sleep-tracking device doesn't work, it can still prevail on these claims, that would only be possible through a contorted and erroneous reading of the law.

For all of the foregoing reasons, the Defendant's motion to dismiss should be denied.

| | | |
|---|---|---|
| DATED: February 5, 2016 | | DWORKEN & BERNSTEIN CO., L.P.A.<br>LAW OFFICES OF JOHN A. KITHAS<br>LAW OFFICE OF CHRISTOPHER J. MOROSOFF<br><br>Attorneys for Plaintiffs JAMES P. BRICKMAN and MARGARET CLINGMAN, et al. |

                                                 */s/ Patrick J. Perotti*
                                                By Patrick J. Perotti

## **ECF ATTESTATION**

I, Patrick J. Perotti, am the ECF User whose ID and Password are being used to file this document. I attest that concurrence in the filing of this document has been obtained from the signatory.

Dated: February 5, 2016                    DWORKEN & BERNSTEIN CO., L.P.A.

                                           By: *s/Patrick J. Perotti*