WILLIAM L. STERN (CA SBN 96105)
WStern@mofo.com
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, California 94105
Telephone: 415.268.7000

JAMES W. HUSTON (CA SBN 115596)
JHuston@mofo.com
ERIN M. BOSMAN (CA SBN 204987)
EBosman@mofo.com
JULIE Y. PARK (CA SBN 259929)
JuliePark@mofo.com
MORRISON & FOERSTER LLP
12531 High Bluff Drive
San Diego, California 92130-2040
Telephone: 858.720.5100
Facsimile: 858.720.5125

Attorneys for Defendant
FITBIT, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMES P. BRICKMAN, individually and as a representative of all others similarly situated,<br><br>                Plaintiff,<br><br>v.<br><br>FITBIT, INC.,<br><br>                Defendant. | Case No. 3:15-cv-2077-JD<br><br>**DEFENDANT FITBIT, INC.'S REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' FOURTH AMENDED COMPLAINT**<br><br>Date:   March 16, 2016<br>Time:  10:00 a.m.<br>Ctrm:  11, 19th Floor<br><br>The Honorable James Donato<br><br>Date Action Filed:   May 8, 2015 |

**TABLE OF CONTENTS**

**Page**

I. INTRODUCTION ...................................................................................................................II
II. ARGUMENT ........................................................................................................................ 2
    A. Plaintiffs Still Do Not Allege a Plausible Claim of Deception To Support Their Fraud-Based Claims ............................................................................................ 2
        1. Plaintiffs' Core Theory in This Case Remains Fundamentally Flawed .................................................................................................... 2
        2. Plaintiffs Still Do Not Allege Facts To Show That They, or Any Reasonable Consumer, Were or Would Be Misled by Fitbit's Representations .................................................................................... 3
        3. Fitbit's Trackers Do What They Claim To Do, and Plaintiffs Do Not Show Otherwise ................................................................................ 5
        4. General Representations Regarding Sleep Tracking and Quality Are Non-Actionable Puffery ........................................................................ 6
    B. Plaintiffs Have Not Pled Their Case with the Requisite Particularity Required by Rule 9(b) ............................................................................................... 7
    C. Plaintiffs Cannot Save Their Warranty Claims .......................................................... 9
        1. Plaintiffs Have Alleged No Defect .................................................................. 9
        2. Plaintiffs' Magnuson-Moss Warranty Act Claim Also Fails ....................... 9
III. CONCLUSION ................................................................................................................... 10

# TABLE OF AUTHORITIES

Page

**CASES**

*Consumer Advocates v. Echostar Satellite Corp.*,
   113 Cal. App. 4th 1351 (2003) .................................................................................................. 6

*Ebeid ex rel. U.S. v. Lungwitz*,
   616 F.3d 993 (9th Cir. 2010) ...................................................................................................... 7

*Figy v. Frito-Lay N. Am., Inc.*,
   67 F. Supp. 3d 1075 .................................................................................................................... 3

*Figy v. Frito-Lay N. Am., Inc.*,
   No. 13-3988 SC, 2014 WL 3953755 (N.D. Cal. Aug. 12, 2014) ............................................. 7

*Ford v. Hotwire, Inc.*,
   No. 07-CV-1312 H(NLS), 2007 WL 6235779 (S.D. Cal. Nov. 19, 2007) ............................... 2

*Frenzel v. Aliphcom*,
   76 F. Supp. 3d 999 (N.D. Cal. 2014) ("*Frenzel I*") ............................................................. 1, 6

*Frenzel v. Aliphcom*,
   No.14-cv-03587-WHO, 2015 WL 4110811 (N.D. Cal. Jul. 7, 2015) ("*Frenzel II*") ............... 8

*Garcia v. Sony Computer Entm't Am., LLC*,
   859 F. Supp. 2d 1056 (N.D. Cal. 2012) ..................................................................................... 4

*Glen Holly Entm't, Inc. v. Tektronix, Inc.*,
   352 F.3d 367 (9th Cir. 2003) ...................................................................................................... 2

*Henderson v. Gruma Corp.*,
   No. CV 10-04173 AHM, 2011 WL 1362188 (C.D. Cal. Apr. 11, 2011) .................................. 2

