UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMES P. BRICKMAN, et al., individually and as a representative of all persons similarly situated,<br><br>         Plaintiffs,<br><br>   v.<br><br>FITBIT, INC.,<br><br>         Defendant. | Case No. 15-cv-02077-JD<br><br>**ORDER RE MOTION TO DISMISS**<br><br>Re: Dkt. No. 63 |

In this putative class action, named plaintiffs James Brickman and Margaret Clingman allege that defendant Fitbit, Inc. ("Fitbit") misled consumers about the functionality of sleep tracking on its wearable devices. Plaintiffs have gone through a number of pleadings developments and are now on a fourth amended complaint. Dkt. No. 60. Fitbit challenges the complaint for failure to state a plausible claim and other reasons. Dkt. No. 63. The Court took Fitbit's motion under submission pursuant to Civil Local Rule 7-1(b), and finds that the complaint is sufficient to proceed to the merits. Dismissal is denied.

## BACKGROUND

Although the current complaint is a fourth amended complaint, the Court has not yet ruled on the adequacy of plaintiffs' allegations. The amendments were largely the product of voluntary agreements between the parties that are not germane to this motion.

The gist of the operative complaint is that Fitbit knowingly misled consumers about the utility and efficacy of its sleep tracking functionality. Brickman, a Florida resident, and Clingman, a California resident, each bought a Fitbit "Flex" device that included a sleep tracking feature. Plaintiffs allege that Fitbit materially misrepresented the ability of the Flex -- and all

similarly equipped Fitbit devices -- to track "hours slept," "times woken up," and "sleep quality" through statements and graphics on product packaging and in other places. Dkt. No. 60 ¶¶ 3, 30.

These statements are false, according to plaintiffs, because Fitbit uses an accelerometer as the platform for its sleep tracking functionality, *id.* ¶ 34, and accelerometers "can only measure movement and not sleep." *Id.* ¶ 4. Plaintiffs cite independent reviews, commentary from sleep doctors, and "anecdotal evidence from consumers" to allege that movement alone does not, and possibly cannot, provide meaningful information or accurate data about the duration or quality of sleep. *Id.* at ¶¶ 10-11, 38. These sources feature comments like Fitbit's devices "are not measuring sleep, simply motion," "[y]ou cannot infer quality of sleep from motion," and the technology only "guesses" the amount of sleep experienced. *Id.* ¶ 38. Plaintiffs allege that these and other facts show that Fitbit promised a functionality that its devices cannot deliver.

Plaintiffs state that they "encountered and relied on" Fitbit's representations about the sleep tracking function in buying their devices. *Id.* ¶¶ 47, 56. They also say that Fitbit charged a premium of $30 or more for devices equipped with the sleep tracking feature over those without it. *Id.* ¶ 28.

Plaintiffs allege nine claims: (1) the Unfair Competition Law, Cal. Bus. & Prof. Code Section 17200 ("UCL"); (2) the False Advertising Law, Cal. Bus. & Prof. Code Section 17500 ("FAL"); (3) the California Consumer Legal Remedies Act, Cal. Civil Code Section 1750 ("CLRA"); (4) the Magnuson-Moss Warranty Act, 15 U.S.C. Section 2301 ("MMWA"); (5) breach of implied warranty, Cal. Civil Code Section 1790; (6) the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), Fla. Stat. 501.201; (7) common law fraud, (8) negligent misrepresentation, and (9) unjust enrichment/restitution/quasi contract.[1]

---

[1] For the most part, these claims cover the same ground and amount to nine slightly different ways of saying "you lied to me." This raises a question about good pleading practice: it might be possible to slice a single fact pattern and injury into multiple overlapping claims, but why do that? Piling on duplicative claims is unlikely to improve the odds of settlement, provide insurance against dismissal at the pleading or summary judgment stage, or do anything useful for the sponsoring party. It is certainly true that some cases warrant multiple claims because of factual complexity and material differences in legal elements, evidence and potential recovery. But alleging multiple claims that simply rehash the same facts and seek more or less the same relief does little more than inflate litigation costs and create other inefficiencies.

# DISCUSSION

## I. LEGAL STANDARDS

Familiar standards govern Fitbit's motion to dismiss. To meet the pleading requirements of Federal Rule of Civil Procedure 8(a)(2) and survive a Rule 12(b)(6) motion to dismiss, a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). At this stage, the Court accepts all the material allegations in the complaint as true and draws all reasonable inferences in favor of the plaintiffs. *Moyo v. Gomez*, 32 F.3d 1382, 1384 (9th Cir. 1994). But the Court will not treat as fact or accept as true allegations that are bare legal conclusions, recitations of elements or unwarranted deductions. *Iqbal*, 556 U.S. at 678; *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008).

