Patrick J. Perotti (Ohio Bar No. 0005481)
Frank A. Bartela (Ohio Bar No. 0088128)
DWORKEN & BERNSTEIN CO., L.P.A.
60 South Park Place
Painesville, OH 44077
Telephone: (440) 352-3391
Facsimile: (440) 352-3469
Email: pperotti@dworkenlaw.com
         fbartela@dworkenlaw.com
Appearance *pro hac vice*

John A. Kithas (California Bar No. 64284)
Christopher Land (California Bar No. 238261)
LAW OFFICES OF JOHN A. KITHAS
One Embarcadero Center, Suite 1020
San Francisco, CA 94111
Telephone: (415) 788-8100
Facsimile: (415) 788-8001
Email: john@kithas.com
         chris@kithas.com

Christopher J. Morosoff (California Bar No. 200465)
LAW OFFICE OF CHRISTOPHER J. MOROSOFF
77-760 Country Club Drive, Suite G
Palm Desert, CA 92211
Telephone: (760) 469-5986
Facsimile: (760) 345-1581
Email: cjmorosoff@morosofflaw.com

ATTORNEYS FOR PLAINTIFFS

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMES P. BRICKMAN, individually and as a representative of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>FITBIT, INC.,<br><br>Defendant. | Case No. 3:15-cv-2077-JD<br><br>**MOTION FOR CLASS CERTIFICATION**<br><br>The Honorable James Donato<br><br>Trial: July 10, 2017<br><br>Date Action Filed:     May 8, 2015 |

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ....................................................................................................... ii

STATEMENT OF ISSUES TO BE DECIDED .......................................................................... iv

    1.   Whether the Court should certify as a class action under Rule 23(b)(3) of the Federal Rules of Civil Procedure the proposed Classes defined above ........................................... 2

    2.   Whether the Court should appoint Plaintiffs as Class representatives .............................. 2

    3.   Whether the Court should appoint Plaintiffs' counsel as class counsel .......................... 2

I.      INTRODUCTION ............................................................................................................. 3

II.    STATEMENT OF FACTS ............................................................................................... 5

   A.  Fitbit Markets and Sells Fitbit Branded Wearable Tracking Devices to Consumers ......... 5

   B.  Fitbit Employed Identical False and Misleading Advertising to Sell its Devices With Sleep Tracking Function ............................................................................................................ 6

   C.  Fitbit's Hidden Lie—the Devices Cannot Perform the Sleep Tracking Functions Represented to Consumers ............................................................................................... 7

   D.  Plaintiff's Brickman and Clingman Are Typical Customers ............................................. 8

III.   LAW AND ARGUMENT ............................................................................................... 10

   A.  The Legal Standards for Class Certification .................................................................... 10

   B.  The Class Satisfies the Requirements of Rule 23(a) ....................................................... 11

      1.   Numerosity is Satisfied ........................................................................................... 11

      2.   Common Questions of Fact and Law Apply to the Class ......................................... 13

      3.   Plaintiffs are Typical of the Class .......................................................................... 15

      4.   Plaintiffs Will Adequately Protect the Interests of the Class ................................... 17

   C.  The Class Satisfies the Requirements of Rule 23(b)(3) ................................................... 18

      1.   Common Questions Predominate About Whether Fitbit's Representations Were Likely to Deceive Reasonable Consumers ...................................................................... 19

      2.   Materiality Predominates ........................................................................................ 21

      3.   Whether Fitbit's Representations are Unlawful Predominates Under California and Florida Law ........................................................................................................... 22

      4.   Common Questions on Plaintiffs' Unjust Enrichment Claim Predominate Over Individual Issues .................................................................................................... 23

      5.   Common Questions on Restitution Predominate Over Individual Issues ................... 24

      6.   A Class Action is Superior ...................................................................................... 25

# **TABLE OF AUTHORITIES**

## Cases

*Agan v. Katzman & Korr, P.A.*, 222 F.R.D. 692 (S.D. Fla. 2004) ................................................ 11
*American Master Lease, LLC v. Idanta Partners, Ltd.*, 225 Cal. App. 4th 1451 (Cal. App. 2014) 24
*Armstrong v. Davis*, 275 F.3d 849 (9th Cir. 2001) ........................................................................ 10
*Astiana v. Kashi Co.*, 291 F.R.D. 493 (S.D. Cal. 2013) ........................................................... 13, 15
*Brockey v. Moore*, 107 Cal. App. 4th 86 (2003) ........................................................................... 14
*Brown v. The Hain Celestial Group, Inc.*, 2014 WL 6483216 (2014) ........................................... 24
*Carnegie v. Household Int'l, Inc.*, 376 F.3d 656 (7th Cir. 2004) ................................................... 26
*Cartwright v. Viking Indus. Inc.*, 2009 WL 2982887 (E.D. Cal. 2009) .......................................... 23
*Chavez v. Blue Sky Natural Beverage Co.*, 268 F.R.D. 365 (N.D. Cal.2010) ....................... 15, 24
Cold Stone Creamery, Inc. v. Lenora Foods I, LLC, 332 Fed.Appx. 565 (11th Cir.2009) .......... 21
*Collins v. Erin Capital Management, LLC*, 290 F.R.D. 689 (S.D. Fla. 2013) ......................... 12, 16
*Delarosa v. Boiron, Inc.*, 275 F.R.D. 582 (C.D. Cal. 2011) .......................................................... 20
Drossin v. Nat'l Action Fin. Servs., Inc., 255 F.R.D. 608 (S.D. Fla. 2009) ................................... 19
*Eggleston v. Chicago Journeymen Plumbers' Local Union No. 130*,
  657 F.2d 890 (7th Cir. 1981).......................................................................................................... 18
*Ellis v. Costco Wholesale Corp.*, 657 F.3d 970 (9th Cir. 2011) ................................................... 11
*Forcellati v. Hyland's, Inc.*, 2014 WL 1410264 (C.D. Cal. Apr. 9, 2014) ................................... 13
*General Telephone Co. of Southwest v. Falcon*, 457 U.S. 147 (1982) ................................... 10, 13
*Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998)...................................................... 10, 17
*Hanon v. Dataproducts Corp.*, 976 F.2d 497 (9th Cir. 1992) ................................................. 15, 16
*Harris v. Palm Springs Alpine Estates, Inc.*, 329 F.2d 909 (9th Cir. 1964) ............................... 12
*Hinojos v. Kohl's Corp.*, 718 F.3d 1098 (9th Cir. 2013) ................................................................ 23
*In re Brazilian Blowout Litig.*, 2011 WL 10962891 (C.D. Cal. Apr. 12, 2011) ........................... 20
*In re Checking Account Overdraft Litigation*, 286 F.R.D. 645 (S.D. Fla. 2012).............. 10, 16, 23
*In re Diasonics Sec. Litig.*, 599 F. Supp. 447 (N.D. Cal. 1984) .................................................... 18
*In re High-Tech Employee Antitrust Litigation*,
  985 F.Supp.2d 1167 (N.D. Cal. Oct. 24, 2013) ....................................................... 12, 14, 16, 17
*In re Tobacco II Cases*, 46 Cal. 4th 298 (2009)..................................................................... 15, 21
*In re Visa Checks/MasterMoney Antitrust Litig.*, 280 F.3d 124 (2d Cir. 2001)..................... 19, 26
*Johns v. Bayer Corp.*, 280 F.R.D. 551 (S.D. Cal. 2012)......................................................... 15, 20, 21
*Jordan v. County of Los Angeles*, 669 F.2d 1311 (9th Cir. 1982) ............................................... 12
Jordan v. Los Angeles Cnty, 459 U.S. 810 (1982) ......................................................................... 16
*Jordan v. Los Angeles Cnty.*, 669 F.2d 1311 (9th Cir. 1982) ...................................................... 16
*Jovine v. Abbott Labs., Inc.*, 795 F. Supp. 2d 1331 (S.D. Fla. 2011)........................................... 20
*Karhu v. Vital Pharmaceuticals, Inc.*, 621 Fed. Appx. 945 (11th Cir. 2015) ............................... 12
*Khasin v. R.C. Bigelow, Inc.*, 2015 WL 5569161 (N.D. Cal. 2015) ............................................. 24
*Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310 (2011) ............................................................ 23
*Lam v. Gen. Mills, Inc.*, 859 F. Supp. 2d 1097 (N.D. Cal. 2012) ................................................. 19
*Lamb v. Graco Children's Products Inc.*, 291 F.R.D. 665 (N.D. Fla. 2013)................................. 11
Latman v. Costa Cruise Lines, N.V., 758 So.2d 699 (3rd Dist. Fla. 2000) ..................................... 21
*Legg v. Spirit Airlines, Inc.*, 315 F.R.D. 383 (S.D. Fla. 2015)...................................................... 13
*Marsu, B.V. v. Walt Disney Co.*, 185 F.3d 932 (9th Cir. 1999) .................................................... 25
*Mazza v. Honda American Honda Motor Co.*, 666 F.3d 581 (9th Cir. 2012) ............................... 13
*McCrary v. Elations Co., LLC*, 2014 WL 1779243 (C.D. Cal. Jan. 13, 2014) ............................. 24
*Meyer v. Portfolio Recovery Associates, LLC*, 707 F.3d 1036 (9th Cir. 2012) ........................... 14
*Millennium Communications & Fulfillment, Inc. v. Office of Attorney Gen.*,
  761 So. 2d 1256 (3rd Dist. Fla., 2000).......................................................................................... 19
*Montage Group, Ltd. v. Athle-Tech Computer Systems, Inc.*, 889 So. 2d 180 (Fla. App. 2004)... 24
*Occidental Land, Inc. v. Superior Court*, 18 Cal. 3d 355 (1976)................................................. 21
*Palm Beach Golf Center-Boca, Inc. v. Sarris*, 311 F.R.D. 688 (S.D. Fla. 2015) ........................ 12
*Peoples v. American Fidelity Life Ins. Co.*, 176 F.R.D. 637 (N.D. Fla. 1998) ............................ 10

