WILLIAM L. STERN (CA SBN 96105)
WStern@mofo.com
ALEXANDRA E. LAKS (CA SBN 291861)
ALaks@mofo.com
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, California  94105
Telephone:    415.268.7000
Facsimile:    415.268.7522

ERIN M. BOSMAN (CA SBN 204987)
EBosman@mofo.com
JULIE Y. PARK (CA SBN 259929)
JuliePark@mofo.com
KAI S. BARTOLOMEO (CA SBN 264033)
KBartolomeo@mofo.com
MORRISON & FOERSTER LLP
12531 High Bluff Drive
San Diego, California  92130-2040
Telephone:    858.720.5100
Facsimile:    858.720.5125

Attorneys for Defendant
FITBIT, INC.

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMES P. BRICKMAN, individually and as a representative of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>FITBIT, INC.,<br><br>Defendant. | Case No. 3:15-cv-2077-JD<br><br>**DEFENDANT FITBIT, INC.'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT**<br><br>Date:    May 25, 2017<br>Time:    10:00 a.m.<br>Ctrm:    11, 19th Floor<br>Trial:    July 10, 2017<br><br>The Honorable James Donato<br><br>Date Action Filed:    May 8, 2015 |

## REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED

FITBIT'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT
Case No. 3:15-cv-2077-JD
sf-3758132

**TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ...........................................................................................................iii

NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT ................................... 1

STATEMENT OF THE ISSUES TO BE DECIDED.................................................................... 1

MEMORANDUM OF POINTS AND AUTHORITIES ............................................................... 1

I.      INTRODUCTION ............................................................................................................ 1

II.     FACTUAL AND PROCEDURAL HISTORY.................................................................. 2

    A.      Fitbit's Fitness and Activity Trackers Have a Variety of Features......................... 2

    B.      Fitbit's Proprietary Sleep Tracking Technology...................................................... 3

    C.      Plaintiffs' Contentions. ........................................................................................... 4

    D.      Relevant Procedural History ................................................................................... 5

III.    LEGAL STANDARD........................................................................................................ 5

IV.     ARGUMENT .................................................................................................................... 6

    A.      Plaintiffs Have No Evidence That the Devices Cannot "Track Sleep" ................. 6

        1.      Plaintiffs' Various Theories of "Does Not Work," Dissected. .................. 7

        2.      Plaintiffs Have No Evidence That Actigraphy Cannot "Track Sleep." .................................................................................................. 8

        3.      Plaintiffs Have No Evidence That the Devices Cannot "Track Sleep." .................................................................................................. 9

            a.      Plaintiffs Have No Direct Evidence of Product Defect. ................. 9

            b.      Plaintiffs' Circumstantial Evidence Fails to Raise a Fact Issue. ..................................................................................... 10

    B.      Plaintiffs Have No Evidence That "Tracks Sleep" Is "Likely to Deceive," Is Material, or Induced Consumer Reliance.......................................................... 13

        1.      Plaintiffs Have No Evidence That "Track Sleep" Deceived *Them*, Was Material to *Their* Purchases, or Induced *Their* Reliance. ................. 14

        2.      Plaintiffs Have No Evidence That *Class Members* Were Deceived. ......... 15

    C.      "Sleep Mode" (and User Error) Precludes Class Evidence of Damages and Causation.............................................................................................................. 20

    D.      Plaintiffs Have No Evidence That They Are Entitled to Monetary Relief, Individually or Classwide. .................................................................................... 21

        1.      The Right to Monetary Relief Is an Element of All Claims. .................... 22

        2.      Plaintiffs Seek "Restitutionary Disgorgement" for All Six Claims.......... 22

        3.      The Law—What Plaintiffs Call "Restitution" Is Really "Disgorgement of Profits" and Is Not Allowed. ..................................... 22

        4.      The Facts—Plaintiffs Have No Common Evidence to Support Entitlement to Restitution or Damages. .................................................. 24

        5.      Plaintiffs Are Not Entitled to Injunctive Relief. ..................................... 25

**TABLE OF CONTENTS**
**(continued)**

Page

V.    CONCLUSION ................................................................................................................. 25

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Am. Title Ins. Co. v. Lacelaw Corp.*,
   861 F.2d 224 (9th Cir. 1988)................................................................................................8

*Anderson v. Deloitte & Touche*,
   56 Cal. App. 4th 1468 (1997) ...........................................................................................13

*Anderson v. Liberty Lobby, Inc.*,
   477 U.S. 242 (1986)............................................................................................................5

*Asnaashari v. PNY Techs., Inc.*,
   No. C 13-1308 PJH, 2013 WL 2403605 (N.D. Cal. May 31, 2013)..................................22

*Astiana v. Kashi Co.*,
   291 F.R.D. 493 (S.D. Cal. 2013)...................................................................................23, 24

*Baghdasarian v. Amazon.com, Inc.*,
   458 F. App'x 622 (9th Cir. 2011) .....................................................................................15

*Berger v. Home Depot USA, Inc.*,
   741 F.3d 1061 (9th Cir. 2014)...........................................................................................22

*Bias v. Wells Fargo & Co.*,
   942 F. Supp. 2d 915 (N.D. Cal. 2013) ..............................................................................22

*Binning v. Louisville Ladder, Inc.*,
   No. 2:11-cv-03058-MCE-CK, 2014 WL 4249667 (E.D. Cal. Aug. 27, 2014).................10

*Brazil v. Dole Packaged Foods, LLC*,
   660 F. App'x 531 (9th Cir. 2016) .....................................................................................23

*Caro v. Procter & Gamble Co.*,
   18 Cal. App. 4th 644 (1993) .............................................................................................20

*Celotex Corp. v. Catrett*,
   477 U.S. 317 (1986)............................................................................................................7

*Churchill Vill., L.L.C. v. Gen. Elec. Co.*,
   169 F. Supp. 2d 1119 (N.D. Cal. 2000) ............................................................................17

*Clemens v. DaimlerChrysler Corp.*,
   534 F.3d 1017 (9th Cir. 2008)......................................................................................15, 16

*Colgan v. Leatherman Tool Grp., Inc.*,
   135 Cal. App. 4th 663 (2006) ...........................................................................................23

*Cortez v. Purolator Air Filtration Prods. Co.*,
   23 Cal. 4th 163 (2000) ...............................................................................................................23

*Davis v. Chase Bank U.S.A., N.A.*,
   650 F. Supp. 2d 1073 (C.D. Cal. 2009) ...............................................................................20, 22

*Day v. AT & T Corp.*,
   63 Cal. App. 4th 325 (1998) ......................................................................................................23

*Fox v. Pollack*,
   181 Cal. App. 3d 954 (1986).......................................................................................................14

*Graham v. VCA Antech, Inc.*,
   No. 2:14-cv-8614-CAS-JC, 2016 WL 5958252 (C.D. Cal. Sept. 12, 2016)............................15

*Haskell v. Time, Inc.*,
   965 F. Supp. 1398 (E.D. Cal. 1997)...........................................................................................17

*Hataishi v. First Am. Home Buyers Prot. Corp.*,
   223 Cal. App. 4th 1454 (2014) ..................................................................................................16

*Heighley v. J.C. Penney Life Ins. Co.*,
   257 F. Supp. 2d 1241 (C.D. Cal. 2003) .....................................................................................17

*Hernandez v. Spacelabs Med. Inc.*,
   343 F.3d 1107 (9th Cir. 2003).....................................................................................................11

*Hinojos v. Kohl's Corp.*,
   718 F.3d 1098 (9th Cir. 2013)...............................................................................................14, 15

*In re Facebook, Inc., PPC Advert. Litig.*,
   282 F.R.D. 446 (N.D. Cal. 2012) ...............................................................................................23

*In re First Alliance Mortg. Co.*,
   471 F.3d 977 (9th Cir. 2006).......................................................................................................23

*In re Horizon Organic Milk Plus DHA Omega-3 Mktg. & Sales Practice Litig.*,
   955 F. Supp. 2d 1311 (S.D. Fla. 2013) ......................................................................................16

*In re Tobacco Cases II*,
   240 Cal. App. 4th 779 (2015), *rev. denied* (Dec. 9, 2015)..................................................22, 24

*In re Tobacco II Cases*,
   46 Cal. 4th 298 (2009) ..........................................................................................................13, 20

*In re Toyota Motor Corp. Hybrid Brake Mktg., Sales Practices & Prods. Liab.
   Litig.*,
   915 F. Supp. 2d 1151 (C.D. Cal. 2013) .......................................................................................7

*In re Vioxx Class Cases*,
180 Cal. App. 4th 116 (2009) ..........................................................................................19, 23

*Howard v. Omni Hotels Mgmt. Corp.*,
203 Cal. App. 4th 403 (2012) .................................................................................................10

*Humana, Inc. v. Castillo*,
728 So. 2d 261 (Fla. Dist. Ct. App. 1999) ..............................................................................20

*Jovine v. Abbott Labs., Inc.*,
795 F. Supp. 2d 1331 (S.D. Fla. 2011) ...................................................................................13

*Khasin v. Hershey Co.*,
No. 5:12-CV-1862-EJD, 2014 WL 1779805 (N.D. Cal. May 5, 2014)..............................15, 16

*Korea Supply Co. v. Lockheed Martin Corp.*,
29 Cal. 4th 1134 (2003) .........................................................................................................23

*Kwikset Corp. v. Super. Ct.*,
51 Cal. 4th 310 (2011) .....................................................................................................14, 23

*Lanovaz v. Twinings N. Am., Inc.*,
No. C-12-02646-RMW, 2014 WL 1652338 (N.D. Cal. Apr. 24, 2014)....................................22

*Lavie v. Procter & Gamble Co.*,
105 Cal. App. 4th 496 (2003) .................................................................................................16

*Lee v. Toyota Motor Sales, U.S.A., Inc.*,
992 F. Supp. 2d 962 (C.D. Cal. 2014) ...................................................................................6, 7

*Leslie G. v. Perry & Assocs.*,
43 Cal. App. 4th 472 (1996) ...................................................................................................11

