UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMES P BRICKMAN, et al.,<br><br>    Plaintiffs,<br><br>v.<br><br>FITBIT, INC.,<br><br>    Defendant. | Case No. 3:15-cv-02077-JD<br><br>**ORDER RE ADMINISTRATIVE MOTIONS TO SEAL**<br><br>Re: Dkt. No. 159, 165, 167, 174. |

This order resolves pending administrative motions to file documents under seal. Of the pending motions, the ones at Dkt. Nos. 119, 121, 128, 129, 131, 133, 139, 145, and 152 are moot in light of the Court's prior order at Dkt. No. 146 and the parties' joint omnibus motion at Dkt. No. 159. In this order, the Court rules on the motions at Dkt. Nos. 159, 165, 167, and 174.

**I.  GOVERNING STANDARDS**

In our circuit, in evaluating a motion to seal, two different standards apply depending on whether the request is being made in connection with a dispositive motion or a non-dispositive motion.

For dispositive motions, the historic, "strong presumption of access to judicial records" fully applies, and a party seeking sealing must establish "compelling reasons" to overcome that presumption. *Kamakana v. City and County of Honolulu*, 447 F.3d 1172, 1178-80 (9th Cir. 2006) (quoting *Foltz v. State Farm Mut. Auto Ins. Co.*, 331 F.3d 1122, 1136 (9th Cir. 2003)). This standard presents a "high threshold," and "a 'good cause' showing will not, without more, satisfy" it. *Id.* at 1180 (citations omitted). When ordering sealing in this context, the district court must also "articulate the rationale underlying its decision to seal." *Apple Inc. v. Psystar Corp.*, 658 F.3d 1150, 1162 (9th Cir. 2011).

The non-dispositive motion context is different. There, "the usual presumption of the public's right of access is rebutted," the "public has less of a need for access to court records attached only to non-dispositive motions," and the "public policies that support the right of access to dispositive motions, and related materials, do not apply with equal force to non-dispositive materials." *Kamakana*, 447 F.3d at 1179-80 (citations omitted). Therefore, in that context, materials may be sealed so long as the party seeking sealing makes a "particularized showing" under the "good cause" standard of Federal Rule of Civil Procedure 26(c). *Id.* at 1180 (quoting *Foltz*, 331 F.3d at 1138). In either case, however, "[a]n unsupported assertion of 'unfair advantage' to competitors without explaining 'how a competitor would use th[e] information to obtain an unfair advantage' is insufficient." *Hodges v. Apple, Inc.*, No. 13-cv-01128-WHO, 2013 WL 6070408, at *2 (N.D. Cal. Nov. 18, 2013) (quoting *Dunbar v. Google, Inc.*, No. 5:12-cv-003305-LHK, 2012 WL 6202719, at *4-5 (N.D. Cal. Nov. 18, 2013)).

In our district, in addition to meeting the applicable standard under *Kamakana*, all parties requesting sealing must also comply with Civil Local Rule 79-5, including that rule's requirement that the request must "establish[] that the document, or portions thereof, are privileged, protectable as a trade secret or otherwise entitled to protection under the law," *i.e.*, is "sealable." Civil L.R. 79-5(b). The sealing request must also "be narrowly tailored to seek sealing only of sealable material." *Id.*

## II. DISCUSSION

### A. Documents Sought to be Sealed in Dkt. No. 159

The documents sought to be sealed in Dkt. No. 159 were filed in connection with a motion for class certification, so the Court applies the "good cause" standard. *Ochoa v. McDonald's Corp.*, No. 14-cv-02098-JD, 2015 WL 3545921, at *1 (N.D. Cal. June 5, 2015). Applying this standard, the Court rules on the requests to seal as follows. In each case where a request is denied, personally identifiable information of individuals may be redacted.

