UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMES P. BRICKMAN, et al., <br>     Plaintiffs, <br>   v. <br> FITBIT, INC., <br>     Defendant. | Case No. 3:15-cv-02077-JD <br><br> **ORDER RE CLASS CERTIFICATION** <br> Re: Dkt. No. 119 |

In this consumer action against Fitbit, Inc. ("Fitbit") under California and Florida state law, named plaintiffs James Brickman (Florida) and Margaret Clingman (California) move for class certification. Dkt. Nos. 60, 119-4.[1] Certification is granted except for the Florida common law negligent misrepresentation claim.

## BACKGROUND

The material facts are not in dispute. Fitbit is a well-known maker of wearable fitness devices. Starting in 2009, Fitbit released several models that it marketed as equipped with sleep-tracking functionality. The models in dispute here are the Fitbit Ultra, One, and Flex. Dkt. No. 60 at 5; Dkt. No. 130 at 1; Dkt. No. 122 at 3. An expert witness retained by Fitbit has stated that the methods and algorithms used for the sleep functionality are the same for all of the devices, a fact neither side contests. Dkt. No. 121-6 at 18. Fitbit made the same representations about sleep functionality for all of the devices, including on the packaging and boxes for the products. Dkt. No. 119-13 at ECF pp. 4, 13; *see also* Dkt. No. 119-7 at 56. Among other statements, Fitbit

---

[1] Dkt. No. 119-4 is the unredacted version of plaintiffs' motion for class certification filed under seal. The redacted version is at Dkt. No. 130. Throughout this order, wherever possible, the Court has cited to the public redacted version at Dkt. No. 130. The same goes for the defendant's opposition brief. The unredacted version is at Dkt. No. 121-16 and the public redacted version is at Dkt. No. 122.

represented that the devices all could track "hours slept," "times woken up," and "quality of sleep." Dkt. No. 119-13 at ECF pp. 4, 13. Fitbit also presented images of charts and graphs displaying the data the devices were said to collect. *Id.*; Dkt. No. 60-2. Fitbit sold some sleep-equipped devices directly to consumers but "the vast majority of Fitbit Devices are sold through its retail partners." Dkt. No. 122 at 14. Regardless of distribution channel, each purchaser had to register her device online with Fitbit to activate full functionality. Dkt. No. 122-5 at 5-12; Dkt. No. 122-6 at 4; Dkt. No. 119-7 at 89. The registration process collected consumers' email addresses and the model of the device being registered. *Id.*

Plaintiffs Brickman and Clingman were interested in the sleep functionality, and they each bought a device represented to be equipped with that feature. After buying and wearing the devices, plaintiffs allege they tracked motion and movement only, and not sleep. Dkt. No. 60 at 9-10. The essential claim in the case is that plaintiffs and putative class members were deceived into paying more for Fitbit devices allegedly equipped with sleep-tracking functionality "because the Fitbit devices can only measure movement and not sleep." Dkt. No. 60 at 2-3.

Plaintiffs seek to certify a class of California consumers and a class of Florida consumers. Dkt. No. 130 at 1. The proposed California class consists of California residents who have purchased and registered online a Fitbit Flex, One, or Ultra in the State of California between 2009 and October 27, 2014, when Fitbit added an arbitration clause to its terms of use. *Id.* The proposed Florida class is defined the same way for residents of that state. In the motion for class certification, plaintiffs abandoned the warranty and California False Advertising Law claims in the complaint. *Id.* at 4 n.1. At the hearing on Fitbit's motion for summary judgment, plaintiffs also agreed that the Florida common law fraud claim could not be certified. Dkt. No. 188 at 20.

Consequently, plaintiffs ask to certify: (1) a California class for claims under the California Unfair Competition Law ("UCL"), the California Consumers Legal Remedies Act ("CLRA"), common law fraud, negligent misrepresentation, and quasi-contract/unjust enrichment; and (2) a Florida class for claims under Florida's Deceptive and Unfair Trade Practices Act ("DUTPA"), negligent misrepresentation, and quasi-contract/unjust enrichment.

