Patrick J. Perotti (Ohio Bar No. 0005481)
Frank A. Bartela (Ohio Bar No. 0088128)
DWORKEN & BERNSTEIN CO., L.P.A.
60 South Park Place
Painesville, OH 44077
Telephone: (440) 352-3391
Facsimile: (440) 352-3469
Email: pperotti@dworkenlaw.com
        fbartela@dworkenlaw.com
Appearance *pro hac vice*

John A. Kithas (California Bar No. 64284)
Christopher Land (California Bar No. 238261)
LAW OFFICES OF JOHN A. KITHAS
One Embarcadero Center, Suite 1020
San Francisco, CA 94111
Telephone: (415) 788-8100
Facsimile: (415) 788-8001
Email: john@kithas.com
        chris@kithas.com

Ronald A. Margolis (Ohio Bar No. 0031241)
BONEZZI, SWITZER, POLITO AND HUPP
1300 E. 9th Street, Suite 1950
Cleveland, OH 44114
Telephone: (216)875-2068/Fax: (216)875-1570
Email: rmargolis@bsphlaw.com
Appearance *pro hac vice*

ATTORNEYS FOR PLAINTIFFS

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMES P. BRICKMAN, individually and as a representative of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>FITBIT, INC.,<br><br>Defendant. | Case No. 3:15-cv-2077-JD<br><br>**UNOPPOSED *AMENDED* MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT AND LEAVE TO FILE FIFTH AMENDED COMPLAINT**<br><br>The Honorable James Donato |

1

## <u>TABLE OF CONTENTS</u>

2

Table of Contents ................................................................................................................. i

Table of Authorities ........................................................................................................... iii

Notice of Motion and Motion ........................................................................................... vi

I.     Introduction ........................................................................................................... 1

II.    Background Facts and Details of Settlement ........................................................ 2

     a.   The history of the litigation ......................................................................... 2

     b.   Settlement Negotiations .............................................................................. 4

     c.   The initial Settlement Agreement and Preliminary Approval Motion.......... 5

     d.   The proposed settlement terms and relief provided to the Settlement
          Sub-Classes .................................................................................................. 5

     e.   Plaintiffs' analysis of benefits provided by Settlement Agreement.............. 7

     f.   The notice plan and claims process............................................................. 7

     g.   Incentive and Attorneys' Fee Awards......................................................... 8

     h.   Release and Discharge of Claims................................................................. 9

     i.   Injunctive Relief ........................................................................................ 10

     j.   Fifth Amended Complaint .......................................................................... 10

III.    Argument............................................................................................................. 11

     a.   The Settlement Agreement merits preliminary approval by
          this Court.................................................................................................... 11

     b.   The Proposed Settlement Sub-Classes should be
          Conditionally Certified............................................................................... 12

          i.   The Settlement Sub-Classes are sufficiently numerous......................... 13

          ii.   The Settlement Sub-Class representatives' claims are typical of other
              members of the Settlement Sub-Classes ................................................. 14

iii.  The Settlement Sub-Class representatives and Class Counsel will fairly and adequately protect the interests of the Settlement Sub-Class ............................................................................ 15

iv.  Class treatment is superior in this case ................................. 16

v.  Commonality and predominance are satisfied ....................... 16

vi.  Conditional certification of the proposed Multi-State Class is appropriate and Plaintiff Samy has standing to represent the Multi-State Class ............................................................................ 19

c.  The Settlement Agreement is presumed fair because it is the product of good faith, informed, and arms-length negotiations after extensive fact and expert discovery ............................................................................ 23

d.  Other factors also demonstrate that the Settlement is fair, reasonable, and adequate............................................................................................ 25

i.  Strength of Plaintiffs' case and the risk, expense, complexity, and likely duration of further litigation, including risk of maintaining class action status............................................................................................ 25

ii.  Amount offered in settlement ................................................ 26

iii.  The experience and views of experienced counsel.................. 27

e.  Attorneys' fees and cost .................................................................... 28

f.  The notice plan proposed by the settlement is adequate................. 29

g.  Dates for Final Approval.................................................................. 31

Certificate of Service........................................................................................ 32

1

## <u>TABLE OF AUTHORITIES</u>

2

**Cases**

3   *Adams v. King County*, 164 Wash.2d 640 (Wash. S. Ct. 2008)..................................................... 19

4   *Amchem Prods. Inc. v. Windsor*, 521 U.S. 591 (1997) ................................................................ 13

5   *Carnegie v. Household Int'l, Inc.*, 376 F.3d 656 (7th Cir. 2004)..................................................... 16

6   *Castano v. American Tobacco Co.*, 84 F.3d 734 (5th Cir. 1996)..................................................... 20

7   *Churchill Village, L.L.C. v. General Electric*, 361 F.3d 566 (9th Cir. 2004) .......................... 12, 29

8   *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268 (9th Cir. 1992)..................................................... 11

9   *Clearly v. Phillip Morris, Inc.*, 656 F.3d 511 (7th Cir. 2011)................................................... 19, 22

10   *Colgan v. Leatherman Tool Group, Inc.*, 135 Cal.App.4th 663 (Cal. 2nd Dist. 2006).................... 10

11   *Connick v. Suzuki Motor Co.*, 174 Ill. 2d 482 (1996) ............................................................. 19, 21

12   *Cordy v. USS-Posco Indus.*, 2014 WL 212587 (N.D. Cal. 2014)..................................................... 11

13   *Dragt v. Dragt/DeTray, LLC*, 139 Wash.App. 560 (Wash. App. 2007)........................................ 20

14   *Dunleavy v. Nadler*, 213 F.3d 454 (9th Cir. 2000) ....................................................................... 13

15   *Dyer v. Wells Fargo Bank, N.A.*, 2014 WL 1900682 (N.D. Cal. 2014) .................................. 11, 29

16   *Eisen v. Carlisle and Jacquelin*, 417 U.S. 156 (1974)................................................................... 29

17   *Elcon Construction, Inc. v. Eastern Washington University*, 174 Wn.2d 157 (2012)................... 22

18   *Ellsworth v. U.S. Bank, N.A.*, 2014 WL 2734953 (N.D. Cal. 2014) ............................................. 20

19   *Engelman v. Kessler*, 340 Ga.App. 239 (Ga. App. 2017) ............................................................. 19

20   *Eun Bok Lee v. Ho Chang Lee*, 411 S.W.3d 95 (Tex. App. 2013) ......................................... 19, 22

21   *Freese v. Smith*, 110 N.C. App. 28 (1993). ................................................................................... 22

22   *Garner v. State Farm Mut. Auto Ins. Co.*, 2010 WL 1687832 (N.D. Cal. 2010).......................... 23

23   *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147 (1982)............................................................... 16, 17

24   *Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998)...................... 12, 13, 14, 15, 17, 20, 23

25   *Hanon v. Dataproducts Corp.*, 976 F.2d 497 (9th Cir. 1992)........................................................ 14

26   *Hart v. BHH, LLC*, 2017 WL 2912519 (S.D. NY 2017) ............................................................. 21

27   *Hollifield v. Monte Vista Biblical Gardens, Inc.*, 251 Ga. App. 124, 553 S.E.2d 662 (2001). 19, 20

28   *Holmes v. Solon Automated Services*, 231 N.C.App. 44 (N.C. App. 2013) ................................. 19

*In Interest of C. M. V.*, 479 S.W.3d 352 (Tex. App. 2015) ............................................................ 19

*In re Cendant*, 264 F.3d 201 (3rd Cir. 2001) .................................................................................... 25

*In re High-Tech Employee Antitrust Litigation*, 985 F.Supp.2d 1167
(N.D. Cal. Oct. 24, 2013) ......................................................................................... 13, 14, 15

*In re Hyundai*, 881 F.3d 679 (9th Cir. 2018) .................................................................................. 20

*In re Netflix Privacy Litigation*, 2013 WL 1120801 (N.D. Cal. 2013) ............................. 11, 23, 29

*In re Pharm. Indus. Average Wholesale Price Litig.*, 252 F.R.D. 83 (D. Mass. 2008) ................ 21

*In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078 (N.D. Cal. 2007) ...................................... 11

*In re Visa Check/MasterMoney Antitrust Litigation*, 280 F.3d 124 (2nd Cir. 2001) ..................... 16

*In re Volkswagen "Clean Diesel" Marketing, Sales Practices, and Products Liability Litig.*,
895 F.3d 597 (9th Cir. 2018).................................................................................................... 28

*In re Warfarin Sodium Antitrust Litig.*, 212 F.R.D. 231 (Del. 2002)............................................. 25

*Italian Cowboy Partners, Ltd. v. Prudential Ins. Co. of Am.*, 341 S.W.3d 323 (Tex. 2011)......... 21

*Jordan v. Los Angeles Cnty.*, 669 F.2d 1311 (9th Cir. 1982) ......................................................... 14

*Lane v. Facebook, Inc.*, 696 F. 3d 811 (9th Cir. 2012) ................................................................... 11

*Left Coast Wrestling, LLC v. Dearborn Int'l LLC*, No. 317CV00466LABNLS,
2018 WL 2328471 (S.D. Cal. May 23, 2018) ........................................................................ 10

*Linney v. Cellular Alaska Partnership*, 151 F.3d 1234 (9th Cir. 1998)......................................... 26

*Lipuma v. American Express Company*, 406 F.Supp.2d 1298 (S.D. Fla. 2005).............................. 26

*Malvino v. Delluniversita*, 2015 U.S. Dist. LEXIS 65697 (S.D. Tex. 2015)................................. 21

*Mazza v. Honda American Honda Motor Co.*, 666 F.3d 581 (9th Cir. 2012) ................................ 17

*Mendoza v. Tucson School Dist. No. 1*, 623 F.2d 1338 (9th Cir. 1980) ........................................ 29

*National Rural Telecommunications Cooperative v. DIRECTV, Inc.*, 221 F.R.D. 523
 (C.D. Cal. 2004)........................................................................................................... 23, 24, 26

*New York v. Reebok Int'l Ltd.*, 903 F. Supp. 532, (S.D.N.Y. 1995)
*aff'd*, 96 F.3d 44 (2nd Cir. 1996)............................................................................................. 24