*In re Bridgepoint Educ., Inc. Sec. Litig.*,
   No. 3:12-CV-1737 JM WMC, 2013 WL 5206216 (S.D. Cal. Sept. 13, 2013) ......................... 6

*In re Ferrero Litig.*,
   794 F. Supp. 2d 1107 (S.D. Cal. 2011) ...................................................................................... 8

*In re Tobacco II Cases*,
   46 Cal. 4th 298 (2009) ................................................................................................................ 8

*Johnson v. Mitsubishi Digital Elecs. Am., Inc.*,
   578 F. Supp. 2d 1229 (C.D. Cal. 2008) ..................................................................................... 6

*Jovine v. Abbott Labs., Inc.*,
   795 F. Supp. 2d 1331 (S.D. Fla. 2011) ...................................................................................... 2

# TABLE OF AUTHORITIES
## (Continued)

**Page**

*Kane v. Chobani, Inc.*,
   973 F. Supp. 2d 1120 (N.D. Cal. 2014) .................................................................................. 4, 7

*Lavie v. Procter & Gamble Co.*,
   105 Cal. App. 4th 496 (2003) ................................................................................................. 2, 4

*Minkler v. Apple, Inc.*,
   65 F. Supp. 3d 810 (N.D. Cal. 2014) ......................................................................................... 9

*Pratt v. Whole Food Market California, Inc.*,
   No. 5:12-cv-05652-EJD, 2015 WL 5770799 (N.D. Cal. Sept. 30, 2015) .................................. 7

*Tietsworth v. Sears, Roebuck & Co.*,
   720 F. Supp. 2d 1123 (N.D. Cal. 2010) ..................................................................................... 9

*Werbel v. Pepsico, Inc.*,
   No. C 09-04456 SBA, 2010 WL 2673860 (N.D. Cal. July 2, 2010) ......................................... 7

**OTHER AUTHORITIES**

Fed. R. Evid. 201 ............................................................................................................................ 1

Fed. R. Civ. P. 9(b) ............................................................................................................... 1, 7, 8

Fed. R. Civ. P. 12 ........................................................................................................................... 5

## I. INTRODUCTION

Try as they might, Plaintiffs cannot distance themselves from the flawed premise underlying their Fourth Amended Complaint ("4AC") and every version of the pleading that came before it: that Fitbit's method of measuring sleep using movement-based data somehow *necessarily* renders each of the Company's sleep-tracking statements false or misleading. That premise is not plausible, not supported by Plaintiffs' allegations, and, indeed, is contradicted by the very articles on which they rely. Plaintiffs still do not allege any facts to show that they or any reasonable consumer would be deceived by Fitbit's representations concerning its sleep tracking technology. Such a finding would depart from Judge Orrick's holding in *Frenzel v. Aliphcom*, 76 F. Supp. 3d 999 (N.D. Cal. 2014) ("*Frenzel I*"), where the court dismissed indistinguishable claims, finding not actionable the manufacturer's representation that an activity tracker helps users "understand your sleep and wake up refreshed."

Nor do Plaintiffs allege their fraud and fraud-based claims with the requisite specificity under Rule 9(b). Even if the Court were to credit Plaintiffs' "simplified" theory that Fitbit's devices do not track sleep *at all*, Plaintiffs have not adequately identified any purported misstatement that they relied on in making their respective purchases. Finally, Plaintiffs still do not allege any defect that renders Fitbit's devices unfit for their ordinary purpose. Plaintiffs' warranty claims fail as a result. Now in their fifth iteration, Plaintiffs' claims are no more plausible, and no more cognizable, than when they were originally alleged more than nine months ago. Fitbit respectfully requests that the Court dismiss Plaintiffs' 4AC with prejudice.[1]

---

[1] Plaintiffs include a one-sentence objection to Fitbit's Request for Judicial Notice of various documents. (Opp. at 2:12-13.) Plaintiffs provide no legal authority nor do they address the fact that Fitbit established that the requirements of Federal Rule of Evidence 201 and of applicable law are met. (RJN at 2.) Indeed, Plaintiffs then go on to address the substance of Fitbit's exhibits. Consequently, Fitbit's Request for Judicial Notice is effectively unopposed.