Since this case alleges claims sounding in fraud and deception, Federal Rule of Civil Procedure 9(b) also applies. *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103-04 (9th Cir. 2003); *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125-26 (9th Cir. 2009). Rule 9(b) requires that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." This means the allegations must "be specific enough to give defendants notice of the particular misconduct . . . so that they can defend against the charge and not just deny that they have done anything wrong," and the "[a]verments of fraud must be accompanied by 'the who, what, when, where, and how' of the misconduct charged." *Vess*, 317 F.3d at 1106 (internal quotation marks omitted). In addition, the "'plaintiff must set forth what is false or misleading about a statement, and why it is false.'" *Ebeid ex rel. United States v. Lungwitz*, 616 F.3d 993, 998 (9th Cir. 2010) (quoting *Vess*, 317 F.3d at 1106). Mechanical or conclusory allegations of fraud will not do. *Moore v. Kayport Package Exp., Inc.*, 885 F.2d 531, 540 (9th Cir. 1989). The elements of "[m]alice, intent, knowledge, and other conditions of a person's mind" may be alleged generally. Fed. R. Civ. P. 9(b); *see also Vess*, 317 F. 3d at 1104.

3

As plaintiffs acknowledge, these requirements apply to the UCL, FAL, CLRA, FDUTPA, and common law misrepresentation claims in the complaint (and arguably to the warranty claims too, although Fitbit does not make that point), all of which are grounded on the allegation that Fitbit misled consumers about the sleep tracking functionality.  Dkt. No. 60; Dkt. No. 67 at 11-13.

## II.   THE CONSUMER DECEPTION CLAIMS

Fitbit's dismissal request is focused on attacking the plaintiffs' evidence as bad science and proffering a compilation of studies that it believes validates the efficacy of accelerometer-based sleep tracking.  Dkt. Nos. 63, 63-2.  Fitbit asks the Court to take judicial notice of these studies, but since this is a motion to dismiss that tests the sufficiency of the complaint, and not the ultimate merits of plaintiffs' claims, the Court declines to consider them at this stage.  *See Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010).  More pertinently to this pleadings motion, Fitbit argues that plaintiffs' factual averments do not plausibly show that the challenged representations could have misled a reasonable consumer, and lack the specificity required for claims sounding in fraud.

### A.   RULE 9(B)

Taking up the heightened pleading standards of Rule 9(b) first, the complaint alleges enough facts to defeat Fitbit's challenge.  The number and depth of the factual allegations may not be overwhelming but Rule 9(b) does not demand that plaintiffs research and present a detailed exposé in their complaint.  All that is required is sufficient specificity to fairly apprise the defendant of the nature of the alleged fraud and enough facts to warrant discovery and further proceedings.  *See Kearns*, 567 F.3d at 1125.  Plaintiffs have met these requirements.  They start by identifying statements on Fitbit's product packaging representing that the Flex device would "TRACK YOUR NIGHT," including "Hours slept," "Times woken up," "Sleep quality," and that it can "TRACK SLEEP."  Dkt. No. 60 at 6, ¶ 35; Dkt. No. 60-2 at 1-2 (capitalizations in originals).  They allege pre-purchase notice and reliance on Fitbit's statements.  Dkt. No. 60 ¶¶ 47, 51, 56, 58.  And then plaintiffs cite to specific documents stating that in reality, the devices can only measure movement and cannot track sleep.  *Id.* ¶¶ 10-11, 38.  Plaintiffs also offer their own personal experience that after a "short period of wearing the device, it became obvious" to them

that the device only tracked motion and not sleep. *Id*. ¶¶ 12, 13. Overall, this is enough to satisfy Rule 9(b).

### B. RULE 8 AND PLAUSIBILITY

The same allegations also establish the plausibility of plaintiffs' claims under Rule 8. Fitbit contends that the complaint fails to show that a "reasonable consumer" would have been misled about the sleep functionality, rendering all of the fraud-based claims implausible. But the "reasonable consumer" test does not undermine the complaint. While it is true that a UCL, FAL and CLRA claim of deceptive or unfair conduct is evaluated "from the vantage of a reasonable consumer," that generally should happen at the merits stage rather than the pleading stage because those claims typically entail fact disputes that cannot be resolved in the Rule 12(b)(6) context. *Williams v. Gerber Prods. Co.*, 552 F.3d 934, 938-39 (9th Cir. 2008) (internal citations omitted). It is a "rare situation in which granting a motion to dismiss is appropriate," *id*. at 939, and nothing here makes this case one of those rare situations. The facts in the complaint that satisfy Rule 9(b) make the deceptive practices claims plausible. Fitbit disputes those allegations and the parties clearly have sharply divergent views about sleep monitoring technology and what works and what does not, but those issues of fact are far beyond the scope of this motion to dismiss. And even if Fitbit's studies might validate the use of accelerometers for sleep monitoring, plaintiffs' claims arise out of Fitbit's representations on product packaging and similar sources. Consumers are not expected to do research "beyond misleading representations on the front of the box." *Id*.