*Pinnock-Lee v. Phelan Hallinan*, *PLC*, 2015 WL 12532742 (S.D. Fla. 2015)............................ 17
*PNR*, *Inc. v. Beacon Property Management*, *Inc.*, 842 So. 2d 773 (Fla. 2003) ............................ 19
*Pulaski v. Middleman*, 2015 WL 5515617 (9th Cir. 2015).............................................................. 25
*Rahman v. Mott's LLP*, 2014 WL 6815779 (N.D. Cal. Dec. 3, 2014)............................................ 23
*Randolph v. J.M. Smucker Co.*, 303 F.R.D. 679 (S.D. Fla. 2014) ................................................. 14
*Ries v. Arizona Beverages USA LLC*, 287 F.R.D. 523 (N.D. Cal.2012).................................. 13, 15
*Romantic Tours*, *Inc. v. Anastasia Int'l*, *Inc.*, 2011 WL 653724 (M.D. Fla. Feb. 14, 2011)......... 22
*Sanchez v. Knutson v. Ford Motor Co.*, 310 F.R.D. 529 (S.D. Fla. 2015) .................................... 25
*Smith v. Wm. Wrigley Jr. Co.*, 663 F.Supp. 2d 1336 (S.D. Fla. 2009)........................................... 22
*Stearns v. Ticketmaster Corp.*, 655 F.3d 1013 (9th Cir. 2011) .............................................. 19, 21
*Vasquez v. Superior Court*, 4 Cal. 3d 800 (1971) ................................................................... 15, 21
*Walco Investments*, *Inc. v. Thenen*, 168 F.R.D. 315 (S.D. Fla. 1996) ........................................ 12
*Wal-Mart Stores*, *Inc. v. Dukes*, 131 S. Ct. 2541 (2011) .................................................. 10, 13, 14
*Ward v. Ezpawn Florida*, *Inc.*, 2016 WL 890087 (M.D. Fla. 2016)............................................. 22
*Williams v. Gerber Products Co.*, 553 F.3d 934 (9th Cir. 2008)................................................... 14
*Williams v. Gerber Products*, *Co.*, 552 F.3d 934 (9th Cir. 2008) ............................................... 19
*Wolin v. Jaguar Land Rover North Am.*, *LLC*, 617 F. 3d 1168 (9th Cir. 2010) ......................... 16
*Wolph v. Acer Am. Corp.*, 272 F.R.D. 477 (N.D. Cal.2011)................................................... 12, 20
*Zinser v. Accufix Research Inst.*, *Inc.*, 253 F.3d 1180 (9th Cir. 2001).......................................... 11
*Zinser v. Accufix Research Inst., Inc.*, 273 F.3d 1266 (9th Cir. 2001).......................................... 11

**Statutes**
15 U.S.C. § 41 et seq..................................................................................................................... 23
15 U.S.C. § 52(a) & (b)................................................................................................................ 23
15 U.S.C. § 2301, et seq. (Magnusson-Moss Warranty Act)......................................................... 4
False Advertising Law (Cal. Bus. & Prof. Code § 17500, et seq.) ................................................ 4
Florida Deceptive and Unfair Trade Practices Act ("FDUTPA") ................................................ 19

**Rules**
Fed. R. Civ. P. 23 ..................................................................................................................... 1, 11
Fed. R. Civ. P. 23(a) .............................................................................................................. 10, 11
Fed. R. Civ. P. 23(a)(1) ............................................................................................................... 11
Fed. R. Civ. P. 23(a)(3) ............................................................................................................... 15
Fed. R. Civ. P. 23(a)(4) ............................................................................................................... 17
Fed. R. Civ. P. 23(b) .................................................................................................................... 10
Fed. R. Civ. P. 23(b)(3)............................................................................................. 2, 10, 11, 18
Fed. R. Civ. P. 23(g) .................................................................................................................... 17

**NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION
TO FITBIT, INC. AND ITS COUNSEL OF RECORD:**

Please take notice that on March 30, 2017, or as soon thereafter as this motion may be heard, Plaintiffs James P. Brickman and Margaret Clingman will, and hereby does, move, pursuant to Rule 23 of the Federal Rules of Civil Procedure, to certify the following classes:

> **California Class:**  All California residents who have purchased, and registered online with Fitbit, a Fitbit Flex, Fitbit One, or Fitbit Ultra, in the State of California, before October 27, 2014 and within the applicable statute of limitations.

> **Florida Class**: All Florida residents who have purchased, and registered online with Fitbit, a Fitbit Flex, Fitbit One, or Fitbit Ultra, in the State of Florida, before October 27, 2014 and within the applicable statute of limitations.

The motion is based upon this Notice of Motion and Motion, the accompanying Memorandum of Law, the Declaration of Patrick J. Perotti and supporting exhibits, the pleadings and other documents on file in this consolidated action, and any argument that may be presented to the Court.