*Lombardo v. Johnson & Johnson Consumer Cos.*,
124 F. Supp. 3d 1283 (S.D. Fla. 2015) ...........................................................13, 20, 21, 22

*Luke v. Family Care & Urgent Med. Clinics*,
246 F. App'x 421 (9th Cir. 2007) ...........................................................................................12

*Major v. Ocean Spray Cranberries, Inc.*,
No. 5:12-CV-03067-EJD, 2015 WL 859491 (N.D. Cal. Feb. 26, 2015) .......................7, 15, 16

*McKissack v. Swire Pac. Holdings, Inc.*,
No. 09-22086-Civ., 2011 WL 1233370 (S.D. Fla. Mar. 31, 2011)..........................................23

*McLaughlin v. Monaco RV LLC*,
No. 8:14-cv-703-T-36TGW, 2015 WL 5355465 (M.D. Fla. Sept. 14, 2015) ..........................10

*Ochoa v. McDonald's Corp.*,
133 F. Supp. 3d 1228 (N.D. Cal. 2015) (Donato, J.) ...............................................................6

*Orthopedic & Sports Injury Clinic v. Wang Labs., Inc.*,
   922 F.2d 220 (5th Cir. 1991)..................................................................................................12

*Paine v. Domino's Pizza, LLC*,
   No. 10-23158-CIV, 2011 WL 1102788 (S.D. Fla. Mar. 24, 2011) .........................................22

*Pan-Alaska Fisheries, Inc. v. Marine Constr. & Design Co.*,
   565 F.2d 1129 (9th Cir. 1977)...............................................................................................21

*Pavoni v. Chrysler Grp., LLC*,
   789 F.3d 1095 (9th Cir. 2015).................................................................................................9

*People ex rel. Dep't of Motor Vehicles v. Cars 4 Causes*,
   139 Cal. App. 4th 1006 (2006) ...............................................................................................16

*Perrine v. Sega of Am., Inc.*,
   No. 13-cv-01962-JD, 2015 WL 2227846 (N.D. Cal. May 12, 2015)
   (Donato, J.)..............................................................................................................................19

*Persson v. Smart Inventions, Inc.*,
   125 Cal. App. 4th 1141 (2005) ...............................................................................................23

*Philips v. Ford Motor Co.*,
   No. 14-CV-02989-LHK, 2017 WL 635469 (N.D. Cal. Feb. 16, 2017)...................................25

*Pulaski & Middleman, LLC v. Google, Inc.*,
   802 F.3d 979 (9th Cir. 2015), *cert. denied*, 136 S. Ct. 2410 (2016) ..................................22, 23

*Rahman v. Mott's LLP*,
   No. CV 13-3482 SI, 2014 WL 5282106 (N.D. Cal. Oct. 15, 2014) ...........................16, 17, 18

*Rhynes v. Stryker Corp.*,
   No. 10-5619 SC, 2011 WL 2149095 (N.D. Cal. May 31, 2011) ............................................25

*Rice v. Fox Broad. Co.*,
   330 F.3d 1170 (9th Cir. 2003)...........................................................................................15, 17

*Ries v. Ariz. Beverages USA LLC*,
   No. 10-01139 RS, 2013 WL 1287416 (N.D. Cal. Mar. 28, 2013)...............................17, 18, 23

*Rodas v. Porsche Cars N. Am., Inc.*,
   No. CV14-3747 PSG, 2016 WL 6033535 (C.D. Cal. Apr. 4, 2016) ...........................10, 12, 21

*Rooney v. Cumberland Packing Corp.*,
   No. 12-CV-0033-H (DHB), 2012 WL 1512106 (S.D. Cal. Apr. 16, 2012) ..............................6

*Roper v. Kawasaki Heavy Indus., Ltd.*,
   No. 1:13-CV-03661-ELR, 2015 WL 11236553 (N.D. Ga. June 29, 2015), *cert.
   denied*, 137 S. Ct. 186 (2016) ................................................................................................12

*Simpson v. Cal. Pizza Kitchen, Inc.*,
    989 F. Supp. 2d 1015 (S.D. Cal. 2013) ...............................................................................7

*Small v. Fritz Cos.*,
    30 Cal. 4th 167 (2003) .......................................................................................................20

*Smith v. State of Cal. Dep't of Highway Patrol*,
    75 F. Supp. 3d 1173 (N.D. Cal. 2014) .................................................................................6

*Summers v. A. Teichert & Son, Inc.*,
    127 F.3d 1150 (9th Cir. 1997).............................................................................................6

*Swearingen v. Pac. Foods of Or., Inc.*,
    No. 13-cv-04157-JD, 2014 WL 3767052 (N.D. Cal. July 31, 2014) (Donato, J.)...................15

*Theme Promotions, Inc. v. News Am. Mktg. FSI*,
    546 F.3d 991 (9th Cir. 2008)..............................................................................................23

*Tucker v. Pac. Bell Mobile Servs.*,
    208 Cal. App. 4th 201 (2012) .............................................................................................22

*United States v. Various Slot Machines on Guam*,
    658 F.2d 697 (9th Cir. 1981)..............................................................................................12

*Victor v. R.C. Bigelow, Inc.*,
    No. 13-cv-02976-WHO, 2015 WL 5569716 (N.D. Cal. Sept. 21, 2015) ...............................23

*Waters v. Int'l Precious Metals Corp.*,
    172 F.R.D. 479 (S.D. Fla. 1996) .........................................................................................20

*Webb v. Carter's, Inc.*,
    272 F.R.D. 489 (C.D. Cal. 2011) ........................................................................................20

*Williams v. Gerber Prods. Co.*,
    552 F.3d 934 (9th Cir. 2008)...........................................................................................6, 13

**Statutes**

Cal. Bus. & Prof. Code
    § 17200.............................................................................................................................5

Cal. Civ. Code
    § 1750 *et seq.* ...................................................................................................................5
    § 1780(a)(1).......................................................................................................................22
    § 3343..............................................................................................................................23

Fla. Stat.
    § 501.201...........................................................................................................................5

**Rules**

Fed. R. Civ. P. 56 ..................................................................................................................5

Fed. R. Civ. P. 56 advisory committee's note to 2010 amendments ...................................6

## NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT

**TO PLAINTIFFS AND TO THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on May 25, 2017 at 10:00 a.m., or as soon thereafter as the matter may be heard, in the courtroom of the Honorable James Donato, United States District Judge, Northern District of California, located at the Philip Burton Federal Building, 450 Golden Gate Avenue, San Francisco, California, Defendant Fitbit, Inc. ("Fitbit") will and hereby does move this Court for summary judgment or partial summary judgment pursuant to Fed. R. Civ. P. 56(a) as to the claims of Plaintiffs James P. Brickman and Margaret Clingman ("Plaintiffs") for: (1) violation of California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 *et seq.*; (2) violation of California's Consumers Legal Remedies Act, Cal. Civ. Code § 1750 *et seq.*; (3) violation of the Florida Deceptive and Unfair Trade Practices Act (FDUTPA), Fla. Stat. § 501.201 *et seq.*; (4) common law fraud; (5) negligent misrepresentation; and (6) unjust enrichment, as set forth in the "Fourth Amended Class Action Complaint" (ECF No. 60).  In the alternative, if the Court does not grant all the relief requested by the motion, Fitbit will seek an order stating that certain material facts are not genuinely in dispute and treating the facts as established.

Fitbit seeks summary judgment as to both Plaintiffs' individual and classwide claims on the grounds that Plaintiffs and the class fail to demonstrate that Fitbit's sleep tracking representations were false or misleading, and that Plaintiffs and the class fail to put forth any evidence demonstrating they are entitled to monetary relief.

This motion is based on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, and the Declarations of William L. Stern, Shelten Yuen and Conor Heneghan in support thereof, and other related documents filed in connection with this Motion, the papers and records on file in this action, and such other written and oral argument as may be presented to the Court.

FITBIT'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT
Case No. 3:15-cv-2077-JD
sf-3758132

1

Dated:  April 20, 2017

MORRISON & FOERSTER LLP

By:  */s/ William L. Stern*
          WILLIAM L. STERN

Attorneys for Defendant
FITBIT, INC.

## STATEMENT OF THE ISSUES TO BE DECIDED

Fitbit's motion raises the following four issues:

1. Is Fitbit entitled to summary judgment on Plaintiffs' individual and classwide claims that Fitbit's sleep tracking representations are false and misleading where Plaintiffs have no evidence that "tracks sleep" is false, and where the undisputed evidence demonstrates that Fitbit uses a valid methodology to track sleep and that its devices track sleep as a matter of practice?

2. Is Fitbit entitled to summary judgment on Plaintiffs' individual and classwide claims that Fitbit's sleep tracking representations are false and misleading where Plaintiffs have no evidence that "tracks sleep" is otherwise deceptive, material, or induced reliance?

3. Is Fitbit entitled to summary judgment on Plaintiffs' individual and classwide claims that Fitbit's sleep tracking representations are false and misleading where Plaintiffs have no evidence that any aberrant readings were not caused by user error?

4. Is Fitbit entitled to summary judgment on Plaintiffs' individual and classwide claims where Plaintiffs present no legally viable method of calculating monetary relief, and where Plaintiffs have presented no evidence that they are entitled to such relief?

### MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

A decade ago, Fitbit began as a small start-up company with a singular mission:  help people lead healthier, more active lives by empowering them with data, inspiration, and guidance to reach their personal fitness goals.  While many associate Fitbit with its wearable devices, Fitbit is, in fact, an entire platform—an ecosystem of connected health and fitness devices and software and services, including an online dashboard and mobile apps, data analytics, motivational and social tools, personalized insights, and virtual coaching through customized fitness plans and interactive workouts.  Fitbit's devices are both wrist-worn and "clippable."  Depending on the particular model, they can track a host of information, such as daily steps, calories burned, distance traveled, active minutes, floors climbed, sleep duration and quality, heart rate, and GPS-based information such as speed, distance, and exercise routes.