2

| Dkt. No. | Portion of Document Sealed | Fitbit's Reason for Sealing | Granted/Denied |
|---|---|---|---|
| Documents relating to Plaintiffs' Motion for Class Certification | | | |
| 119-3 | Brief in Support of Motion for Class Certification: pages and lines 3:15-18, 22-28; 5:6-7; 11-13, 16-28; 6:1-2, 8-12, 18-24; 7:3-13, 17-28; 8:1-23; FN3; 22:4-5. | These portions of the brief identify and describe other exhibits that Fitbit has requested to file under seal. Dkt. No. 159-1 ("Lee Decl. I") ¶ 16. | **Denied**. Fitbit has not shown any concrete likelihood of competitive or other harm that could be caused by disclosure of these portions of the brief. |
| 119-5 | Declaration of Patrick J. Perotti: pages and lines 2:12-15, 22-27; 3:1-9, 13-27; 4:1-2, 10-13. | These portions of the declaration identify and describe other exhibits that Fitbit has requested to file under seal. Lee Decl. I ¶ 15. | **Denied**. Fitbit has not shown any concrete likelihood of competitive or other harm that could be caused by disclosure of these portions of the declaration. |
| 119-8 | Exhibit 2 to Perotti Declaration: entire document. | This internal document details the results of confidential and proprietary market research, Fitbit's development and understanding of the Fitbit consumer demographic, analysis of industry competitors, and a comparison of device functionality as it relates to consumer interests. Its disclosure could cause Fitbit competitive harm, have a chilling effect on internal business discussions, and prevent Fitbit from discussing and responding to the needs of its customers. Lee Decl. I ¶¶ 12-13. | **Denied**. Fitbit has not shown any concrete likelihood of competitive or other harm that could be caused by disclosure of these "Talking Points" and "FAQs." Additionally, this request is not "narrowly tailored to seek sealing only of sealable material." Civil L.R. 79-5(b). |
| 119-9 | Exhibit 3 to Perotti Declaration: entire document. | The excerpted deposition testimony discusses proprietary business, engineering, and technical information relating to the development and implementation of Fitbit's sleep-tracking technology. Publication of the information could disadvantage Fitbit's ability to compete and would give competitors access to free | **Granted in part.** Pages 118-121 may be sealed because Fitbit has shown a concrete likelihood of competitive harm that could be caused by their disclosure. The request to seal the remainder of the deposition testimony is **denied** because Fitbit has not shown any concrete likelihood of competitive or other harm that |

| Dkt. No. | Portion of Document Sealed | Fitbit's Reason for Sealing | Granted/Denied |
|---|---|---|---|
| | | research and development. Lee Decl. I ¶¶ 4-6. | could be caused by its disclosure. |
| 119-10 | Exhibit 4 to Perotti Declaration: entire document. | The excerpted deposition testimony discusses proprietary business, engineering, and technical information relating to the development and implementation of Fitbit's sleep-tracking technology. Publication of the information could disadvantage Fitbit's ability to compete and would give competitors access to free research and development. Lee Decl. I ¶¶ 4-6. | **Denied.** Fitbit has not shown any concrete likelihood of competitive or other harm that could be caused by disclosure of the excerpted deposition testimony. Additionally, this request is not "narrowly tailored to seek sealing only of sealable material." Civil L.R. 79-5(b). |
| 119-11 | Exhibit 5 to Perotti Declaration: entire document. | These internal documents detail the results of confidential and proprietary market research, Fitbit's development and understanding of the Fitbit consumer demographic, analysis of industry competitors, and a comparison of device functionality as it relates to consumer interests. Their disclosure could cause Fitbit competitive harm, have a chilling effect on internal business discussions, and prevent Fitbit from discussing and responding to the needs of its customers. Lee Decl. I ¶¶ 12-13. | **Denied.** Fitbit has not shown any concrete likelihood of competitive or other harm that could be caused by disclosure of these internal documents. Additionally, this request is not "narrowly tailored to seek sealing only of sealable material." Civil L.R. 79-5(b). |
| 119-12 | Exhibit 6 to Perotti Declaration: entire document. | This graphic details the results of confidential and proprietary market research, Fitbit's development and understanding of the Fitbit consumer demographic, analysis of industry competitors, and a comparison of device functionality as it relates to consumer interests. Its disclosure could cause Fitbit competitive harm. Lee Decl. I ¶¶ 12-13. | **Denied.** Fitbit has not shown any concrete likelihood of competitive or other harm that could be caused by disclosure of this graphic. |