**DISCUSSION**

**I. Legal Standards**

Federal Rule of Civil Procedure 23 governs this motion. As the parties seeking certification, plaintiffs bear the burden of showing that the requirements of Rule 23 are met. *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 588 (9th Cir. 2012). They must show that the proposed class action satisfies all four requirements of Rule 23(a), and at least one of the subsections of Rule 23(b). *Comcast Corp v. Behrend*, 569 U.S. 27, 33 (2013); *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1186 (9th Cir. 2001), *amended by* 273 F.3d 1266 (9th Cir. 2001).

Rule 23(a) imposes four prerequisites. The class must be "so numerous that joinder of all members is impracticable" (numerosity). There must be "questions of law or fact common to the class" (commonality). The claims or defenses of the named plaintiffs must be "typical of the claims or defenses of the class" (typicality). And the named parties must show that they "will fairly and adequately protect the interests of the class" (adequacy). Fed. R. Civ. P. 23(a)(1)-(4).

For Rule 23(b), plaintiffs propose certification as a (b)(3) class. Consequently, they must show, in addition to the four Rule 23(a) prerequisites, that "questions of law or fact common to class members predominate over any questions affecting only individual members" (predominance) and that a class action is "superior to other available methods for fairly and efficiently adjudicating the controversy" (superiority). Fed. R. Civ. P. 23(b)(3).

The Court's "class-certification analysis must be rigorous and may entail some overlap with the merits of the plaintiff's underlying claim." *Amgen Inc. v. Connecticut Ret. Plans & Trust Funds*, 568 U.S. 455, 465-66 (2013) (internal quotations and citations omitted). "That is so because the class determination generally involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action." *Comcast*, 569 U.S. at 33-34 (internal quotations and citations omitted). These principles apply to the Rule 23(a) and 23(b) analysis alike. *Id.* at 34.

The rigorous analysis, however, has its limits. A significant portion of Fitbit's opposition is that plaintiffs have no claims because its devices do, in fact, work as advertised. *See, e.g.*, Dkt.

3

No. 122 at 6-9. That contention goes too far for present purposes. "Rule 23 grants courts no license to engage in free-ranging merits inquiries at the certification stage. Merits questions may be considered to the extent -- but only to the extent -- that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied." *Amgen*, 586 U.S. at 466. The class certification procedure is decidedly not an alternative form of summary judgment or an occasion to hold a mini-trial on the merits. *Alcantar v. Hobart Service*, 800 F.3d 1047, 1053 (9th Cir. 2015). The goal under Rule 23 is "to select the metho[d] best suited to adjudication of the controversy fairly and efficiently." *Amgen*, 568 U.S. at 460 (internal quotations omitted) (modification in original). That means deciding whether efficiency and the interests of justice are best served by having the named plaintiffs go forward to the merits as individuals or on behalf of a class as "an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 348 (2011) (quoting *Califano v. Yamasaki*, 442 U.S. 682, 700-701 (1979)). Fitbit's many arguments on the ultimate merits of plaintiffs' claims may be suitable for summary judgment or trial, but they will not be resolved here because they exceed the scope of the Rule 23 examination.

The decision of whether to certify a class is entrusted to the sound discretion of the district court. *Zinser*, 253 F.3d at 1186.

**II.    The Rule 23 Factors**

As *Comcast* teaches, the Rule 23 analysis is grounded in the specific facts of the case. The dispositive facts here are straightforward and undisputed: Fitbit's devices shared common methods and algorithms to track sleep, and Fitbit marketed those devices with the same representations to consumers during the class period. This is not a situation where, as in some cases, the defendant made different or conflicting representations to different buyers at different times. Nor is it a situation where the statements to consumers were sporadic or isolated.

Nevertheless, Fitbit has raised a host of arguments against certification. In many instances, Fitbit offers only a few lines of argument followed by a string of case citations. Fitbit's brief also did not clearly identify which Rule 23 factor was at issue in many of its objections. For clarity, the Court addresses Fitbit's main arguments in the structure of Rule 23(a) and (b).