*Norcon Builders, LLC v. GMP Homes VG, LLC*, 161 Wash.App. 474 (Wash. App. 2011) ... 19, 23

*Officers for Justice*, 688 F.2d 615 (9th Cir. 1982) ......................................................................... 26

*Pacheco v. JP Morgan Chase Bank N.A.*, Case No. 15-cv-5689-JD,
Dkt. Nos. 56, 63 (Donato, J.) .................................................................................................. 10

*Palm Beach Golf Center-Boca, Inc. v. Sarris*, 311 F.R.D. 688 (S.D. Fla. 2015) ......................... 13

*Partnership Co. v. Atlantic Acquisition Ltd. P'ship*, 100 F.3d 1041 (1st Cir.1996) ..................... 24

*Phillips Petroleum Co. v. Shutts*, 472 U.S. 797 (1985) ........................................................... 20, 29

*Piles v. Allstate Ins. Co.*, 187 N.C.App. 399 (N.C. App. 2007) ................................................... 19

*Pinnock-Lee v. Phelan Hallinan, PLC*, 2015 WL 12532742 (S.D. Fla. 2015) ............................ 15

*Primerica Life Ins. Co. v. James Massengill & Sons Const. Co.*, 211 N.C.App. 252
(N.C. App. 2011) ........................................................................................................ 19, 22

*Relente v. Viator, Inc.*, Case No. 12-cv-05968-JD, Dkt. Nos. 63, 76 (Donato, J.) ....................... 10

*Rodriguez v. Danell Custom Harvesting, LLC*, 2018 WL 1116546 (N.D. Cal. 2018) ................. 11

*Rodriguez v. West Publishing Corp.*, 2007 WL 2827379 (C.D. Cal. 2007) ................................. 25

*Rodriguez v. West Publishing Corp.*, 563 F.3d 948 (9th Cir. 2009) ..................................... 8, 23, 25

*Staton v. Boeing Co.*, 327 F.3d 938 (9th Cir. 2003) ..................................................................... 11

*Steigerwald v. BHH, LLC*, 2016 WL 695434 (N.D. Ohio 2016) ................................................. 21

*Stiefel v. Schick*, 260 Ga. 638 (1990) ........................................................................................ 22

*Torres v. Mercer Canyons Inc.*, 835 F.3d 1125 (9th Cir. 2016) .................................................. 17

*Trauth v. Spearmint Rhino Companies Worldwide, Inc.*, 2011 WL 13134046
 (C.D. Cal. Apr. 4, 2011) ................................................................................................. 15

*Wachovia Ins. Services, Inc. v. Fallon*, 299 Ga.App. 440 (Ga. App. 2009) ........................... 19, 23

*Wal-Mart Stores, Inc. v. Dukes*, 131 S.Ct. 2541 (2011) ............................................................. 16

*Walsh v. Ford Motor Co.*, 807 F.2d 1000 (D.C. Cir. 1986) ......................................................... 20

**Statutes**

28 U.S.C. § 1715(b) .............................................................................................................. 8, 31

**Rules**

Fed. R. Civ. P. 23 ............................................................................................................. passim

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## NOTICE OF MOTION AND MOTION

**PLEASE TAKE NOTICE** that on November 29, 2018 at 10:00 AM, or as soon as the matter may be heard, in Courtroom 11, before the Honorable James Donato, Plaintiffs shall and hereby do move the Court for an Order:

1.  Of preliminary approval of the settlement of this class action as set forth in the class action Stipulation of Settlement dated October 29, 2018 ("Settlement Agreement"), attached as Exhibit 1.

2.  Of conditional certification, for settlement purposes only, of the following Settlement Sub-Classes: all persons who purchased and registered online, a Fitbit Flex, One, or Ultra during the indicated time period in: California (2009 – October 27, 2014); Florida (2009 – October 27, 2014); New York (March 26, 2012 – October 27, 2014); Pennsylvania (March 26, 2012 – October 27, 2014); Ohio (March 26, 2012 – October 27, 2014); Michigan (March 26, 2012 – October 27, 2014); New Jersey (March 26, 2012 – October 27, 2014); Illinois (March 26, 2013 – October 27, 2014); Missouri (March 26, 2013 – October 27, 2014); Texas (March 26, 2014 – October 27, 2014); Georgia (March 26, 2014 – October 27, 2014); North Carolina (March 26, 2014 – October 27, 2014); and Washington (March 26, 2014 – October 27, 2014).

3.  Directing the distribution of notice in the form and manner set forth in the Settlement Agreement and outlined herein;

4.  Setting a date for a final approval hearing.

Unopposed Am. Motion for Prelim. Approval and Leave to File Fifth Amended Complaint
Case No. 3:15-cv-2077
sd-726981

vii

## I.      Introduction.

After three years of litigation and shortly before trial was set to begin, the Parties reached a proposed settlement of this class action.    The parties previously submitted a stipulation of settlement and motion for preliminary approval of the class settlement ("Original Approval Motion").  (Dkt. No. 254.)  At the September 13, 2018 preliminary approval hearing, this Court denied the previous motion for preliminary approval without prejudice.  (Doc. No. 257).  After the conclusion of the previous preliminary approval hearing, the parties continued their arms-length negotiations in a good faith attempt to update the terms of the settlement to address concerns identified by the Court at the previous preliminary approval hearing.   The revised terms and conditions of the proposed settlement are set forth in the Settlement Agreement filed with the Court as Exhibit 1 to this motion and are based on arm's-length negotiations.[1]  The parties now again request that the Court preliminarily approve the Settlement, as amended, and authorize the proposed class notice to be sent to the settlement class.

As detailed below, under the Settlement, Fitbit, Inc. ("Fitbit") will provide every class member who submits a timely and valid claim a cash payment of $12.50, an increase of $2.50 over the cash benefit proposed in the Original Approval Motion.  Further, the Settlement eliminates the voucher benefit proposed in the Original Approval Motion so that the benefit to the class is cash only.

The Settlement covers the same California and Florida state classes previously certified by this Court.  See Order re Class Certification, Dkt. No. 194.  In addition, by agreement of the parties, the Settlement also includes those who purchased the Fitbit Devices in 11 other states during the class period.  Specifically, the Settlement Sub-Classes, as defined in the Settlement Agreement, include:  all persons who purchased and registered online, a Fitbit Flex, One, or Ultra during the indicated time period in:  California (2009 – October 27, 2014); Florida (2009 – October 27, 2014);

---

[1] The Settlement Agreement includes all attached exhibits, which are identified in the Settlement Agreement as follows: Exhibit A – Class Notice; Exhibit B – Summary Notice; Exhibit C – Claim Form; Exhibit D – Request for Exclusion; Exhibit E – Proposed Final Judgment Order; and Exhibit F – Proposed Preliminary Approval Order.

New York (March 26, 2012 – October 27, 2014); Pennsylvania (March 26, 2012 – October 27, 2014); Ohio (March 26, 2012 – October 27, 2014); Michigan (March 26, 2012 – October 27, 2014); New Jersey (March 26, 2012 – October 27, 2014); Illinois (March 26, 2013 – October 27, 2014); Missouri (March 26, 2013 – October 27, 2014); Texas (March 26, 2014 – October 27, 2014); Georgia (March 26, 2014 – October 27, 2014); North Carolina (March 26, 2014 – October 27, 2014); and Washington (March 26, 2014 – October 27, 2014).

The proposed Class Notice meets the Federal Rule of Civil Procedure 23(c)(2)(B) most "practicable under the circumstances" standard.  The notice will target potential Class Members through direct e-mail notification and, as needed, direct mail notification, as well as publication notice as set forth in Section IV of the Settlement Agreement. See Declaration of Carla Peak, KCC, ¶¶13-15, 17, 19, 22, attached hereto as Exhibit 2. Notice will also be posted on a website established specifically for this settlement.  The notice and claims administration costs and expenses will be paid by Fitbit separate and apart from any payment directed to the settlement class.

The proposed Settlement meets the standard for preliminary approval.  The Court should enter the proposed preliminary approval order that: (1) preliminarily approves the terms of the Settlement Agreement, (2) approves the form, method, and plan of providing notice to potential Class Members, (3) certifies the Settlement Sub-Classes for settlement purposes, (4) appoints Class Counsel, and (4) schedules a Final Approval Hearing and related dates.

## II.     Background Facts and Details of Settlement

### a.   The history of the litigation.

On May 8, 2015, Plaintiff James P. Brickman filed a class action complaint against Fitbit in the United States District Court for the Northern District of California, San Francisco Division, titled *Brickman*, *et al*. *v*. *Fitbit*, *Inc*., Case No. 3:15-cv-2077-JD (the "Action").  On December 22, 2015, Plaintiff Brickman, together with Plaintiff Margaret Clingman, filed the operative Fourth Amended Complaint (the "4AC" or "Complaint").  The Complaint alleged that Fitbit's advertising of the sleep-tracking feature on the Devices was false or misleading and that the Devices do not track sleep as advertised.  The Complaint alleged the following causes of action:  (1) Violations of California's Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, *et seq*. ("UCL") (4AC ¶¶

70-98); (2) Violation of the Consumer Legal Remedies Act (Cal. Civ. Code § 1750, *et seq.* ("CLRA") (*id.* ¶¶ 104-109); (3) Violation of Florida's Deceptive and Unfair Trade Practices Act ("FDUTPA"), Fla. Stat. § 501.201, *et seq.* (*id.* ¶¶ 134-140); (4) Common Law Fraud (*id.* ¶¶ 141-109); (5) Negligent Misrepresentation (*id.* ¶¶ 149-154); and (6) Unjust Enrichment/Quasi-Contract (*id.* ¶¶ 155-164). The Complaint also included causes of action for violation of California's False Advertising Law, Cal. Bus. & Prof. Code § 17500, *et seq.*; violation of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301, *et seq.*; and breach of implied warranties; however, Plaintiffs James P. Brickman and Margaret Clingman subsequently abandoned those claims. The Complaint sought damages, restitution, punitive damages, and fees and costs.