## II. ARGUMENT

### A. Plaintiffs Still Do Not Allege a Plausible Claim of Deception To Support Their Fraud-Based Claims

Plaintiffs do not dispute that they must *plausibly* allege that members of the public are likely to be deceived by Fitbit's purported statements regarding sleep tracking. *See Henderson v. Gruma Corp.*, No. CV 10-04173 AHM (AJWx), 2011 WL 1362188, at *10 (C.D. Cal. Apr. 11, 2011) (citing *Freeman v. Time, Inc.*, 68 F.3d 285, 289 (9th Cir. 1995)) (UCL, CLRA, and FAL); *Jovine v. Abbott Labs., Inc.*, 795 F. Supp. 2d 1331, 1342 (S.D. Fla. 2011) (FDUTPA). "'Likely to deceive' implies more than a mere possibility that the advertisement might conceivably be misunderstood by some few consumers viewing it in an unreasonable manner." *Lavie v. Procter & Gamble Co.*, 105 Cal. App. 4th 496, 508 (2003); *see also Ford v. Hotwire, Inc.*, No. 07-CV-1312 H(NLS), 2007 WL 6235779, at *3 (S.D. Cal. Nov. 19, 2007) (" 'Likely' to deceive requires that deception is 'probable,' not merely 'possible.' " (citation omitted)). Similarly, Plaintiffs must allege a plausible claim of deception to support their fraud and negligent misrepresentation claims, both of which require *justifiable* reliance on the purported misstatement.[2] *Glen Holly Entm't, Inc. v. Tektronix, Inc.*, 352 F.3d 367, 379 (9th Cir. 2003). Plaintiffs still have not shown that their allegations satisfy these standards.

#### 1. Plaintiffs' Core Theory in This Case Remains Fundamentally Flawed

Plaintiffs' case boils down to a simple premise: movement and sleep are not the same thing; therefore, using movement to track sleep *necessarily* "does not work," and Fitbit's representations are *necessarily* false. (*See* Opp. at 1:15-19, 2:9 ("Reduced to the essence of this suit, tracking movement is not tracking sleep.").) But as Fitbit demonstrated in its Motion, this theory is deeply flawed and cannot support a plausible claim of deception. Plaintiffs fail to show otherwise.

---

[2] As noted in Fitbit's Motion, Plaintiffs' unjust enrichment claim is likewise based on Plaintiffs' allegations of deception. (*See* Mot. at 6:13-15.) Plaintiffs do not dispute this.

FITBIT, INC.'S REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' FOURTH AMENDED COMPLAINT
CASE NO. 3:15-CV-2077

2

Plaintiffs do not dispute that the only way to track sleep is through indirect measurements. Indeed, Plaintiffs themselves describe the "accepted scientific standard for sleep tracking" (4AC ¶ 9)—polysomnography—as a method that measures "brain waves, eye movements, muscle activity, heart rhythm, and more" to track sleep. (*Id.*) But, as explained in Fitbit's Motion (Mot. at 7:8-11), "brain waves" are not sleep. Nor are eye movements, muscle activity, or heart rhythm. Rather, they are indicators of sleep used by a particular methodology. Movement is no different. If Plaintiffs were correct, even sleep tracking devices that used the "accepted scientific standard for sleep tracking" would "not work," and any representations that they "track sleep" would be misleading. For that matter, Plaintiffs might as well sue every thermometer manufacturer for duping consumers by offering a device to measure temperature when, in fact, all it does is measure the expansion of mercury in a tube. Plaintiffs offer no response to this argument.

Plaintiffs' admission is revealing. This is not a case about fraud, rather, it is Plaintiff's quarrel with Fitbit's decision to use one sleep-tracking methodology versus another, even though *all* methodologies measure sleep indirectly.