Fitbit tries to sidestep these roadblocks by arguing that the challenged statements are inactionable puffery as a matter of law. This, too, is unpersuasive. "[A]dvertising which merely states in general terms that one product is superior is not actionable" but "misdescriptions of specific or absolute characteristics of a product are actionable." *Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv., Inc.*, 911 F.2d 242, 246 (9th Cir. 1990) (internal quotations omitted). The challenged statements are specific representations that Fitbit's device will "TRACK YOUR NIGHT," including "Hours slept," "Times woken up," and "Sleep quality." The product package features a graph depicting sleep tracking. These are not the kind of vague and empty taglines like "KNOW YOURSELF, LIVE BETTER" that courts have treated as non-actionable. *See Frenzel v.*

5

*AliphCom*, 76 F. Supp. 3d 999, 1011-12 (N.D. Cal. 2014) (capitalization in original).  They are the type of particularized statements that can be sued on because they make measurable claims about a product's characteristics and functionality.  *See, e.g., Newcal Indus., Inc. v. Ikon Office Sol.*, 513 F.3d 1038, 1052-53 (9th Cir. 2008) ("deliver 95% up-time service" and "a fixed term of sixty (60) months"); *Torrent v. Yakult U.S.A., Inc.*, No. SACV 15-00124-CJC(JCGX), 2015 WL 4335076, at *3 (C.D. Cal. Jul. 14, 2015) ("exclusive" and "unique strain of probiotic bacteria"); *Henderson v. Gruma Corp.*, No. CV 10-04173 AHM AJWX, 2011 WL 1362188, at *12 (C.D. Cal. Apr. 11, 2011) ("guacamole" for product containing less than 2% avocado powder); *Consumer Advocates v. Echostar Satellite Corp.*, 113 Cal. App. 4th 1351, 1361-62 (2003) ("50 channels" and "7 day schedule").

Consequently, the UCL, FAL, CLRA and common law misrepresentation claims are sufficient under Rule 8 and Rule 9(b).  The Florida DUTPA claim is sustained for the same reasons.  *See Jovine v. Abbott Labs., Inc.*, 795 F. Supp. 2d 1331, 1342 (S.D. Fla. 2011) (determining that a FDUTPA action focuses on "whether the practice was likely to deceive a consumer acting reasonably in the same circumstances.").

### III.   THE WARRANTY CLAIMS

Fitbit makes one challenge to the claim for breach of the implied warranty of merchantability based entirely on another decision from this district, *Minkler v. Apple, Inc.*, 65 F. Supp. 3d 810 (N.D. Cal. 2014), which dismissed a breach of implied warranty claim for an iPhone based on poor functionality of a navigation application.  *See* Dkt. No. 63 at 14.  *Minkler* drew on *Tietsworth v. Sears*, 720 F. Supp. 2d 1123, 1142 (N.D. Cal. 2010), to find that an implied warranty claim requires an allegation of a fundamental defect that renders the product unfit for its ordinary purpose.  *Minkler*, 65 F. Supp. 3d at 819.  The plaintiff could not plausibly make that allegation because an iPhone has a "multitude of uses" -- phone, browser, music player, and so on -- that define the scope of its ordinary purpose as substantially broader than navigation.  *Id.*

That is not the situation here.  The Flex and other devices offer sleep tracking as a key feature that is central to their intended purpose of monitoring fitness and well-being.  Sleep tracking plays a much more prominent role in the ordinary purpose of the Fitbit devices than a

navigation app in an iPhone. This difference distinguishes *Minkler* and is enough to sustain the implied warranty claim when coupled with the allegations that the feature does not work. Because the parties agree that the Magnuson-Moss Warranty Act claim depends on the same analysis, that claim is also sustained.

## CONCLUSION

The motion to dismiss is denied. Fitbit will answer the complaint by **July 29, 2016**. The parties appear to have agreed plaintiffs will not pursue a claim of breach of implied warranty of fitness for a particular purpose. Consequently, that claim is deemed to be terminated and Fitbit need not respond to it.

**IT IS SO ORDERED.**

Dated: July 15, 2016

JAMES DONATO
United States District Judge