Plaintiffs further request that the Court appoint (1) Plaintiff James P. Brickman as class representative of Class A on all accompanying claims, (2) Plaintiff Margaret Clingman as class representative of Class B on all accompanying claims, and (3) Patrick J. Perotti and Frank A. Bartela of Dworken & Bernstein Co., LPA, and Ronald A. Margolis of Bonezzi Switzer Polito & Hupp Co., LPA, as class counsel and Chris Land of Law Offices of John A. Kithas as local counsel. Plaintiff finally requests the Court to order the parties to meet and confer and present this Court, within fifteen (15) days of an order granting class certification, a proposed notice to the certified class.

1

2

3

## **STATEMENT OF ISSUES TO BE DECIDED**

The issues to be decided in this Motion are:

1.  Whether the Court should certify as a class action under Rule 23(b)(3) of the Federal Rules of Civil Procedure the proposed Classes defined above;

2.  Whether the Court should appoint Plaintiffs as Class representatives; and

3.  Whether the Court should appoint Plaintiffs' counsel as class counsel.

1

2

3

## I.      INTRODUCTION

This case is pending because Fitbit lied to its customers.  Every customer who paid for a Fitbit with a sleep tracker was told it could track sleep, which is measuring hours slept, times woken, and sleep quality, when it could not.

Defendant Fitbit sells fitness trackers. The packaging contains a uniform representation to the potential customer that the device can do two key things: track their day, and track their night. Day tracking is supposed to measure activity, and as the packaging uniformly states, steps walked, distance, and calories burned. Night tracking is supposed to measure sleep, and as the packaging uniformly states, hours slept, times awakened, and sleep quality.

Fitbit *equally* touted the ability of its device to provide sleep-tracking and the ability to provide day tracking: with its packaging using identical size, color and typestyle placement for each.

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████    See Exhibit 1 to Patrick J. Perotti A██████████ Deposition Testimony Excerpts of Melanie Chase, p. 54-55.

This suit was brought because half of the advertised tracking functions advertised for the product simply do not work.  The device does not and cannot measure sleep.  It can only measure motion, which is different from sleep.  This was not an innocent oversight.████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████

In discovery, Fitbit's management conceded their obligation to be honest in their advertising. The Fitbit witnesses noted it would be dishonest to tell customers the product can do something it cannot. They admitted customers would want a refund for functions that the product said it could perform, but could not.

Buying a tracker with the sleep function is $99.95 or more. A tracker without the sleep function is $40 less, at $59.95.

Fitbit sold the trackers with the sleep function to over one thousand people, using the same packaging statements and providing a product that has the identical sleep tracking technology in every unit. Either that technology works, or it doesn't. Plaintiff now moves for class certification of all persons who bought the Fitbit with sleep tracker from the date of first sale through October 27, 2014 (the date Fitbit added an arbitration clause/class action ban to its TOS).

Plaintiffs seek identical relief: disgorgement by Fitbit of the money it received for the sleep function. Each of the causes of action being pursued by Plaintiffs allows restitution, and equitable disgorgement[1]. Plaintiff is only pursuing that relief, and **not** hedonic or other damages based on consumer value. See, Expert Report of John F. Burke, Jr., Ph.D, Economist, and Harvey S Rosen, Ph.D., ECF No. 117.

The class presents common questions whose resolution will answer those questions for all class members. They include whether the packaging representations (or online representations for online purchasers) are uniform about sleep tracking; whether the device can measure the promised metrics--hours slept, times woken up, and sleep quality; whether the representations about sleep tracking are false to a reasonable consumer; whether a reasonable consumer would rely on those representations; for purposes of restitution, how much of the $40 price difference, based on Fitbit's records and pricing structure, is attributable to the sleep tracking feature; and the total amount which Fitbit should disgorge.

---

[1] Plaintiffs are no longer pursuing their claims for breach of implied warranty, violations of the Magnusson-Moss Warranty Act (15 U.S.C. §2301, et seq.), or violation of California's False Advertising Law (Cal. Bus. & Prof. Code § 17500, et seq.). Plaintiffs will continue to pursue all other causes of action.

1

2      **II.      STATEMENT OF FACTS**

3            **A.  Fitbit Markets and Sells Fitbit Branded Wearable Tracking Devices to
4                Consumers.**

5            In September 2009, Fitbit released its initial product offering, the "Fitbit Tracker," to

6      consumers in the United States. ███████████████████████████████████████

7      ████████████████████████████ From the release of the Fitbit Tracker to present day,

8      Fitbit's consumer wearables at issue here perform two central functions—day tracking and night

9      tracking.  Tracking means the device is able to measure the activity of a user during the day

10     (steps, distance, calories, etc.) and measure their sleep during the night (hours slept, times woken

11     up, and sleep quality). ██████████████████████████████████████████████

12     ████████████████████████████████████████████████████████████████████

13     ████████████████████████████████████████████████████████████████████

14     Indeed, "[t]racking activity and sleep are two of the most valued features from [Fitbit's]

15     consumers." Ex. 1, Chase Tr., p. 63:6-14.

16            Shelten Yuen, Fitbit's Vice President of Research, ██████████████████████

17     ██████████████████████████████████████ According to Yuen, ████████████

18     ████████████████████████████████████████████████████████████████████

19     ████████████████████████████████████████████████████████████████████

20     ████████████████████████████████████████████████████████████████████

21     ██

22        ██████████████████████████████████████████████████████████████████

23     ████████████████████████████████████████████████████████████████████

24     ████████████████████████████████████████████████████████████████████

25     ████████████████████████████████████████████████████████████████████

26     ████████████████████████████████████████████████████████████████████

27     ████████████████████████████████████████████████████████████████████

28

1

2 ███████████████████████████████████████████████

███████

3

4          After the Fitbit Tracker, Fitbit released the Fitbit Ultra (Fall 2011), Fitbit One (Fall 2012),

5 and Fitbit Flex (May 2013) (herein the "Fitbit devices") which all included the sleep tracking

6 function. Ex. 5, FB_Brickman_0059175, at p. 13. In addition to the Fitbit devices, Fitbit began

7 selling the Fitbit Zip in the fall of 2012 at the suggested retail price of $59.95. Ex. 6,

8 FB_Brickman_0000598. The Fitbit Zip does not include sleep tracking, ███████████████████

9 ███████████████████████████████████████████████

███████████████████████████████████████████████

10 ███████████████████████████████████████████████

11 ███████████████████████████████████

12

13          **B. Fitbit Employed Identical False and Misleading Advertising to Sell its Devices With Sleep Tracking Function.**

14

15          New to the ever expanding electronics market, and as the creator of the wearable fitness

16 tracking market, Fitbit understood the importance of uniformly marketing to consumers what its

17 products could do. Ex. 1, Chase Tr. 67:24-69:4.  Fitbit therefore used identical packing wording,

18 which uniformly represented to consumers that the Fitbit devices would "Track your night"

19 including "Hours slept," "times awakened," and "sleep quality." Ex. 7, ██████████████████

20 

21

22

23

24

25          ███████  Fitbit determined it was important in selling the concept of its product as a complete

26 health tracker to provide an 'all around' tracking experience, day and night, which measured 24

27 hour metrics. Ex. 1, Chase Tr. 63:11-14.