This lawsuit concerns a subset of Fitbit's legacy devices—the One, Ultra, and Flex (the "Devices")—equipped with Fitbit's proprietary sleep-tracking technology.  Fitbit developed this technology using its own expertise in engineering and by tracking users' movement through accelerometers.  Measuring sleep via movement is universally accepted science, as even Plaintiffs and their experts admit.  Yet, Plaintiffs James P. Brickman and Margaret Clingman ("Plaintiffs") claim the Devices are incapable of tracking sleep because they use movement as a proxy for sleep and/or because they "do not work at all."  This, Plaintiffs assert, renders Fitbit's packaging statements false or misleading in violation of California and Florida law.  But after two years of litigation and extensive discovery, Plaintiffs have no evidence of either claim.  The Court should now grant summary judgment on Plaintiffs' individual and classwide claims for four independent reasons.

**First**, Plaintiffs cannot show that Fitbit's "tracks sleep" representations are "false."  The undisputed evidence demonstrates that Fitbit's representations are truthful:  Fitbit's methodology, actigraphy, is a scientifically valid technique of tracking sleep.  Moreover, the Devices work. They *do* track sleep—as advertised.  Plaintiffs cannot prove otherwise.

**Second**, Plaintiffs have no evidence that "tracks *sleep*" deceived consumers into thinking

they were getting polysomnography technology (a machine used in a lab where electrodes are placed on the head and body). Even Plaintiffs admit they never interpreted "tracks sleep" to mean polysomnography. Importantly, they have no evidence that "it is probable that a significant portion of the general consuming public" thought that.

**Third,** Plaintiffs have no evidence that any aberrant readings were not caused by user error: Plaintiffs' (and class members') failure to correctly enable or disable Sleep Mode. It is Plaintiffs' burden to negate user error as a cause. They have failed to do so.

**Fourth**, Plaintiffs cannot prove entitlement to classwide or individual monetary relief. They lay claim to disgorgement of Fitbit's profits, but that measure fails as a matter of law. Damages, including restitution, must measure the premium consumers paid, not the "profit" Fitbit earned. Moreover, Plaintiffs withdrew their damages expert at class certification and have no damages expert for trial. While reliance on a defendant's documents and witnesses might be enough in some cases to prove monetary relief, it is not here.

There are no disputed material issues of fact. The Court should grant summary judgment.

## II.    FACTUAL AND PROCEDURAL HISTORY

### A.    Fitbit's Fitness and Activity Trackers Have a Variety of Features

Fitbit is the market leader in activity and fitness trackers. (*See* Declaration of Shelten Yuen In Support of Fitbit's Motion for Summary Judgment ("Yuen Declaration"), ¶ 3.) At the time the 4AC was filed, Fitbit's trackers included Zip, One, Flex, Charge, Charge HR, and Surge. (*See* ECF No. 63-3.) At issue here are the Fitbit One, Ultra, and Flex. (*See* ECF No. 119-4 (Mot. for Class Cert.), 1:7-11 (limiting class to purchasers of these devices).)

All Fitbit trackers count steps (*see, e.g.*, ECF No. 63-3 at 8; 4AC, ¶ 30; ECF No. 119-12), but they vary significantly in design and additional features and functionality. Zip, the lowest priced, has a clip-on design, a clock, a replaceable battery, Bluetooth capability, and an LCD display. (*See* ECF Nos. 63-3, 63-4 at 2, 8; ECF No. 119-12.) Zip tracks activity but not sleep. (ECF No. 63-3.)

Fitbit One and Ultra, like Zip, are clip-on trackers that count steps. (ECF Nos. 63-3; 119-12.) But each possesses a different suite of features. The One provides multiple features that Zip

does not, including tracking sleep, floors climbed, vibrating alarm, rechargeable battery, and a display that can be read in the dark. (*See* ECF Nos. 63-3, 63-5, p. 9, 119-12.) Ultra (a legacy product) also tracks sleep and floors climbed. It includes a rechargeable battery but no silent alarm. (ECF No. 119-12.) Unlike Zip, Ultra does not sync to Bluetooth devices. (*Id.*)

Fitbit Flex—unlike Zip, One, and Ultra—is worn on the wrist. In addition to Zip's features, Flex (also a legacy product) tracks sleep, has a silent alarm, and a rechargeable battery. (*Id.*) But unlike Zip, Flex does not include a clock (ECF No. 63-3); it displays users' progress towards their daily step goal with LED lights. (ECF No. 63-6, pp. 2-3.) Flex does not have a LCD display or a display that can be read in the dark.

### B.    Fitbit's Proprietary Sleep Tracking Technology

Fitbit tracks sleep using a combination of hardware and software. (Yuen Decl., ¶ 7.) The hardware consists of a 3-axis accelerometer to detect movement and its absence. (*Id.*; 4AC, ¶ 34.)

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████   (Yuen Decl., ¶ 7.)   █████████████████

████████████████████████████████████████████████████████

████████████████████████████. (Declaration of William L. Stern ("Stern Decl."), Ex. A (Expert Report of Michael A. Grandner, Ph.D ("Grandner Report"), ¶¶ 42-43.)

The Devices use actigraphy. (Yuen Decl., ¶ 8.) According to the American Academy of Sleep Medicine, "[a]ctigraphy is reliable and valid for detecting sleep in normal, healthy adult populations." (ECF No. 63-13 at 338.) It "uses accelerometers…to study sleep-wake patterns and circadian rhythms by assessing movement, most commonly of the wrist." (*Id.* at 337-38; *see also* Stern Decl. Ex. A, ¶ 26 (actigraphy "measure[s] a subject's movement and determine[s] the amount and quality of the subject's sleep and [] sleep interruptions.").)

Another method for detecting sleep is polysomnography, but that is not available as a consumer wearable technology. It is a clinician's tool that records various biophysiological changes that occur during sleep and is used in a doctor's office or in a laboratory setting. Even

Plaintiffs agree.  (4AC, ¶ 33; *see also* Stern Decl. Ex. A, ¶ 25.)  This is an example of a patient being monitored using PSG:[1]

### C.    Plaintiffs' Contentions.

In the 4AC, Plaintiffs allege that, shortly after wearing the devices "it became obvious [] that the device only tracked  [] motion and did not actually track the hours [they] slept, the times [they] woke up, or the quality of [their] sleep."  (4AC, ¶¶ 12-13.)  They contend Fitbit's package representations are false and misleading because the Devices use actigraphy, which only measures movement.  (*Id.*, ¶ 4.)  To truly "track sleep," they say, Fitbit needed to use polysomnography:  "The Fitbit devices do not record any of those functions [that polysomnography does], and only uses an accelerometer . . . . But, that only tracks a wearer's movement, not sleep and . . . tracking movement is "not measuring sleep, simply motion."  (*Id.*, ¶ 34)  Consequently, this function "does not work" (*id.*, ¶ 9) and the Devices did not "perform as advertised."  (*Id.*, ¶ 5.)  Plaintiffs allege they were harmed and paid a premium because, in effect,

---

[1] Photographic depictions of patients wearing the extensive, cumbersome equipment, including electrodes, required to perform a polysomnographic evaluation can be found throughout the Internet, including on Wikipedia (https://en.wikipedia.org/wiki/Polysomnography).

Fitbit used the wrong noun—"tracks *sleep*" instead of "tracks *movement*." (*Id.*, ¶ 40.) Importantly, their sleep expert admits that polysomnography does not measure sleep directly either. (Stern Decl. Ex. B (Punjabi Dep.), 58:24-59:7.)

Plaintiffs have dropped three claims,[2] leaving six: (i) violations of California's unfair competition law (Cal. Bus. & Prof. Code § 17200 (UCL) (*id.*, ¶¶ 70-98); (ii) Consumer Legal Remedies Act (Cal. Civ. Code § 1750 *et seq.* (CLRA) (*id.*, ¶¶ 104-109); (iii) violation of Florida's Deceptive and Unfair Trade Practices Act (FDUTPA), Fla. Stat. § 501.201 *et. seq.* (*id.*, ¶¶ 134-140); (iv) Common Law Fraud (*id.*, ¶¶ 141-109); (v) Negligent Misrepresentation (*id.*, ¶¶ 149-154); and (vi) Unjust Enrichment/Quasi-Contract (*id.*, ¶¶ 155-164).[3]

### D. Relevant Procedural History

Brickman sued May 8, 2015. (ECF No. 1 (Complaint).) Plaintiffs filed the operative Fourth Amended Complaint on Dec. 22, 2015. (ECF No. 60.) The crux of the 4AC is that ***"tracking movement is not tracking sleep."*** (ECF No. 67 (Opp'n to MTD) at 2:9 (emphasis added)). Plaintiffs moved for class certification. (ECF No. 119-4.) Fitbit opposed the motion (ECF No. 122), and the Court held oral argument on March 30, 2017. The Court has not yet issued an order, but indicated it was likely to grant certification. (*See, e.g.*, Stern Decl. Ex. C, 4:13-5:3.)

### III. LEGAL STANDARD

Summary judgment is appropriate when the pleadings, discovery, and affidavits show "no genuine dispute as to any material fact and [that] the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are facts that may affect the outcome of the case. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *Id.*

Once the moving party meets its initial burden, the nonmoving party must, by affidavits or discovery, set forth specific facts showing that there is a genuine issue for trial. Fed. R. Civ. P.

---

[2] Plaintiffs abandoned the second, fourth and fifth claims for relief (ECF No. 119-4, 4, n.1; (*See* Stern Decl. Ex. C (March Hearing Tr.), 4:4-12), and the Court dismissed those claims. (*Id.*, 4:8-10.)

[3] The Court has noted unjust enrichment "is not a claim. It's a remedy." (*Id.*, 4:10-12.)