| Dkt. No. | Portion of Document Sealed | Fitbit's Reason for Sealing | Granted/Denied |
|---|---|---|---|
| 119-13 | Exhibit 7 to Perotti Declaration: entire document. | These marketing materials detail the results of confidential and proprietary market research, Fitbit's development and understanding of the Fitbit consumer demographic, analysis of industry competitors, and a comparison of device functionality as it relates to consumer interests. Their disclosure could cause Fitbit competitive harm. Lee Decl. I ¶¶ 12-13. | **Denied.** Fitbit has not shown any concrete likelihood of competitive or other harm that could be caused by disclosure of these marketing materials. Additionally, this request is not "narrowly tailored to seek sealing only of sealable material." *See* Civil L.R. 79-5(b). |
| 119-15 | Exhibit 9 to Perotti Declaration: entire document. | These internal emails between Fitbit employees reflect sensitive internal business discussions, confidential engineering strategy, and proprietary details about Fitbit technology. Disclosure of the emails could chill internal business discussions, and allow competitors to develop marketing strategies specifically aimed at undercutting Fitbit's market share. Lee Decl. I ¶¶ 9-11. | **Denied.** Fitbit has not shown any concrete likelihood of competitive or other harm that could be caused by disclosure of these emails. Additionally, this request is not "narrowly tailored to seek sealing only of sealable material." Civil L.R. 79-5(b). |
| 119-16 | Exhibit 10 to Perotti Declaration: entire document. | These emails between Fitbit employees and third parties reflect sensitive business discussions, confidential engineering strategy, and proprietary details about Fitbit technology. Disclosure of the emails could chill internal business discussions, and allow competitors to develop marketing strategies specifically aimed at undercutting Fitbit's market share. Lee Decl. I ¶¶ 9-11. | **Denied.** Fitbit has not shown any concrete likelihood of competitive or other harm that could be caused by disclosure of these emails. Additionally, this request is not "narrowly tailored to seek sealing only of sealable material." Civil L.R. 79-5(b). |
| 119-17 | Exhibit 11 to Perotti Declaration: entire document. | These emails between Fitbit employees and third parties reflect sensitive business discussions, confidential engineering strategy, and | **Denied.** Fitbit has not shown a concrete likelihood of competitive or other harm that could be caused by disclosure of these emails. Additionally, |

| Dkt. No. | Portion of Document Sealed | Fitbit's Reason for Sealing | Granted/Denied |
|---|---|---|---|
| | | proprietary details about Fitbit technology. Disclosure of the emails could chill internal business discussions, and allow competitors to develop marketing strategies specifically aimed at undercutting Fitbit's market share. Lee Decl. I ¶¶ 9-11. | this request is not "narrowly tailored to seek sealing only of sealable material." Civil L.R. 79-5(b). |
| 119-18 | Exhibit 12 to Perotti Declaration: entire document. | These emails detail the results of confidential and proprietary market research, Fitbit's development and understanding of the Fitbit consumer demographic, analysis of industry competitors, and a comparison of device functionality as it relates to consumer interests. Their disclosure could cause Fitbit competitive harm, have a chilling effect on internal business discussions, and prevent Fitbit from discussing and responding to the needs of its customers. Lee Decl. I ¶¶ 12-13. | **Denied.** Fitbit has not shown a concrete likelihood of competitive or other harm that could be caused by disclosure of these emails. Additionally, this request is not "narrowly tailored to seek sealing only of sealable material." Civil L.R. 79-5(b). |
| 119-21 | Exhibit 15 to Perotti Declaration: entire document. | These internal emails reflect sensitive business discussions, confidential engineering strategy, and proprietary details about Fitbit technology. Their disclosure could chill internal business discussions, and allow competitors to develop marketing strategies specifically aimed at undercutting Fitbit's market share. Lee Decl. I ¶¶ 9-11. | **Denied.** Fitbit has not shown any concrete likelihood of competitive or other harm that could be caused by disclosure of this email. Additionally, this request is not "narrowly tailored to seek sealing only of sealable material." Civil L.R. 79-5(b). |
| Documents relating to Fitbit's Opposition to the Class Certification Motion ||||
| 122 | Brief in Opposition to Class Certification: pages and lines 1:23; 2:1; 3:8-12; | These portions of the brief contain information drawn from sealable portions of exhibits and documents filed in connection with the brief, and should be sealed for the same | **Granted**. Each requested portion is sealable either for privacy reasons or because Fitbit has established a concrete likelihood of competitive or other harm from |