4

### A. Numerosity and adequacy

Plaintiffs state that the proposed classes are each sufficiently numerous since "more than 1,000 of these devices were sold with the sleep tracker representations on the packaging during the class period." Dkt. No. 130 at 12. Fitbit does not contest numerosity, and plaintiffs have established that the challenged devices were sold during the class period to consumers in two populous states. *Id.* This is enough to find that joinder would be impracticable and Rule 23(a)'s numerosity requirement is satisfied. The adequacy of the named plaintiffs to represent the interests of the class is also undisputed, and the Court is satisfied that the named plaintiffs are adequate.[2]

### B. Typicality

Typicality is intended to "assure that the interest of the named representative aligns with the interests of the class." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992). To satisfy this requirement, the named plaintiffs' claims need only be "reasonably coextensive with those of absent class members; they need not be substantially identical." *Just Film, Inc. v. Buono*, 847 F.3d 1108, 1116 (9th Cir. 2017) (internal citations and quotations omitted). Typicality may be found when other members have the same or similar injury as the named plaintiffs arising out of the same course of conduct. *Id*. Typicality should not be found, and a class should not be certified, in cases where other members would suffer because the named plaintiffs would be "preoccupied with defenses unique to" them. *Id*.

Fitbit does not challenge typicality on these grounds, but contends that it cannot be established because the named plaintiffs gave deposition testimony that conflicts with the complaint. Dkt. No. 122 at 10-12. Fitbit sees a fatal divergence between the claim in the complaint that the devices use "a movement-based methodology, actigraphy, rather than polysomnography or some other methodology," and deposition testimony by the named plaintiffs

---

[2] Plaintiff Brickman is the father of Patrick Brickman, a lawyer at a law firm representing plaintiffs who has not personally appeared here. Dkt. No. 122 at 9. While Fitbit does not raise a conflict of interest issue, the Court for clarity finds no reason to disqualify plaintiff Brickman over this family tie. It is not inherently suspect, *see In re Cardizem CD Antitrust Litig.*, 200 F.R.D. 326, 337 (E.D. Mich. 2001), and certification should not be denied on the basis of speculative conflicts. *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 942 (9th Cir. 2015).

5

to the effect that they did not know or care about how the devices functioned. "To them, 'tracks sleep' was deceptive not because their Device tracked 'motion, not sleep' but because they felt the sleep tracking 'did not work.'" *Id.* at 10-11 (emphases removed, internal citation omitted).

This alleged conflict has little substance to it. A plain reading of the complaint leaves no doubt that the gravamen of the claims is that "the Fitbit sleep-tracking function simply does not and cannot accurately provide" numbers such as sleep lengths, awakenings, or sleep quality. Dkt. No. 60 at 7. That is entirely consistent with plaintiffs' deposition testimony that the devices "did not work." *See* Dkt. 122-12 at 22 (Brickman testifying that his device treated awake hours watching television as sleep); Dkt. 122-13 at 43 (Clingman testifying that her device recorded sleep while she was awake and pushing a grocery cart). It is true that the complaint proposes a technical explanation about why the functionality does not work, namely that Fitbit's methodology only tracks movement, and movement is so distinct from sleep that the devices essentially produce no meaningful data on the promised sleep metrics. But plaintiffs, who are suing as regular consumers, can hardly be faulted for not including engineering notes in their testimony. At worst, plaintiffs in their deposition answers simply did not dive as deep into the technical details as the complaint, and that in no way disturbs plaintiffs' showings that they and the absent class members share the same injury from the same course of conduct by Fitbit.

There is no doubt that the facts of a case might show a gap between the litigation interests and claims of the representative plaintiffs and the other members that is wide enough to defeat typicality. *See, e.g.*, *Hanon*, 976 F.2d at 508 (no typicality in securities fraud action where named plaintiff's reliance on integrity of the market would be uniquely in dispute); *Kennedy v. Unumprovident Corp.*, 50 Fed. Appx. 354, 356 (9th Cir. 2002) (no typicality where plaintiff, unlike other members of proposed class, could maintain her claim based only on ERISA). That is not the situation here. Fitbit has not shown a misalignment of interests or claims between the named plaintiffs and the other class members. Fitbit repeats this "complaint vs. testimony"

contention in its commonality and predominance arguments, and it fails there too for the same analytical reasons. *See, e.g.*, Dkt. No. 122 at 17.