On January 8, 2016, Fitbit filed a motion to dismiss Plaintiffs' Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) on the ground that Plaintiffs failed to state a claim upon which relief can be granted.[2] (Dkt. No. 63.) Plaintiffs opposed the motion and on July 15, 2016, the Court issued an Order denying the motion. (Dkt. No. 84.)

Fitbit answered Plaintiffs' Complaint on July 29, 2016 and denied the allegations therein and alleged various affirmative defenses. The parties conducted extensive fact and merits discovery which included the exchange of written discovery in the form of interrogatories, requests for admission, and requests for production. See Declaration of Patrick J. Perotti, ¶¶ 4-13, attached hereto as Exhibit 3. Class Counsel reviewed over 149,000 pages of discovery documents produced by Fitbit during the course of written discovery. Ex. 3, Perotti Decl. at ¶10. Class Counsel deposed three of Fitbit's representatives designated under Federal Rule of Civil Procedure 30(b)(6), while counsel for Defendant deposed Plaintiffs Clingman and Brickman. Ex. 3, Perotti Decl. at ¶ 13. The parties' consulted and obtained experts on the myriad issued presented by the suit and submitted expert reports from nine separate experts, each of whom were deposed.

On January 31, 2017, after the substantial discovery outlined above, Plaintiffs moved the Court for certification of Florida and California classes. Subsequently, on April 20, 2017, Fitbit filed its motion for summary judgment.

---

[2] Fitbit also filed motions to dismiss against Plaintiffs' initial complaint (Dkt. No. 21) and Plaintiffs' First Amended Complaint (Dkt. No. 34).

On November 20, 2017, the Court granted the motion for class certification of Plaintiffs James P. Brickman and Margaret Clingman, except as to the Florida common fraud and negligent misrepresentation claims.  The Court certified the following classes (the "Certified Classes"):

1. All California residents who have purchased and registered online a Fitbit Flex, One, or Ultra in the State of California between 2009 and October 27, 2014.

2. All Florida residents who have purchased and registered online a Fitbit Flex, One, or Ultra in the State of Florida between 2009 and October 27, 2014.

On December 8, 2017, the Court denied Fitbit's motion for summary judgment.  (Dkt. No. 195.)

After the Court's orders on class certification and summary judgment, the parties continued to prepare for trial in this matter. To that end, the parties met and conferred multiple times over the course of several months to prepare the joint materials required by this Court's standing order on civil jury trials. On March 22, 2018, the parties filed: (1) trial briefs; (2) joint pre-trial statement; (3) motions in limine; (4) joint exhibit list and objections; (5) joint witness list and objections; (6) joint proposed voir dire questions and objections; (7) joint proposed jury instructions and objections; and (8) joint proposed verdict forms and objections.

**b. Settlement Negotiations**

Throughout the litigation, efforts were made by the parties to explore potential settlement. Several mediations were conducted, culminating in a settlement after the Court had denied summary judgment, granted class certification, and trial preparation had occurred.

The proposed settlement was reached following significant, and hard fought, litigation as is outlined above.  During the course of this litigation, the parties entered into several rounds of arms-length negotiations which included the help of expert mediators.  On December 15, 2016, the parties attended a mediation before Martin Quinn of JAMS.  The parties attended a further mediation in California before Magistrate Donna Ryu on May 15, 2017.  Ex. 3, Perotti Decl. at ¶¶ 14, 21. On February 6, 2018, the parties attended an all-day mediation with Hon. John Leo Wagner (Ret.) of

Judicate West, an independent, skilled, and well-respected neutral mediator in Santa Ana, California. Ex. 3, Perotti Decl. at ¶28.

After the mediation, the parties continued to discuss settlement, having benefitted from the guidance and direction of the mediator. On March 6, 2018, the parties held a meeting in the San Francisco office of Morrison Forester to further discuss settlement. Ex. 3, Perotti Decl. at ¶ 30. After this meeting, the parties continued to discuss settlement in this matter, which led to the terms of the settlement memorialized in the Settlement Agreement, and which are summarized in this motion. The parties filed a Joint Notice of Settlement in Principle and Stipulation and Proposed Order to Vacate Upcoming Dates and Deadlines on March 28, 2018.

**c.   The initial Settlement Agreement and Preliminary Approval Motion.**

The parties previously submitted a Stipulation of Settlement and Plaintiffs' Motion for Preliminary Approval on August 1, 2018. (Doc. No. 254). At the preliminary approval hearing on September 13, 2018, the Court instructed the parties that it intended to deny the Original Approval Motion without prejudice and directed the parties to address certain concerns identified by the Court. The Court provided the parties with a period of 45 days to address the Court's concerns and submit an amended preliminary approval motion. After the previous preliminary approval hearing, the parties again entered into arms-length negotiations to address and rectify the concerns this Court outlined at the hearing. The parties concluded their negotiations and entered into the Stipulation of Settlement on October 29, 2018.

**d.   The proposed settlement terms and relief provided to the Settlement Sub-Classes.**

The parties, in this motion, seek conditional certification for the purposes of settlement, of the following subclasses (the "Settlement Sub-Classes") under Rule 23(b)(3):

**California Sub-Class**:  All persons who purchased in the State of California, and registered online, a Fitbit Flex, One, or Ultra between 2009 and October 27, 2014;

**Florida Sub-Class**:  All persons who purchased in the State of Florida, and registered online, a Fitbit Flex, One, or Ultra between 2009 and October 27, 2014;

**New York Sub-Class**:  All persons who purchased in the State of New York and registered online a Fitbit Flex, One, or Ultra between March 26, 2012 and October 27, 2014;

**Pennsylvania Sub-Class**:  All persons who purchased in the State of Pennsylvania, and registered online, a Fitbit Flex, One, or Ultra between March 26, 2012 and October 27, 2014;

**Ohio Sub-Class**:  All persons who purchased in the State of Ohio, and registered online, a Fitbit Flex, One, or Ultra between March 26, 2012 and October 27, 2014;

**Michigan Sub-Class**:  All persons who purchased in the State of Michigan, and registered online, a Fitbit Flex, One, or Ultra between March 26, 2012 and October 27, 2014;

**New Jersey Sub-Class**:  All persons who purchased in the State of New Jersey, and registered online, a Fitbit Flex, One, or Ultra between March 26, 2012 and October 27, 2014;

**Missouri Sub-Class**:  All persons who purchased in the State of Missouri, and registered online, a Fitbit Flex, One, or Ultra between March 26, 2013 and October 27, 2014;

**Multi-State Sub-Class**:  All persons who purchased in the State of Illinois, and registered online, a Fitbit Flex, One, or Ultra between March 26, 2013 and October 27, 2014 or purchased in the State of Washington, State of Texas, State of Georgia, or State of North Carolina, and registered online, a Fitbit Flex, One, or Ultra between March 26, 2014 and October 27, 2014.

Members of the Settlement Sub-Classes can file a claim for a cash payment of $12.50.  See Settlement Agreement, Definitions, Section I(C).  There is no limit on the number of claims a member of the Settlement Sub-Classes can make, provided each claim relates to a separate qualifying device purchased in a covered jurisdiction during the relevant time period.

The amount paid to individual class member claimants is not dependent on the number of claims submitted, the cost of notice or administration, the amount paid in attorneys' fees and costs, or any incentive compensation paid to the named class representatives.  Instead, each class member who makes a valid and timely claim will be paid $12.50 in cash for each and every Fitbit Device purchased during the class period, regardless of any of those other factors.  This outcome is excellent for the members of the Settlement Sub-Classes, since, based on Plaintiffs' analysis, the most they could recover at trial for out of pocket loss was approximately $15.

In this litigation, the question of ascertainable out of pocket loss figured heavily in Fitbit's defenses, since there was serious conflict in the evidence and facts about how much of the purchase price could be actually and lawfully attributed to the sleep tracking function of the product, versus other non-challenges features. Fitbit had documentation that the Devices were designed as a single, integrated product, and Fitbit also disclosed both fact and expert evidence refuting any additional cost for the sleep function. The success and in fact even admissibility and sufficiency at trial of Plaintiffs' entire theory of relief presented unknown and significant risk, as did the assurance of subsequent Ninth Circuit appeal by Defendant if Plaintiffs managed to prevail at trial. Indeed, there were no cases where the relief approach being attempted by Class Counsel had been allowed, compared to the hedonic regression model approved by the Ninth Circuit. For all those reasons, obtaining for all class members the opportunity to receive nearly 100% of the value of their out of pocket loss is an excellent result for the class. Notably, the result obtained by Class Counsel ensures the amount of Class Member recovery is NOT diminished in any way by any award of attorney fees and costs, cost of administration, cost of notice, or any other obligation that otherwise would typically take away from the amount of each Class Members' recovery.

**e. Plaintiffs' analysis of benefits provided by Settlement Agreement.**

Based on the judgement, experience litigating consumer class actions, the information learned during extensive fact discovery, expert discovery, and briefing of complex legal issues, Class Counsel believes the proposed Settlement Agreement is fair, adequate, and reasonable for the reasons set forth above.

**f. The notice plan and claims process.**

The notice plan is designed to provide the best notice practicable, and will fairly advise class members of their right to object, to request exclusion from the settlement, and of what they receive by submitting a claim when the Court grants final approval to the settlement. The notice plan will include: direct e-mail and, as necessary, mail notification to class members, as well as notice posted on a website hosted by notice administrator KCC and publication notice.

The notice forms will inform class members of the settlement and that the Class Notice and Claim Form are available on the Settlement Website or by calling the Toll-Free Number. The

notice forms will also inform the class members about the claims process, the schedule of the case, and their right to object to the settlement or request exclusion, if they so choose.

Further, Fitbit will pay all costs of notice and settlement administration separate from the monetary relief that will be provided to class members.  This represents a substantial benefit to the class as such costs will not impact the level of relief in any way.

Likewise, the claims process eliminates any difficult or burdensome obligation on any class member to receive their relief.  No documentation, proof of purchase, receipts, or anything else is required.  A class member who signs under penalty of perjury and timely submits the claim form with their name, address, verified email address used to register the device, device purchased, date of purchase, and state of purchase will be paid.