### 2. Plaintiffs Still Do Not Allege Facts To Show That They, or Any Reasonable Consumer, Were or Would Be Misled by Fitbit's Representations

A claim of false advertising must test the words the defendants actually used, not some made-up representations. Here, Plaintiffs do not dispute that they have greatly exaggerated their description of Fitbit's purported representations. (*See* Mot. at 9:7-10:2.) Accordingly, to the extent Plaintiffs' fraud-based claims are premised on non-existent representations regarding "specific, mathematical measurements and calculations as to the amount and quality of the wearer's sleep" (4AC ¶¶ 86, 106) and other purported representations Fitbit did not make (*see, e.g.*, Mot. at 11:26-12:9), dismissal is warranted.

Focusing on the words themselves, Fitbit promises only that its fitness trackers can track and measure certain aspects of the wearer's sleep. (Mot. at 9:27.) Plaintiffs, however, offer no explanation as to what a reasonable consumer, or they themselves, would take the term "tracking sleep" to mean. This is fatal. *Figy v. Frito-Lay N. Am., Inc.*, 67 F. Supp. 3d 1075, 1089 (N.D. Cal. 2014) (finding "All Natural" claims implausible as a matter of law where plaintiff failed to

define what "All Natural" means or why challenged ingredients were unnatural); *Kane v. Chobani, Inc.*, 973 F. Supp. 2d 1120, 1137-38 (N.D. Cal. 2014) (dismissing with prejudice "All Natural" claims where plaintiff failed to plausibly allege how "'highly processed unnatural substances'" rendered challenged products unnatural (citing *Pelayo v. Nestle USA Inc.*, 989 F. Supp. 2d 973, 2013 WL 5764644, at *5 (C.D. Cal. 2013) (dismissing with prejudice "All Natural" claims where plaintiff failed to plausibly allege challenged ingredients were unnatural)).

Plaintiffs' 4AC implies that Plaintiffs and reasonable consumers who read Fitbit's sleep-tracking representations somehow expected Fitbit to use polysomnography (4AC ¶ 9), rather than movement-based measurements, because polysomnography is the "accepted" method of tracking sleep. But Plaintiffs provide no basis for that expectation in the 4AC or their Opposition. Indeed, Plaintiffs appear to have abandoned this theory in their Opposition altogether, stating that most consumers likely have never heard of polysomnography. (*See* Opp. at 4:27-5:2.)

Nevertheless, Plaintiffs assert, without explanation, that consumers "expect a lot from battery-operated devices" (Opp. at 4:22) and would thus expect Fitbit to do something *other than* use movement to indicate sleep. (Opp. at 5:2-5.) Unspecified "high" expectations are not enough. Plaintiffs have not alleged or explained why *any* reasonable consumer—let alone "a significant portion of the general consuming public"—would adopt Plaintiffs' subjective interpretation of Fitbit's sleep tracking statements to imply use of a certain methodology or a certain degree of precision and exactitude. *See Lavie*, 105 Cal. App. 4th at 508 ("'Likely to deceive' means more than a mere possibility that the advertisement might conceivably be misunderstood by some few consumers viewing it in an unreasonable manner"); *Garcia v. Sony Computer Entm't Am., LLC*, 859 F. Supp. 2d 1056, 1064 (N.D. Cal. 2012) (granting motion to dismiss CLRA and UCL misrepresentation claims) (citations and internal quotations omitted).

Fitbit does *not* "ask[] this court . . . to conclude that it is unreasonable for consumers to expect the devices to do what Fitbit promised, and track their sleep." (Opp. at 8:6-7.) Rather, Fitbit urges the Court to reject Plaintiffs' attempt to substitute their unique, subjective, and unsupported expectations regarding Fitbit's sleep-tracking *methodology* for the reasonable expectations of the general consuming public.

### 3. Fitbit's Trackers Do What They Claim To Do, and Plaintiffs Do Not Show Otherwise

Fitbit promises that its trackers will track sleep. They do, and Plaintiffs have not alleged facts to show otherwise. Plaintiffs "factual" allegations that Fitbit's sleep tracking function does not work are conclusory and unsupported. Plaintiffs ignore Fitbit's discussion of why Plaintiffs' articles and reviews are inapposite. (Mot. at 7:27-8:10.) Instead, they simply repeat their conclusory allegations. For instance, Plaintiffs again extract a quote from a researcher who stated that one "cannot infer quality of sleep from motion." (Opp. at 7:25). However, the quote is taken out of context and clearly refers to the stages of sleep and different sleep cycles, which Fitbit does not claim to track or measure.