28

### C. Fitbit's Hidden Lie—the Devices Cannot Perform the Sleep Tracking Functions Represented to Consumers.

As mentioned above, ███████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

███████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████ But an accelerometer only measures

movement, not sleep. ██████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

███████████

The 'mindset to mislead' was reflected repeatedly.  Fitbit stated on its website that "sleep data from the Tracker correlates very strongly with results from polysomnography found in sleep labs. Ex. 8, Fitbit FAQ Page (previously marked as Exhibit 3, Shelten Yuen deposition). ███

████████████████████████████████████████████████████████

███████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

1

2

3

4

5

6

7

8

9

10

11 The evidence suggests that

12

13

14

15

16

17

18 Similarly,

19

20

21

22

23

24 **D.  Plaintiff's Brickman and Clingman Are Typical Customers**

25 Despite being in different states, both Plaintiffs Brickman and Clingman shared

26 experiences in their purchase of the Fitbit Devices.

27

28 [2] UX means user experience. Ex. 1, Chase Tr. 92:11-14.

Plaintiff Brickman entered a Target while Christmas shopping and came across the Fitbit Flex in a display. Ex. 13, James Brickman Deposition Tr. 19:25-20:7. He read the product's packaging and based on the representations that the device would track both his activity during the day and his sleep at night, he decided to purchase the device. Ex. 13, Brickman Tr. 7:17-21; 12:6-12; 19:25-21:18. Soon after he activated the device and began using it, he discovered that the sleep tracking function did not work: "it didn't take very long to realize that, when I was wearing it at night and track – allegedly tracking my sleep, that when I reviewed the hours slept and it recorded hours slept, that I was actually watching a movie, and I did not sleep at all during that period of time. It happened a number of times when I was lying in bed, watching a show on television or a movie or something. And upon reviewing the hours slept the next day, I realized that this was completely inaccurate because I was wide awake." Ex. 13, Brickman Tr. 22:1-11.

Similarly, Plaintiff Clingman entered a Kohl's while birthday shopping for herself. Ex. 14, Margaret Clingman Tr. 18. Clingman saw the Fitbit Flex on a display at the Kohl's and read the product's packaging. Ex. 14, Clingman Tr. 20:21-16. Clingman chose to purchase the Fitbit Flex because "[i]t was going to track my daytime activity, which would be, like, my steps and exercise, and it was also going to track my nighttime activity for my sleep. And so, it was going to basically track 24 hour health." Ex. 14, Clingman Tr. 21:19-23.  But, it didn't take long for Clingman to come to the same conclusion that the sleep tracking function did not work: "[w]hat I had noticed when I started looking at the monitoring for tracking my night, it started giving me very odd readings about the frequency that I was waking up and when I was waking up. And, then also, during the daytime it would go into sleep mode while I was being active." Ex. 14, Clingman Tr. 24:12-17.[3]

Each Plaintiff, during their respective deposition, identified the specific and uniform language from the product's packaging that the Fitbit device would "track your night, hours slept,

---

[3] ████████████████████████████████████████████

times woken up, and sleep quality" as the representations that they found false and misleading.
Ex. 13, Brickman Tr. 11:2-14; Ex. 14, Clingman Tr. 25:18-26:8

### III.    LAW AND ARGUMENT

#### A.  The Legal Standards for Class Certification.

Rule 23 provides district courts with broad discretion to determine whether a class should be certified. *See Armstrong v. Davis*, 275 F.3d 849, 872, n.28 (9th Cir. 2001); *Peoples v. American Fidelity Life Ins. Co.*, 176 F.R.D. 637 (N.D. Fla. 1998).  Class actions are favored where, like here, there is alleged wrongdoing against a large number of persons, each of whom is affected only a small monetary amount. *See*, *e.g.*, *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1023 (9th Cir. 1998) (class certification appropriate because litigation costs would dwarf potential recovery by class members if forced to pursue actions individually); *In re Checking Account Overdraft Litigation*, 286 F.R.D. 645 (S.D. Fla. 2012) ("The class action fills an essential role when the plaintiffs would not have the incentive or resources to prosecute relatively small claims in individual suits, leaving the defendant free from legal accountability.").

A class action must satisfy all four requirements in Fed. R. Civ. P. 23(a): "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." In some cases, "it may be necessary for the court to probe behind the pleadings before coming to rest on the certification question," and certification is proper only if "the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied." *Wal-Mart Stores*, *Inc. v. Dukes*, 131 S. Ct. 2541, 1551 (2011) (quoting *General Telephone Co. of Southwest v. Falcon*, 457 U.S. 147, 160-61 (1982)).

In addition, the class must also satisfy at least one subdivision of Fed. R. Civ. P. 23(b). Here, the Class satisfies Rule 23(b)(3) because "questions of law or fact common to the members

of the class predominate over any questions affecting only individual members, and a class action is superior to other available methods for the fair and efficient adjudication of the controversy."

## B.   The Class Satisfies the Requirements of Rule 23(a).

A class may be certified under Rule 23 of the Federal Rules of Civil Procedure where "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law and fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defense of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a).  To obtain class certification, Plaintiffs also must meet the requirements of at least one subsection of Rule 23(b). See *Zinser v. Accufix Research Inst.*, *Inc.*, 253 F.3d 1180, 1186 (9th Cir. 2001), amended by 273 F.3d 1266 (9th Cir. 2001); *Agan v. Katzman & Korr*, *P.A.*, 222 F.R.D. 692 (S.D. Fla. 2004).  A "district court is required to examine the merits of the underlying claim in this context, only inasmuch as it must determine whether common questions exist; not to determine whether class members could actually prevail on the merits of their claims." *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 981, n.8 (9th Cir. 2011); *Lamb v. Graco Children's Products Inc.*, 291 F.R.D. 665 (N.D. Fla. 2013) ("In certifying a class, a trial court must conduct a "rigorous analysis" that "consider[s] the merits of the case to the degree necessary to determine whether the requirements of [Federal] Rule [of Civil Procedure] 23 will be satisfied.").  If the Court concludes that Plaintiffs have met their burden, the Court has broad discretion to certify the class. *Zinser*, 253 F.3d at 1186.

Here, class certification of the Classes is appropriate because Plaintiffs have satisfied all requirements of Rule 23(a), and they have satisfied Rule 23(b)(3).

## 1.   Numerosity is Satisfied.

Plaintiffs satisfy the numerosity requirement because the class is "so large that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). "Impracticable" does not mean impossible, only that it would be difficult or inconvenient to join all members of the class. See *Harris v. Palm Springs Alpine Estates*, *Inc.*, 329 F.2d 909, 913-14 (9th Cir. 1964); *Walco Investments*, *Inc. v. Thenen*, 168 F.R.D. 315 (S.D. Fla. 1996). "Where a class is large in numbers,

joinder will usually be impracticable." *Jordan v. County of Los Angeles*, 669 F.2d 1311, 1319 (9th Cir. 1982), vacated on other grounds, 459 U.S. 810 (1982); *Collins v. Erin Capital Management*, *LLC*, 290 F.R.D. 689 (S.D. Fla. 2013) (numerosity is satisfied where there is a large group of class members, typically over forty).   As this Court has explained, "Plaintiffs need not state the exact number of potential class members, nor is there a bright-line minimum threshold requirement."   *In re High-Tech Employee Antitrust Litigation*, 985 F.Supp.2d 1167, 2013 WL 5770992 at *9 (N.D. Cal. Oct. 24, 2013); *Palm Beach Golf Center-Boca*, *Inc. v. Sarris*, 311 F.R.D. 688 (S.D. Fla. 2015) ("While there is no bright-line rule, the "general rule of thumb in the Eleventh Circuit is that 'less than twenty-one is inadequate, more than forty adequate, with numbers between varying according to other factors.'").