56. "It is not the task of the district court to scour the record in search of a genuine issue of triable fact." *Ochoa v. McDonald's Corp.*, 133 F. Supp. 3d 1228, 1232 (N.D. Cal. 2015) (citing *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996)). "Summary judgment may be granted if 'the evidence is merely colorable . . . or is not significantly probative.'" *Summers v. A. Teichert & Son, Inc.*, 127 F.3d 1150, 1152 (9th Cir. 1997) (citations omitted). There is no genuine issue of material fact if, on the record taken as a whole, a rational trier of fact could not find in favor of the party opposing the motion. *See id.* (citing *Anderson*, 477 U.S. at 248).[4]

## IV.    ARGUMENT

Plaintiffs must present evidence demonstrating that Fitbit's representations that its Devices "tracks sleep" is false or misleading and, if so, that such misrepresentations were material, induced reliance, and caused injury and/or damages. Plaintiffs fail to raise a material issue of fact as to any of these four elements, either for their own individual claims or their classwide claims. The Court should grant summary judgment.

### A.    Plaintiffs Have No Evidence That the Devices Cannot "Track Sleep"

The 4AC alleges that Fitbit's representation that its Devices "track sleep," including "hours slept," times woken up" and "sleep quality" is false because "[t]he device does not, and cannot, track sleep." (4AC ¶ 8). This Court has observed that all of Plaintiffs' claims "amount to [] slightly different ways of saying 'you lied to me.'" (Order (ECF No. 84), 2 n.1.)

As all six claims are grounded in deception, Plaintiffs must identify a representation that is either false or "'has a capacity, likelihood or tendency to deceive or confuse the public.'" *Williams v. Gerber Prods. Co.*, 552 F.3d 934, 938 (9th Cir. 2008) (citations omitted). Stated differently, Plaintiffs lose if the allegedly false statements are actually true and not otherwise misleading. *See, e.g.*, *Lee v. Toyota Motor Sales, U.S.A., Inc.*, 992 F. Supp. 2d 962, 974 (C.D. Cal. 2014); *Rooney v. Cumberland Packing Corp.*, No. 12-CV-0033-H (DHB), 2012 WL

---

[4] The current version of Rule 56 authorizes a Court to grant partial summary judgment to dispose of less than the entire case and even just portions of a claim or defense. *See* Fed. R. Civ. P. advisory committee's note to 2010 amendments; *see also Smith v. State of Cal. Dep't of Highway Patrol*, 75 F. Supp. 3d 1173, 1179 (N.D. Cal. 2014). "Now the Court can, when warranted, selectively fillet a claim or defense without dismissing it entirely." *Ochoa*, 133 F. Supp. 3d at 1232.

1512106, at *4 (S.D. Cal. Apr. 16, 2012); *Major v. Ocean Spray Cranberries, Inc.*, No. 5:12-CV-03067-EJD, 2015 WL 859491, at *5 (N.D. Cal. Feb. 26, 2015).  Likewise, Plaintiffs lack Article III standing if they received the benefit of the bargain and suffered no injury-in-fact.  *In re Toyota Motor Corp. Hybrid Brake Mktg., Sales Practices & Prods. Liab. Litig.*, 915 F. Supp. 2d 1151, 1159 (C.D. Cal. 2013) (granting summary judgment as to CLRA and UCL claims where the "undisputed evidence before the Court establishes that [plaintiff] received precisely what he bargained for with Toyota."); *Lee*, 992 F. Supp. 2d at 972 (same); *Simpson v. Cal. Pizza Kitchen, Inc.*, 989 F. Supp. 2d 1015, 1021-23 (S.D. Cal. 2013) (same).

### 1.    Plaintiffs' Various Theories of "Does Not Work," Dissected.

Plaintiffs have said different and contradictory things about how the package statements for the Devices are misleading.  One of their theories is that, no matter how precise the measurement, Fitbit simply cannot say "tracks sleep" if it uses accelerometry—i.e., actigraphy—because that "only measure[s] movement and not sleep."  (4AC, ¶ 4; *see also* ECF No. 84, 2:3-5.)  Plaintiffs' second theory is that *how* the Device tracks sleep doesn't matter; they simply "do not work."  (*See, e.g.*, 4AC, ¶ 10.)  (There was a third theory, that the Devices "do not work" because they aren't sufficiently accurate, but Plaintiffs have abandoned this theory.[5])

Conceptually, one might view the first theory—"movement, not sleep"—as a false advertising theory ("You promised to track sleep but you only track movement").  The second theory—"it does not work at all"—is a product defect theory ("You sold me a product whose feature fails on grounds of core functionality").  Under either theory, liability is Plaintiffs' burden to prove.  And because this is their burden, Fitbit on this motion needs only to identify the absence of a genuine issue of material fact, i.e., "that there is an absence of evidence to support" Plaintiffs' case.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 325 (1986).

As we will show, Plaintiffs cannot raise a material fact issue to support either theory.

---

[5] Plaintiffs said at class certification that their claims "have nothing to do with accuracy." (ECF No. 131-4 (Reply iso Class Cert.), 1:6; *see also* 2:12-13 ("It is not a question of accuracy but of core functionality"); *see also* 13:27-14:1 ("Fitbit tries to spin this into an accuracy question . . . . [I]t is not a question of accuracy, it is a question of functionality.").)

## 2.    Plaintiffs Have No Evidence That Actigraphy Cannot "Track Sleep."

Plaintiffs allege that the phrase "tracks sleep" is false because "tracking movement is 'not measuring sleep, simply motion.'"  (4AC, ¶¶ 9, 34.)  While this theory survived the pleading stage (*see* ECF NO. 84, 5:14-16), it cannot survive summary judgment.

As Plaintiffs admit, actigraphy is one of "two widely accepted sleep-monitoring technologies used by sleep scientists (Compl., ¶ 15) and "actigraphy is a scientifically accepted technology."  Plaintiffs are stuck with these admissions.  *Am. Title Ins. Co. v. Lacelaw Corp.*, 861 F.2d 224, 226 (9th Cir. 1988) ("A statement in a complaint, answer or pretrial order is a judicial admission . . . .").)  That ought to be conclusive on the question of whether actigraphy, as a technology, can track sleep via movement.  Clearly, it can.[6]

Lest there be any doubt, the scientific literature ends that debate.  (*See* ECF Nos. 63-13 – 63-16.)  The testimony of Plaintiffs' sleep experts also confirms that actigraphy can track sleep via movement.  In his expert report, Dr. Punjabi admits that "[a]ctigraphy can provide a proxy or a surrogate assessment of total sleep time which has been in numerous studies correlated with polysomnographic measures of total sleep time in healthy populations" and he notes the "general acceptance of actigraphy in the field of Sleep Medicine."  (*Cf.* ECF No. 116, ¶ 4.)  In deposition, he admitted that actigraphy "is a suitable surrogate for measuring sleep" and is "generally accepted in the scientific community."  (Stern Decl. Ex. B (Punjabi Dep.), 10:6-19, 63:7-9).)

Plaintiffs' other sleep expert, Dr. Montgomery-Downs, ▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.  Stern Decl. Ex. D (Montgomery-Downs Dep.), 58:12-59:7, 77:22-78:5, 79:24-5; *see also* ECF No. 63-16 (2011 Montgomery-Downs Study), p. 3 ("Actigraphy has been validated to identify sleep/wake times and patterns among adults . . . .").  In her Report, she admits using actigraphy in conducting her own sleep studies.  (ECF No. 118 (Montgomery-Downs Report), p. 1.)[7]

---

[6] By this theory, as this Court noted, Plaintiffs need to prove that actigraphy is *not* a valid method for sleep monitoring.  (*See* ECF No. 84, 5:14-17.)

[7] Fitbit's experts concur.  (*See* Stern Decl. Ex. E, 4:6-11; Stern Decl. Ex. A, ¶¶ 26, 37; Stern Decl. Ex. F (Grandner Rebuttal Report), ¶ 7; Stern Decl. Ex. G, 79:5-15; *see also* Stern Decl. Ex. H (Heneghan Dep.), 84:19-85:5.)

Dr. Punjabi goes further. He admits that actigraphy can track hours slept, times woken up, and quality of sleep—all package phrases that Plaintiffs assail. (Stern Decl. Ex. B, 61:22-62:13 (confirming that "actigraphy can be used to infer the number of awakenings, wake after sleep onset, and sleep efficiency.") Indeed, he has used actigraphy in his own studies to measure these very metrics. (*Id.*; *see also* Stern Decl. Ex. D, 67:9-15, 80:7-20.)

Moreover, when sleep researchers (including Dr. Punjabi) need to track sleep over longer periods of time, they prefer actigraphy over polysomnography—the alleged "gold standard" of measures—because polysomnography requires bulky, specialized equipment and a laboratory or hospital setting and, therefore, is impractical. (Stern Decl. Ex. B, 13:20-14:1, 15:1-7, 15:15-25); *see also* Stern Decl. Ex. D, 71:12-75:14; Stern Decl. Ex. E (Winter Report), 4:12-5; Stern Decl. Ex. A, ¶ 29.) Fitbit's Devices are intended for long-term use.

To the extent Plaintiffs' case challenges that actigraphy is incapable of doing what the package statement says—"tracks sleep," "hours slept," "times woken up," and "sleep quality"— there is no fact issue. It is undisputed that actigraphy can do, and does, all of these things.

### 3.    Plaintiffs Have No Evidence That the Devices Cannot "Track Sleep."

Plaintiffs may claim that their quarrel is not with actigraphy as a technology, but with Fitbit's Devices, which purportedly "do not work at all" or, as they put it, contain a defect in the core functionality. (*See, e.g.*, 4AC, ¶ 10; ECF No. 131-4, 2:12-14.) Plaintiffs characterize this as a product defect case (despite having abandoned their defect and warranty claims). (ECF No. 119-4 at 25 n. 4.) Proof that a product is defective may be direct or circumstantial. *Pavoni v. Chrysler Grp., LLC*, 789 F.3d 1095, 1098 n.3 (9th Cir. 2015). Plaintiffs have no evidence, direct or circumstantial, that the Devices are defective.