6

| Dkt. No. | Portion of Document Sealed | Fitbit's Reason for Sealing | Granted/Denied |
|---|---|---|---|
| | 6:13-19; FN7; 7:1-8, 12-15; 18-23; FN8; 8:1-15, 20-23; FN9; 9:3; 13:7-10; 21:4; FN22. | reasons as those exhibits and documents. Lee Decl. I ¶ 30. | its disclosure. |
| 122-1 | Declaration of Conor Heneghan: pages and lines 1:26; 2:2, 4, 6, 8-9, 11, 13, 15-24, 27-28; 3:1-3, 5-7, 13, 16, 18, 20, 22-27; 4:1-2, 4, 6, 8-13, 16-17, 20-22, 25. | These portions of the declaration contain, discuss, or reflect plaintiffs' personal sleep tracking data recorded using their Fitbit devices. Lee Decl. I ¶ 30. | **Granted** for privacy reasons. |
| 122-2 | Exhibit Y to the Heneghan Declaration: entire document. | This spreadsheet contains plaintiffs' personal sleep tracking data recorded using their Fitbit devices. Lee Decl. I ¶ 30. | **Granted** for privacy reasons. |
| 122-3 | Exhibit Z to the Heneghan Declaration: entire document. | This spreadsheet contains plaintiffs' personal sleep tracking data recorded using their Fitbit devices. Lee Decl. I ¶ 30. | **Granted** for privacy reasons. |
| 122-4 | Declaration of Sheltuen Yuen: pages and lines 2:11-13, 24-28; 3:1-18. | These portions of the Yuen Declaration reflect business strategy, internal policies, procedures, and processes related to product and technology research, design, development, and market analysis, which could be used by Fitbit's competitors to Fitbit's disadvantage. Lee Decl. I ¶ 20. | **Denied**. Fitbit has not shown any concrete likelihood of competitive or other harm that could be caused by disclosure of these portions of the declaration. |
| 122-8 | Exhibit 1 to the Declaration of William Stern: ¶ 39; ¶¶ 41-47; ¶¶ 49-52; ¶ 60. | These portions of the Grandner Report reference specific tests, internal validations, and analyses performed relating to Fitbit's devices and competing devices. Lee Decl. I ¶ 19. | **Granted.** Fitbit and Dr. Grandner have shown a concrete likelihood of competitive or other harm that could be caused by the disclosure of these portions of the report. |
| 122-10 | Exhibit 3 to the Declaration of William Stern: | Some portions of the Ugone Report contain statistics and sensitive information relating to | **Granted**. Each requested portion is sealable either for privacy reasons or because |

7

| Dkt. No. | Portion of Document Sealed | Fitbit's Reason for Sealing | Granted/Denied |
|---|---|---|---|
| | FN32; ¶¶ 37-39; FN97; FN98; ¶ 56; ¶ 58(b); FN 136; ¶ 64; FN153; FN154; Exh. 5. | consumer purchase habits and preferences, and reflect Fitbit's internal policies, procedures, and processes related to market research and analysis. Lee Decl. I ¶ 18. Others contain, discuss, or reflect plaintiffs' personal sleep tracking data recorded using their Fitbit devices. *Id.* ¶ 30. | Fitbit has established a concrete likelihood of competitive or other harm from its disclosure. |
| Documents relating to Plaintiffs' Reply re: Motion for Class Certification | | | |
| 131-3 | Reply in support of Class Certification: pages and lines 1:8-9, 20; 2:7-8; 3:7; 5:2-4. | The brief contains confidential information regarding Fitbit's research and development relating to its sleep-tracking technology. Lee Decl. I ¶ 36. | **Denied**. Fitbit has not shown any concrete likelihood of competitive or other harm that could be caused by disclosure of these portions of the brief. |
| 131-8 | Exhibit 2 to the Perotti Declaration: entire document. | The excerpted deposition testimony contains confidential information regarding Fitbit's research and development relating to its sleep-tracking technology. Lee Decl. I ¶ 36. | **Denied**. Fitbit has not shown any concrete likelihood of competitive or other harm that could be caused by disclosure of the excerpted deposition testimony. |
| Documents relating to Fitbit's Motion to Strike the Burke/Rosen Report | | | |
| 123-2 | Exhibit 1 to the Stern Declaration: portions of pages 1 and 2. | The Burke and Rosen report contains confidential information regarding Fitbit's internal policies, procedures, and processes related to product and technology research, design, and development, and market analysis. Lee Decl. I ¶ 38. | **N/A.** Plaintiffs withdrew the Burke and Rosen report, mooting this request. Dkt. No. 146. |
| Documents relating to Plaintiffs' Opposition to the Motion to Strike the Burke/Rosen Report | | | |
| 129-4 | Opposition to Defendant's Motion to Strike the Burke and Rosen Report: pages and lines 1:8, 24-28; 2:1-4; 3:15-17, 23; 8:3-10. | These portions of the brief include confidential information regarding Fitbit's research and development relating to its sleep-tracking technology. Lee Decl. I ¶ 41. | **N/A.** Plaintiffs withdrew the Burke and Rosen report, mooting this request. Dkt. No. 146. |
| 129-7 | Exhibit 1 to the Perotti | The excerpted deposition testimony reflects Fitbit's | **N/A.** Plaintiffs withdrew the Burke and Rosen report, |