### C. Commonality and Predominance

The commonality requirement is satisfied when "there are questions of law or fact common to the class." Fed. R. Civ. Pro. 23(a)(2). "Because any competently crafted class complaint literally raises common questions," the Court's task is to look for a common contention "capable of classwide resolution -- which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Alcantar*, 800 F.3d at 1052 (internal quotations and citations omitted). What matters is the "capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation." *Wal-mart*, 564 U.S. at 350 (quotation omitted) (emphasis in original). Commonality does not demand total uniformity. "All questions of fact and law need not be common to satisfy the rule. The existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998). Our circuit treats Rule 23(a)(2) as a "'rigorous' commonality standard." *Levya v. Medline Indus. Inc.,* 716 F.3d 510, 512 (9th Cir. 2013).

Rule 23(b)(3) in turn requires that common questions of law or fact predominate over individual ones. The predominance inquiry asks whether "common questions present a significant aspect of the case and [if] they can be resolved for all members of the class in a single adjudication." *Hanlon*, 150 F.3d at 1022. Questions affecting only individual class members must not overwhelm questions of law or fact common to the entire class, although each element of a claim need not be susceptible to classwide proof. *Amgen*, 568 U.S. at 468-69. The "important questions apt to drive the resolution of the litigation are given more weight in the predominance analysis over individualized questions which are of considerably less significance to the claims of the class." *Torres v. Mercer Canyons Inc.*, 835 F.3d 1125, 1134 (9th Cir. 2016).

Determining where Rule 23(a)(2) ends and Rule23(b)(3) begins is no easy task, particularly after the Supreme Court arguably elevated the Rule 23(a)(2) inquiry in *Wal-Mart*. *See Ochoa v. McDonald's Corp.*, Case No. 14-cv-02098 JD, 2016 WL 3648550, at *5-6 (N.D. Cal.

7

July 7, 2016). The Supreme Court has advised that "[i]f anything, Rule 23(b)(3)'s predominance criterion is even more demanding than Rule 23(a)," *Comcast*, 569 U.S. at 34, but in what way is not entirely clear. In any event, Fitbit has treated commonality and predominance together, as have courts in our circuit. *See Just Film*, 847 F.3d at 1120-21. The Court will do the same here, with a careful eye toward the specific requirements of each inquiry.

The issues capable of common resolution are well-established and predominate over any individual questions. The proposed classes are California and Florida consumers who bought a challenged sleep-tracking device before October 27, 2014. The record shows, with no meaningful dispute, that Fitbit's packaging for these devices made the same tracking and data representations to all consumers during the class period using the same straightforward statements ("Track your night" or "Track sleep," including "hours slept," "times woken up," and "sleep quality"). Dkt. No. 119-13 at ECF pp. 4, 13; Dkt. No. 119-7 at 56. The devices at issue used the same methods and algorithms to track sleep. Dkt. No. 121-6 at 18. And the complaint poses a common question: Were Fitbit's sleep-tracking representations deceptive in light of the devices' actual functionality? This question is well-suited for an answer in "one stroke" across the class. Consequently, except for legal reasons affecting the Florida negligent misrepresentation claims which will be discussed later, Rule 23(a)(2) commonality and Rule 23(b)(3) predominance are satisfied here.

Fitbit raises a number of challenges, but none of them warrant a different outcome. For clarity, the arguments are organized by general topic.

1. <u>Exposure to the representations</u>

Fitbit contends that the record does not support "common exposure" because while "some purchasers bought in retail stores, Fitbit also sells its Devices online" and those "online purchasers may not have read the statement." Dkt. No. 122 at 20. Fitbit offers no evidence to back up this theory, and dilutes this concern by stating elsewhere that "the vast majority of Fitbit Devices are sold through its retail partners." Dkt. No. 122 at 14. In addition, Fitbit is entirely vague about which channel -- either its own sales or third-party retail sales -- is supposedly afflicted with this online issue. In either circumstance, Fitbit presents no evidence that its statements were in any way not visible to potential buyers.

Fitbit's reliance on *Mazza v. Am. Honda Motor Co., Inc.*, 666 F.3d 581 (9th Cir. 2012), is misplaced. *Mazza* involved "very limited" advertising that exposed consumers to "quite disparate information," leading to the likelihood that "many" class members never saw the allegedly misleading ads. *Id*. at 595-96. Fitbit has not shown that those conditions exist here. Fitbit made the same representations about sleep-tracking functionality on every package for every device at issue, and has not demonstrated a significant exposure gap among consumers.