Finally, the parties will also comply with the notice requirements of the Class Action Fairness Act of 2005, 28 U.S.C. § 1715(b), by providing notice of this proposed Settlement to the appropriate federal and state officials within ten (10) days of the date the Settlement is submitted to the Court, and will file proof of such notification within fifteen (15) days of the date the Settlement is submitted to the Court.

### g.  Incentive and Attorneys' Fee Awards

Plaintiffs Brickman and Clingman, in their capacity as class representatives, may request that the Court issue an incentive award not to exceed $5,000 each (total amount not to exceed $10,000).  *See Rodriguez v. West Publishing Corp.*, 563 F.3d 948, 958 (9th Cir. 2009) ("Incentive awards are fairly typical in class action cases … and are intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general").  The remaining class representatives—Plaintiffs Ray, Landis, Wathey, Curtis, Ciavarella, Gau, and Samy—may request that the Court issue an incentive award not to exceed $500 each (total amount not to exceed $3,500).  This compensation recognizes the efforts expended by Plaintiffs as the class representatives in bringing and prosecuting this Action.  (*Id.*)

The Ninth Circuit law provides for incentive compensation based on discrete, identified services provided by the class representatives, going over and above their status as a mere class

member.  This case originated because of Plaintiff Brickman's personal investigation into the sales and operation of the challenged devices, after he was repeatedly unable to receive the sleep tracking promised by Fitbit and for which he paid a premium.  Further, after the filing of the class action complaint, Plaintiff Brickman requested to be actively involved with all key events as the case proceeded, believing he had valuable and helpful insight about the sleep function he bought but did not receive, especially relating to the consumer perspective.  Likewise, Plaintiff Clingman was very actively involved in the prosecution of the case for customers throughout California.

These tasks continued throughout the three and a half years this suit has been pending, requiring both Class Plaintiffs to miss work, travel, and take extensive time from their family lives to enable Class Counsel to get the best outcome possible for the entire class.  Plaintiffs Brickman and Clingman have spent considerable time and effort in the pursuit of this litigation on behalf of the settlement sub-classes, including time spent answering discovery, reviewing pleadings, travel to their depositions in San Francisco, time off of work for such depositions, travel and attendance at a mediation by Plaintiff Clingman, and providing input on the strategy and litigation of the case.

Without Plaintiffs Brickman and Clingman undertaking all these efforts, from before class counsel were even involved, this case would not have been filed and the settlement sub-classes would not have received any relief.

Regarding the application by Class Counsel to the Court for an award of attorneys' fees and expenses incurred in prosecuting this action as further outlined in Section III(e), below, it is significant to note that the settlement of this Agreement is not conditioned upon the Court's approval of the incentive awards or the fee application.  And, Fitbit expressly reserved its right to oppose Plaintiffs' request for an award of attorneys' fees.

### h.  Release and Discharge of Claims

The Settlement Agreement provides for the release of only those claims or causes of action relating to the allegations that underlie or relate to this litigation.  The release language has been updated in accordance with the Court's previous instructions and will release only Plaintiffs' and Class Members' claims against Fitbit, related to the sleep-tracking functionality of the listed devices, upon entry of the Final Approval Order and Judgment.  Counsel crafted the release to

ensure conformity to others approved by this Court in settled class actions.  *See*, *e.g.*, *Pacheco v. JPMorgan Chase Bank*, *N.A.*, Case No. 15-cv-5689-JD, Dkt. Nos. 56, 63 (Donato, J.); *Relente v. Viator*, *Inc.*, Case No. 12-cv-05968-JD, Dkt. Nos. 63, 76 (Donato, J.).

### i.  Injunctive Relief.

The Settlement Agreement is limited to claims and conduct relating to the listed Fitbit devices (Flex, One, and Ultra) and only for the time period covered by the Complaint and the Class Certification Order (up to only October 27, 2014--the date when the arbitration clause became applicable, barring any and all claims relating to any Fitbit products thereafter).  Significantly, although no relief is provided for the future, this suit *de facto* achieved that result anyway, because Fitbit stopped selling the challenged products in the United States in or before 2017.  *See Colgan v. Leatherman Tool Group*, *Inc.*, 135 Cal. App. 4th 663, 702 (Cal. 2nd Dist. 2006) ("Although the Unfair Competition Law imposes liability for past acts, in order to grant injunctive relief under section 17204 or section 17535, there must be a threat that the wrongful conduct will continue."); *see also Left Coast Wrestling*, *LLC v. Dearborn Int'l LLC*, No. 317CV00466LABNLS, 2018 WL 2328471, at *14 (S.D. Cal. May 23, 2018) (noting that "[i]njunctions must be tailored to address only the specific harm suffered by the injured party").

Further, and as requested by the Court, Fitbit will file concurrently with this motion a declaration by Conor Heneghan, Ph.D., Fitbit's Director of Research, Algorithms, that establishes that the Devices have in fact been discontinued. Heneghan's declaration also discusses how the sleep tracking technology in the Devices and current products differ in terms of technology and capabilities.

### j.  Fifth Amended Complaint

To effectuate the proposed settlement, Fitbit does not object to Plaintiffs being granted leave to file their Fifth Amended Complaint for the purposes of amending and adding class definitions for the Settlement Sub-Classes that correspond with the definitions contained in the Settlement Agreement and herein.

### III.    Argument

#### a.   The Settlement Agreement merits preliminary approval by this Court.

Settlements of class actions are strongly favored in the Ninth Circuit.  "The Ninth Circuit maintains a 'strong judicial policy' that favors the settlement of class actions."  *Dyer v. Wells Fargo Bank, N.A.*, 2014 WL 1900682, at *5 (N.D. Cal. 2014) (quoting *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992)).

Federal Rule 23(e) sets forth a two-step process that requires both preliminary and final approval of class-wide settlements.  *Id.*  At the preliminary approval stage, the Court's role is to determine, on a preliminary basis, whether the settlement is "fair, reasonable, and adequate" to allow notice to the proposed settlement class to be given and a hearing for final approval to be set. *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079-80 (N.D. Cal. 2007).  Further, where, as here, the parties' settlement requires conditional approval of a settlement class, the Court must also "peruse the proposed compromise to ratify . . . the propriety of the certification."  *Staton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003).

There are therefore two parts to the Court's inquiry.  "First, the district court must assess whether a class exists."  *Id.*  "Second, the district court must carefully consider whether a proposed settlement is fundamentally fair, adequate, and reasonable, recognizing that [i]t is the settlement taken as a whole, rather than the individual component parts, that must be examined for overall fairness."  *Staton*, 327 F.3d at 952 (internal quotations omitted); *Rodriguez v. Danell Custom Harvesting, LLC*, 2018 WL 1116546, at *4 (N.D. Cal. 2018) ("The role of the district court in evaluating the fairness of the settlement is not to assess the individual components, but to assess the settlement as a whole.") (citing *Lane v. Facebook, Inc.*, 696 F. 3d 811, 818-19 (9th Cir. 2012)).  Thus, "preliminary approval of a settlement is appropriate if 'the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class and falls within the range of possible approval.'"  *Dyer*, 2014 WL 1900682, at *6 (quoting *In re Tableware*, 484 F. Supp. 2d at 1079); *Cordy v. USS-Posco Indus.*, 2014 WL 212587, at *2 (N.D. Cal. 2014); *In re Netflix Privacy Litig.*, 2013 WL 1120801, at *4 (N.D. Cal. 2013) (applying at preliminary

Unopposed Am. Motion for Prelim. Approval and Leave to File Fifth Amended Complaint
Case No. 3:15-cv-2077
sd-726981

11

approval a "presumption" of fairness to settlement that was "the product of non-collusive, arms' length negotiations conducted by capable and experienced counsel").

The Ninth Circuit has adopted a non-exhaustive eight factor balancing test to guide the Court's discretion in determining whether a proposed settlement is fair, reasonable, and adequate: (1) the strength of plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement. *Churchill Vill.*, *LLC v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004); *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998).

This proposed Settlement Sub-Classes should be conditionally certified, and the Court should find that the Settlement is well within the range of approval as a fair, reasonable, and adequate resolution between the parties, warranting preliminary approval. All of the relevant factors set forth by the Ninth Circuit for evaluating the fairness of a settlement at the final stage weigh in favor of preliminary approval. The settlement is the product of good-faith, arm's length negotiations by competent counsel conducted over the course of several months. Counsel for the parties conducted a mediation before an experienced mediator, continued settlement discussions, and reconvened negotiations after the denial of the initial preliminary approval motion. There can be no reasonable doubt that the Settlement was reached in a procedurally fair manner. For these reasons, the Settlement merits preliminary approval.

### b. The Proposed Settlement Sub-Classes Should Be Conditionally Certified.

Although this Court previously certified a California class and a Florida class on November 20, 2017 (Dkt. No. 194), Plaintiffs seek conditional certification, for settlement purposes only, of the above identified Settlement Sub-Classes. For the same reasons already briefed by the Plaintiffs, outlined in this Court's previous order granting class certification, and as further detailed below, the Settlement Sub-Classes meet the requirements of Fed. R. Civ. P. 23.

Class actions may be certified for the purpose of settlement only. *See Hanlon*, 150 F.3d at 1019 (discussing "proposed settlement class"); *Amchem Prods. Inc. v. Windsor*, 521 U.S. 591, 620 (1997) (discussing approval of settlement class). The Court has wide discretion in certifying a class for settlement purposes and will be reversed "only upon a strong showing that [its] decision was a clear abuse of discretion." *Dunleavy v. Nadler*, 213 F.3d 454, 461 (9th Cir. 2000).

Rule 23(a) sets forth the four prerequisites to class certification: (1) the class must be so numerous "that joinder of all members is impracticable," (2) there must be "questions of law or fact common to the class," (3) the claims of the class representative must be "typical of the claims . . . of the class," and (4) the class representative must show that he "will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a). These requirements are commonly referred to as "numerosity," "commonality," "typicality," and "adequacy of representation." *Hanlon*, 150 F.3d at 1019. One of the factors in Rule 23(b) must also be satisfied. The class should be certified under Rule 23(b)(3), which requires that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."