Plaintiffs also repeat their conclusory statement that consumers who reviewed the device found that it cannot track sleep quality (*id.* at 7:26-27), ignoring and failing to address that these reviews neither cover the products Plaintiffs purchased nor provide specific support regarding Plaintiffs' claims. At best, Plaintiffs' newly added "factual" allegations show only that certain reviewers have critiqued sleep tracking products and methodologies, *as compared to* other products and methodologies. (*See, e.g.*, Opp., Ex. A at 3 ("Compared with [polysomnography], the accelerometer-based fitness trackers are 'easy to trick' . . . .").) But as Plaintiffs point out, "[t]he issue here is not accuracy or reliability. It is the sole, specific characteristic of the product for which the consumer pays a $30 premium: tracking sleep." (Opp. at 9:26-27.) None of these new "factual" allegations state that Fitbit's devices do not track sleep. Instead, Plaintiffs continue to rely on their bald assertions, which the Court already rejected as insufficient: "But you cannot come in here and just say Take my word for it, Fitbit doesn't work, and that's what you've done." (Nov. 10, 2015 Hearing Tr. at 21:25-22:2.)

In the end, Plaintiffs miss the point. They contend that the question of whether Fitbit's devices do or do not track sleep is a "factual dispute [that] is not the basis for a dismissal under Rule 12." (Opp. at 21-22.) They are wrong. The question is whether they have *plausibly alleged*, consistent with their theory of misrepresentation, that Fitbit trackers do not track sleep *at all*—or, as the Court suggested, whether Fitbit's method of using movement is "completely

bankrupt as a sleep-tracking approach." (Hearing Tr. 11:7-8.) Not one of Plaintiffs' factual allegations supports this conclusion.

### 4. General Representations Regarding Sleep Tracking and Quality Are Non-Actionable Puffery

Plaintiffs dispute that Fitbit's *generalized* statements regardingسleep tracking and sleep quality constitute non-actionable puffery. But no case cited or argument made in Plaintiffs' Opposition supports their contention. First, Plaintiffs still have not shown why the Court's holding in *Frenzel I*, 76 F. Supp. 3d 999, does not apply here. (*See* Oct. 20, 2015 Reply in Support of Fitbit's Mot. to Dismiss, ECF No. 46, at 5:21-27.) As Judge Orrick held in that action, statements that an activity tracker helps users "understand your sleep and wake up refreshed" constitute "the sort of vague statements about general functionality that are not actionable under California's consumer protection statutes." *Frenzel I*, 76 F. Supp. 3d at 1011. This case is no different, and the same conclusion should be reached here.

Second, courts have repeatedly held that generalized statements regarding "quality" are non-actionable puffery. *See, e.g.*, *In re Bridgepoint Educ., Inc. Sec. Litig.*, No. 3:12-CV-1737 JM WMC, 2013 WL 5206216, at *19-20 (S.D. Cal. Sept. 13, 2013) (finding that "vague statements concerning quality without providing specific details about what 'quality' meant" constituted non-actionable puffery); *Johnson v. Mitsubishi Digital Elecs. Am., Inc.*, 578 F. Supp. 2d 1229, 1238-39 (C.D. Cal. 2008) (television manufacturer's "promise to deliver unsurpassed picture quality" constituted puffery); *Consumer Advocates v. Echostar Satellite Corp.*, 113 Cal. App. 4th 1351, 1361 (2003) (satellite broadcaster's assertion that it provided "crystal clear digital" video quality was puffery). Fitbit's *general* alleged statements about sleep quality are likewise non-actionable puffery and do not give rise to a consumer expectation that Fitbit's devices will measure sleep or sleep quality with the precision of a sleep lab.