There is no serious dispute Plaintiffs satisfied numerosity. Fitbit's representative, Melanie Chase, admitted that more than 1,000 of these devices were sold with the sleep tracker representations on the packaging during the class period. Ex. 1, Chase Tr. 117:21-25, 118:1.  The identity of class members will be ascertainable from Fitbit's own records, as the class definition specifically encompasses only those devices registered by consumers online with the company. Chase explained that individuals can only view their results by creating and logging into a Fitbit account, meaning everyone who used their device is registered in Fitbit's records. Ex. 1, Chase Tr. 88:22-25, 89:1-6.  When consumers create an account, Fitbit receives their email addresses, and the name of the Fitbit device they are using, and Fitbit has the date they started using the device.  Chase. Depo. p. 89:11-25, 90:1-17.

Courts have also held that classes "must be adequately defined and clearly ascertainable." See *Wolph v. Acer Am. Corp.*, 272 F.R.D. 477, 482 (N.D. Cal.2011) (internal quotation omitted). The "class definition must be sufficiently definite so that it is administratively feasible to determine whether a particular person is a class member." Id.; *Karhu v. Vital Pharmaceuticals*, *Inc.*, 621 Fed. Appx. 945 (11th Cir. 2015).  However, "[t]here is no requirement that 'the identity of the class members...be known at the time of certification." *Ries v. Arizona Beverages USA LLC*, 287 F.R.D. 523, 536 (N.D. Cal.2012). "As long as the class definition is sufficiently definite

to identify putative class members, the challenges entailed in the administration of [the] class are not so burdensome as to defeat certification." *Astiana v. Kashi Co.*, 291 F.R.D. 493, 536 (S.D. Cal. 2013) (quoting *Ries*, 287 F.R.D. at 536); *Legg v. Spirit Airlines, Inc.*, 315 F.R.D. 383 (S.D. Fla. 2015) (ascertainability is satisfied if the class "can be ascertained by reference to objective criteria"). Here, the proposed Class meets this standard, being plainly and succinctly defined as residents of California and Florida who purchased and registered one of the relevant Fitbit models during the relevant class period.

In cases where product labeling has been challenged for false advertising, courts have found analogous class definitions to satisfy the ascertainability requirement. See e.g. *Forcellati v. Hyland's, Inc.*, 2014 WL 1410264 at *5 (C.D. Cal. Apr. 9, 2014) ("Plaintiffs have precisely defined their class based on an objective criteria: purchase of defendants' children's cold or flu products within a prescribed time frame. This is enough to satisfy Rule 23(a)'s implied ascertainability requirement."); *Astiana*, 291 F.R.D. at 500 (a product labeling case in which the court found that the class was ascertainable where "the proposed class definition simply identifies purchasers of Defendant's products that included the allegedly material misrepresentations").

### 2.   Common Questions of Fact and Law Apply to the Class.

Commonality requires the plaintiff to demonstrate that the class members "have suffered the same injury." *Wal-Mart*, 131 S. Ct. at 2551 (quoting *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 157 (1982)). In other words, class members' claims must depend upon a common contention that is "of such a nature that it is capable of class-wide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id*. Not all questions of fact and law need to be common to satisfy the rule. *Id.*; *see also Mazza v. Honda American Honda Motor Co.*, 666 F.3d 581, 589 (9th Cir. 2012) ("[C]ommonality only requires a single significant question of law or fact.").

This case involves resolution of issues of law and fact common to the classes. "To satisfy the commonality requirement, Plaintiffs must show that the class members have suffered the

same injury, meaning that class members' claims must depend upon a common contention of such a nature that determination of its truth or falsity will resolve an issue that is central to the validity of each claim in one stroke." *In re High-Tech* 2013 WL 5770992 at *9 (citing *Wal–Mart Stores*, *Inc*. *v*. *Dukes*, 564 U.S. 338, 131 S.Ct. 2541, 2550-51, 180 L.Ed.2d 374 (2011)); *Randolph v. J.M. Smucker Co*., 303 F.R.D. 679 (S.D. Fla. 2014) ("In short, the commonality requirement requires proof the court can resolve the questions of law or fact in "one stroke."). "All questions of fact and law need not be common to satisfy the [commonality requirement]." *Meyer v. Portfolio Recovery Associates*, *LLC*, 707 F.3d 1036, 1041-42 (9th Cir. 2012).

Rather, the "existence of shared legal issues with divergent factual predicates is sufficient," Id. and "even a single common question will do." *In re High-Tech*, 2013 WL 5770992 at *9 (internal quotation marks, citations omitted; *Randolph* ("Although many issues may be common to all claims, commonality merely requires that there be "at least one issue whose resolution will affect all or a significant number of the putative class members."). Here, many questions of law and fact are common to the proposed classes, and a class-wide proceeding will provide answers and resolution common to all class members.

All consumers purchased a Fitbit device which represented, on its packaging, that it tracked sleep. Fitbit's representative, Melanie Chase, testified that the packaging during the class period, with regard to the sleep tracking promise, was consistent. Ex. 1, Chase Tr. 56-59. The packaging told each customer the device could track sleep their hours slept, times woken, and sleep quality. Ex. 7. This was to measure those metrics (Yuen) and the failure of the device to be able to measure those things is common to every customer. As courts have explained, "the primary evidence in a false advertising case is the advertising itself." *Williams v. Gerber Products Co*., 553 F.3d 934, 938 (9th Cir. 2008), 938 (quoting *Brockey v. Moore*, 107 Cal. App. 4th 86, 100 (2003)). In cases brought pursuant to UCL, CLRA, or false advertising, it is well-settled that where "numerous consumers are exposed to the same dubious practice by the same seller [] proof of the prevalence of the practice as to one consumer would provide proof for all." *Vasquez v. Superior Court*, 4 Cal. 3d 800, 808 (1971). See also *In re Tobacco II Cases*, 46 Cal.

4th 298, 312 (2009) (holding that questions of materiality and the likelihood a representation will mislead a reasonable consumer predominate over individual issues). Whether the testing conducted on the sleep tracking function was adequate, accurate, or supports the device, are all questions common to the class that can be answered in a single proceeding.

Commonality is satisfied here, just as it was in *Astiani v. Kashi Company*, in which the court found that, "[b]y definition, all class members were exposed to such representations and purchased Kashi products, creating a 'common core of salient facts.'" 291 F.R.D. 493, 501 (S.D. Cal. 2013)(citing *Ries v. Arizona Beverages USA LLC*, 287 F.R.D. 523, 528 (N.D. Cal. 2012)). It concluded that "[c]ourts routinely find commonality in false advertising cases." *Id.* (citing *Ries*, 287 F.R.D. at 537); see also *Chavez v. Blue Sky Natural Beverage Co*., 268 F.R.D. 365, 377 (N.D. Cal.2010). It further explained that "variation among class members in their motivation for purchasing the product, the factual circumstances behind their purchase, or the price that they paid does not defeat" commonality. *Astiani*, 291 F.R.D. at 502 (quoting *Ries*, 287 F.R.D. at 537); see also *Johns v. Bayer Corp*., 280 F.R.D. 551, 559 (S.D. Cal. 2012)(finding commonality existed where "everyone who purchased the [product] would have been exposed to the prostate claim that appeared on ***every package***[.]")(Emphasis in original).