### a.    Plaintiffs Have No Direct Evidence of a Product Defect.

It is not Fitbit's burden on this motion (or at trial) to affirmatively prove that its sleep-tracking technology works. Yet, it does work. Fitbit's expert, Dr. Grandner, examined the technology, reviewed Fitbit's proprietary sleep tracking algorithm, evaluated the technical specifications of the accelerometers, read Fitbit's internal studies, testing and Fitbit deposition testimony, and conducted his own independent studies of Fitbit's Devices. (*See* Stern Decl. Ex.

A, ¶¶ 46-53 & n.25.)  He concludes that (1) "the Fitbit Devices are able to translate movement into a measurement of sleep that is reliable and scientifically based"; and (2) "[b]ased on the fact that the Fitbit Devices can measure sleep . . . the statements on the product packaging regarding the Devices' ability to track 'sleep,' 'hours slept,' 'sleep quality,' and 'times woken up' are truthful and reasonable and inform consumers about the Fitbit Devices' ability to measure sleep." (*Id.*, ¶¶ 51, 53.)

Plaintiffs submitted no rebuttal testimony to Dr. Grander.  Thus, to the extent Plaintiff's "does not work" theory relies on a supposed flaw in Fitbit's algorithm or source code, summary judgment must be granted in favor of Fitbit because Plaintiffs cannot meet their burden of proof. *Cf. Binning v. Louisville Ladder, Inc.*, No. 2:11-cv-03058-MCE-CK, 2014 WL 4249667, at *6 (E.D. Cal. Aug. 27, 2014) (granting summary judgment where plaintiff "offers no clue as to how an expert could discount [opposing expert's] opinion were one to be retained and permitted to testify" and confirming expert testimony is required to rebut opposing expert's conclusion that there is no design defect); *see also McLaughlin v. Monaco RV LLC*, No. 8:14-cv-703-T-36TGW, 2015 WL 5355465, at *5 n.4 (M.D. Fla. Sept. 14, 2015) (granting summary judgment where plaintiffs failed to produce expert to rebut opposing expert's testimony that there was no defect).

### b.    Plaintiffs' Circumstantial Evidence Fails to Raise a Fact Issue.

Plaintiffs are relying on circumstantial evidence that sleep tracking "does not work."  But none of that evidence raises a material fact issue.

**First**, Plaintiffs will cite their own deposition testimony that they experienced false positives (sleep when supposedly awake) and false negatives (awake when supposedly asleep). But a failure of "core functionality," as alleged here, requires experts.  It is "beyond the experience of laymen," *Rodas v. Porsche Cars N. Am., Inc.*, No. CV14-3747 PSG (MRWx), 2016 WL 6033535, at *6 (C.D. Cal. Apr. 4, 2016) (citation omitted) (requiring expert testimony). "[D]etermining whether a defectively designed or manufactured suspension component was the cause of the accident (as opposed to, for example, driver error) is outside the purview of a layperson." *Id.*  This is precisely the kind of "standardless reference to the 'expectations' of an 'ordinary consumer,'" *Howard v. Omni Hotels Mgmt. Corp.*, 203 Cal. App. 4th 403, 426 (2012)

(citation omitted), that is insufficient to raise a fact issue.

Plaintiffs' testimonials are also highly suspect, given Fitbit's records of Plaintiffs' actual sleep data. These show that the Devices *did* track the hours they slept, the times they awoke during sleep, and the quality of their sleep. As the Court noted, if Fitbit prevails in demonstrating Plaintiffs' sleep data is unrebutted—and here it is—then "everybody in that class will be foreclosed." (*Cf.* Stern Decl. Ex. C, 13:5-7.) Such is the case here.

Mr. Brickman's and Ms. Clingman's Devices recorded sleep data that is both internally consistent and consistent with their testimony regarding their respective sleep patterns. Mr. Brickman's Device recorded sleep consistently ▮% of the time, with an average of ▮ hours of sleep, whereas in deposition he estimated ▮ hours on average—just a ▮% difference. Ms. Clingman recorded sleep consistently ▮% of the time, with an average of ▮ hours of sleep. (*See* Declaration of Conor Heneghan in Support of Fitbit's Motion for Summary Judgment ("Heneghan Decl."), ¶¶ 6-8.)[8] The data suggest that the sleep tracking did work, even for them.

Plaintiffs might point to the few aberrant readings in their sleep data. But as the Heneghan Declaration shows, these are consistent with user error—i.e., Plaintiffs' occasional failure to manually turn Sleep Mode on and off.[9] User error is not product failure.

Under California law, a party may rely on reasonable inferences drawn from direct and circumstantial evidence to satisfy its burden on summary judgment, but courts may not draw inferences of product defect from thin air. *Leslie G. v. Perry & Assocs.*, 43 Cal. App. 4th 472, 483 (1996). Plaintiffs have no evidence to rule out user error. *See Hernandez v. Spacelabs Med. Inc.*, 343 F.3d 1107, 1116 (9th Cir. 2003) (affirming summary judgment where plaintiff's declaration was contradicted by defendant's documentary evidence).

---

[8] *See also* Heneghan Decl. Exs. Y (Brickman's records) and Z (Clingman's records).)

[9] Sleep tracking was not automatic. For all Devices sold during the class period, a user had to switch it on and off. (Yuen Decl., ¶ 6.) For the Flex, you simply tapped rapidly on the face for one or two seconds, which causes it to vibrate and flash two lights that signal Sleep Mode is activated. (*Id.*; *see also id.* Ex. A at 19.) You disabled Sleep Mode the same way. (*Id.*) For the One, Sleep Mode was (and still is) activated by "hold[ing] the tracker's button for 2+ seconds." (*Id.* Ex. B at 9.) Ultra and Classic also required the user to manually activate Sleep Mode. (*Id.*, ¶ 6.) A user could also activate Sleep Mode (or edit the period during which the Device is in Sleep Mode) through Fitbit's online Dashboard. (*Id.*)

Just as Plaintiffs cannot rule out user error even as to their own experience, they have no evidence to prove that the entire class always used Sleep Mode correctly. *Cf. Rodas*, 2016 WL 6033535, at *6; *accord Roper v. Kawasaki Heavy Indus., Ltd.*, No. 1:13-CV-03661-ELR, 2015 WL 11236553, at *13 (N.D. Ga. June 29, 2015) (excluding plaintiff's product defect expert because he "did nothing to rule out excessive speed or user error as the cause of Plaintiff's [motorcycle] accident because "he assumed Plaintiff was being truthful"), *cert. denied*, 137 S. Ct. 186 (2016).

**Third,** Plaintiffs will rely on the Montgomery-Downs Report for circumstantial proof that sleep tracking "does not work." The Montgomery-Downs Report grades Fitbit validation studies and decides which to discredit based on nothing more than her own ███████████ ██████ (Stern Decl. Ex. D, 110:21-111:9.) This isn't science, it is her own personal conviction and cannot defeat summary judgment. *United States v. Various Slot Machines on Guam*, 658 F.2d 697, 700 (9th Cir. 1981) ("[I]n the context of a motion for summary judgment, an expert must back up his opinion with specific facts."); *Orthopedic & Sports Injury Clinic v. Wang Labs., Inc.*, 922 F.2d 220, 225 (5th Cir. 1991) ("unsupported" opinion "setting forth ultimate or conclusory facts and conclusions of law [is] insufficient to . . . defeat a motion for summary judgment.") (citation omitted); *Luke v. Family Care & Urgent Med. Clinics*, 246 F. App'x 421, 424 (9th Cir. 2007) ("An expert opinion that is merely a conclusory statement without adequate supporting facts is insufficient to defeat a summary judgment motion."). Fitbit has accordingly moved to strike this Report.

Even if admissible, the Montgomery-Downs Report provides no evidence for Plaintiffs' functionality contention. The Report's premise addresses an issue not before this Court (the Devices' "accuracy" compared to polysomnography and medical-grade actigraphy).[10] (*See* footnote 5, above.) Expert evidence that addresses an irrelevant issue does not create a material

---

[10] *See* ECF No. 118 (Montgomery-Downs Report), p. 4 (purpose of Report is to determine whether "Fitbit consumer wearable tracker is able to accurately track: hours slept, times awakened, or sleep quality); *see also* ECF NO. 63-16 (2011 Montgomery Study), p. 2 ("[t]he purpose of this study was to evaluate the reliability and validity of a novel activity monitoring device (Fitbit) compared to both polysomnography and standard actigraphy").

fact dispute.

Montgomery-Downs simply concludes that she would not recommend the Devices to consumers. (ECF No. 118, p. 3.) Whether or not she would "recommend" the Devices is not the test. The Montgomery-Downs Report must support Plaintiffs' theory that the Devices "do not work." Her Report doesn't do that. In fact, her own 2011 Study concludes that Fitbit "may be an acceptable activity measurement instrument for use with normative populations." (*See* ECF No. 63-16, p. 2.)[11]

Plaintiffs cannot prove that Fitbit's Devices are incapable of "tracking sleep" either as a matter of methodology (actigraphy) or as a matter of practice. Because the Devices do track sleep, Plaintiffs fail to raise a material issue of fact, and the Court should enter summary judgment.

### B.  Plaintiffs Have No Evidence That "Tracks Sleep" Is "Likely to Deceive," Is Material, or Induced Consumer Reliance.

Regardless of whether this case is about accuracy or about core functionality, all of Plaintiffs' claims require proof that (i) members of the public were "likely to be deceived", (ii) reliance, (iii) materiality, (iv) causation, and (v) resulting injury. *See, e.g.*, *Williams*, 552 F.3d at 938 (UCL, FAL, and CLRA); *In re Tobacco II Cases*, 46 Cal. 4th 298, 312, 314-15, 321, 326 (2009) (reliance and materiality required for UCL and CLRA claims, and plaintiffs must show "misrepresentation or nondisclosure was an immediate cause of the injury-producing conduct"); *Lombardo v. Johnson & Johnson Consumer Cos.*, 124 F. Supp. 3d 1283, 1287 (S.D. Fla. 2015) ("FDUTPA has three elements: (1) a deceptive act or unfair practice; (2) causation; and (3) actual damages"); *see also Jovine v. Abbott Labs., Inc.*, 795 F. Supp. 2d 1331, 1342 (S.D. Fla. 2011) (noting that "in a FDUTPA action the issue is . . . whether the practice was likely to deceive a consumer acting reasonably in the same circumstances" )(citation omitted).[12] Even Plaintiffs'

---

[11] Moreover, Montgomery Downs' Report demonstrates that Fitbit is able to identify when an individual is asleep 97.8% of the time. (*See* ECF No. 118, p. 6.)