| Dkt. No. | Portion of Document Sealed | Fitbit's Reason for Sealing | Granted/Denied |
|---|---|---|---|
| | Declaration: entire document. | business strategy, internal policies, procedures, and processes related to product and technology research, design, development, and market analysis, which could be used by Fitbit's competitors to Fitbit's disadvantage. Lee Decl. I ¶ 41. | mooting this request. Dkt. No. 146. |
| 129-9 | Exhibit 3 to the Perotti Declaration: ¶ 11. | This portion of the rebuttal declaration reflects Fitbit's confidential product development information, technology, and contemplated product functionality that is not publicly known, and which could be used by Fitbit's competitors to Fitbit's disadvantage. Lee Decl. I ¶ 42. | **N/A.** Plaintiffs withdrew the Burke and Rosen report, mooting this request. Dkt. No. 146. |
|  | Documents relating to Fitbit's Reply re: Motion to Strike the Burke/Rosen Report |
| 140 | Reply in support of Motion to Strike the Burke and Rosen Report: pages and lines 2:20; 4:11-18; 7:23-24; FN8-11; 8:1-2. | These portions of the brief reflect confidential Fitbit product development information, technology, and contemplated product functionality, as well as information regarding product development costs and pricing. Lee Decl. I ¶ 43. | **N/A.** Plaintiffs withdrew the Burke and Rosen report, mooting this request. Dkt. No. 146. |
|  | Documents relating to Notice of Filing of Deposition Testimony of Harvey Rosen |
| 145-4 | Exhibit 2 to the Bartela Declaration: pages and lines 61:17-25; 62:1-4; 63:3-7, 23-25; 64:6-25; 65:1-18; 66:2-8, 16-18; 70: 10-25; 71:1-25; 72:1-25; 73:1-25; 74:1-25; 75:1-25; 76:1-25; 77:1-8. | These portions of Dr. Rosen's testimony discuss pricing sheets, Fitbit's cost of goods, internal research goals and development, and the technology underlying the different features available in different Fitbit products. Lee Decl. I ¶ 44. | **N/A.** Plaintiffs withdrew the Burke and Rosen report, mooting this request. Dkt. No. 146. |

### B. Documents Sought to be Sealed in Dkt. Nos. 165, 167, and 174

The documents sought to be sealed in Dkt. Nos. 165, 167, and 174 were filed in connection with a motion for summary judgment, so the "compelling reasons" standard applies. *Kamakana*, 447 F.3d at 1178-80. Applying this standard, the Court rules on the requests to seal as follows. In each case where a request is denied, personally identifiable information of individuals may be redacted.

| Dkt. No. | Portion of Document Sealed | Fitbit's Reason for Sealing | Granted/Denied |
|---|---|---|---|
| Documents relating to Plaintiffs' Brief Opposing Summary Judgment | | | |
| 165-2 | Plaintiffs' Opposition to Fitbit's Motion for Summary Judgment: pages and lines 1:10, 25; 2:1-7, 11; 4:13-18, 26-27; 6:22-27; 7:1, 3-6, 8-20, 25-27; 8:1-2; 9:11; 13:23; 14:1-6. | These portions of the brief identify and describe other exhibits that Fitbit has requested to file under seal. Dkt. No. 168 ("Lee Decl. II") ¶ 15. | **Denied.** Fitbit has not shown any concrete likelihood of competitive or other harm that could be caused by disclosure of these portions of the brief. |
| 165-7 | Exhibit 1 to the Perotti Declaration: entire document. | These internal emails discuss proprietary business, engineering, and technical information relating to the development of Fitbit's sleep-tracking technology. They concern highly confidential issues relating to sleep tracking, including how Fitbit developed the proprietary algorithm used in its devices. Lee Decl. II ¶ 5. | **Denied.** Fitbit has not shown any concrete likelihood of competitive or other harm that could be caused by disclosure of these emails. Additionally, this request is not "narrowly tailored to seek sealing only of sealable material." Civil L.R. 79-5(b). |
| 165-11 | Exhibit 5 to the Perotti Declaration: entire document. | The excerpted deposition testimony discusses proprietary business, engineering, and technical information relating to the development and implementation of Fitbit's sleep-tracking technology, an important, proprietary Fitbit technology. The testimony concerns highly confidential issues relating to sleep tracking, including Fitbit's scientific research regarding the sleep- | **Denied.** Fitbit has not shown any concrete likelihood of competitive or other harm that could be caused by disclosure of the testimony. Additionally, this request is not "narrowly tailored to seek sealing only of sealable material." Civil L.R. 79-5(b). |