2. Consumer understanding of "tracks sleep"

Fitbit contends that commonality and predominance cannot be found because reasonable consumers would not understand "tracks sleep" in a consistent way. Dkt. No. 122 at 15-17. This point is not well taken. Fitbit described sleep tracking as tracking "hours slept," "times woken up," and "quality of sleep." Fitbit has not shown that reasonable consumers were at all likely to have taken conflicting or inconsistent messages from these simple declarations made in plain English.

Fitbit's case citations are again off point. *Thorogood v. Sears, Roebuck, and Co.*, 547 F.3d 742 (7th Cir. 2008), is an odd case involving peculiar facts. The plaintiff bought a clothes dryer from Sears advertised as having a "stainless steel drum." The plaintiff interpreted this to mean that the drum protected against rust stains on clothing. *Id*. at 744. But Sears never advertised the dryers as preventing rust stains, and the Seventh Circuit had little trouble declining to certify a class based on the plaintiff's bizarre and "idiosyncratic" understanding of "stainless steel drum." *Id.* at 747. The court's notably acid commentary rejecting the plaintiff's certification theory underscores that *Thorogood* turned on a strange fact pattern of no application here.

*Astiana v. Kashi Co.*, 291 F.R.D. 493 (S.D. Cal. 2013), also does not help Fitbit. The court declined to certify a class of consumers allegedly deceived by the phrase "all natural" because the defendants established that the word "natural" was not defined in any definite manner by the FDA, food producers, and consumers, and because many consumers viewed a food as "natural" despite the presence of certain artificial ingredients. *Id.* at 508-09. This makes *Astiana* a poor fit here,

9

where Fitbit's sleep-tracking representations were substantially more clear, concrete and defined than the vague and open-ended term "all natural."[3]

### 3. Reliance and materiality

Fitbit next says that individualized issues of reliance and materiality predominate on all claims. But individual reliance is not required for the California UCL, the Florida DUTPA, or either state's quasi-contract/unjust enrichment claims. *See In re Tobacco II Cases*, 46 Cal. 4th 298, 313, 320 (2009) ("relief under the UCL is available without individualized proof of deception, reliance and injury"); *Davis v. Powertel, Inc.*, 776 So. 2d 971, 974 (Fla. Dist. Ct. App. 2000) ("proof of reliance is unnecessary" for DUTPA claim); *Hillman Const. Corp. v. Wainer*, 636 So.2d 576, 577 (Fla. Dist. Ct. App. 1994) (elements of unjust enrichment claim do not include reliance); *Peterson v. Cellco P'ship*, 164 Cal. App. 4th 1583, 1593 (2008) (same).

Commonality and predominance also pose no problems for the California CLRA and common law claims. As an initial matter, the CLRA claim is particularly suited to class treatment because it applies an objective, reasonable consumer standard to determine whether a statement was deceptive. *Williams v. Gerber Prod. Co.*, 552 F.3d 934, 938 (9th Cir. 2008). The California common law claims are also good candidates for class treatment in that they focus in significant part on the falsity of the defendant's statements, and the defendant's knowledge of falsity or assertion of a falsehood without reasonable grounds. *Small v. Fritz Cos., Inc.*, 30 Cal. 4th 167, 173-74 (2003).

In addition, reliance may be inferred for the CLRA and California common law claims when the facts show that material misrepresentations were made to the entire class. *In re Vioxx Class Cases*, 180 Cal. App. 4th 116, 129 (2009) (CLRA); *Vasquez v. Superior Court*, 4 Cal. 3d

---

[3] Fitbit suggests that it has "actual evidence" about what consumers understood "tracks sleep" to mean from a survey, Dkt. No. 122 at 18, but this discussion barely takes up a single page near the end of its opposition brief, and Fitbit does little more than summarize numbers. This stunted presentation falls far short of a well-formulated objection to certification, and it leaves the Court without any argument about the validity and reliability of the survey data and methodology, and how, if at all, the survey affects the Rule 23 analysis. In the absence of a meaningful presentation, the survey evidence is of no value, even without considering plaintiffs' multiple objections to it. *See* Dkt. No. 131-3 at 8.