Under these standards, for settlement purposes, the Court should conditionally certify the Settlement Sub-Classes described above.

### i. The Settlement Sub-Classes are sufficiently numerous.

Rule 23(a)(1) is satisfied when the class is "so large that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). As this Court has explained, "Plaintiffs need not state the exact number of potential class members, nor is there a bright-line minimum threshold requirement." *In re High-Tech Employee Antitrust Litig.*, 985 F. Supp. 2d 1167, 2013 WL 5770992 at *9 (N.D. Cal. Oct. 24, 2013); *Palm Beach Golf Center-Boca, Inc. v. Sarris*, 311 F.R.D. 688 (S.D. Fla. 2015) ("While there is no bright-line rule, the "general rule of thumb in the Eleventh Circuit is that 'less than twenty-one is inadequate, more than forty adequate, with numbers between varying according to other factors.'").

Numerosity is satisfied here for all Settlement Sub-Classes. There is no serious dispute Plaintiffs have satisfied numerosity. Fitbit's representative, Melanie Chase, confirmed in discovery

that more than 1,000 of these devices were sold with the sleep tracker representations on the packaging during the class period. Dkt. No. 119-7, Chase Tr. 117:21-25, 118:1. Further, this Court previously found that "[t]his is enough to find that joinder would be impracticable and Rule 23(a)'s numerosity requirement is satisfied." Order re Class Certification, p. 5 (Dkt. No. (194).

### ii.   The Settlement Sub-Class representatives' claims are typical of other members of the Settlement Sub-Classes.

The purpose of the "typicality" requirement of Fed. R. Civ. P. 23(a)(3) is to ensure the named representative's interests "align" with those of the class. *See Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992). Typicality is satisfied if the named plaintiff's claims stem from the same practice or course of conduct that forms the base of the class claims and are based upon the same legal remedial theory. *Jordan v. Los Angeles Cnty.*, 669 F.2d 1311, 1321 (9th Cir. 1982), *vacated on other grounds*, 459 U.S. 810 (1982); *Hanlon*, 150 F.3d at 1020 ("[R]epresentative claims are 'typical' if they are reasonably coextensive with those of absent class members; they need not be substantially identical.")  "The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same alleged course of conduct. *In re High-Tech*, 2013 WL 5770992, at *10 (citing *Hanon*, 976 F. 2d at 508).

Here, the same alleged course of conduct that injured the Settlement Sub-Class representatives also injured the members of the Settlement Sub-Classes. These customers claim to have paid for a Fitbit device with a sleep function that could not measure sleep. The representations at issue, which were contained uniformly on Fitbit's packaging, did not differ between the jurisdictions represented by the named Settlement Sub-Class members.  Indeed, the named Settlement Sub-Class members represent typical members of the Settlement Sub-Classes. They are consumers who claim to have read and relied on the product's packaging, which contained uniform representations about the sleep tracking functionality, and allegedly were harmed by the sleep tracking functionality's failure to actually track sleep as promised.

The Settlement Sub-Class representatives and the other members of the Settlement Sub-Classes will similarly benefit from the relief provided by the Settlement. Thus, consistent with this

Court's previous grant of class certification, Rule 23's typicality requirement is satisfied.  Order re Class Certification, p. 6-7 (Dkt. No. 194).

Finally, the fact that Plaintiff Samy is a resident of one of the five jurisdictions covered by the Multi-State Sub-Class (Illinois) is no impediment to demonstrating typicality.  Class representatives need not share every claim with the classes they represent; rather, it is enough that the "representative claims are reasonably co-extensive with those of other class members." *Trauth v. Spearmint Rhino Companies Worldwide, Inc.*, 2011 WL 13134046, at *8 (C.D. Cal. Apr. 4, 2011) (granting motion for preliminary approval of settlement where some, but not all, of the settlement classes had class representatives).  As discussed below, the claims of Plaintiff Samy are "reasonably coextensive" with the claims of class members from the other Multi-State Sub-Class jurisdictions.

### iii.   The Settlement Sub-Class representatives and Class Counsel will fairly and adequately protect the interests of the Settlement Sub-Classes.

The named Settlement Sub-Class members "will fairly and adequately protect the interests of the class[es]."  Fed. R. Civ. P. 23(a)(4).  "Legal adequacy of a class representative under Rule 23(a)(4) turns on two inquiries: (1) whether named plaintiffs and their counsel have 'any conflicts of interest with other class members,' and (2) whether named plaintiffs and their counsel will 'prosecute the action vigorously on behalf of the class.'" *In re High-Tech*, 2013 WL 5770992 at *10 (quoting *Hanlon*, 150 F.3d at 1020); *Pinnock-Lee v. Phelan Hallinan, PLC*, 2015 WL 12532742 (S.D. Fla. 2015).

Plaintiffs do not have any irreconcilable conflicts with or interests materially antagonistic to those of any members of the Settlement Sub-Classes. Plaintiffs and the class possess the identical interest in demonstrating that Fitbit's conduct with regard to the false advertising of its sleep tracker function was unlawful. Plaintiffs understand the nature of these allegations and their responsibilities to represent the interests of others who have been the subject of Fitbit's unlawful billing practices. Plaintiffs have retained attorneys who are experienced in the prosecution of class actions who should be appointed class counsel under Rule 23(g).

Further, Class counsel have significant experience prosecuting class actions, and have extensive knowledge of the applicable law and procedural considerations.  Plaintiffs' counsel have

worked to investigate and identify the potential claims in this litigation and have committed substantial resources to representing the classes, prosecuting this matter, and working to reach a resolution that will benefit all of the Settlement Sub-Classes uniformly.

### iv.  Class treatment is superior in this case.

Rule 23(b)(3) enumerates four factors to consider on "superiority":  "(A) the interest of members of the class in individually controlling the prosecution … of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by … members of the class; (C) the desirability … of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action."

At issue here are wearable consumer electronics all sold for approximately $100.  There is little to be gained by class members filing individual claims, because the purchase prices of Fitbit devices are low.  Further, concentrating the claims at issue here in a single suit and settlement before this Court conserves judicial resources.  Finally, conditional certification and resolution of the Settlement Sub-Class claims would not be significantly more burdensome than if the matter were prosecuted individually, while the prosecution of individual remedies could establish inconsistent standards of conduct for Fitbit.  "[A] class action has to be unwieldy indeed before it can be pronounced an inferior alternative . . . to no litigation at all."  *Carnegie v. Household Int'l, Inc.*, 376 F.3d 656, 661 (7th Cir. 2004); *In re Visa Check/MasterMoney Antitrust Litigation*, 280 F.3d 124, 140 (2nd Cir. 2001).

### v.  Commonality and predominance are satisfied.

The Settlement Sub-Classes should be conditionally certified as the commonality and predominance elements are equally met, as this Court previously found with respect to the California and Florida classes.  In its Order granting class certification, the Court addressed commonality and predominance together, noting that "[d]etermining where Rule 23(a)(2) ends and Rule 23(b)(3) begins is no easy task[.]"  Order re Class Certification, p. 7 (Dkt. No. 194).  The Court previously addressed the commonality and predominance requirements together, as Plaintiffs will do in this motion.

Commonality requires the plaintiff to demonstrate that the class members "have suffered the same injury." *Wal-Mart Stores*, *Inc. v. Dukes*, 131 S.Ct. 2541, 2551 (2011) (quoting *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 157 (1982)). In other words, class members' claims must depend upon a common contention that is "of such a nature that it is capable of class-wide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.* Not all questions of fact and law need to be common to satisfy the rule. *Id.*; *see also Mazza v. Honda American Honda Motor Co.*, 666 F.3d 581, 589 (9th Cir. 2012) ("[C]ommonality only requires a single significant question of law or fact.").

The predominance requirement, found in Rule 23(b)(3), "requires that common questions of law or fact predominate over individual ones." Order re Class Certification, p. 7 (Dkt. No. 194). Indeed, the predominance element requires that "'common questions present a significant aspect of the case and [if] they can be resolved for all members of the class in a single adjudication.'" *Id.* at 7 (quoting *Hanlon*, 150 F.3d at 1022). "The 'important questions apt to drive the resolution of the litigation are given more weight in the predominance analysis over individualized questions which are of considerably less significance to the claims of the class.'" *Id.* at 7 (quoting *Torres v. Mercer Canyons Inc.*, 835 F.3d 1125, 1134 (9th Cir. 2016)).

Here, the Plaintiffs seek conditional certification, for settlement purposes, of all Settlement Sub-Classes. The Settlement Sub-Classes seek to represent the interests of consumers in California, Florida, New York, Pennsylvania, Ohio, Michigan, New Jersey, Illinois, Missouri, Texas, Georgia, North Carolina, and Washington.

The relevant facts here demonstrate that commonality and predominance are met when viewed against the operative law in each of the Settlement Sub-Classes. See Chart of Common Law Fraud and Unjust Enrichment Claims, attached hereto as Exhibit 4. Indeed, Plaintiffs' Motion for Class Certification previously focused on common questions that equally predominate with regard to the claims brought on behalf of all the Settlement Sub-Classes. These common questions included: (1) about whether Fitbit's representations were likely to deceive reasonable consumers, (2) whether the misrepresentations at issue are material, (3) whether Fitbit's retention of a benefit

from class members was unjust, and (4) whether Plaintiffs' damages model presented a common, class-wide relief model.  See Plaintiffs' Motion for Class Certification, p. 13:17-15:16, 19:11-25:11 (Dkt. No. 119-3).