Dismissal is warranted when the allegations do not and cannot plausibly show that reasonable consumers are likely to be deceived. "[W]here a court can conclude as a matter of law that members of the public are not likely to be deceived by the product packaging, dismissal is

appropriate." *Werbel v. Pepsico, Inc.*, No. C 09-04456 SBA, 2010 WL 2673860, at *3 (N.D. Cal. July 2, 2010). That is precisely the case here.[3]

### B. Plaintiffs Have Not Pled Their Case with the Requisite Particularity Required by Rule 9(b)

Plaintiffs concede that their claims for fraud, negligent misrepresentation, and violation of California's and Florida's consumer protection statutes must be pled with particularity under Rule 9(b). (Opp. at 11:4-13:12.) Plaintiffs are therefore required to allege the "who, what, when, where, and how" necessary to support the supposed fraud, as well as facts explaining why the alleged statements were false when made. *Ebeid ex rel. U.S. v. Lungwitz*, 616 F.3d 993, 998 (9th Cir. 2010) (plaintiff must allege "the who, what, when, where, and how of the misconduct charged" (internal quotation marks and citation omitted)). Fitbit showed in its Motion that Plaintiffs' allegations do not meet this standard. (Mot. at 12:10-14:20.) Plaintiffs' Opposition does not save their allegations.

<u>First</u>, Plaintiffs do not address Fitbit's arguments regarding their inability to allege, specifically or otherwise, that they relied on any claims regarding the *accuracy* of Fitbit's sleep tracking capabilities. Indeed, Plaintiffs state that their claims are "not about accuracy." (Opp. at 12:9; *compare* 4AC ¶ 36 (alleging that Fitbit represents that its sleep-tracking function can provide accurate numbers regarding sleep and that Fitbit's sleep-tracking function "does not and cannot accurately provide these numbers"). Thus, any allegations in the 4AC regarding the accuracy of Fitbit's trackers should be treated as abandoned.

---

[3] Plaintiffs cite to *Pratt v. Whole Food Market California, Inc.*, No. 5:12-cv-05652-EJD, 2015 WL 5770799, at *6 (N.D. Cal. Sept. 30, 2015), to argue that "whether a product label is so deceptive as to mislead a reasonable consumer is normally a question of fact incapable of resolution on a motion to dismiss." *Id*. This blanket statement is belied by the fact that courts frequently do grant motions to dismiss in these circumstances, indeed even in *Pratt* itself. *Id*. at *6 (stating that "it simply cannot be that Plaintiff thought ECJ referred to bamboo cane, sorghum cane, corn or cane berries as used on labels for chicken broth, ketchup, and instant oatmeal. . . . Such an allegation suspends reality too thin.") (citing *Levitt v. Yelp! Inc.*, 765 F.3d 1123, 1135 (9th Cir. 2014) ("In all cases, evaluating a complaint's plausibility is a 'context-specific' endeavor that requires courts to 'draw on . . . judicial experience and common sense.'")); *see also*, *e.g.*, *Figy v. Frito-Lay N. Am., Inc.*, No. 13-3988 SC, 2014 WL 3953755, at *9-10 (N.D. Cal. Aug. 12, 2014) (granting motion to dismiss); *Kane v. Chobani, Inc.*, 973 F. Supp. 2d 1120, 1137-38 (N.D. Cal. 2014) (same).

Plaintiffs' alternative theory—that Fitbit misrepresented that its devices could track sleep *at all*—is not supported by specific factual allegations required under Rule 9(b). Even when reduced to general statements about the existence of the sleep-tracking function, Plaintiffs offer only conclusory allegations regarding their own reliance. Other than product packaging, neither Plaintiff identifies what "advertising . . . and other public and direct representations" they claim to have "encountered and relied on," let alone the particular statement by Fitbit that led to their purchase. (4AC ¶¶ 43-47.) Nor do Plaintiffs specifically allege that they "encountered" any purported misrepresentations at or before the time of purchase.[4] Plaintiffs cannot have relied on an unidentified statement that did not influence their purchase decisions. *See In re Ferrero Litig.*, 794 F. Supp. 2d 1107, 1111-12 (S.D. Cal. 2011) (dismissing CLRA and UCL claims where plaintiffs did not actually rely on the statements on defendant's website before making their purchases); *see also In re Tobacco II Cases*, 46 Cal. 4th 298, 306 (2009) (A plaintiff "proceeding on a claim of misrepresentation as the basis of his or her UCL action must demonstrate actual reliance on the allegedly deceptive or misleading statements, in accordance with well-settled principles regarding the element of reliance in ordinary fraud actions.").