### 3.  Plaintiffs are Typical of the Class

The purpose of the "typicality" requirement of Fed. R. Civ. P. 23(a)(3) is to ensure the named representative's interests "align" with those of the class. *See Hanon v. Dataproducts Corp*., 976 F.2d 497, 508 (9th Cir. 1992). "[R]epresentative claims are 'typical' if they are reasonably coextensive with those of absent class members; they need not be substantially identical. Some degree of individuality is to be expected in all cases, but that specificity does not necessarily defeat typicality." *Hanlon*, 150 F.3d at 1020. Typicality is satisfied if the named plaintiff's claims stem from the same practice or course of conduct that forms the base of the class claims and are based upon the same legal remedial theory. *Jordan v. Los Angeles Cnty*., 669 F.2d 1311, 1321 (9th Cir. 1982), *vacated on other grounds*, 459 U.S. 810 (1982).

"The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct. *In re High-Tech*, 2013 WL 5770992, at *10, citing *Hanon v. Dataproducts*, *Corp*., 976 F. 2d 497, 508 (9th Cir. 1992); *In re Checking Account Overdraft Litig*., 286 F.R.D. 645 (S.D. Fla. 2012). "The purpose of the typicality requirement is to assure that the interest of the named representative aligns with the interests of the class." *Wolin v. Jaguar Land Rover North Am*., *LLC*, 617 F. 3d 1168, 1175 (9th Cir. 2010); *Collins v. Erin Capital Management*, *LLC*, 290 F.R.D. 689 (S.D. Fla. 2013) ("[T]ypicality measures whether a sufficient nexus exists between the claims of the named representatives and those of the class at large."). Plaintiff's claims are typical of the absent class members because they all are victims of Defendant's false representations regarding the sleep tracking feature."

Customers who paid for a tracker with the sleep function either received a tracker that could measure sleep, or did not. The named plaintiffs are in the same boat. Both Plaintiffs testified that they entered retail stores, reviewed the Fitbit device's product packaging, relied upon the packaging, and chose to purchase the product. Ex. 13, James Brickman Deposition Tr. 7:17-21; 12:6-12; 19:25-20:7; Ex. 14, Margaret Clingman Tr. 18; 20:21-16; 21:19 – 23. Soon after each Plaintiff made their respective purchase, they each realized that the sleep tracking function of the device simply did not work. Plaintiff Brickman stated, "it didn't take very long to realize that, when I was wearing it at night and track – allegedly tracking my sleep, that when I reviewed the hours slept and it recorded hours slept, that I was actually watching a movie, and I did not sleep at all during that period of time. It happened a number of times when I was lying in bed, watching a show on television or a movie or something. And upon reviewing the hours slept the next day, I realized that this was completely inaccurate because I was wide awake." Ex. 13, Brickman Tr. 22:1-11.

Similarly, it didn't take long for Clingman to come to the same conclusion that the sleep tracking function did not work: "[w]hat I had noticed when I started looking at the monitoring for

tracking my night, it started giving me very odd readings about the frequency that I was waking up and when I was waking up. And, then also, during the daytime it would go into sleep mode while I was being active." Ex. 14, Clingman Tr. 24:12-17.

Plaintiffs Brickman and Clingman represent typical members of the putative classes. They are consumers who read and relied on the product's packaging, which contained uniform representations about the sleep tracking functionality, and were harmed by the sleep tracking functionality's failure to actually track sleep as promised.

### 4. Plaintiffs Will Adequately Protect the Interests of the Class.

Plaintiffs "will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "Legal adequacy of a class representative under Rule 23(a)(4) turns on two inquiries: (1) whether named plaintiffs and their counsel have 'any conflicts of interest with other class members,' and (2) whether named plaintiffs and their counsel will 'prosecute the action vigorously on behalf of the class.'" *In re High-Tech*, 2013 WL 5770992 at *10 (quoting *Hanlon v. Chrysler Corp*., 150 F.3d 1011, 1020 (9th Cir. 1998)); *Pinnock-Lee v. Phelan Hallinan*, *PLC*, 2015 WL 12532742 (S.D. Fla. 2015).

Plaintiffs do not have any irreconcilable conflicts with or interests materially antagonistic to those of any members of either class. Plaintiffs and the class possess the identical interest in demonstrating that Fitbit's conduct with regard to the false advertising of its sleep tracker function was unlawful. Plaintiff understands the nature of these allegations and their responsibilities to represent the interests of others who have been the subject of Fitbit's unlawful billing practices. Plaintiff has retained attorneys who are experienced in the prosecution of class actions who should be appointed class counsel under Rule 23(g).

Indeed, both Plaintiffs testimony reflects the seriousness of their commitment to the putative classes in this matter. Plaintiff Clingman noted that as a class representative she would in charge of "representing people like myself that were lied to by the advertised features on the packaging" and that she would "do what's asked of me to assist in the – the suit." Ex. 14,

Clingman Tr. 73:12-20. Plaintiff Brickman shared the importance of this duty, "I believe that I'm representing people that are in the same circumstance that I'm in" and to properly do so, Brickman noted "I know that I have to come to things such as this and to stay apprised of the – of the progression of the lawsuit." Ex. 13, Brickman Tr. 50:1-11.

The legal teams seeking appointment as class counsel have significant experience prosecuting class actions, and have extensive knowledge of the applicable law and procedural considerations.  Plaintiffs' counsel have worked to investigate and identify the potential claims in this litigation and have committed substantial resources to representing the classes and prosecuting this matter, and will continue to do so once the classes are certified. Ex. 15, Perotti Declaration; Ex. 16, Bartela Declaration; Ex. 17, Margolis Declaration.

It is inevitable that Fitbit will make a variety of attacks on Plaintiffs and putative class counsel, but these arguments should be rejected. *See In re Diasonics Sec. Litig.*, 599 F. Supp. 447, 451-52 (N.D. Cal. 1984) ("it is often the defendant, preferring not to be successfully sued by anyone, who supposedly undertakes to assist the court in determining whether a putative class should be certified. When it comes, for instance, to determining whether the "representative parties will fairly and adequately protect the interests of the class," ... it is a bit like permitting a fox, although with a pious countenance, to take charge of the chicken house.") (quoting *Eggleston v. Chicago Journeymen Plumbers' Local Union No. 130*, 657 F.2d 890, 895 (7th Cir. 1981)).

### C.  The Class Satisfies the Requirements of Rule 23(b)(3).

Rule 23(b)(3) requires that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). The predominance requirement considers "whether proposed classes are sufficiently cohesive to warrant adjudication by representation. The focus is on the relationship between the common and individual issues." *Stearns v. Ticketmaster Corp.*, 655 F.3d 1013, 1019 (9th Cir. 2011) (internal quotations and citation omitted)). This is normally satisfied when there is

an essential common factual link between all class members and the defendant, for which the law provides a remedy.  *In re Visa Checks/MasterMoney Antitrust Litig*., 280 F.3d 124, 136 (2d Cir. 2001); *Drossin v. Nat'l Action Fin. Servs*., *Inc*., 255 F.R.D. 608, 616 (S.D. Fla. 2009) (noting the Court must determine "whether there are common liability issues which may be resolved efficiently on a class-wide basis.")

Plaintiffs seek to certify a class of consumers who purchased the Fitbit devices during the class period that represented, on the product packaging, that such devices could track a user's "hours slept," "times woken up," and "sleep quality." The common claim for each of those persons is that the device was unable to do so.

### 1.   Common Questions Predominate About Whether Fitbit's Representations Were Likely to Deceive Reasonable Consumers.