[12] Common law fraud and negligent misrepresentation require even stricter proofs. *See Anderson v. Deloitte & Touche*, 56 Cal. App. 4th 1468, 1474 (1997) (fraud elements are: "(1) misrepresentation (false representation, concealment, or nondisclosure); (2) knowledge of falsity (scienter); (3) intent to defraud (i.e., to induce reliance); (4) justifiable reliance; and (5)

(Footnote continues on next page.)

unjust enrichment claim requires proof of deception, as it is based on Fitbit's alleged misrepresentations.  (4AC, ¶ 156.)

Plaintiffs have no evidence even they were deceived, let alone that members of the public were "likely to be deceived," that such representations were material to their purchases, or that they relied on representations about tracking sleep.  The Court should enter summary judgment on their individual and classwide claims.

> **1.**    **Plaintiffs Have No Evidence That "Track Sleep" Deceived *Them*, Was Material to *Their* Purchases, or Induced *Their* Reliance.**

In the 4AC, Plaintiffs aver that "[a]fter a short period of wearing the device, it became obvious . . . that the device only tracked [] motion and did not actually track the hours [they] slept, the times [they] awoke during sleep, or [the] quality of [their] sleep."  (4AC, ¶¶ 12, 13, 49.) They contend they would not have purchased the Devices "in the absence of Defendant's misrepresentations."  (*Id.*, ¶ 51.)

The evidence establishes otherwise.  Both named Plaintiffs admitted that they were not misled by the fact that Fitbit uses *movement* to track sleep.  At the time of purchase, Mr. Brickman had "no  idea" whether Fitbit tracked sleep by measuring brain waves or other polysomnographic measurements.  (*See* ECF No. 122-12 (Brickman Dep.), 34:3-24, 51:24-52:9.) Neither did Ms. Clingman, who was not aware of *any* method of sleep tracking and had never heard of actigraphy.   (ECF No. 122-13 (Clingman Dep.), 31:19-32:10.)

Because Plaintiffs attached no importance to how the Devices track sleep, "track sleep" cannot have been material to Plaintiffs' purchases.  *Hinojos v. Kohl's Corp.*, 718 F.3d 1098, 1107 (9th Cir. 2013).  Nor can they show that they would not have purchased the Devices had they known this. *See, e.g.*, *Kwikset Corp. v. Super. Ct.*, 51 Cal. 4th 310, 330 (2011) (materiality demonstrated by proving consumers "would not have bought the product but for the

(Footnote continued from previous page.)

resulting damage."); *Fox v. Pollack*, 181 Cal. App. 3d 954, 962 (1986) (elements of negligent misrepresentation are "(1) a misrepresentation of a past or existing material fact, (2) without reasonable grounds for believing it to be true, (3) with intent to induce another's reliance on the fact misrepresented, (4) ignorance of the truth and justifiable reliance thereon by the party to whom the misrepresentation was directed, and (5) damages.").

misrepresentation.").

A representation must also be material. *Rice v. Fox Broad. Co.*, 330 F.3d 1170, 1181-82 (9th Cir. 2003). "A representation is 'material,' . . . if a reasonable consumer would attach importance to it or if 'the maker of the representation knows or has reason to know that its recipient regards or is likely to regard the matter as important in determining his choice of action." *Hinojos*, 718 F.3d at 1107 (quoting *Kwikset*, 51 Cal. 4th at 333.)  Just as you can't be deceived by the attribute of a product you didn't care about, neither can that attribute have been material to your decision to purchase.

As discussed above, Plaintiffs cannot prove deception, materiality, or reliance, and summary judgment against these individual Plaintiffs is appropriate. *See Swearingen v. Pac. Foods of Or., Inc.*, No. 13-cv-04157-JD, 2014 WL 3767052, at *2 (N.D. Cal. July 31, 2014) (Donato, J.) (UCL and CLRA claims fail due to lack of reliance); *Major*, 2015 WL 859491, at *4 (granting summary judgment where plaintiff "simply [] rais[ed] allegations or theories which are unsupported by any actual evidence," especially when "(1) the theory differs from the one disclosed in the Amended Complaint," and (2) where plaintiff's deposition testimony demonstrated that the alleged misrepresentation was not a factor in her decision to purchase the products); *see also Graham v. VCA Antech, Inc.*, No. 2:14-cv-8614-CAS-JC, 2016 WL 5958252, at *8 (C.D. Cal. Sept. 12, 2016) (granting summary judgment on UCL claim where plaintiff's deposition testimony established that she could not show actual reliance).[13]

### 2.   Plaintiffs Have No Evidence That *Class Members* Were Deceived.

When it comes to evidence of classwide deception, Plaintiffs' challenge is greater still. They "must produce evidence showing 'a likelihood of confounding *an appreciable number* of reasonably prudent purchasers exercising ordinary care.'" *Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1026 (9th Cir. 2008) (emphasis added) (citation omitted).  California law requires proof that "it is *probable* that a *significant portion* of the general consuming public or of targeted

---

[13] *See also Khasin v. Hershey Co.*, No. 5:12-CV-1862-EJD, 2014 WL 1779805, at *4 (N.D. Cal. May 5, 2014) (granting summary judgment on UCL claims where plaintiff's deposition testimony revealed that he did not rely on and was not injured by the challenged statements); *Baghdasarian v. Amazon.com, Inc.*, 458 F. App'x 622, 623-24 (9th Cir. 2011) (same)

consumers, acting reasonably in the circumstances, could be misled." *Lavie v. Procter & Gamble Co.*, 105 Cal. App. 4th 496, 508 (2003) (emphases added).

"The 'likely to be deceived' standard requires a *probability* that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled." *People ex rel. Dep't of Motor Vehicles v. Cars 4 Causes*, 139 Cal. App. 4th 1006, 1016 (2006) (emphasis added) (citation omitted).[14]  Likewise, the FDUTPA "requires a showing of '*probable*, not possible deception' that is 'likely to cause injury to a reasonably relying consumer.'" *In re Horizon Organic Milk Plus DHA Omega-3 Mktg. & Sales Practice Litig.*, 955 F. Supp. 2d 1311, 1331-32 (S.D. Fla. 2013) (citation omitted).  A "few isolated examples of actual deception are insufficient" to survive summary judgment.  *Clemens*, 534 F.3d at 1026 (citation omitted).  In other words, Plaintiffs must prove that more than 50% of the population was likely to have been misled by Fitbit's package statements.

Plaintiffs' evidence of classwide deception fails for six independent reasons.

**First**, Plaintiffs' own testimony confirms that Plaintiffs did not know or care how the Devices tracked sleep.  That the named Plaintiffs in a class action case don't endorse the operative theory is worse than no evidence, because they purport to be "typical" of absent class members.  This reason alone is fatal.  *See*, *e.g.*, *Major*, 2015 WL 859491, at *4; *Khasin*, 2014 WL 1779805, at *4.

**Second**, Plaintiffs have no evidence that consumers interpreted Fitbit's sleep tracking statements to mean something *other than* actigraphy (measurement of movement as a proxy for sleep).  And because Plaintiffs' own anecdotal testimony impeaches the allegations of the 4AC, their testimony cannot supply evidence of classwide deception.  *See, e.g.*, Mar. Hearing Tr., 13:2-7; *Rahman v. Mott's LLP*, No. CV 13-3482 SI, 2014 WL 5282106, at *9 (N.D. Cal. Oct. 15, 2014) (plaintiff's testimony, standing alone, was insufficient to "to draw a conclusion as to whether a reasonable consumer would have been similarly misled," especially where "the

---

[14] *See also Hataishi v. First Am. Home Buyers Prot. Corp.*, 223 Cal. App. 4th 1454, 1460 (2014) (finding that plaintiff's claims of deception were negated based on consumer survey results showing that 61.6% of respondents were not deceived).

allegedly deceptive nature of the statement is not self-evident."); *see also Rice*, 330 F.3d at 1182 n.8 ("[P]laintiff must demonstrate by extrinsic evidence, such as consumer survey evidence, that the challenged statements tend to mislead consumers.").[15]

Plaintiffs are not *required* to submit a consumer survey, but they do still need *some* evidence of classwide deception. *See, e.g., Rahman*, 2014 WL 5282106, at *9; *Ries*, 2013 WL 1287416, at *6-7 (granting summary judgment where plaintiffs failed to offer "extrinsic evidence that a significant portion of the consuming public would be confused" by the challenged statements). They have none.

**Third**, while it is not Fitbit's burden to affirmatively negate classwide deception, it has. Fitbit's expert, Hal Poret, conducted two surveys that demolish the notion of classwide reliance or materiality. (*See* Stern Decl. Ex. I (Poret Survey).) His survey of actual purchasers shows:

- For 56.3% of respondents, the sleep-tracking feature did not influence their decision to buy. (*Id.* at 6, 45, 63.)
- 31.3% were not even aware the Device had sleep tracking. (*Id.* at 6, 62.)[16]
- Of those who did know, 67% understood that it measured motion. (*Id.* at 6, 69.)
- Only 12.3% believed it used a method other than motion. (*Id.*)
- However, only 5.3% (16/300) believed the Devices tracked sleep using a method other than motion detection *and* were influenced by the sleep-tracking function in their purchasing decision. (*Id.* at 6, 66.)