United States District Court
Northern District of California

| Dkt. No. | Portion of Document Sealed | Fitbit's Reason for Sealing | Granted/Denied |
|---|---|---|---|
| | | tracking algorithm, Fitbit's scientific research supporting its sleep-tracking technology, the procedures for validating the sleep-tracking function, and the pricing of products. Lee Decl. II ¶ 9. | |
| 165-12 | Exhibit 6 to the Perotti Declaration: entire document. | These emails discuss proprietary business, engineering, and technical information relating to the development of Fitbit's sleep-tracking technology. They concern highly confidential issues relating to sleep tracking, including how Fitbit developed the proprietary algorithm used in its devices. Lee Decl. II ¶ 5. | **Denied.** Fitbit has not shown any concrete likelihood of competitive or other harm that could be caused by disclosure of these emails. Additionally, this request is not "narrowly tailored to seek sealing only of sealable material." Civil L.R. 79-5(b). |
| 165-13 | Exhibit 7 to the Perotti Declaration: entire document. | These emails discuss proprietary business, engineering, and technical information relating to the development of Fitbit's sleep-tracking technology. They concern highly confidential issues relating to sleep tracking, including how Fitbit developed the proprietary algorithm used in its devices. Lee Decl. II ¶ 5. | **Denied.** Fitbit has not shown any concrete likelihood of competitive or other harm that could be caused by disclosure of these emails. |
| Documents relating to Plaintiffs' Brief Opposing Motion to Strike the Montgomery-Downs Report | | | |
| 167-1 | Plaintiffs' Opposition to Fitbit's Motion to Strike: pages and lines 11:28; 12:4. | These portions of the brief identify and describe other exhibits that Fitbit has requested to file under seal. Lee Decl. II ¶ 16. | **Denied.** Fitbit has not shown any concrete likelihood of competitive or other harm that could be caused by disclosure of these portions of the brief. |
| Documents relating to Fitbit's Reply re: Motion for Summary Judgment | | | |
| 176 | Fitbit's Reply Memorandum in Support of Motion for Summary Judgment: pages and lines 3:1-2, 19-20; FN3; 7:12; 11:14. | These portions of Fitbit's brief reflect confidential information regarding Fitbit's (1) proprietary business, engineering, development, and technical information; (2) proprietary market research, manufacturing and development costs; and (3) confidential user data. Dkt. No. | **Denied.** Fitbit has not shown any concrete likelihood of competitive or other harm that could be caused by disclosure of these portions of the brief, and plaintiffs' privacy interests will not be harmed by their disclosure. |

| Dkt. No. | Portion of Document Sealed | Fitbit's Reason for Sealing | Granted/Denied |
|---|---|---|---|
| | | 174-1 ("Lee Decl. III") ¶¶ 3-9. | |
| 176-2 | Exhibit L to the Declaration of William L. Stern: entire document. | Dr. Grandner's deposition transcript includes testimony regarding Fitbit's proprietary sleep tracking technology, including hardware, software, algorithms, and other technology. It also contains testimony describing specific tests, internal validations, and analyses performed by Fitbit relating to Fitbit's products. Lee Decl. III ¶¶ 10-13. | **Denied without prejudice.** The Court finds that some material in the deposition transcript may be sealable, but that the request to seal the entire document is not "narrowly tailored to seek sealing only of sealable material." Civil L.R. 79-5(b). Fitbit may file a supplemental motion to seal portions of the transcript within 7 days of this order. |
| 176-3 | Exhibit M to the Stern Reply Declaration: pages and lines 26:20-25; 27:1-22; 28:1-4. | These portions of Dr. Winter's deposition transcript discuss his confidential consulting work for third parties. This information is not public and relates to projects concerning confidential product development. Lee Decl. III ¶ 14. | **Granted.** Fitbit has demonstrated compelling reasons for sealing these portions of the transcript based on the confidential nature of the information and the competitive harm to third parties threatened by its disclosure. |

## III. CONCLUSION

To the extent that an administrative motion to file under seal discussed in this order was denied with respect to a document, the parties should file an unredacted version of the document within 7 days of this order.

**IT IS SO ORDERED.**

Dated: August 4, 2017

JAMES DONATO
United States District Judge

12