800, 814 (1971) (common law fraud); *Collins v. Rocha*, 7 Cal. 3d 232, 237 (1972) (negligent misrepresentation). This applies forcefully here. Plaintiffs have amply established materiality and classwide exposure with evidence that Fitbit expressly called out the sleep functionality for all devices using the same bundle of representations that potential buyers would unquestionably find significant. Even if this evidence were to be discounted for some reason not apparent here, plaintiffs have demonstrated the existence of common questions of reliance and materiality that can be answered for the class as a whole without individualized determinations. Fitbit's passing references to a few cases reaching a different outcome on different facts, Dkt. No. 122 at 22, are inapposite. *See, e.g.*, *Mahfood v. QVC, Inc.*, No. SACV 06-0659-AG(ANx), 2008 WL 5381088, at *4-5 (C.D. Cal. Sept. 22, 2008) (no predominance because no evidence of uniform misrepresentations); *Hodes v. Van's Int'l Foods*, No. CV 09-01530 RGK(FFMx), 2009 WL 2424214, at *4 (C.D. Cal. July 23, 2009) (no predominance because "*who* purchased Van's frozen waffles during the relevant class period, *which kind* of frozen waffles they purchased, *how many* they purchased, and whether the kinds they purchased contained false nutritional information" were individual questions) (emphasis in original).

Florida law compels a different result for the Florida negligent misrepresentation claim. Florida holds that "the issue of reliance [in a common law fraud claim] is unique to each person who is alleged to have been defrauded" and "require[s] subjective evidence of reliance," and so is not amenable to class treatment as a matter of law. *Powertel*, 776 So. 2d at 973-74; *Hoechst Celanese Corp. v. Fry*, 753 So. 2d 626, 627 (Fla. Dist. Ct. App. 2000). Negligent misrepresentation is even less so amenable because Florida requires that the plaintiff's reliance be justifiable. *Gallon v. Geico Gen. Ins. Co.*, 150 So. 3d 252, 254 (Fla. Dist. Ct. App. 2014). Consequently, plaintiffs' Florida common law claim for negligent misrepresentation will not be certified for class litigation. Plaintiff Brickman may proceed with it on his own behalf.

### 4. Damages

Fitbit contends that damages are not susceptible to classwide proof. Much of Fitbit's argument has been mooted by developments after the filing of its opposition brief. For example, Fitbit devotes considerable attention to perceived weaknesses in plaintiffs' expert work on

11

damages, Dkt. No. 122 at 23-24, but plaintiffs agreed to withdraw the experts and their reports at the subsequent hearing on this motion. Dkt. No. 146. Plaintiffs are now committed to seeking damages in the form of the price difference between Fitbit devices with sleep tracking and equivalent devices without it, with adjustments for other feature differences as warranted. Dkt. No. 151 at 15; *see also* Dkt. No. 117-1 at ECF p. 1. They intend to rely on Fitbit documents and witnesses for evidence on these issues. Dkt. No. 151 at 19. This is a perfectly reasonable approach that links the proposed damages directly to plaintiffs' claims that they were deceived into paying a premium for the sleep functionality. *Just Film,* 847 F.3d at 1121. That is all *Comcast* demands. *Id*. Any need for the occasional individualized damages calculation is, of course, no bar to predominance. *Id*.; *see also Leyva*, 716 F.3d at 514.

### 5. Florida and California quasi-contract/unjust enrichment

Fitbit's suggestion that plaintiffs' quasi-contract/unjust enrichment claims are "inherently fact-specific because they demand individualized determinations" does not hold water. Dkt. No. 122 at 24. Florida unjust enrichment claims are appropriate for class treatment where the defendant's "conduct is the same as to all members of the putative class," because in that case "it is difficult to conceive of any significant equitable differences between class members." *James D. Hinson Elec. Contracting Co. v. BellSouth Telecomm., Inc.*, 275 F.R.D. 638, 647 (M.D. Fla. 2011) (internal quotations and citations omitted). The same is true for the California quasi-contract claims. *See Astiana*, 291 F.R.D. at 505 (listing cases). In light of all of the fact commonalities discussed above, plaintiffs' quasi-contract/unjust enrichment claims are suited to certification. Fitbit's passing mention of *Berger v. Home Depot USA, Inc.*, 741 F.3d 1061 (9th Cir. 2014), is again entirely off point.