Here, the same common questions of law and fact predominate over any questions affecting only individual members.  The members of the Settlement Sub-Classes are all consumers that purchased a Fitbit device.  The packaging of those devices was uniform during the relevant period and instructed the reasonable consumer that the device could measure that individual's hours slept, times woken up, and sleep quality.[3]

Plaintiffs claim that the sleep-tracking representations were central to the devices at issue which were marketed to serve two main functions: to track a user's day time activities (steps, distance, and calories burned) and to track a user's night (hours slept, times woken up, and sleep quality).  Fitbit representatives Melanie Chase and Shelten Yuen both reiterated the sleep tracking function is an important feature to Fitbit customers.  Ms. Chase, the Director of Product Marketing, specifically testified that "[t]racking activity and sleep are two of the most valued features from our consumers"  Dkt. No. 183-1, p. 10(Chase Tr. at p. 63:11-12).  Dr. Yuen agreed, "…I would say that sleep is an important aspect of our feature set."  Dkt. No. 183-1, p. 27 (Yuen Tr. 104:13-14).

Plaintiffs allege, and claim that the evidence shows, that the representations on Fitbit's packaging were misleading because the devices could not operate as represented.  Thus, the common questions of law and fact are uniform to all members of the Settlement Sub-Classes.  The claims all revolve around the same factual nucleus: do Fitbit's devices operate as represented to consumers on their packaging?

Indeed, the evidence necessary to answer this question central to all of Plaintiffs' claims is common to all Settlement Sub-Class Members, as is the evidence of the misrepresentations that Fitbit used on its device's packaging during the class period.[4]  The common questions of fact and

---

[3] This Court previously noted, "[t]he record shows, with no meaningful dispute, that Fitbit's packaging for these devices made the same tracking and data representations to all consumers during the class period using the same straightforward statements[.]"  Order re Class Certification, p. 8 (Dkt. No. 194).
[4]  "Plaintiffs have amply established materiality and classwide exposure with evidence that Fitbit expressly called out the sleep functionality for all devices using the same bundle of representations

law with regard to Plaintiffs claims predominate and the Settlement Sub-Classes are appropriate for conditional certification.

### vi. Conditional certification of the proposed Multi-State Class is appropriate and Plaintiff Samy has standing to represent the Multi-State Class.

Plaintiffs seek conditional certification, for settlement purposes, of the Multi-State Class identified above which consists of consumers in Illinois, North Carolina, Georgia, Texas, and Washington. Plaintiff Samy will serve as the class representative for the Multi-State class. The elements and relief provided by common law fraud and unjust enrichment claims in these states are nearly uniform. See Ex. 4, Chart of Common Law Fraud and Unjust Enrichment Claims. By way of summary, and as set forth more fully below:

- **Fraud**. In all five jurisdictions, a claim for common law fraud requires: (1) a false statement of material fact; (2) the defendant's knowledge that the statement was false; (3) scienter; (4) reliance; and (5) damages resulting from reliance on the statement. *Connick v. Suzuki Motor Co.*, 174 Ill. 2d 482, 496 (1996); *Piles v. Allstate Ins. Co.*, 187 N.C.App. 399 (N.C. App. 2007); *Engelman v. Kessler*, 340 Ga.App. 239 (Ga. App. 2017); *In Interest of C. M. V.*, 479 S.W.3d 352 (Tex. App. 2015); *Adams v. King County*, 164 Wash.2d 640 (Wash. S. Ct. 2008).

- **Unjust Enrichment**. Similarly, all five jurisdictions allow a claim or remedy for unjust enrichment where a defendant allegedly secured or received a benefit that would be unconscionable or wrongful for the defendant to retain. *Cleary v. Phillip Morris, Inc.*, 656 F.3d 511, 517 (7th Cir. 2011) (Illinois law); *Primerica Life Ins. Co. v. James Massengill & Sons Const. Co.*, 211 N.C.App. 252 (N.C. App. 2011); *Eun Bok Lee v. Ho Chang Lee*, 411 S.W.3d 95 (Tex. App. 2013); *Wachovia Ins. Services, Inc. v. Fallon*, 299 Ga.App. 440 (Ga.

---

that potential buyers would unquestionably find significant. Even if this evidence were to be discounted for some reason not apparent here, plaintiffs have demonstrated the existence of common questions of reliance and materiality that can be answered for the class a whole without individualized determinations." See Order re Class Certification, pp. 11 (Dkt. No. 194).

App. 2009); *Norcon Builders*, *LLC v. GMP Homes VG, LLC*, 161 Wash.App. 474 (Wash. App. 2011). Likewise, in all five jurisdictions, restitution is the appropriate remedy for unjust enrichment. *Cleary*, 656 F.3d at 517; *Lee*, 411 S.W.3d 95; *Holmes v. Solon Automated Services*, 231 N.C.App. 44 (N.C. App. 2013); *Hollifield v. Monte Vista Biblical Gardens*, *Inc.*, 251 Ga. App. 124, 131, 553 S.E.2d 662, 670 (2001); *Dragt v. Dragt/DeTray*, *LLC*, 139 Wash.App. 560 (Wash. App. 2007).

Not only are claims for fraud and unjust enrichment under the laws of the jurisdictions in the Multi-State Sub-Class similar to one another, they are also materially similar to corresponding claims under California and, with respect to unjust enrichment, Florida law, which the court has already certified for class treatment. (*See* Dkt. No. 194 at 10:4-11, 10:20-11:15, 12:12-22.)

The Ninth Circuit has previously considered the certification of multi-state classes and explained that, "[v]ariations in state law do not necessarily preclude a 23(b)(3) action, but class counsel should be prepared to demonstrate the commonality of substantive law applicable to all class members" *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1022 (9th Cir. 1998) (citing *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 821-23 (1985)). Thus, even when some class members "possess slightly differing remedies based on state statute or common law," there may still be "sufficient common issues to warrant a class action." *Hanlon*, *150 F.3d* at 1022–23; *see also Ellsworth v. U.S. Bank, N.A.*, 2014 WL 2734953 (N.D. Cal. 2014) ("Because the contract laws of the various states are capable of being organized into groups with similar legal regimes, the court finds that common issues predominate in each subclass.")

In determining whether predominance is defeated by variations in state law, for the purposes of certification, the Court "must determine whether common questions will predominate over individual issues and whether litigation of a nationwide class may be managed fairly and efficiently. As with any other requirement of Rule 23, plaintiffs seeking class certification bear the burden of demonstrating through evidentiary proof that the laws of the affected states do not vary in material ways that preclude a finding that common legal issues predominate." *In re Hyundai*, 881 F.3d 679, 692 (9th Cir. 2018) (citing *Castano v. American Tobacco Co.*, 84 F.3d 734, 741 (5th Cir. 1996) (indicating that class action proponents must show that variations in state laws will not affect

predominance; "[a] court cannot accept such an assertion on faith.") (quoting *Walsh v. Ford Motor Co.*, 807 F.2d 1000, 1016 (D.C. Cir. 1986)(Ruth Bader Ginsburg, J.)).

Further, Courts routinely certify multi-state classes on the theory of common law fraud where the misrepresentations at issue are found directly on the product's packaging, as they are here. *Steigerwald v. BHH, LLC*, 2016 WL 695434, at *10 (N.D. Ohio 2016) (certifying a 48 state fraud class action, finding predominance satisfied "where, as here, the fraud is uniform through the marketing of a product whose only function is to repel pests, but never work, fraud can be demonstrated on a class-wide basis."); *Hart v. BHH, LLC*, 2017 WL 2912519, at *8 (S.D. NY 2017) (certifying a nationwide fraud class and finding that predominance was satisfied "[f]or product labeling cases such as this, reliance and causation are generally established through the presumption that a customer would not have purchased the product for any other reason than the advertised one."); *see also In re Pharm. Indus. Average Wholesale Price Litig.*, 252 F.R.D. 83, 94 (D. Mass. 2008) (certifying 36 state consumer fraud class action based on multi-state charts).

An analysis of common-law fraud claims in the Multi-State Sub-Class demonstrates that while there may be slight variations, there are no material differences in the requirements of each state's law:

- **Illinois**:  The elements of common law fraud are "(1) a false statement of material fact; (2) defendant's knowledge that the statement was false; (3) defendant's intent that the statement induce the plaintiff to act; (4) plaintiff's reliance upon the truth of the statement; and (5) plaintiff's damages resulting from reliance on the statement." *Connick v. Suzuki Motor Co.*, 174 Ill. 2d 482, 496 (1996).

- **Texas**: "Under Texas law, a plaintiff must show the following elements to support an action for fraud based on misrepresentation: (1) defendant made a material representation; (2) the representation was false; (3) when the representation was made, the defendant knew it was false or made it recklessly without any knowledge of the truth and as a positive assertion; (4) the defendant made the representation with the intent that the other party should act upon it; (5) the party acted in reliance on the representation; and (6) the party thereby suffered injury." *Malvino v. Delluniversita*, 2015 U.S. Dist. LEXIS 65697, at *12 (S.D. Tex. 2015)

(citing *Italian Cowboy Partners, Ltd. v. Prudential Ins. Co. of Am.*, 341 S.W.3d 323, 337 (Tex. 2011)).

- **North Carolina**:  The elements of common-law fraud require "(a) that the defendant made a representation relating to some material past or existing fact; (b) that the representation was false; (c) that when he made it defendant knew it was false or made it recklessly without any knowledge of its truth and as a positive assertion; (d) that the defendant made the false representation with the intention that it should be acted on by the plaintiff; (e) that the plaintiff reasonably relied upon the representation and acted upon it; and (f) that the plaintiff suffered injury." *Freese v. Smith*, 110 N.C. App. 28, 34 (1993).

- **Georgia**:  "The tort of fraud has five elements: a false representation by a defendant, scienter, intention to induce the plaintiff to act or refrain from acting, justifiable reliance by plaintiff, and damage to plaintiff." *Stiefel v. Schick*, 260 Ga. 638, 639 (1990) (knowing misrepresentation and justifiable reliance).

- **Washington**:  "There are nine essential elements of fraud, all of which must be established by clear, cogent, and convincing evidence: (1) a representation of existing fact, (2) its materiality, (3) its falsity, (4) the speaker's knowledge of its falsity, (5) the speaker's intent that it be acted upon by the person to whom it is made, (6) ignorance of its falsity on the part of the person to whom the representation is addressed, (7) the latter's reliance on the truth of the representation, (8) the right to rely upon it, and (9) consequent damage." *Elcon Construction, Inc. v. Eastern Washington University*, 174 Wn.2d 157, 166 (2012).