<u>Second</u>, Plaintiffs still fail to provide specific allegations of the "circumstances indicating falseness." *Frenzel v. Aliphcom*, No.14-cv-03587-WHO, 2015 WL 4110811, at *5 (N.D. Cal. Jul. 7, 2015) ("*Frenzel II*") (citing *In re GlenFed, Inc. Sec. Litig.*, 42 F.3d 1541, 1547-48 (9th Cir. 1994)). As discussed above and in Fitbit's Motion (Mot. at 7:19-9:6), the articles and other new "facts" offered in the 4AC do not demonstrate that Fitbit devices are unable to track sleep. Rather, at most they show that Fitbit's sleep-tracking methodology has been discussed, and sometimes critiqued, in reference to other lab-based methods.

Plaintiffs have not and cannot plead facts with the requisite particularity required by Rule 9(b).

---

[4] Although Plaintiffs broadly state that Fitbit's (unspecified) representations "played a substantial role" in their respective purchases (4AC ¶¶ 51, 58.), those allegations are conclusory, unadorned by any facts, and need not be accepted as true.

### C. Plaintiffs Cannot Save Their Warranty Claims

#### 1. Plaintiffs Have Alleged No Defect

As discussed in Fitbit's Motion, Plaintiffs' breach of implied warranty of merchantability claim requires them to plead "a fundamental defect that renders the product unfit for its ordinary purpose." *Tietsworth v. Sears, Roebuck & Co.*, 720 F. Supp. 2d 1123, 1142 (N.D. Cal. 2010); (Mot. at 14:21-15:10). The sole purported "defect" identified in Plaintiffs' Opposition is Fitbit's supposed failure to actually track sleep. But, again, no facts alleged in the 4AC or the documents it references support that conclusion. Rather, Fitbit tracks sleep using a movement-based methodology with which Plaintiffs disagree. Moreover, Plaintiffs completely fail to allege that sleep tracking is the ordinary purpose of Fitbit's devices. Instead, they argue that sleep tracking is a "key feature," "key function," and "core function[]." (Opp. at 13:17-18, 14:9). Indeed, Plaintiffs *admit* that Fitbit's device has more than one function, and even more than one "core function." (*Id*. at 13:18.) Any purported issues regarding Fitbit's sleep tracking function do not render the device non-merchantable.

Plaintiffs' arguments regarding *Minkler v. Apple, Inc.*, 65 F. Supp. 3d 810 (N.D. Cal. 2014), are also unavailing. The *Minkler* court never said anything about Apple Maps being "non-essential," nor did Apple's CEO's statement or the availability of alternative, free map applications play any role in the court's legal conclusion that the plaintiff "fail[ed] to allege that the ordinary purpose of the iPhone 5 was navigational capability." *Id*. at 819. As the *Minkler* court stated, and as is true with respect to Plaintiffs' claims regarding Flex, "[t]he iPhone 5 has a multitude of uses" and "Plaintiff never alleges that she used the iPhone solely for navigation." *Id*. Plaintiffs' allegations fall short of stating a claim for breach of implied warranty and should be dismissed.

#### 2. Plaintiffs' Magnuson-Moss Warranty Act Claim Also Fails

In its Motion, Fitbit established that Plaintiffs' Magnuson-Moss Warranty Act ("MMWA") claims will "stand or fall with his express and implied warranty claims under state law." (Mot. at 15:12-19 (quoting *Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1022 (9th

Cir. 2008)).) Because Plaintiffs have failed to state a claim for breach of warranty under state law, their MMWA claim should be dismissed as well.

### III. CONCLUSION

Plaintiffs have repeatedly tried to rescue their claims from the realm of implausibility, to no avail. Their latest attempt fares no better. Accordingly, for all of the foregoing reasons, and for the reasons set forth in Fitbit's motion, Fitbit respectfully asks the Court to dismiss Plaintiffs' 4AC in its entirety, without leave to amend.

Dated: February 23, 2016  MORRISON & FOERSTER LLP

By: s/Erin M. Bosman
Erin M. Bosman

Attorneys for Defendant
FITBIT, INC.