The UCL's "unfairness" prong and Plaintiffs' CLRA, Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), and common-law fraud-based claims prohibit conduct likely to mislead reasonable consumers. *See Williams v. Gerber Products*, *Co*., 552 F.3d 934, 938 (9th Cir. 2008) (under the CLRA and UCL, the "reasonable consumer standard" applies); *Lam v. Gen. Mills*, *Inc*., 859 F. Supp. 2d 1097, 1104 (N.D. Cal. 2012) (defendant's use of the word "strawberries" might lead reasonable consumers to believe product is made with strawberries, not pears from concentrate); *Millennium Communications & Fulfillment*, *Inc. v. Office of Attorney Gen*., 761 So. 2d 1256 (3rd Dist. Fla., 2000) ("A 'deceptive act' occurs when there is a 'representation, omission, or practice that is likely to mislead the consumer acting reasonably in the circumstances, to the consumer's detriment.')(quoting *PNR*, *Inc. v. Beacon Property Management*, *Inc*., 842 So. 2d 773, 777 (Fla. 2003)); *Jovine v. Abbott Labs*., *Inc*., 795 F. Supp. 2d 1331, 1342 (S.D. Fla. 2011) ("[I]n a FDUTPA action the issue is not reliance, but whether the practice was likely to deceive a consumer acting reasonably in the same circumstances.").

Fitbit made identical representations on all of its Fitbit Device product packaging throughout the class period. Ex. 7, product packaging. All packaging stated the device could

measure the user's night by "tracking … hours slept, times woken up, and sleep quality." The packaging is uniform and instructs the reasonable consumer that the device can measure that individual's hours slept, times woken up, and sleep quality. The level of deception achieved by the representations on the packaging was exemplified by the Plaintiffs' testimony in this case. Plaintiff Clingman testified that "[Fitbit] lied on their packaging about what the device was going to do. … It said that its going to track sleep and track your day, track your night. And it was not tracking my night or parts of my day." Ex. 14, Clingman Tr. 3-9. Similarly, Plaintiff Brickman stated, "My expectation as to have the hour – exactly what it says on the package, to have the hours that I slept to be tracked and the quality of sleep and how many times I woke up during the night." Ex. 13, Brickman Tr. 34:7-10

Hypothetically different individual consumer buying experiences do not defeat certification of the UCL, CLRA, FDUTPA, or fraud-based claims. On those claims, an inference of reliance arises as to the entire class if the misrepresentation was uniform and, in the case of the CLRA, material. *See Wolph v. Acer Am. Corp.*, 2012 WL 993531 at *3 (N.D. Cal. Mar. 23, 2012) ("[T]he Court found that Plaintiffs' claims are premised on misrepresentations that were made to the entire class. Therefore, common issues predominate on Plaintiffs' CLRA claim."); *Delarosa v. Boiron*, *Inc.*, 275 F.R.D. 582, 594 (C.D. Cal. 2011) ("A determination by the trier of fact that Coldcalm misrepresented its efficacy to Plaintiff will also resolve the common question of whether Coldcalm misrepresented its efficacy to all California consumers of Coldcalm"); *In re Brazilian Blowout Litig.*, 2011 WL 10962891 at *8 (C.D. Cal. Apr. 12, 2011) (on fraud and negligent misrepresentation claims "reliance may be presumed as to the entire Class if Defendant's misrepresentations or omissions were material"); *Johns v. Bayer Corp.*, 280 F.R.D. 551, 558 (S.D. Cal.) (finding the predominance requirement was met and reliance could be presumed where Plaintiffs challenged the representations made on a product's packaging); *Cold Stone Creamery*, *Inc. v. Lenora Foods I*, *LLC*, 332 Fed.Appx. 565 (11th Cir.2009) ("FDUTPA does not require a plaintiff to prove actual reliance on the alleged conduct."); *Latman v. Costa Cruise Lines*, *N.V.*, 758 So.2d 699 (3rd Dist. Fla. 2000) (noting that in a FDUTPA action "the

question is not whether the plaintiff actually relied on the alleged deceptive trade practice, but whether the practice was likely to deceive a consumer acting reasonably in the same circumstances.")

### 2.  Materiality Predominates.

The question of whether the misrepresentation or omission is "material" under California law is an objective one, and depends on the "reasonable person" standard. *See Stearns*, 655 F.3d at 1022; *see also Occidental Land*, *Inc. v. Superior Court*, 18 Cal. 3d 355, 363 (1976) (for common-law fraud class, reliance can be proven on common basis by showing that misrepresentations were material); *Vasquez v. Superior Court*, 4 Cal. 3d 800, 814 (1971) (on fraud claim, "[i]f the court finds that a reasonable man would have relied upon the alleged misrepresentations, an inference of justifiable reliance by each class member would arise"); *In re Tobacco II Cases*, 46 Cal. 4th at 327 ("[a] misrepresentation is judged to be 'material' if 'a reasonable man would attach importance to its existence or non-existence in determining his choice of action in the transaction' and as such materiality is generally a question of fact unless the fact misrepresented is so obviously unimportant that the jury could not reasonably find that a reasonable man would have been influenced by it."); *Johns*, 280 F.R.D. at 558 ([g]iven that the prostate health language appeared on four panels of every package of Men's Vitamins, it very well could have been material to a reasonable person.")

Materiality is an objective standard common to all, and because class-wide reliance is inferred if the misrepresentations were material, under California law, the common question of materiality predominates. Here, both Plaintiff's testified that they read the packaging and they relied specifically on the sleep tracking representations made by Fitbit. Ex. 14, Clingman Tr. 24:3-9; Ex. 13, Brickman Tr. 34:7-10

Further, Fitbit admits that both day tracking and night tracking are key, and the devices are marketed to serve those two main functions: to track a user's day time activities (steps, distance, and calories burned) and to track a user's night (hours slept, times woken up, and sleep

quality). Fitbit representatives Melanie Chase and Shelten Yuen both reiterated the sleep tracking function is an important feature to Fitbit customers. Ms. Chase, the Director of Product Marketing, specifically testified that "[t]racking activity and sleep are two of the most valued features from our consumers" Chase Tr. at p. 63:11-12. █████████████████████

████████████████████████████████████████████

### 3. Whether Fitbit's Representations are Unlawful Predominates Under California and Florida Law.

With respect to the Fitbit devices at issue, common questions also predominate regarding whether Fitbit has violated any state or federal laws and if so, whether Fitbit has violated the unlawful prong of the UCL and the FDUTPA.

A cause of action under FDUTPA requires (1) a deceptive act or unfair practice; (2) causation; and (3) actual harm. *Smith v. Wm. Wrigley Jr. Co*., 663 F. Supp. 2d 1336, 1339 (S.D. Fla. 2009); *Ward v. Ezpawn Florida, Inc*., 2016 WL 890087, at * (M.D. Fla. 2016) (noting that "the statute accounts for restitution claims that could arise from violating it.")  Pursuant to Fla. Stat. §501.203(3)(c), conduct can be found to be deceptive or unfair based on "[a]ny law, statute, rule, regulation, or ordinance which proscribes unfair methods of competition, or unfair, deceptive or unconscionable acts or practices."  "An unfair practice is one that offends established public policy and one that is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers." *Romantic Tours, Inc. v. Anastasia Int'l, Inc*., 2011 U.S. Dist. LEXIS 14552, 2011 WL 653724 at *2 (M.D. Fla. Feb. 14, 2011).