His Prospective Purchaser survey[17] shows:

---

[15] *See also Heighley v. J.C. Penney Life Ins. Co.*, 257 F. Supp. 2d 1241, 1260-61 (C.D. Cal. 2003); *Churchill Vill., L.L.C. v. Gen. Elec. Co.*, 169 F. Supp. 2d 1119, 1130-31 (N.D. Cal. 2000); *see also Haskell v. Time, Inc.*, 965 F. Supp. 1398, 1407-08 (E.D. Cal. 1997); *see also Ries v. Ariz. Beverages USA LLC*, No. 10-01139 RS, 2013 WL 1287416, at *5-7 (N.D. Cal. Mar. 28, 2013) (that some consumers "were confused by the term a hundred percent natural," is irrelevant / it "does not demonstrate that it is probable that a significant portion of the consuming public could be confused by the 'all natural' labeling of defendants' products")

[16] ████████████████████████████████████████████████████████████████

[17] While Plaintiffs claim that Mr. Poret "did not test the relevant issue here: whether consumers were more or less likely to purchase a Fitbit Flex with or without the disputed sleep tracking language" (ECF No. 131-4, 9:18-20), they are wrong. This is *exactly* what Mr. Poret tested: his survey compared the interpretations of perspective purchasers exposed to Fitbit's sleep

(Footnote continues on next page.)

- 60.5% of respondents who viewed the sleep-tracking feature described on the *actual* package "correctly understood that the Device tracks motion. (*Id.* at 7, 76.)

- There was a "net confusion rate" of only 6%. (*Id.*)[18]

Plaintiffs have no other evidence and no survey of their own. True, they hired a rebuttal expert, Mr. Sowers, to criticize Mr. Poret's work, but rebuttal testimony is not affirmative evidence, and Mr. Sowers did not refute or undermine the validity of Mr. Poret's conclusions. *Rahman*, 2014 WL 5282106, at \*10 ("criticizing the methodology of a survey that tends to show a reasonable consumer would not be deceived, is no substitute for introducing evidence which arrives at the opposite conclusion.").

**Fourth,** Plaintiffs' sleep experts provide no support for "likely to mislead," reliance, or materiality. If anything, Plaintiffs' own experts debunk these elements. Montgomery-Downs, ███
█████████████████████████████████████████████████████. (Stern Decl. Ex. D, 76:10-24.) Notably, Fitbit never said it "measured" sleep. Dr. Punjabi believes "measuring" sleep requires polysomnography (*see* ECF No. 116, ¶ 4) but, again, Fitbit never promised to "measure" sleep. Moreover, he is not an expert in consumer behavior and his "Medical Review Report" tells us nothing about how reasonable consumers interpret "tracks sleep," or whether they expected Fitbit's tracker to provide the same information about their brain waves, eye movements, or muscle activity from a polysomnogram just because the packaging says "track sleep." As this Court noted, no one thinks Fitbit is a "sleep lab on your wrist." (ECF No. 123-5, 14:3-6.)

Plaintiffs' other sleep expert, Montgomery-Downs, evaluates the Devices for scientific use. That is not the issue raised in this lawsuit, and she admits "it is reasonable to ask whether

---

(Footnote continued from previous page.)

tracking language as is versus statements describing sleep tracking in terms of tracking motion which is then used to estimate sleep. (*See, e.g.*, Stern Decl. Ex. K (Poret Dep.), 35:12-37:8; *see also* Stern Decl. Ex. I, ¶ 45.)

[18] Mr. Poret explains: "21.7% expected the Device tracked sleep using a method other than movement, but, notably, 15.7% of respondents who noticed the sleep-tracking feature on the altered package had this belief, which means (by subtracting the latter from the former to account for the control rate or "noise"), there is a net confusion rate of only 6%." (Stern Decl. Ex. I., p. 7.)

consumer use requires the same standards of validity as scientific use." (ECF No. 118, p. 3.) These are consumer devices. Fitbit makes no claim of fitness "for scientific use."[19]

**Fifth**, Plaintiffs might claim they don't need evidence that the statement "tracks sleep" deceived consumers because of some "smoking gun" in the form of an email from Dr. Yuen. (*See* ECF No. 131-4, 3:6-7.) They are wrong. Dr. Yuen's email ▬▬▬▬▬▬▬▬▬

▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬

▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬

▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬

▬▬▬▬▬▬▬ ) Indeed, ▬▬▬▬▬▬▬▬▬▬▬▬▬

▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬

(*See* Yuen Email, p.2.) He also demonstrates that consumers ▬▬▬▬▬▬

▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬

▬▬▬▬▬▬▬ (*Id.*) If anything, Dr. Yuen's email demonstrates that: ▬▬▬▬

▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬

▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬

▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ .

Dr. Yuen's email does not support Plaintiffs' position; it undermines it.

**Finally**, Plaintiffs may contend that the Court can presume classwide reliance. They would be wrong. To receive a presumption of reliance, they must demonstrate that "tracks sleep" carries just one common meaning to all reasonable consumers—that Fitbit provides data akin to "a sleep lab on your wrist." (ECF No. 123-5, 14:3-6.) *See, e.g.*, *Perrine v. Sega of Am., Inc.*, No. 13-cv-01962-JD, 2015 WL 2227846, at *2 (N.D. Cal. May 12, 2015) (Donato, J.) (court cannot presume reliance if class members were exposed to disparate information) (citing *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 596 (9th Cir. 2012); *In re Vioxx Class Cases*, 180 Cal. App. 4th

---

[19] While Montgomery-Downs extrapolates her "findings" to consumer devices, she has no basis to do so. ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ (Stern Decl. Ex. D, 96:5-22; *see also id.*, 99-14-101:1 ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ )

116, 133 (2009) (presumption of reliance requires "common evidence as to what consumers perceived or what they would find material.").[20]  We already know that this is not the case based on Plaintiffs' own testimony.  We also know that plain meaning of "track" is to "observe or follow the course of progress of" (*see* http://www.dictionary.com/browse/track)—which is at odds with the definition Plaintiffs would have this Court apply and defeats any claim of classwide reliance.  A consumer applying this definition would expect general information about her sleep length and duration over time, exactly what Fitbit provides.

Moreover, Florida law does not allow for presumptions of reliance.  *Humana, Inc. v. Castillo*, 728 So. 2d 261, 265 (Fla. Dist. Ct. App. 1999).  This "requires a party asserting fraud to establish that but for the alleged misrepresentation or nondisclosure, the party would not have entered the transaction."  *Id*;  *see also Waters v. Int'l Precious Metals Corp.*, 172 F.R.D. 479, 502-03 (S.D. Fla. 1996) ("[T]his Court finds that Florida does not recognize the presumption of reliance in omissions cases brought under Florida common law. As such, Plaintiffs must affirmatively prove reliance in both omissions and misrepresentations cases. It is well recognized that proof of reliance in an omissions case is often more difficult than in a misrepresentations case given the difficulty of proving what a person would have done had they been given certain information.").

### C.   "Sleep Mode" (and User Error) Precludes Class Evidence of Damages and Causation

All of Plaintiffs' claims require a showing that any alleged injury was caused by the allegedly deceptive statement or misrepresentation.  *See, e.g.*, *In re Tobacco II Cases*, 46 Cal. 4th at 326 ("[P]laintiff must show that the misrepresentation was an immediate cause of the injury-producing conduct" for UCL claims); *Davis v. Chase Bank U.S.A., N.A.*, 650 F. Supp. 2d 1073, 1087 (C.D. Cal. 2009) ("causation is 'a necessary element of proof' for relief.") (citing *Wilens v. TD Waterhouse Grp., Inc.,* 120 Cal. App. 4th 746, 754 (2003)); *Lombardo*, 124 F. Supp. 3d at 1290 ("causation is a necessary element of the FDUTPA claim"; *Small v. Fritz Cos.*, 30 Cal. 4th

---

[20] *See also, e.g.*, *Webb v. Carter's, Inc.*, 272 F.R.D. 489, 502-03 (C.D. Cal. 2011); *Caro v. Procter & Gamble Co.*, 18 Cal. App. 4th 644, 667-68 (1993).

167, 202 (2003) ("damage causation is an essential element of any cause of action for fraud or negligent misrepresentation.") Plaintiffs cannot demonstrate causation.

For all Devices sold during the class period, sleep tracking was not automatic: a user had to switch it on and off. (*See* ECF No. 122, 3:24-5 (citing Yuen Decl., ¶ 6).) That means that not all class members even used Sleep Mode, or that someone could mistakenly enable Sleep Mode (resulting in false positives) or disable Sleep Mode (resulting in false negatives). In fact, user error likely explains the tiny number of aberrant readings about which Mr. Brickman[21] and Ms. Clingman[22] testified. As discussed at page 11, above, Plaintiffs cannot show that these aberrant readings were *not* the result of their own error.

As for Plaintiffs' classwide claims, they cannot prove that all consumers always used sleep mode properly. As part of their burden of proving causation, Plaintiffs must negate user error as a cause. *Cf. Rodas*, 2016 WL 6033535, at *6 (expert testimony required to demonstrate defect caused accident, as opposed to driver error); *Lombardo*, 124 F. Supp. 3d at 1290 (granting summary judgment on FDUTPA claim where plaintiffs failed to demonstrate direct or indirect causation); *see also Pan-Alaska Fisheries, Inc. v. Marine Constr. & Design Co.*, 565 F.2d 1129, 1139 (9th Cir. 1977) (defendant is not liable for harm caused by plaintiff's contribution to his own loss or injury). They have no such evidence.

### D.    Plaintiffs Have No Evidence That They Are Entitled to Monetary Relief, Individually or Classwide.

The Court should enter summary judgment on another ground. Plaintiffs cannot prove that they are entitled to classwide or individual monetary relief.

---

[21] Mr. Brickman testified that his Flex "recorded hours slept," when, in fact, he "was actually watching a movie . . . and . . . did not sleep at all during that period of time." (ECF No. 122-12, 19:21-22:11.) If so, given his otherwise consistent sleep patterns, a logical explanation is that he may have turned on Sleep Mode when he shouldn't have. (*See* Heneghan Decl., ¶ 7.) Similarly, Ms. Clingman observed instances in which the Flex recorded her asleep during the day, as when she was pushing a "stroller or a grocery cart." (ECF No. 122-13, 43:14-22.) But like Mr. Brickman, that was likely the result of her turning on Sleep Mode by accident. (*See* Heneghan Decl., ¶ 9 (describing how vibrations from handle of stroller or cart could activate sleep mode).)