**D. Superiority**

The final consideration for certification is whether any fairness or practical case management reasons count against it. "Rule 23(b)(3) requires that a class action be 'superior to other available methods for fairly and efficiently adjudicating the controversy,' and it specifically mandates that courts consider 'the likely difficulties in managing a class action.'" *Briseno v.*

*ConAgra Foods, Inc.*, 844 F.3d 1121, 1127-28 (9th Cir. 2017) (citing Fed. R. Civ. Pro. 23(b)(3)(D)).

There can be no doubt here that a class is the superior method of handling these consumer claims. Plaintiffs' complaint indicates that the price premium paid by consumers is around $30 per device. *See* Dkt. No. 60 at 16. No reasonable person is likely to pursue these claims on her own for that amount of compensation, particularly in light of the technology and attendant expert witness issues, and Fitbit's commitment to a strong defense. This all "vividly points to the need for class treatment." *Just Film*, 847 F.3d at 1123.

Fitbit catalogs a number of "manageability" concerns, again with virtually no meaningful discussion. Fitbit says that the Court must know "(i) each consumer's expectations and (ii) whether they always used Sleep Mode correctly" in order to "separate 'real' cases of error . . . from user error." Dkt. No. 122 at 13. In addition, Fitbit contends that class members cannot be readily identified because the vast majority of its devices are sold through retail partners, and Fitbit does not track its own sales on a state-by-state basis. *Id.* at 14.

None of these concerns move the Court to decline certification. Point (i) basically repeats arguments about commonality and predominance previously rejected. They fare no differently when re-packaged as a "manageability" issue.

The "user error" contention in point (ii) is equally unpersuasive. Plaintiffs' core claim is that the devices do not track sleep at all, even if Sleep Mode is activated correctly one hundred percent of the time. Dkt. No. 131-3 at 4. Fitbit relies on *Mednick v. Precor, Inc.*, No. 14 C 3624, 2016 WL 3213400, at *7 (N.D. Ill. June 10, 2016). But that case is factually distinct and driven by variables not present here. *Mednick* found that common questions did not predominate where proof of defective heart-rate tracking systems on exercise machines depended on a slew of user-specific factors including age, weight, cardio-physiology, the "thickness or dryness of the skin on their hands," and their average rate of exercise. *Id.* In contrast, Fitbit has not shown that proof of its devices' sleep-tracking functionality will depend on each user's distinctive physiological characteristics.

13

Fitbit's suggestion that it can't trace or identify purchasers is puzzling. The proposed classes are limited to users who have registered a Fitbit device, and Fitbit's witness testimony establishes that it obtained users' email addresses and device models upon registration. Dkt. No. 119-7 at 89-90. That ought to solve any identification issues. For the devices that Fitbit sells to direct purchasers over the internet, it presumably has the names and addresses of these buyers. From these databases, it should be an easy matter to sort registration or identification information by zip codes to identify California and Florida consumers. Some manual follow-up might be needed on occasion, but that would be an exception and not the rule. To the extent Fitbit tries to counter these common-sense conclusions by citing its own interrogatory responses to the effect that it "is unable to identify the geographic location for all purchasers of all of its devices," Dkt. No. 122-14 at 18, it relies on mere boot-strapping rather than evidence.

Even if these practical methods were for some reason at risk of incomplete identifications, plaintiffs have proposed a number of methods allowing class members to self-identify, including publishing notice at third-party retail stores, in widely circulated newspapers, and online. Dkt. No. 131-3 at 6. Courts regularly permit class members to identify themselves in consumer product class actions, as long as the self-identification involves purely objective and non-fact-intensive criteria. *See Otto v. Abbott Labs. Inc.*, No. 12-cv-01411-SVW-DTB, 2015 WL 9698992, at *3-4 (C.D. Cal. Sept. 29, 2015) (listing cases). Fitbit has not shown why that would be inappropriate here.

## CONCLUSION

The Court certifies the proposed California Class for plaintiffs' UCL, CLRA, common law fraud, negligent misrepresentation, and quasi-contract/unjust enrichment claims. The Court also certifies the proposed Florida Class for plaintiffs' DUTPA and quasi-contract/unjust enrichment

claims. The Florida negligent misrepresentation claim will not be certified and will proceed for the Florida named plaintiff only.

**IT IS SO ORDERED.**

Dated: November 20, 2017

JAMES DONATO
United States District Judge