Similarly, an analysis of common-law unjust enrichment claims in the Multi-State Sub-Class demonstrates that there are no material differences in the requirements of each state's law:

- **Illinois**:  "Unjust enrichment is a common-law theory of recovery or restitution that arises when the defendant is retaining a benefit to the plaintiff's detriment and this retention is unjust." *Clearly v. Phillip Morris, Inc.*, 656 F.3d 511, 517 (7th Cir. 2011).

- **Texas**: *Eun Bok Lee v. Ho Chang Lee*, 411 S.W.3d 95 (Tex. App. 2013) ("Unjust enrichment occurs when a person has wrongfully secured a benefit or has passively received one which it would be unconscionable to retain."  )

- **North Carolina**: *Primerica Life Ins. Co. v. James Massengill & Sons Const. Co.*, 211 N.C.App. 252 (N.C. App. 2011) ("Under a claim for unjust enrichment, a plaintiff must establish certain essential elements: (1) a measurable benefit was conferred on the defendant, (2) the defendant consciously accepted that benefit, and (3) the benefit was not conferred officiously or gratuitously.")

- **Georgia**: *Wachovia Ins. Services, Inc. v. Fallon*, 299 Ga.App. 440 (Ga. App. 2009) ("Unjust enrichment is an equitable concept and applies when as a matter of fact there is no legal contract, but when the party sought to be charged has been conferred a benefit by the party contending an unjust enrichment which the benefitted party equitably ought to return or compensate for.")

- **Washington**: *Norcon Builders, LLC v. GMP Homes VG, LLC*, 161 Wash.App. 474 (Wash. App. 2011) ("A claim of unjust enrichment requires proof of three elements—"(1) the defendant receives a benefit, (2) the received benefit is at the plaintiff's expense, and (3) the circumstances make it unjust for the defendant to retain the benefit without payment.")

Therefore, as no material differences in law exist and for the above reasons, Plaintiffs request that this Court conditionally certify the Multi-State Class and appoint Plaintiff Samy as the named representative of that class.

### c. The Settlement Agreement is presumed fair because it is the product of good faith, informed, and arms-length negotiations after extensive fact and expert discovery.

"Courts have afforded a presumption of fairness and reasonableness of a settlement agreement where that agreement was the product of non-collusive, arms' length negotiations conducted by capable and experienced counsel. *In re Netflix Privacy Litigation*, 2013 WL 1120801, at \*4 (N.D. Cal. 2013) (citing *Garner v. State Farm Mut. Auto Ins. Co.*, 2010 WL 1687832, at \*13 (N.D. Cal. 2010)). Indeed, the Ninth Circuit "put[s] a good deal of stock in the product of an arms-length, non-collusive, negotiated resolution" when preliminarily approving a class-wide settlement. *Rodriguez v. West Publishing Corp.*, 563 F.3d 948, 965 (9th Cir. 2009) (citing *Hanlon*, 150 F.3d at 1027).

1

2      Further, the amount of discovery conducted by the parties during the litigation may be

3   relevant to the determination of the adequacy of the parties' knowledge of the case and their ability

    to negotiate settlement based on a complete understanding of the factual issues. *National Rural*

4   *Telecommunications Cooperative v. DIRECTV, Inc.*, 221 F.R.D. 523, 528 (C.D. Cal. 2004). "A

5   settlement following sufficient discovery and genuine arms-length negotiation is presumed fair."

6   *DIRECTV*, 221 F.R.D. at 528 (citing *Partnership Co. v. Atlantic Acquisition Ltd. P'ship*, 100 F.3d

7   1041, 1043 (1st Cir.1996); *New York v. Reebok Int'l Ltd.*, 903 F. Supp. 532, 535 (S.D.N.Y. 1995)

8   *aff'd*, 96 F.3d 44 (2nd Cir. 1996)).

9      Here, before agreeing upon the terms of the Settlement Agreement, the parties completed

10  extensive fact and expert discovery. The parties exchanged written discovery in the form of

11  interrogatories, requests for admission, and requests for production. Ex. 3, Perotti Decl. at ¶¶ 5-13.

12  Class Counsel reviewed over 149,000 pages of discovery documents produced by Fitbit during the

13  course of written discovery. Ex. 3, Perotti Decl. at ¶ 10. Class counsel deposed three of Fitbit's

14  representatives designated under Fed. R. Civ. 30(b)(6), while counsel for Defendant deposed

15  Plaintiffs Clingman and Brickman. Ex. 3, Perotti Decl. at ¶ 13. The parties' submitted expert reports

16  from nine separate experts, each of whom were deposed by opposing counsel.

17     Further, the parties also engaged in extensive briefing and argument on significant legal

18  issues including Fitbit's motion to dismiss,[5] Plaintiffs' motion for class certification,[6] Fitbit's

19  motion for summary judgment,[7] motions to exclude expert testimony,[8] and Fitbit's motion to

20  decertify the classes.[9] Prior to settlement, the parties were engaged in trial preparation which

21  included the filing of: (1) trial briefs; (2) joint pre-trial statement; (3) motions in limine; (4) joint

22  exhibit list and objections; (5) joint witness list and objections; (6) joint proposed voir dire

23  questions and objections; (7) joint proposed jury instructions and objections; and (8) joint proposed

24  verdict forms and objections.

25  _____

26  [5] Dkt. Nos. 21, 34, 42, 46, 63, 67, 72, and 84.
    [6] Dkt. Nos. 119, 122, 128, and 194.

27  [7] Dkt. Nos. 152, 165, 174, and 195.
    [8] Dkt. Nos. 123, 139, 140, 154, 167, 173, and 195.

28  [9] Dkt. Nos. 207, 214, and 221.

1

2

The record was sufficiently and fully developed such that the parties were completely

3

informed of the viability of the remaining claims, and the issues relevant to the trial of Plaintiffs'

4

theories.  Thus, the parties' were able to adequately evaluate the strengths and weaknesses of their

respective positions and come to a fair, reasonable, and adequate class-wide settlement.

5

6

**d.  Other factors also demonstrate that the Settlement is fair, reasonable, and adequate.**

7

8

**i.  Strength of Plaintiffs' case and the risk, expense, complexity, and likely duration of further litigation, including risk of maintaining class action status.**

9

10

These factors require a review of the potential risks, rewards, and expense associated with

11

a continuation of the present litigation against the benefit of settlement.  *In re Warfarin Sodium*

12

*Antitrust Litig.*, 212 F.R.D. 231, 254 (Del. 2002) (noting that the complexity, expense, and likely

13

duration of litigation includes "the probable costs, in both time and money, of continued

14

litigation.'") (quoting *In re Cendant*, 264 F.3d 201, 233 (3rd Cir. 2001)).

15

Plaintiffs and Class Counsel are confident in the strength of their claims, but are also acutely

16

aware of the risks associated with trial due to the enormous amount of briefing on the relevant legal

17

issues in this case.  Specifically, Plaintiffs are mindful of the defenses available to Fitbit regarding

18

Plaintiffs' ability to prove liability and damages at trial.  Fitbit has maintained throughout this

19

litigation that Plaintiffs' claims are meritless and that Plaintiffs cannot prove, and are not entitled

20

to recover, damages.  Further, Fitbit moved to decertify the classes prior to the parties reaching

21

settlement. *Rodriguez v. West Publishing Corp.*, 2007 WL 2827379, at *8 (C.D. Cal. 2007) (finding

22

that where it was likely that Defendant would move to decertify the class, this element weighed in

23

favor of approval), *rev'd on other grounds*, 563 F.3d 948 (9th Cir. 2009).

24

Fitbit argues that Plaintiffs' claims are unfounded, denies any potential liability, and is

25

prepared to continue to litigate the case vigorously should this matter not resolve via settlement.

26

On the merits, Fitbit has continued to dispute all claims alleged in the Complaint and in the Action

27

and does not admit any liability or wrongdoing whatsoever.

28

1

2      While Class Counsel are confident in their positions and their ability to succeed at trial,

3  Class Counsel is extensively experienced in class action litigation and cognizant of the realities that

4  trial and Defendant's decertification request entail.  The expense, complexity, and uncertainties

5  associated with the remaining stages of the litigation weigh heavily in favor of settlement.  Against

6  this backdrop, Plaintiffs and Class Counsel appropriately determined that the instant settlement

7  vastly outweighs the uncertainties outlined above.  Further, even if Plaintiffs were successful on

8  liability and damages at trial, it could be years before any form of relief was actually provided to

9  the certified classes.  *Lipuma v. American Express Company*, 406 F. Supp. 2d 1298, 1322 (S.D.

   Fla. 2005) (the likelihood of an appeal "strongly favor[s]" approval of a settlement).

10      The settlement provides relief to the Settlement Class without any delay.  Additionally, the

11  settlement provides relief beyond the original classes (Florida and California), when it was

12  determined by Class Counsel that those states have customers whose claims are not time-barred,

13  who were subject to the identical conduct underlying the pending claims of Brickman and

14  Clingman, and whose rights are controlled by law that is substantially similar to that applicable to

15  Brickman and Clingman.

16                    **ii.  Amount offered in settlement.**

17      This factor requires an assessment of the "consideration obtained by the class members in

18  a class action settlement[.]"  *DIRECTV*, 221 F.R.D. at 527 (citing *Officers for Justice*, 688 F.2d

19  615, 628 (9th Cir. 1982).  Thus, the Court should look to "the complete package taken as a whole,

20  rather than the individual component parts, that must be examined for overall fairness."  *Officers*

21  *for Justice*, 688 F.2d at 628.  "[I]t is well-settled law that a proposed settlement may be acceptable

22  even though it amounts to only a fraction of the potential recovery that might be available to the

23  class members at trial."  *DIRECTV*, 221 F.R.D. at 527 (citing *Linney v. Cellular Alaska*

24  *Partnership*, 151 F.3d 1234, 1242 (9th Cir. 1998).

25      Here, the Settlement Agreement provides relief to each and every class member who files

26  a claim in the settled states.  Class members who file timely claims will receive a cash payment of

27  $12.50. The potential benefits available to the class members in the Settlement Sub-Classes are not

28

capped and each class member is eligible to receive this relief for each Fitbit Device purchased during the class period.