Similarly, under the UCL's "unlawfulness" prong, the Ninth Circuit has ruled that a plaintiff need not show that the representation was material or even that it was likely to mislead reasonable consumers, but only that it was unlawful. *See Hinojos v. Kohl's Corp*., 718 F.3d 1098, 1107 (9th Cir. 2013), *as amended on denial of reh'g and reh'g en banc* (July 8, 2013) ("Moreover, the legislature's decision to prohibit a particular misleading advertising practice is evidence that the legislature has deemed that the practice constitutes a "material"

misrepresentation, and courts must defer to that determination.") (citing *Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 246 P.3d 877, 892-93. (2011)); *Rahman v. Mott's LLP*, No. 13-CV-03482-SI, 2014 WL 6815779 at *7 (N.D. Cal. Dec. 3, 2014) (in food label class action, where statement "constitutes a violation of California's Sherman Law, and is thus independently actionable under the unlawful prong of the UCL," courts will find "a presumption of materiality").  In other words, materiality can be shown through common proof by virtue of the fact that the sleep tracking representations were uniform on all packaging of the Fitbit Ultra, One, and Flex devices.  Ex. 7.

Here, Fitbit's representations about the sleep tracking function violates the "unlawful" prong of both the UCL and the FDUPTA by running afoul of the FTC Act's prohibition on false advertising and deceptive acts and practices. 15 U.S.C. § 41 et seq., 15 U.S.C. § 52(a) & (b).

### 4.   Common Questions on Plaintiffs' Unjust Enrichment Claim Predominate Over Individual Issues

Plaintiffs' claims for unjust enrichment in Florida and California also yield to common questions solved by common proofs. Certification of an unjust enrichment claim is appropriate "where there are common circumstances bearing on whether the defendant's retention of a benefit received from class members was just or not." *In re Checking Account Overdraft Litig.*, 286 F.R.D. 645, 658 (S.D. Fla. 2012) (certifying a class where Defendant deliberately concealed important information from all class members); *Cartwright v. Viking Indus. Inc.*, 2009 WL 2982887, at *12-13 (E.D. Cal. 2009) (finding that common issues of fact predominated on an unjust enrichment claim where "the crux of plaintiffs' claims is that defendant unjustly retained the benefits of its sale of window products to consumers after it failed to disclose material facts about the defective nature of those products.")

Here, Plaintiffs are challenging the uniform representations that Fitbit made on the device packaging during the putative class period. Specifically, that language represented to consumers that the Fitbit devices could track a consumer's night by measuring their "hours slept," "times woken up," and "sleep quality."  But, Plaintiffs contend that the Fitbit devices are not able to

measure sleep. This presents common questions for the putative class—does the sleep tracking function work?

Further, the common proof to the above question will determine the issue of appropriate damages. Under an unjust enrichment claim, restitution (i.e. a disgorgement of the retained benefit) is an appropriate remedy common to the entire putative class. *American Master Lease*, *LLC v. Idanta Partners*, *Ltd.*, 225 Cal. App. 4th 1451 (Cal. App. 2014) (disgorgement based on unjust enrichment was an appropriate remedy); *Montage Group*, *Ltd.* v. *Athle-Tech Computer Systems*, *Inc.*, 889 So. 2d 180 (Fla. App. 2004) (restitution is the remedy for unjust enrichment).

### 5.   Common Questions on Restitution Predominate Over Individual Issues.

At this stage, Plaintiff need only demonstrate the existence of a viable relief model that makes use of common, class-wide evidence. *See Brown v. The Hain Celestial Group*, *Inc.*, 2014 WL 6483216 (2014) at *19 ("The point for Rule 23 purposes is to determine whether there is an acceptable class-wide approach, not to actually calculate under that approach before liability is established."); *McCrary v. Elations Co.*, *LLC*, 2014 WL 1779243 at *15 (C.D. Cal. Jan. 13, 2014) (certifying consumer class because plaintiff presented a viable damages model and "it is not necessary to show that his method will work with certainty at this time") (quoting *Chavez*, 268 F.R.D. at 379 (certifying consumer class because plaintiffs were able to demonstrate one potential measure of damages based on the premium price paid by consumers)); *see also Khasin v. R.C. Bigelow*, *Inc.*, 2015 WL 5569161 (N.D. Cal. 2015) ("Each court pointed out that at the class certification stage, plaintiffs needed to present a viable theory to calculate damages, but also that it is not necessary to show that the method will work with certainty."); *Pulaski v. Middleman*, 2015 WL 5515617 at *8 (9th Cir. 2015) ("In calculating damages, here restitution, California law 'requires only that some reasonable basis of computation of damages be used, and the damages may be computed even if the result reached is an approximation.") (quoting *Marsu*, *B.V.* v. *Walt Disney Co.*, 185 F.3d 932, 938-39 (9th Cir. 1999)); *Sanchez v. Knutson v. Ford Motor Co.*, 310 F.R.D. 529, 539 (S.D. Fla. 2015) (disagreeing with Defendant's assertion that Plaintiff's expert must have already performed the damages analysis).

In its first key order in this case, denying Fitbit's motion to dismiss, this court urged plaintiffs to make their approach more streamlined. Plaintiffs have done so. Relief is confined to restitution, instead of damages.[4] The sole question is what amount Fitbit received for the sleep tracking function in the sale of its products. That calculation is based on the sales price of the model without sleep tracking, compared to the model with sleep tracking, reduced by the price of other features. See, Report of John F. Burke, Jr., Ph.D. and Harvey Rosen, Ph.D. (ECF No. 117). This matter presents a common and disputed question since one Fitbit representative, Melanie Chase, testified there is "zero" difference attributed to sleep tracking, while Mr. Yuen went through the pricing components and was only able to attribute (out of the $40 price difference) less than $10 to other and features between the Zip (without sleep) and the One (with sleep). Ex. 3, Yuen Tr. 106, 110-113, 128-129.

### 6.  A Class Action is Superior.

Rule 23(b)(3) enumerates four factors to consider on "superiority" including "(A) the interest of members of the class in individually controlling the prosecution … of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by … members of the class; (C) the desirability … of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action."

At issue here are wearable consumer electronics all sold for approximately $100. There is little to be gained by class members filing individual claims, because the purchase prices of Fitbit devices are low. Further, concentrating the claims at issue here in single suit before this Court would conserve judicial resources. Finally, the adjudication of class claims would not be significantly more burdensome than if the matter were prosecuted individually, while the

---

[4] A damages approach in product cases focuses on the value, to each consumer, of a premium feature. Hedonic modeling is used, since each class member's opinion is key: how much was it worth to *me*. Restitution focuses instead on the amount defendant collected which it would be unfair to retain. Using the pricing of the product, comparing pricing without the non-working feature versus pricing with it, is a single number creating a fund for sales of the product with the feature. The distribution of that fund is a function of class administration.

prosecution of individual remedies could establish inconsistent standards of conduct for Fitbit. "[A] class action has to be unwieldy indeed before it can be pronounced an inferior alternative . . . to no litigation at all." *Carnegie v. Household Int'l, Inc.*, 376 F.3d 656, 661 (7th Cir. 2004); *Visa Checks/MasterMoney*, 280 F.3d at 140.

For all these reasons, Plaintiffs respectfully request the court grant class certification.

Dated:  January 31, 2017                    DWORKEN & BERNSTEINS CO., L.P.A.


                                            By:  /s/*Patrick J. Perotti*
                                                 Patrick J. Perotti

                                            Attorneys for Plaintiffs