[22] Ms. Clingman testified that her Fitbit gave her "odd" readings about her sleep, such as when it "said I woke up 50 times." (ECF No. 122-13, 26:19-24, 77:8-10.) But even Ms. Clingman characterized that reading as "extreme" and "abnormal." (*Id.* at 77:10-18.)

### 1.      The Right to Monetary Relief Is an Element of All Claims.

Entitlement to monetary relief is an element of all of Plaintiffs' six claims.  For the UCL claim, they must proffer "substantial evidence" that they are entitled to restitution.  *In re Tobacco Cases II*, 240 Cal. App. 4th 779, 792 (2015), *rev. denied* (Dec. 9, 2015).  The CLRA requires proof of "actual damages" (Cal. Civ. Code § 1780(a)(1)) as well as loss-causation and reliance. *Tucker v. Pac. Bell Mobile Servs.*, 208 Cal. App. 4th 201, 222 (2012); *Berger v. Home Depot USA, Inc.*, 741 F.3d 1061, 1069-70 (9th Cir. 2014); *see also Davis*, 650 F. Supp. 2d at 1087 (same); *Lanovaz v. Twinings N. Am., Inc.*, No. C-12-02646-RMW, 2014 WL 1652338, at*6 (N.D. Cal. Apr. 24, 2014) (same).  Likewise, damages are an element of Plaintiffs' Florida count[23] as well as fraud and negligent misrepresentation.[24]

### 2.      Plaintiffs Seek "Restitutionary Disgorgement" for All Six Claims.

Plaintiffs contend that their request for "[r]elief is confined to restitution, instead of damages." (ECF 119-4, 25:2-6.)  Though they use the word "restitution," in fact they lay claim to Fitbit's "net profits" and contend that this was "approximately 50% of the price it sells the devices to retailers."  (*Id.*, 1:14-15; 3:14-19; *see also* ECF No. 131-4, 14:18-22.)

Plaintiffs' evidence of their right to monetary relief fails both on the law and the facts.

### 3.      The Law—What Plaintiffs Call "Restitution" Is Really "Disgorgement of Profits" and Is Not Allowed.

Plaintiffs seek to recover Fitbit's profits.  They cannot.  Their proposed "net profit"/disgorgement measure is not available under any of their six claims.

**First**, disgorgement is the wrong theory.  Alleged fraudulent advertising is properly viewed from the consumer's perspective and is based "on what a purchaser would have paid at the time of purchase had the purchaser received all the information."  *Pulaski & Middleman, LLC*

---

[23] *Lombardo*, 124 F. Supp. 3d at 1287.

[24] *Bias v. Wells Fargo & Co.*, 942 F. Supp. 2d 915, 944 n.23 (N.D. Cal. 2013) (damages are an element of fraud claim in California); *Asnaashari v. PNY Techs., Inc.*, No. C 13-1308 PJH, 2013 WL 2403605, at *1 (N.D. Cal. May 31, 2013) (same, negligent misrepresentation); *Paine v. Domino's Pizza, LLC*, No. 10-23158-CIV, 2011 WL 1102788, at *3 n.4 (S.D. Fla. Mar. 24, 2011) (same, fraud and negligent misrepresentation).

*v. Google, Inc.*, 802 F.3d 979, 989 (9th Cir. 2015), *cert. denied*, 136 S. Ct. 2410 (2016).  As the Ninth Circuit said, the focus is on the difference between what was paid and what a reasonable consumer would have paid at the time of purchase without the fraudulent or omitted information." *Id.*; *accord Kwikset*, 51 Cal. 4th at 330; *Cortez v. Purolator Air Filtration Prods. Co.*, 23 Cal. 4th 163, 174 (2000).  This theory, for shorthand, is called "price-premium," and is not what Plaintiffs are seeking.

Without exception, every court agrees that the exclusive measure of monetary relief in this case is price-premium—*not* disgorgement.[25]  Florida law is in accord too.  *McKissack v. Swire Pac. Holdings, Inc.*, No. 09-22086-Civ., 2011 WL 1233370, at *5 (S.D. Fla. Mar. 31, 2011).

**Second**, "profit" is the wrong measure.  *See Theme Promotions, Inc. v. News Am. Mktg. FSI*, 546 F.3d 991, 1009 (9th Cir. 2008).  After surveying the law, Judge Orrick concluded: "[N]one of [the cases] found that profits-based recovery models are appropriate as an unjust enrichment remedy in a mislabeling case."  *Victor v. R.C. Bigelow, Inc.*, No. 13-cv-02976-WHO, 2015 WL 5569716, at *2 (N.D. Cal. Sept. 21, 2015).

**Third**, Plaintiffs' model is not "restitution," which is the only available remedy and means giving back what consumers gave up.  *Cortez*, 23 Cal. 4th at 172; *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1148 (2003); *Day v. AT & T Corp.*, 63 Cal. App. 4th 325, 340 (1998).  Fitbit customers did not give up Fitbit's profits.  They allegedly gave up a premium for the sleep tracking feature.

Plaintiffs disagree and say their model is a proper form of "restitutionary disgorgement" (ECF No. 131-4, 14:7-8 (citing *Astiana v. Kashi Co.*, 291 F.R.D. 493 (S.D. Cal. 2013)).)  But

---

[25] *See Colgan v. Leatherman Tool Grp., Inc.*, 135 Cal. App. 4th 663, 700 (2006); *In re Vioxx Class Cases*, 180 Cal. App. 4th at 131;  *In re First Alliance Mortg. Co.*, 471 F.3d 977, 997 (9th Cir. 2006); *In re Facebook, Inc., PPC Advert. Litig.*, 282 F.R.D. 446, 461 (N.D. Cal. 2012); *Astiana v. Kashi Co.,* 291 F.R.D. 493, 506 (S.D. Cal. 2013); *Ries*, 287 F.R.D. at 532; *Brazil v. Dole Packaged Foods, LLC*, 660 F. App'x 531, 534 (9th Cir. 2016) (affirming district court's limitation of damages to "the difference between the prices customers paid and the value of the [product] they bought.")  *See also* Opp'n to Class Cert., 24:25-28 (collecting cases demonstrating price premium is the proper measure of restitution in alleged mislabeling cases).  This is also true of Plaintiffs' common law claims of fraud and negligent misrepresentation.  *Cf.* Cal. Civ. Code § 3343 (damages for common law fraud measured by difference in value parted with and actual value received); *see also Persson v. Smart Inventions, Inc.*, 125 Cal. App. 4th 1141, 1165 (2005).

*Astiana* holds that the proper theory of recovery is price-premium. "Plaintiffs may seek some amount representing the disparity between their expected and received value." *Id.* at 506 (citing *Colgan*, 135 Cal. App. 4th at 700.)

**Fourth**, Plaintiffs' disgorgement-of-profit model fails to account for the value to the consumer of the Devices' other features. Plaintiffs' formula correlates profit to manufacturing cost—and then overvalues Fitbit's cost to manufacture the sleep-tracking function. This function is an algorithm, embedded in software, whose marginal cost decreases with each Device Fitbit makes. The cost essentially reaches zero as Fitbit's Melanie Chase testified. (*See* Stern Decl. Ex. L (Chase Dep.), 124:21-125:2.) There is no basis in the record for Plaintiffs' assertion that the cost of sleep-tracking is $30 to $40.

Plaintiffs' approach also undervalues the other features. Plaintiffs' expert, Colin Weir, testified that Plaintiffs' model had to control for the other features *besides* sleep tracking. (*See, e.g.*, Stern Decl., Ex. M (Weir Dep.), 25:18-25, 49:3-18.) Simply subtracting the *retail* price difference between, say, the Flex and the Zip does not account for these other features.

### 4.     The Facts—Plaintiffs Have No Common Evidence to Support Entitlement to Restitution or Damages.

Even if disgorgement were allowed, Plaintiffs need "substantial evidence." *Cf. In re Tobacco Cases II*, 240 Cal. App. 4th at 792. They have no evidence at all.

Plaintiffs originally hired experts to compute damages (*see* ECF No. 117 (Burke and Rosen Report)), but withdrew their experts at the class certification hearing. (*See* ECF No. 148 (Minute Entry); Stern Decl. Ex. C, 19:25-20:1.) Without experts, Plaintiffs must rely on Fitbit's witnesses and internal documents. (Stern Decl. Ex. C, 19:8-16.) But Plaintiffs can point to nothing that supports their cost-to-manufacture theory. To the contrary, Ms. Chase testified that Fitbit's sleep tracking function does not impact the price differential of its products. (*See* Stern Decl. Ex. L, 123:16-24.) As for Dr. Yuen, he testified he did not have expertise in the area[26] and

---
[26]

was only "guessing."[27]  In any event, ███████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████

### 5.      Plaintiffs Are Not Entitled to Injunctive Relief.

Plaintiffs are not entitled to injunctive relief given that they have an adequate remedy at law. *Philips v. Ford Motor Co.*, No. 14-CV-02989-LHK, 2017 WL 635469, at *10 n.2 (N.D. Cal. Feb. 16, 2017) (dismissing claims for injunctive relief because Plaintiffs had an 'adequate remedy at law.'") (citation omitted)); *Rhynes v. Stryker Corp.*, No. 10-5619 SC, 2011 WL 2149095, at *4 (N.D. Cal. May 31, 2011) ("Where the claims pleaded by a plaintiff *may* entitle her to an adequate remedy at law, equitable relief is unavailable.").

## V.      CONCLUSION

For all of the foregoing reasons, Fitbit respectfully requests that the Court grant its motion for summary judgment as to Plaintiffs' individual and classwide claims.

Dated: April 20, 2017                MORRISON & FOERSTER LLP


                                     By:  */s/ William L. Stern*
                                          William L. Stern

                                          Attorneys for Defendant
                                          FITBIT, INC.

---

[27] ███████████████████████████████████████████

██████████████████████████████████████████████████