As a whole, the relief that the Settlement Sub-Classes will receive is excellent, since, according to Plaintiffs' analysis, the most they could recover at trial for out of pocket loss was approximately $15.  Further, the relief available to the class members of the Settlement Sub-Classes will not be reduced by the amount of claims made by other class members, the costs associated with administrating and providing notice of the settlement, or attorneys' fees to class counsel.  The amount of relief provided to the class members in the Settlement Sub-Classes reflects a reasoned and beneficial compromise weighed against the continued risk of highly contested litigation.

### iii.   The experience and views of experienced counsel.

Based on the judgement, experience litigating consumer class actions, the information learned during extensive fact discovery, expert discovery, and briefing of complex legal issues, Class Counsel believes the proposed Settlement Agreement is fair, adequate, and reasonable.  As previously noted, the question of ascertainable out of pocket loss figured heavily in Fitbit's defenses, since there was serious conflict in the evidence and facts about how much of the purchase price could be actually and lawfully attributed to the sleep tracking function of the product, versus other non-challenges features.  Each side had documentation that the Devices were designed as a single, integrated product, and Fitbit also disclosed both fact and expert evidence refuting any additional cost for the sleep function.

The success and in fact even admissibility and sufficiency at trial of Plaintiffs' entire theory of relief presented unknown and significant risk, as did the assurance of subsequent Ninth Circuit appeal by Fitbit if Plaintiff managed to prevail at trial.  For all those reasons, obtaining all class members the opportunity to receive nearly 100% of the value of their out of pocket loss is an excellent result for the class.  Notably, the result obtained by Class Counsel insures the amount of Class Member recovery is NOT diminished in any way by any award of attorney fees and costs; cost of administration; cost of notice; or any other obligation that otherwise would typically take away from the amount of each Class Members' recovery.

1

2

### e.   Attorneys' fees and cost

In a separate motion, that will be filed no later than thirty five (35) days before the deadline for filing objections to the settlement, Plaintiff will ask the Court to approve payment from Fitbit for reasonable attorneys' fees and costs, as well as incentive awards of $5,000 each for Plaintiffs Brickman and Clingman, and $500 for each other Plaintiff, as class representatives.

Class Counsel's fee request is reliant on the lodestar calculation of hours spent litigating this matter over the course of three years. Further, Class Counsel will seek a multiplier of the lodestar calculation. Class Counsel will file their formal motion requesting attorneys' fees and costs with daily time-records and other supporting materials so anyone seeking to object will have ample time to do so after review of the application and filed information.  All the foregoing is described in Section V(A) of the Settlement Agreement.

Fitbit reserves all rights to dispute, contest, and/or oppose Plaintiffs' fee request.  Fitbit does not contest Plaintiffs' separate request for incentive awards as set forth above.

This Honorable Court inquired about the timing of the fees motion at the recent preliminary approval hearing.  This District's current, "Procedural Guidance for Class Action Settlements," requires that "the motion for attorneys' fees is filed at least 14 days before the deadline for objecting to the settlement."  *See*, Section 6, *Procedural Guidance for Class Action Settlements*.  Class Counsel's motion for fees will be filed well in advance of the deadlines suggested by the *Procedural Guidance for Class Action* handbook (i.e. 35 days prior to the deadline for objections).

Class Counsel requests that this Court set a hearing on the forthcoming fee motion for a date after the final approval hearing in this matter.  This will ensure that the Class Counsel's request for fees will in no way interfere with the matter of final approval of the settlement and payment to the class members.  This complies with the Ninth Circuit, which recently held that a fees motion is properly entertained after the settlement is finally approved, as long as the class has a meaningful opportunity to object to class counsel's motion for attorneys' fees.  *In re Volkswagen* "*Clean Diesel*" *Marketing*, *Sales Practices*, *and Products Liability Litig.*, 895 F.3d 597, 614 (9th Cir. 2018) ("[i]n sum, approving a settlement before class counsel has filed a fee motion does not violate Rule 23(h).  What matters is that class members have a chance to object to the fee motion when it is

filed. Here, the district court gave class members six weeks to object to class counsel's completed fee motion … [t]hat period of time was more than enough for class members to 'object to the motion.'") Fitbit takes no position on the timing of the hearing on Class Counsel's fee application in relation to the final approval hearing, provided the rules and requirements regarding objections to Class Counsel's application are satisfied.

In the present case, the Settlement Agreement provides no common fund.  Instead, an unlimited and uncapped payment to class members is afforded despite the total number of claims, and requires Fitbit to pay attorney fees and costs directly, which will not reduce any payments to the class members.  Thus, Class Counsel's motion for attorneys' fees and costs will have no impact on the actual recovery received by class members and is ultimately up to the discretion of this Court.

### f.   The notice plan proposed by the settlement is adequate.

Notice in class-wide settlements "must comport with the requirements of due process." *Dyer*, 2014 WL 1900682, at *7.  While the method of notice is left to the wide discretion of the court, "due process requires its presence and constitutional adequacy." *Mendoza v. Tucson School Dist. No. 1*, 623 F.2d 1338, 1351 (9th Cir. 1980).

To meet the due process threshold, notice provided to the class members "must be 'the best practicable,' 'reasonably calculated, under all circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'" *Dyer*, 2014 WL 1900682, at *7 (quoting *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 812 (1985)); *Eisen v. Carlisle and Jacquelin*, 417 U.S. 156, 175-176 (1974) ("individual notice must be provided to those class members who are identifiable through reasonable effort.")

In the Ninth Circuit, "notice is satisfactory if it 'generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard.'" *Churchill Village, L.L.C. v. General Electric*, 361 F.3d 566, 575 (9th Cir. 2004) (quoting *Mendoza v. Tucson Sch. Dist. No. 1*, 623 F.2d 1338, 1352 (9th Cir.1980)); *See also In re Netflix*, 2012 WL 2598819, at *4 ("[t]he notice must explain in easily understood language the nature of the action, definition of the class, class claims, issues and defenses, ability to appear

1

2

through individual counsel, procedure to request exclusion, and the binding nature of a class judgment.")

3

4

5

6

7

8

9

10

11

Here, the parties agree that the notice plan is adequate, meets the due process requirements presented by Federal Rule of Civil Procedure 23, will fairly advise class members of their right to object, to request exclusion from the settlement, and of what they may receive if they submit a claim and the Court grants final approval to the settlement.   To address concerns expressed by the Court at the September 13, 2018 hearing, the parties have modified the Settlement Agreement to permit Class Members requesting exclusion to do so electronically (in addition to via U.S. mail). The notice plan will include direct individual e-mail notification to class members, or, alternatively and as-needed, direct mail notice.   Notice materials will also be placed on a dedicated, publicly accessible website maintained by the Settlement Administrator.

12

13

14

15

16

17

18

19

20

21

22

The direct individual e-mail notice will happen through two channels: (1) e-mail notification to class members who purchased their devices directly from Fitbit.com within the class period, and (2) a reverse e-mail search of e-mail addresses that would tie such e-mail addresses with physical addresses or zip codes the Settlement Sub-Class states. Ex. 2, Peak Decl. at ¶¶ 13-15.   For the first group (direct purchasers from Fitbit's website), Fitbit has zip codes associated with the e-mail addresses provided during the purchase and will provide KCC only those from the Settlement Sub-Class states.   For the second group (customers purchasing their Fitbit sleep tracking device from a retailer *but registering that device and their e-mail address with Fitbit prior to the conclusion of the class period*), KCC, through its vendors, is able to identify which e-mail addresses from Fitbit's database are tied to physical addresses in the Settlement Sub-Class states with a success rate of 75% to 80%. Ex. 2, Peak Decl. at ¶ 14.

23

24

25

26

27

Further, the claims administrator will create and host a settlement website that will contain the settlement notices, contact information for Class Counsel, contact information for the claims administrator, the Settlement Agreement, this motion for preliminary approval, the signed Order preliminarily approving the Settlement Agreement, and periodic updates on the status of the settlement.   The settlement website address is provided on all notice forms and is easily accessible.

28

The proposed notice forms clearly explain in easily understood language (1) the nature of the action, (2) the Settlement Sub-Class definition, (3) the class claims, (4) the class member's ability to appear through individual counsel, (5) the objection process, (6) the procedure to request exclusion, and (7) the binding nature of a class judgment.  The proposed notice forms were jointly drafted by the parties and are attached to the Settlement Agreement as Exhibit A (Class Notice) and Exhibit B (Summary Notice). Further, the claim form accompanying the aforementioned notice will include instructions for completion and submission to the settlement administrator.

Finally, as noted above, the parties will comply with the notice requirements of the Class Action Fairness Act of 2005, 28 U.S.C. § 1715(b), by providing notice of this proposed Settlement to the appropriate federal and state officials and will file proof of such notification with the Court.

### g.  Dates for Final Approval

Plaintiffs request that in connection with preliminary approval of the Settlement Agreement, this Court set dates for the distribution of notice, the claims period, and the final approval hearing in accordance with the Settlement Agreement and as outlined in the Proposed Preliminary Approval Order.[10]

Dated:  November 2, 2018

**DWORKEN & BERNSTEIN CO., L.P.A.**

By:  _/s/ Patrick J. Perotti_
Patrick J. Perotti, Esq.

One of the Attorneys for Plaintiffs and the Classes.

---

[10] Attached hereto as Exhibit 6 is a chart outlining the relevant dates related to the settlement schedule in this matter.

1

## <u>CERTIFICATE OF SERVICE</u>

2

3

      A copy of the Unopposed Amended Motion for Preliminary Approval and Leave to File

4

Fifth Amended Complaint was filed on November 2, 2018 and notice was sent via the Court's

5

ECF system to all counsel of record.

6

7

                           */s/ Patrick J. Perotti*

8

                           Patrick J. Perotti, Esq. (#0005481)
                           **DWORKEN & BERNSTEIN CO., L.P.A.**

9

                           One of the Attorneys for Plaintiffs

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28