Patrick J. Perotti (Ohio Bar No. 0005481)
Frank A. Bartela (Ohio Bar No. 0088128)
DWORKEN & BERNSTEIN CO., L.P.A.
60 South Park Place
Painesville, OH 44077
Telephone: (440) 352-3391
Facsimile: (440) 352-3469
Email: pperotti@dworkenlaw.com
       fbartela@dworkenlaw.com
Appearance *pro hac vice*

John A. Kithas (California Bar No. 64284)
Christopher Land (California Bar No. 238261)
LAW OFFICES OF JOHN A. KITHAS
One Embarcadero Center, Suite 1020
San Francisco, CA 94111
Telephone: (415) 788-8100
Facsimile: (415) 788-8001
Email: john@kithas.com
       chris@kithas.com

ATTORNEYS FOR PLAINTIFFS

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMES P. BRICKMAN, individually and as a representative of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>FITBIT, INC.,<br><br>Defendant. | Case No. 3:15-cv-2077-JD<br><br>**MOTION FOR AN AWARD OF ATTORNEYS' FEES, COSTS, AND INCENTIVE COMPENSATION**<br><br>The Honorable James Donato |

1

## <u>**TABLE OF CONTENTS**</u>

2

3

Table of Authorities ........................................................................................................ iii

Notice and Motion ........................................................................................................ 1

I.      Introduction ........................................................................................................ 2

II.     Background Facts ................................................................................................. 3

      a.  Class Counsel have devoted significant time and resources while litigating this matter over several years ..................................................................................... 3

      b.  Negotiating the Settlement Agreement ...................................................... 5

      c.  The settlement terms and relief provided to the Settlement Sub-Classes ............... 7

      d.  The Settlement Agreement included an extensive notice plan, a user-friendly claims process, and alerted class members to this fee request ............................... 7

III.    Argument ............................................................................................................. 9

      a.  Class Counsel's requested fee award is fair and reasonable ................................. 9

      b.  The Court may apply the Lodestar method to award attorneys' fees ................. 10

          i.  Class Counsel expended a reasonable number of hours litigating this matter over the course of three years ................................................................. 10

         ii.  Class Counsel's hourly rates are reasonable ........................................... 12

        iii.  Class Counsel's fee should be multiplied by 1.9 as the factors supporting a positive multiplier are present here ......................................................... 14

            • Class Counsel's success during the litigation and the exceptional settlement results achieved demonstrate the skill, dedication, and abilities of Class Counsel ........................................................... 15

            • This case was complex, novel, and Class Counsel expended considerable resources, undertook significant risk in pursuing this litigation, and were forced to limit other opportunities ..................... 16

            • Counsel for both Plaintiffs and Fitbit are experienced and well respected class action and trial lawyers ........................................... 17

● Comparable cases support the award of a modest 1.9 multiplier to Class Counsel's fee ........................................................................................... 17

   c. The "constructive common fund" approach further demonstrates the reasonableness of Class Counsel's fee request ...................................................... 18

      i. The size of the "constructive common fund" demonstrates the reasonableness of Class Counsel's requested fees.................................... 19

      ii. Class Counsel's requested fee is within the reasonable and acceptable range of fee awards in the Ninth Circuit................................................... 20

IV. Class Counsel's reasonable litigation expenses are recoverable............................... 22

V. The class representatives have devoted extensive time and effort to this matter........ 23

VI. Class members will have notice and an opportunity to object to Class Counsel's request for an award of attorneys' fees, costs, and incentive compensation............... 24

VII. Conclusion ............................................................................................................... 24

Certificate of Service............................................................................................................ 25

1

## **TABLE OF AUTHORITIES**

2

3 **Cases**

4 *Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245 (N.D. Cal. 2015)...................................... 23

5 *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973 (9th Cir. 2008) .................................................. 12

6 *Djukich v. AutoNation Inc.*, No. CV 13-04455-BRO (AGRx), 2015 WL 13756099 (C.D. Cal.
   Nov. 12, 2015) ............................................................................................................................. 21

7

8 *Evans v. Linden Research, Inc.*, No. C-11-01078 DMR, 2014 WL 1724891 (N.D. Cal. April 29,
   2014) ....................................................................................................................................... 18, 19

9 *Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998)............................................................. 10

10 *Harris v. Marhoefer*, 24 F.3d 16 (9th Cir. 1994) ......................................................................... 22

11 *Harrison v. E.I DuPont De Nemours and Company*, No. 13-cv-01180-BLF, 2018 WL 5291991
    (N.D. Cal. Oct. 22, 2018)............................................................................................................. 23

12

13 *Hefler v. Wells Fargo & Co.*, No. 16-cv-05479-JST, 2018 WL 6619983 (N.D. Cal. Dec. 18, 2018)
    ................................................................................................................................................. 14, 18

14 *Hendricks v. Starkist Co.*, Case No. 13-cv-00728, 2016 WL 5462423 (N.D. Cal. 2016) ............ 21

15 *Hurt v. Commerce Energy, Inc.*, Case No. 1:12-cv-758 ................................................................ 14

16 *In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935 (9th Cir. 2011) ........................ 9, 10, 15

17 *In re Capacitors Antitrust Litig.*, Case No. 3:14-cv-03264-JD, 2017 WL 9613950 (N.D. Cal. June
    27, 2017) .................................................................................................................................. 21, 22

18

19 *In re Heritage Bond Litig.*, No. 02-ML-1475 DT, 2005 WL 1594403 (C.D. Cal. June 10, 2005) 21

20 *In re High–Tech Emp. Antitrust Litig.*, No. 11-CV-02509-LHK, 2015 WL 5158730 (N.D. Cal.
    Sept. 2, 2015) ............................................................................................................................... 14

21 *In re Linkedin User Privacy Litig.*, 309 F.R.D. 573 (N.D. Cal. 2015) ......................................... 14

22 *In re Magsafe Apple Power Adapter Litig.*, No. 5:091-CV-01911-EJD, 2015 WL 428105 (N.D.
    Cal. Jan. 30,  2015) ...................................................................................................................... 14

23

24 *In re Media Vision Tech. Sec. Litig.*, 913 F.Supp. 1362 (N.D. Cal. 1995) ................................... 22

25 *In re Mercury Interactive Corp. Sec. Litig.*, 618 F.3d 988 (9th Cir. 2010).................................. 24

26 *In re Omnivision Techs.*, 559 F. Supp. 2d 1036 (N.D. Cal. 2008)................................................. 15

27 *In re online DVD-Rental Antitrust Litig.*, 779 F.3d 934 (9th Cir. 2015) ..................................... 20

28 *In re Stec Inc. Securities Litigation*, SACV 09-01304-JVS CMLGx), 2013 WL 12129391 (C.D.
    Cal. May 23, 2013) ...................................................................................................................... 22

*In re TracFone Unlimited Service Plan Litig.*, 112 F.Supp.3d 993 (N.D. Cal. 2015) .................. 15

*In re Volkswagen "Clean Diesel" Marketing, Sales Practices, and Prod. Liab. Litig.*, 895 F.3d 597 (9th Cir. 2018).......................................................................................................... 24

*In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prod. Liab. Litig.*, MDL No. 2672 CRB(JSC), 2017 WL 3175924 (N.D. Cal. July 21, 2017)......................................................... 15

*In re Washington Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291 (9th Cir. 1994).................. 13

*Johnson v. General Mills, Inc.*, No. SACV 10-00061-CJC(ANx), 2013 WL 3213832 (C.D. Cal. June 17, 2013)......................................................................................................... 3, 21

*Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67 (9th Cir. 1975).................................................... 15

*Ketchum v. Moses*, 24 Cal. 4th 1122 (2001) ........................................................................... 12, 15

*Kim v. Euromotors W./The Auto Gallery*, 149 Cal.App. 4th 170 (2007)........................................ 9

*Kumar v. Salov North America Corp.*, No. 14-CV-2411-YGR, 2017 WL 2902898 (N.D. Cal. July 7, 2017) ................................................................................................................... 10, 19

*Lee v. Global Tel'link Corp.*, No. 2:15-cv-02495-ODW (PLA), 2018 WL 4625677 (C.D. Cal. Sept. 24, 2018) ................................................................................................................ 18

*Lopez v. Youngblood*, No. CV-F-07-0474 DLB, 2011 WL 10483569 (E.D. Cal. Sept. 2, 2011) . 19

*Loretz v. Regal Stone, Ltd.*, 756 F.Supp.2d 1203 (N.D. Cal. 2010)............................................... 12

*MacDonald v. Ford Motor Co.*, No. 13-cv-02988-JST, 2016 WL 3055643 (N.D. Cal. May 31, 2016) .................................................................................................................................. 15

*McColloch v. Baker Hughes Inteq Drilling Fluids, Inc.*, No. 1:16-cv-00157-DAD-JLT, 2017 WL 5665848 (E.D. Cal. Nov. 27, 2017) ...................................................................................... 18

*Moreno v. City of Sacramento*, 534 F.3d 1106 (9th Cir. 2008) ............................................... 10, 11

*Notter v. City of Pleasing Hill*, No. 16-cv-04412, 2017 WL 5972698 (N.D. Cal. Nov. 30, 2017) 9, 15

*Nwabueze v. A T&T Inc.*, No. C 09-1529, 2013 WL 6199596 (N.D. Cal. Nov. 27, 2013) . 3, 18, 19

*Odrick v. UnionBancal Corp.*, No. CV 10-05565 SBA, 2012 WL 6019495 (N.D. Cal. Dec. 3, 2012) ................................................................................................................................. 22

*Parkinson v. Hyundai Motor America*, 796 F.Supp.2d 1160 (C.D. Cal. Sept. 14, 2010)............... 9

*Ridgeway v .Wal-Mart Stores Inc.*, 269 F.Supp.3d 975 (N.D. Cal. 2017).................................... 12

*Rodriguez v. West Publishing Corp.*, 563 F.3d 948 (9th Cir. 2009) ............................................. 23

*Soto v. Diakon Logistics (Delaware), Inc.*, No. 8-cv-33-L-(JLB), 2015 WL 13344897 (S.D. Cal. June 25, 2015) ................................................................................................................... 21

*Spann v. J.C. Penney Corp*., 211 F. Supp.3d 1244 (N.D. Cal. 2016) ............................................. 18

*Staton v. Boeing Co*., 327 F.3d 938 (9th Cir. 2003)........................................................................... 9

*Sullivan v. Dolgen California, LLC*, No. 3:15-cv-01617-JD, 2017 WL 3232540 (N.D. Cal. July 31, 2017) ................................................................................................................................... 22

*Van Gerwen v. Guarantee Mut. Life Co*., 214 F.3d 1041 (9th Cir. 2000) ..................................... 10

*Van Vranken v. Atlantic Richfield Co*., 901 F.Supp. 294 (N.D. Cal. 1995).................................... 15

*Vasquez v. USM Inc*., 3:13-cv-05449-JD, 2016 WL 612906 (N.D. Cal. Feb. 16, 2016)........... 9, 10

*Vizcaino v. Microsoft Corp*., 290 F. 3d 1043 (9th Cir. 2002) ........................................ 3, 10, 20, 21

*Williams v. MGM-Pathe Commc'ns Co*., 129 F.3d 1026 (9th Cir. 1997)....................................... 19

*Young v. Polo Retail, LLC*, No. C-02-4546 VRW, 2007 WL 951821 (N.D. Cal. Mar. 28, 2007) 19

**Statutes**

Cal. Civ. Code § 1780(e) ................................................................................................................... 9

1

## NOTICE OF MOTION AND MOTION

**PLEASE TAKE NOTICE** that on August, 1, 2019 at 10:00 AM, or as soon as the matter may be heard, in Courtroom 11, before the Honorable James Donato, Plaintiffs shall and hereby do move the Court for an Order:

1. Awarding Class Counsel attorneys' fees in the amount of $7,317,707.50, plus reimbursement of litigation costs and expenses in the amount of $366,944.48;

2. An incentive award of $5,000 to Plaintiffs James Brickman and Margaret Clingman, respectively; and

3. An incentive award of $500 to Plaintiffs Carolyn Ciavarella, Stephanie Curtis, Erica Wathey, Michael Landis, Carissa Ray, Amanda Samy, and James Gau, II, respectively.

As further discussed in the following memorandum in support of the above requests, the amounts requested are fair, reasonable, and appropriate. Further, the requested amounts are justified provided the success and circumstances of this matter.

## I.    Introduction.

After three years of litigation and shortly before trial was set to begin, the parties reached a proposed settlement of this class action on October 29, 2018.[1]  Under the preliminarily approved settlement agreement, class members of the settlement sub-classes ("Settlement Sub-Class Members") are able to file a claim for each qualifying device that they purchased in one of the settlement states during the related class period.  For each valid, timely claim the Settlement Sub-Class Member will receive a cash payment of $12.50, which represents 83% of the best-case damages amount Plaintiffs could be awarded at trial.  As part of the settlement, Fitbit also agreed to pay all notice costs, administration costs, court-approved attorneys' fees and costs, and court-approved incentive compensation *separate and apart* from the claims made by Settlement Sub-Class Members.  In short, the claims or associated monetary relief that can be claimed by the Settlement Sub-Class Members will not be reduced in any way, and the payment of all other expenses, including Class Counsel's fees and costs, have no impact on the overall monetary relief provided directly to the Settlement Sub-Class Members.

Pursuant to the stipulation of settlement ("Settlement Agreement"), Class Counsel seek an award of reasonable attorneys' fees in the amount of $7,317,707.50 and reimbursement of costs in the amount of $366,944.48.  Class Counsel's fee request is based on the lodestar calculation of their hours in the total amount of $3,851,425.  Additionally, Class Counsel seek a positive multiplier of 1.9 to their lodestar, based on the risk they undertook to litigate a complex multi-state class action over the course of four years and the exceptional results obtained for the Settlement Sub-Class Members.  Class Counsel were never guaranteed any fees associated with this case, but nonetheless invested substantial time, effort, and resources to litigate the matter to an exceptional result for the Settlement-Sub Class Members. Indeed, Class Counsel incurred $366,944.48 in actual out-of-pocket expenses during the course of this litigation, which does not include the expenses that Class Counsel will incur overseeing the settlement through final approval. Class Counsel's expenses

---

[1] The parties' original settlement agreement was executed on August 1, 2018. Dkt. No. 254-1.  The operative settlement agreement was entered into after the Court denied preliminary approval and was executed on October 29, 2018. Dkt. No. 263-1.

would have likely grown by another $150,000 had the case proceeded to trial.  Declaration of Patrick J. Perotti in Support of Motion, at ¶ 71, attached hereto as Exhibit 1.

The reasonableness of Class Counsel's fee request is demonstrated by a cross-check against the "constructive common fund." Though the Settlement Agreement does not create either a traditional common fund or include any maximum amount of claims that will be paid, a constructive common fund can be created by pooling the total amount of money made available to the Settlement Sub-Classes, reasonable attorneys' fees and costs, notice costs, and settlement administration costs. *Nwabueze v. AT&T Inc.*, No. C 09-1529, 2013 WL 6199596, at *11 (N.D. Cal. Nov. 27, 2013) (noting that "[w]here, as here, a settlement does not create a common fund from which to draw, the Ninth Circuit may analyze the case as a 'constructive common fund' for fee-setting purposes.")  In this matter, Class Counsel's fee request equates to approximately 26.3% of the constructive common fund.  This demonstrates that the fee request is reasonable, as it is well within the acceptable range for a modest upward departure from the 25% benchmark for percentage based fee awards in the Ninth Circuit.  *See Vizcaino v. Microsoft Corp.*, 290 F. 3d 1043, 1050 (9th Cir. 2002) (upholding trial court's award of a 28% fee award as "reasonable under the percentage method"); *Johnson v. General Mills, Inc.*, No. SACV 10-00061-CJC(ANx), 2013 WL 3213832, at *6 (C.D. Cal. June 17, 2013) (awarding a 30% fee where "Class Counsel faced significant financial risks … this action involved complex scientific evidence and the use of expensive experts").

Additionally, pursuant to the Settlement Agreement, Plaintiffs also seek an Order granting incentive compensation to Plaintiffs James Brickman and Margaret Clingman in the amount of $5,000 each and to Plaintiffs Ciavarella, Ray, Gau, Landis, Wathey, Curtis, and Samy in the amount of $500 each.

## II.     Background Facts.
### a.    Class Counsel have devoted significant time and resources while litigating this matter over several years.

Plaintiffs first filed this action on May 8, 2015.  Dkt. No. 1.  During the course of the last four years, and before agreeing upon the terms of the Settlement Agreement, the parties engaged in extensive litigation, fact discovery, expert discovery, and the briefing of complex legal issues

surrounding the Plaintiffs' claims regarding the sleep functionality of Fitbit's devices.[2]  Ex. 1, Perotti Decl. at ¶¶ 19-35.

The fact and expert discovery in this matter covered multiple disciplines that required specific expertise and were integral to Plaintiffs' claims, including: consumer grade actigraphy, medical grade actigraphy, sleep medicine, sleep research, software technology, hardware technology, product design and development, and consumer behavior.  Declaration of Ronald A. Margolis in Support of Motion, at ¶ 12, attached hereto as Exhibit 2.  In response to Plaintiffs' discovery requests, Fitbit produced over 149,000 pages of discovery documents, which Class Counsel has stored on a secure document review database.  Ex. 1, Perotti Decl. at ¶ 27.  Class Counsel moved to quickly and efficiently review every page of discovery produced by Fitbit, which included identifying the content of each document, categorizing the document, and organizing the documents to understand the timeline of Fitbit's development of the sleep functionality at issue. Ex. 1, Perotti Decl. at ¶¶ 28-30; Ex. 2, Margolis Decl. at ¶¶ 22-23.

Class Counsel deposed three Fitbit representatives with knowledge of both the scientific background of the sleep functionality and the advertising of the Fitbit devices.  Specifically, Class Counsel deposed Dr. Shelten Yuen and Dr. Connor Heneghan, both of whom were heavily involved in Fitbit's scientific research and development of the sleep tracking functionality.  Ex. 2, Margolis Decl. at ¶ 21.  To prepare for these depositions, Class Counsel conducted the above described discovery document review, consulted with experts, and conducted significant research on the scientific issues that were covered during these depositions.  Ex. 2, Margolis Decl. at ¶¶ 21-23. Class Counsel compiled the results of their review, research, and analysis into a series of themes that would help to easily convey the relevant scientific issues and set the table for the expert discovery.  Ex. 2, Margolis Decl. at ¶¶ 21-23.

In total, the parties submitted expert reports from nine experts, all of whom were deposed in this matter. Ex. 2, Margolis Decl. at ¶¶ 15, 17.  These depositions required an extensive amount

---

[2] Class Counsel extensively outlined the relevant facts related to the framework of the stipulated settlement agreement, the negotiations related to that settlement, and the subsequent relief provided to the class in their previously filed Unopposed Motion for Preliminary Approval and Supplement in Support of Preliminary Approval. Dkt No. 263; Dkt No. 269.

of preparation, research, and travel. Ex. 2, Margolis Decl. at ¶¶ 18, 20.  The expert depositions were held in Baltimore, MD; Boston, MA; Charlottesville, VA; Morgantown, WV; San Diego, CA; San Francisco, CA; and White Plains, NY.  Due to his unique expertise with expert discovery and skill as a senior trial attorney, Attorney Margolis assumed primary responsibilities for Class Counsel for expert discovery and was designated as lead trial counsel for Class Counsel.  As the lead attorney for expert discovery, Attorney Margolis attended every expert deposition in person, or by video, and spent considerable time ensuring that all issues were properly researched, all materials were fully reviewed, and all necessary preparations were made.  Ex. 2, Margolis Decl. at ¶¶ 18 – 20.

Once discovery closed, the parties then engaged in extensive briefing and argument on significant legal issues including Plaintiffs' motion for class certification,[3] Fitbit's motion for summary judgment,[4] Fitbit's motions to exclude expert testimony,[5] and Fitbit's motion to decertify the classes.[6]  Class Counsel were successful in certifying classes of Fitbit customers in California and Florida, defeating Fitbit's bid for summary judgment, and ensuring that the consumer classes would receive the appropriate notice of this case.

Class Counsel's success in motion practice set the stage for a jury trial.  Prior to settlement, the parties engaged in extensive preparation for that trial, including the research, drafting, and filing of:  (1) trial briefs; (2) joint pre-trial statement; (3) motions in limine; (4) joint exhibit list and objections; (5) joint witness list and objections; (6) joint proposed *voir dire* questions and objections; (7) joint proposed jury instructions and objections; and (8) joint proposed verdict forms and objections.  Ex. 1, Perotti Decl. at ¶¶ 53-56; Declaration of Frank A. Bartela in Support of Motion, at ¶¶ 19-20, attached hereto as Exhibit 3.

**b. Negotiating the Settlement Agreement.**

Throughout the litigation efforts were made by the parties to explore potential settlement. Ex. 1, Perotti Decl. at ¶¶ 57-64.  Several mediations were conducted, culminating in a settlement after trial preparation was nearly completed.

---

[3] Dkt. Nos. 119, 122, 128, and 194.
[4] Dkt. Nos. 152, 165, 174, and 195.
[5] Dkt. Nos. 123, 139, 140, 154, 167, 173, and 195.
[6] Dkt. Nos. 207, 214, and 221.

During the course of this litigation, the parties entered into several rounds of arm's-length negotiations which included the help of expert mediators. On December 15, 2016, the parties attended a mediation before Martin Quinn of JAMS. The Parties attended a further mediation in California before Magistrate Donna Ryu on May 15, 2017. Ex. 1, Perotti Decl. at ¶ 59. On February 6, 2018, the parties attended an all-day mediation with Hon. John Leo Wagner (Ret.) of Judicate West, an independent, skilled, and well-respected neutral mediator in Santa Ana, California. Ex. 1, Perotti Decl. at ¶ 60.

After the mediation, the parties continued to discuss settlement. The prior mediations had not been successful, in the opinion of Class Counsel, because none of the final decision-makers for Fitbit attended. Class Counsel sought a final attempt at settlement before the actual commencement of trial and insisted that the two company founders attend any future settlement meeting. Ex. 1, Perotti Decl. at ¶¶ 87-89.

The parties met a final time in the San Francisco office of Morrison Foerster, with the Fitbit founders present, so that Class Counsel could provide a presentation to them that would outline the key facts, testimony, and evidence that Class Counsel believed would dominate the trial and document Fitbit's liability to the certified classes. Ex. 1, Perotti Decl. at ¶¶ 62-64, 87-89; Ex. 2, Margolis Decl. at ¶¶ 24-25. Class Counsel spent considerable time preparing this presentation and encapsulating their arguments for the upcoming trial. After this meeting and Class Counsel's presentation, the parties continued to discuss settlement in this mater, which led to the terms of the initial settlement agreement. Dkt. No. 244; 254-1.

The parties submitted their initial settlement agreement with Plaintiffs' Motion for Preliminary Approval on August 1, 2018. At the initial preliminary approval hearing on September 13, 2018, the Court instructed the parties that it intended to deny the Original Approval Motion without prejudice and directed the parties to address certain concerns identified by the Court. The Court provided the parties with a period of 45 days to address the Court's concerns and submit an amended preliminary approval motion. After the initial preliminary approval hearing, the parties again entered into arm's-length negotiations to address and rectify the concerns this Court outlined

at the hearing.  The parties concluded their negotiations and entered into the Stipulation of Settlement on October 29, 2018. Dkt. No. 263-1.

### c.  The settlement terms and relief provided to the Settlement Sub-Classes.

The Settlement Agreement provided relief to nine Settlement Sub-Classes which are comprised of Settlement Sub-Class Members in thirteen different states ("Settlement States"). Class Counsel originally certified classes of consumers in Florida and California.  However, through the extensive arm's-length negotiations outlined above, Class Counsel was able to also obtain relief for class members in eleven additional states.  Without Class Counsel's effort, those customers may not have ever received any relief related to the Fitbit devices.

Through the Settlement Agreement, Settlement Sub-Class Members are able to file a claim for a cash payment of $12.50 for each qualifying device that they purchased in the Settlement States during the class period.  There is no limit on the number of claims that a class member can make, provided that each claim relates to a separate qualifying device purchased in a covered jurisdiction during the relevant time period.  Dkt. No. 263-1.

The amount paid to individual claimants is not dependent on the number of claims submitted, the cost of notice or administration, the amount paid in attorneys' fees and costs, or any incentive compensation paid to the named class representatives.  Instead, each class member who makes a valid and timely claim will be paid $12.50 in cash for each and every qualifying Fitbit device purchased during the class period, regardless of any of those other factors.  This outcome is excellent for the members of the Settlement Sub-Classes, since, based on Plaintiffs' analysis, the most they could recover at trial for out of pocket loss was approximately $15.  Ex. 1, Perotti Decl. at ¶¶ 95-97.

### d.  The Settlement Agreement included an extensive notice plan, a user-friendly claims process, and alerted class members to this fee request.

The settlement includes a robust notice plan and a user-friendly claims process, both of which Class Counsel were instrumental in establishing to greatly benefit the Settlement Sub-Class Members.  The notice plan provided direct notice via e-mail and regular mail as well as publication notice through two national magazines and internet advertisements.  Declaration of Deborah McComb, KCC, at ¶¶ 5-7, 11, 12, attached hereto as Exhibit 4.  Direct notice, via U.S. Mail, was

sent to 202,491 Settlement Sub-Class Members that purchased their device directly from Fitbit's website and provided a mailing address. Ex. 4, McComb Decl. at ¶ 5. Fitbit also provided to KCC, the Settlement Administrator, approximately 5,158,436 e-mail addresses associated with Fitbit devices. Ex. 4, McComb Decl. at ¶ 3. Those e-mail addresses were then reverse location searched to determine whether the individual holder of that e-mail address was in one of the Settlement States. Ex. 4, McComb Decl. at ¶ 3. KCC was able to reverse locate 1,146,427 unique e-mail addresses connected to individuals in the Settlement States through this process. In total, direct e-mail notice was sent to 1,350,472 e-mail addresses. Ex. 4, McComb Decl. at ¶¶ 3, 6.

Publication notice was made in *ESPN the Magazine*, *People*, and *San Francisco Examiner*. Ex. 4, McComb Decl. at ¶ 11. Additionally, banner advertisements, which directed individuals to the settlement website, were run on the Yahoo! Ad Network and Google Display Network. In total, the internet banner ads received approximately 111,495,038 impressions during their publication period. Ex. 4, McComb Decl. at ¶ 12. The settlement website (www.sleepdevicesettlement.com) hosts copies of the class notice, Settlement Agreement, preliminary approval order, and claim form instructions. Further, class members can either submit claim forms or opt-out forms electronically through the settlement website. The settlement website and class notice also provide a toll-free 1-800 number with a live operator that individuals can call with questions related to the settlement. Ex. 4, McComb Decl. at ¶ 14.

The direct notice (e-mail and mail) and publication notice informed the class members of: (1) the date of this filing, (2) the amount of Class Counsel's lodestar[7] and expenses that would be sought through this motion, (3) that Class Counsel intended to request no larger than a 2.5 multiplier to their lodestar, and (4) that a copy of the motion would be available on the settlement website. At the time of filing of this motion, no class members have objected to either the settlement or Class Counsel's fees. Ex. 4, McComb Decl., Exhibits A, B, and C.

---

[7] The direct mail, direct e-mail, and publication notice advised the class that Class Counsel had incurred a lodestar of "approximately $3,800,000" and out of pocket expenses of $394,688. Ex. 4, McComb Decl. at Exhibits A, B, and C.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

### III.    Argument.

#### a.  Class Counsel's requested fee award is fair and reasonable.

An award of attorneys' fees in a certified class action is appropriate "where so authorized by law or the parties' agreement[.]"  *In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935, 941 (9th Cir. 2011).  Despite the justification for class counsel's fees, "courts have an independent obligation to ensure that the award, like the settlement itself, is reasonable, even if the parties have already agreed to an amount."  *Id.*; *Staton v. Boeing Co.*, 327 F.3d 938, 963 (9th Cir. 2003).

Here, the Settlement Agreement allows Class Counsel to seek fees and costs, but does not include a specific agreement as to the amount of Class Counsel's fees and expenses.  Specifically, Fitbit has agreed that it will not challenge Class Counsel's right to seek fees and costs pursuant to the Settlement Agreement, but reserved its right to challenge the amount of fees and costs sought by Class Counsel.  Dkt. No. 263-1, at Page 12 of 71.  The parties agreed to leave the determination of attorneys' fees and expenses to the Court as an expense that will be paid by Fitbit ***separate and apart*** from the claims paid to class members.

Further, as Plaintiffs have obtained a favorable settlement recovery for the Settlement Sub-Class Members, they are the prevailing party and Class Counsel's fees are also justified pursuant to the fee-shifting prong of the settled California Consumers Legal Remedies Act ("CLRA") claim.  Cal. Civ. Code § 1780(e).  A plaintiff is a "prevailing plaintiff" under the CLRA when, "he obtain[s] a net monetary recovery or ... he achieve[s] most or all of what he wanted by filing the action or a combination of the two."  *Kim v. Euromotors W./The Auto Gallery*, 149 Cal.App. 4th 170, 181 (2007); *Parkinson v. Hyundai Motor America*, 796 F.Supp.2d 1160, 1169 (C.D. Cal. Sept. 14, 2010) ("[a] plaintiff is the prevailing party if he or she obtained a 'net monetary recovery' or 'realized its litigation objectives,' including pursuant to a settlement agreement.")  If the Court awards Class Counsel's fees pursuant to the fee-shifting prong of the CLRA, an application of substantive California law is appropriate.  *Vasquez v. USM Inc.*, 3:13-cv-05449-JD, 2016 WL 612906, at *3 (N.D. Cal. Feb. 16, 2016); *Notter v. City of Pleasing Hill*, No. 16-cv-04412, 2017 WL 5972698, at *2 (N.D. Cal. Nov. 30, 2017) (noting that "[f]ederal and California law regarding attorney's fees are coexistent[.]").

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**b.  The Court may apply the Lodestar method to award attorneys' fees.**

In the context of class action settlements, courts may analyze an attorneys' fee request based on either the "'lodestar' method or a percentage of the total benefit made available to the settlement class, including costs, fees, and injunctive relief." *Kumar v. Salov North America Corp.*, No. 14-CV-2411-YGR, 2017 WL 2902898, at \*7 (N.D. Cal. July 7, 2017) (citing *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002)).  Where, as here, a settlement includes a claims made process, Class Counsel's fee request may be analyzed pursuant to the lodestar method.  *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1029-30 (9th Cir. 1998) ("In employment, civil rights and other injunctive relief class actions, courts often use a lodestar calculation because there is no way to gauge the net value of the settlement or any percentage thereof."); *Vasquez*, 2016 WL 612906, at \*3 ("California courts have repeatedly validated the lodestar method as a means of determining reasonableness, particularly in circumstances where the fees are to be paid separately and not from a common fund.").

The lodestar method has two parts.  "The lodestar calculation begins with the multiplication of the number of hours reasonably expended by a reasonable hourly rate." *Hanlon*, 150 F.3d at 1029.  Once the lodestar calculation is completed, the lodestar may be  adjusted "upward or downward by an appropriate positive or negative multiplier reflecting a host of 'reasonableness' factors, 'including the quality of representation, the benefit obtained for the class, the complexity and novelty of the issues presented, and the risk of nonpayment[.]'" *In re Bluetooth*, 654 F.3d 935, 941-42 (9th Cir. 2011) (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1029 (9th Cir. 1998)); *Van Gerwen v. Guarantee Mut. Life Co.*, 214 F.3d 1041, 1045 (9th Cir. 2000).

**i.  Class Counsel expended a reasonable number of hours litigating this matter over the course of three years.**

Courts generally defer to "the winning lawyer's professional judgment as to how much time he was required to spend on the case[.]" *Moreno v. City of Sacramento*, 534 F.3d 1106, 1112 (9th Cir. 2008).  In litigating this case, Class Counsel had no incentive to pad their hours:  "[L]awyers are not likely to spend unnecessary time on contingency fee cases in the hope of inflating their fees.

The payoff is too uncertain, as to both the result and the amount of the fee." *Moreno*, 534 F.3d at 1112.

The time invested by Class Counsel was necessary because settlement was not reached until the eve of trial.  As of the filing of this motion, Class Counsel have expended 7,902.3 hours in total on this matter including a pre-suit investigation, extensive discovery review, litigation, settlement activities, and overseeing the administration of this settlement.  Ex. 1, Perotti Decl. at ¶¶ 36-38; Ex. 2, Margolis Decl. at ¶ 10; Ex. 3, Bartela Decl. at ¶ 21; Time Report for Dworken & Bernstein Co., LPA attached hereto as Exhibit 5; Time Report for Bonezzi Switzer Polito & Hupp Co. LPA attached hereto as Exhibit 6.  These hours do not account for all of the work that Class Counsel will continue to conduct on behalf of the Settlement Sub-Classes including working with Fitbit and KCC to administrate and oversee the settlement, drafting the motion for final approval, and attending the final approval hearing.

Here, just litigating this case through the end of discovery was a significant task.  Class Counsel conducted an extensive pre-suit investigation; opposed Fitbit's motion to compel arbitration; amended the complaint; opposed Fitbit's motion to dismiss; conducted substantial written discovery; reviewed approximately 149,000 pages of discovery; conducted three depositions of Fitbit representatives; hired five expert witnesses; deposed all four of Fitbit's expert witnesses; and, defended the depositions of both named Plaintiffs.  Ex. 1, Perotti Decl. at ¶¶ 21-35.

After discovery concluded, Class Counsel fully briefed and argued their motion to certify classes of consumers in Florida and California; opposed Fitbit's motion for summary judgment; and, opposed motions to strike Plaintiffs' expert witnesses.

Once the Court issued its orders denying Fitbit's motion for summary judgement and granting Plaintiffs' motion for class certification, the case marched toward trial. Class Counsel undertook the extensive efforts to prepare for trial including:  (1) lodging and opposing motions in limine, (2) preparing and serving subpoenas on trial witnesses, (3) opposing Fitbit's motion to quash the trial subpoena of William Zerella and motion for protective order, (4) drafting a trial brief, (5) preparing and repeatedly conferring on a joint exhibit list, (6) preparing and repeatedly conferring on a joint pretrial statement, (7) preparing and repeatedly conferring on a joint witness

list, (8) preparing and repeatedly conferring on a joint proposed *voir dire*, (9) preparing and repeatedly conferring on joint jury verdict forms, and (10) fully briefing and opposing Fitbit's motion to decertify the classes. Ex. 1, Perotti Decl. at ¶¶ 53-56; Ex. 2, Margolis Decl. at ¶ 26; Ex. 3, Bartela Decl. at ¶¶ 19-20.

The road to settlement in this case was winding and long. Class Counsel attended mediation on three separate occasions with three separate mediators. For each mediation, Class Counsel prepared mediation statements and prepared to enter arm's-length negotiations in good faith. While settlement talks continued at various stages of this case, Class Counsel fought at every opportunity to advance the interests of the class members to position this case for success at a trial. In turn, Fitbit also lodged an aggressive defense to Plaintiffs' claims and by all accounts the case was hard-fought by competent, well respected, and experienced attorneys. In fact, as this Court is aware, settlement in principle was not reached until March 28, 2018, approximately one month before the scheduled trial date. Dkt. No. 244. However, the settlement that Class Counsel did reach expanded the case from two states (California and Florida) to thirteen states in total, vastly expanding the number of class members that are benefited by this settlement and Class Counsel's efforts.

### ii. Class Counsel's hourly rates are reasonable.

The attached declarations detail the hourly rates used to calculate Class Counsel's lodestar and outline the extensive experience of all attorneys. Ex. 1, Perotti Decl. at ¶¶ 2-18, 39; Ex. 2, Margolis Decl. at ¶¶ 2-7; Ex. 3, Bartela Decl. at ¶¶ 2-12. Courts approve requested hourly rates where those rates are reasonable and within the range of hourly rates approved for attorneys of comparable experience engaged in similar matters or litigation. *Ridgeway v .Wal-Mart Stores Inc*., 269 F.Supp.3d 975, 985 (N.D. Cal. 2017) ("To determine whether counsel's hourly rates are reasonable, the Court looks to the 'hourly amount to which attorneys of like skill in the area would typically be entitled.'" (quoting *Ketchum v. Moses*, 24 Cal. 4th 1122, 1133 (2001))). Further, "[w]hen determining a reasonable hourly rate, the Court looks to the 'prevailing hourly rate in the area for comparable services.'" *Loretz v. Regal Stone*, *Ltd*., 756 F.Supp.2d 1203, 1211 (N.D. Cal. 2010) (quoting *Ketchum v. Moses*, 24 Cal. 4th at 1140); *Camacho v. Bridgeport Fin*., *Inc*., 523 F.3d 973, 979 (9th Cir. 2008) (noting that the "relevant community is the forum in which district court

1
2
3
4
5
6
7

sits"). When computing the lodestar calculation, the use of Class Counsel's current hourly rates is appropriate in light of the deferred and contingent nature of Class Counsel's fees. *In re Washington Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1305 (9th Cir. 1994).

Here, Class Counsel used their regular hourly rates to calculate their lodestar, which range from $325 to $650 per hour.[8] Ex. 1, Perotti Decl. at ¶¶ 18, 38-39; Ex. 2, Margolis Decl. at ¶ 11; Ex. 3, Bartela Decl., at ¶ 13. Below are the hourly rates and applicable hours billed by all attorneys that worked on this matter for Class Counsel.

8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23

| Law firm | Attorney Name and initials in billing record | Title | No. of Years in practice during | Total time (units) entered) | Hourly rate | Total amount billed |
|---|---|---|---|---|---|---|
| Dworken | Frank Bartela (FAB) | Associate | 8 | 2,690.3 | $325 | $874,347.50 |
| Dworken | Patrick J. Brickman (PJB) | Associate | 8 | 329.3 | $325 | $107,022.50 |
| Dworken | Kristen Stuber (KS) | Associate | 7 | 57.8 | $375 | $21,675.00 |
| Dworken | Shelley Fleming (SMF) | Associate | 13 | 673.4 | $375 | $252,525.00 |
| Dworken | James Timmerberg (JST) | Associate | 20 | 365.3 | $450 | $164,385.00 |
| Dworken | Nicole Fiorelli (NTF) | Partner | 14 | 147.8 | $450 | $66,510.00 |
| Dworken | Patrick Perotti (PJP) | Partner | 37 | 1,770.3 | $650 | $1,150,695.00 |
| Bonezzi | Ronald Margolis (RAM) | Partner | 36 | 1,868.10 | $650 | $1,214,265.00 |

24
25
26
27
28

---

[8] The rates used to calculate Class Counsel's lodestar are their hourly rates for the year 2018, which is the year in which Class Counsel's lodestar was disclosed to the Court in their Supplement to Unopposed Motion for Preliminary Approval. Dkt. No. 269-2, Page 2 of 3.

Class Counsel's hourly rates are reasonable as they are less than or equal to the market rates in San Francisco for attorneys of Class Counsel's background and experience. *In re High–Tech Emp. Antitrust Litig.*, No. 11-CV-02509-LHK, 2015 WL 5158730, at *9 (N.D. Cal. Sept. 2, 2015) (approving hourly rates for partners ranging from $490–$975 and rates for non-partner attorneys from $310–$800); *In re Linkedin User Privacy Litig.*, 309 F.R.D. 573, 591-92 (N.D. Cal. 2015) ("In the Bay Area, 'reasonable hourly rates for partners range from $560 to $800, for associates from $285 to $510, and for paralegals and litigation support staff from $150 to $240.'") (quoting *In re Magsafe Apple Power Adapter Litig.*, No. 5:091-CV-01911-EJD, 2015 WL 428105, at *11 (N.D. Cal. Jan. 30, 2015)); *Hefler v. Wells Fargo & Co.*, No. 16-cv-05479-JST, 2018 WL 6619983, at *14 (N.D. Cal. Dec. 18, 2018) (approving rates from $650 to $1,250 per hour for partners, $400 to $650 per hour for associates as reasonable).

The hourly rates for Dworken attorneys Bartela, Fleming, Timmerberg, Fiorelli, and Perotti have recently been reviewed, approved, and found reasonable by another federal court. *See Hurt v. Commerce Energy, Inc.*, Case No. 1:12-cv-758, Order Granting Fee Request, Doc. No. 959, at p. 2 of 10; Plaintiffs' Motion for Fees and Costs, Dkt. No. 936-1, at p. 5 of 18 (identifying requested hourly rates); Ex. 1, Perotti Decl. at ¶ 44; Ex. 3, Bartela Decl. at ¶ 14. Further, it is the opinion of experienced counsel practicing in the San Francisco area that Class Counsel's requested hourly rates are reasonable and are either at or below market rates in San Francisco. Declaration of Kristen Sagafi, at ¶¶ 12-15, attached hereto as Exhibit 7.

### iii. Class Counsel's fee should be multiplied by 1.9 as the factors supporting a positive multiplier are present here.

Class Counsel requests that the Court award a multiplier of 1.9 to Class Counsel's combined lodestar fee of $3,851,425. Application of the requested multiplier would increase Class Counsel's total fee award to $7,317,707.50. Application of a multiplier is appropriate here as Class Counsel undertook a complex multi-state consumer class action and produced exceptional results, not only for the original classes, but for consumers in eleven additional states.

It is within the Court's discretion to award a multiplier based on "'(1) the novelty and difficulty of the questions involved, (2) the skill displayed in presenting them, (3) the extent to

which the nature of the litigation precluded other employment by the attorneys, (4) the contingent nature of the fee award.'" *Notter*, 2017 WL 5972698, at *5 (quoting *Ketchum*, 24 Cal. 4th at 1138 (2001)); *In re TracFone Unlimited Service Plan Litig.*, 112 F.Supp.3d 993, 1009 (N.D. Cal. 2015) (noting multiplier factors include "the quality of representation, the benefit obtained for the class, the complexity and novelty of the issues presented, and the risk of nonpayment.")[9]

Here, Class Counsel's requested multiplier of 1.9 is well within the limit of acceptable multipliers and is supported by the facts of this matter. *Van Vranken v. Atlantic Richfield Co.*, 901 F.Supp. 294, 299 (N.D. Cal. 1995) (noting that a multiplier of 3.6 was "well within the acceptable range for fee awards in complicated class action litigation"); *In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prod. Liab. Litig.*, MDL No. 2672 CRB(JSC), 2017 WL 3175924, at *4 (N.D. Cal. July 21, 2017) (noting that a lodestar multiplier of 2.02 was "more than reasonable given the complexities of this case, the skill and diligence of Class Counsel, and the extraordinary results achieved for the Class"); *MacDonald v. Ford Motor Co.*, No. 13-cv-02988-JST, 2016 WL 3055643, at *10 (N.D. Cal. May 31, 2016) (the "Court concludes that a positive multiplier of 2.0 is appropriate for the 'merits' work expended by Counsel").

- **Class Counsel's success during the litigation and the exceptional settlement results achieved demonstrate the skill, dedication, and abilities of Class Counsel.**

The result achieved for the class is the most "critical factor in granting a fee award." *In re Omnivision Techs.*, 559 F. Supp. 2d 1036, 1046 (N.D. Cal. 2008). Here, Class Counsel achieved exceptional results for the Settlement Sub-Class Members during both the course of litigation and in settlement. Initially, Class Counsel defeated Fitbit's motion to dismiss. When the case entered

---

[9] The Ninth Circuit has outlined twelve factors for determining the reasonableness of a multiplier, which substantially overlap with the factors used by California courts: "(1) the time and labor required; (2) the novelty and difficulty of the questions involved; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases." *In re Bluetooth*, 654 F.3d at 942 n.7 (quoting *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975))

discovery, Class Counsel uncovered important and relevant documents, navigated complex issues to obtain pivotal deposition testimony, and presented expert discovery crucial to solidifying Plaintiffs' claims. Once discovery closed, the parties engaged in extensive briefing on various legal issues including Plaintiffs' motion for class certification, Fitbit's motion for summary judgment, Fitbit's motions to exclude expert testimony, and Fitbit's motion to decertify the classes. Class Counsel were successful in certifying classes of Fitbit customers in California and Florida, defeating Fitbit's bid for summary judgment, and ensuring that the consumer classes would receive the appropriate notice of this case.

At the settlement stage, Class Counsel were able to expand the case to consumers in eleven additional states and negotiated a $12.50 cash payment per claim which represents approximately 83% of Plaintiffs' best-case damages analysis of $15 per device. The settlement does not include any maximum cap on the total amount that will be paid to valid, timely claims. There is also no limitation on the number of claims that each class member can make, and the settlement allows for a simple claim filing via the settlement website which only requires the individual to enter their identifying information, the e-mail address they used to register the Fitbit device, and the state that they purchased the device in. The monetary relief to the class members is separate and apart from, and not reduced by, any costs associated with notice, settlement administration, attorneys' fees and costs, or incentive compensation to the named plaintiffs. In short, the relief provided to class members will never be reduced below the agreed upon $12.50 per claim relief.

- **This case was complex, novel, and Class Counsel expended considerable resources, undertook significant risk in pursuing this litigation, and were forced to limit other opportunities.**

Class Counsel assumed significant risk in undertaking this matter and litigating this case to the precipice of trial. Ex. 1, Perotti Decl. at ¶¶ 47, 68, 73-77. While Plaintiffs' claims in this case exist in the realm of consumer protection, they also required complex analysis of sleep science and the functionality of a complicated consumer wearable device. These issues required extensive work with experts in various fields including medicine, sleep science, and economics. Class Counsel, none of whom are engineers, scientists, or Silicon Valley inventors, navigated these various

complex issues and obtained exceptional results for the class members. During the course of this litigation, Class Counsel engaged five experts in the fields of medicine, sleep science, economics, and survey data. Additionally, Class Counsel deposed and challenged Fitbit's four experts which provided opinions on sleep science and surveys. Further, this case presented novel legal and factual questions related to the sleep functionality of a consumer wearable device. Class Counsel did not have a playbook of known class actions related to sleep tracking functionality or consumer wearable devices to draw from for this litigation. Instead, Class Counsel were forced to leverage their collective skills to form a novel and successful litigation strategy.

All of this is set against the backdrop of the nature of Class Counsel's practice. Class Counsel prosecuted this case on a contingency basis with no guarantee of any payment of fees or return of the costs associated with litigation. Despite this, Class Counsel committed 7,902.30 working hours to this case over the span of four years and $366,944.48 in necessary litigation costs, with no guarantee of payment. This commitment prevented Class Counsel from taking on other matters during this time period. Ex. 1, Perotti Decl. at ¶ 46; Ex. 3, Bartela Decl. at ¶ 23.

- **Counsel for both Plaintiffs and Fitbit are experienced and well respected class action and trial lawyers.**

Class Counsel are experienced class action and trial lawyers. Ex. 1, Perotti Decl. at ¶¶ 2-8; Ex. 2, Margolis Decl. at ¶¶ 2-7; Ex. 3, Bartela Decl. at ¶¶ 8-12. The results that Class Counsel achieved for the class during the course of this novel litigation demonstrate Class Counsel's expertise and abilities. Class Counsel have not obtained success in this case easily. Fitbit hired the firm Morrison Foerster, which is regarded as one of the premier law firms in the country, to defend them. Fitbit and its founders are experts in scientific fields, and indeed invented the challenged device, while Class Counsel have no such background. Despite this, Class Counsel represented Plaintiffs effectively and efficiently at every step, defeating well-funded and technically skilled opponents. This evokes a clear image of the expertise, skill, and dedication displayed by Class Counsel.

- **Comparable cases support the award of a modest 1.9 multiplier to Class Counsel's fee.**

In approving fee requests, courts perform a 'cross-check' between the hours worked and the value of a fund.  This confirms if a multiplier being sought tracks the value of the fund.  In doing this, courts routinely approve multipliers of two, three, and even four or five.  California district courts have routinely approved lodestar multipliers of 3.0, or above, in the context of class action attorneys seeking a percentage recovery from a common fund.  *Spann v. J.C. Penney Corp.*, 211 F. Supp.3d 1244, 1265 (N.D. Cal. 2016) ("Counsel's lodestar yields a 3.07 multiplier, which is well within the range for reasonable multipliers"); *Hefler v. Wells Fargo & Co.*, No. 16-cv-05479-JST, 2018 WL 6619983, at *14 (N.D. Cal. Dec. 18, 2018) (holding that a multiplier of 3.22 "is within the range of reasonableness"); *McColloch v. Baker Hughes Inteq Drilling Fluids, Inc.*, No. 1:16-cv-00157-DAD-JLT, 2017 WL 5665848, at *8 (E.D. Cal. Nov. 27, 2017) (holding that "lodestar multiplier of 3.95 … is within the range of acceptable lodestar multipliers previously approved by this court and others"); *Lee v. Global Tel'link Corp.*, No. 2:15-cv-02495-ODW (PLA), 2018 WL 4625677, at *11 (C.D. Cal. Sept. 24, 2018) (approving a lodestar multiplier of 3.0).

The identical issue is presented here:  what constitutes a reasonable multiplier with respect to class counsel's lodestar?  Given that California district courts routinely approve multipliers of 3.0 or above in common fund cases, plaintiffs' counsel request here of a multiplier of 1.9 is well within the range of reasonableness for class action litigation in California federal courts.

### c. The "constructive common fund" approach further demonstrates the reasonableness of Class Counsel's fee request.

Whether as a cross-check or as an independent fee calculation method, the Court can utilize the percentage-of-recovery method to award fees to Class Counsel.  This approach, like the lodestar approach, demonstrates that Class Counsel's total requested fee award of $7,317,707.50 is reasonable.  Though there is no "common fund" here, Courts have used "constructive common funds" in similar settlements when determining reasonable attorneys' fees.  *Nwabueze v. AT & T Inc.*, No. C 09-1529 SI, 2013 WL 6199596, at *11 (N.D. Cal. Nov. 27, 2013) (noting that "[w]here, as here, a settlement does not create a common fund from which to draw, the Ninth Circuit may analyze the case as a 'constructive common fund' for fee-setting purposes"); *Evans v. Linden Research, Inc.*, No. C-11-01078 DMR, 2014 WL 1724891, at *5-6 (N.D. Cal. April 29, 2014).

When determining the size of the constructive common fund, "the court looks to the maximum settlement amount that could be claimed." *Evans*, 2014 WL 1724891, at *6. This "includes all funds available to eligible claimants, whether claimed or not." *Id.* (citing *Williams v. MGM-Pathe Commc'ns Co.*, 129 F.3d 1026, 1027 (9th Cir. 1997));[10] *Nwabueze*, 2013 WL 6199596, at *11 ("[t]o calculate appropriate attorneys' fees under the constructive common fund method, the Court should look to the ***maximum settlement amount that could be claimed***") (emphasis added). In addition to the maximum value of available funds, the constructive common fund also "includes attorneys' fees and class administration costs." *Evans*, 2014 WL 1724891, at *6 (citing *Lopez v. Youngblood*, No. CV-F-07-0474 DLB, 2011 WL 10483569, at *12 (E.D. Cal. Sept. 2, 2011)); *Kumar*, 2017 WL 2902898, at * 8 (calculating total settlement value by adding the value of injunctive relief, amount allotted for claims, administration, and attorneys' fees and costs).

### i. The size of the "constructive common fund" demonstrates the reasonableness of Class Counsel's requested fees.

The constructive common fund in this case has a minimum value of $27,761,274.33.

First, there are ***at least***, 1,839,569 Settlement Sub-Class Members with claims worth $22,994,612.50:

- Fitbit's records identified 202,491 Settlement Sub-Class Members with a mailing address, who received notice via U.S. Mail. Ex. 4, McComb Decl. ¶ 5.

- Fitbit's records identified 205,045 Settlement Sub-Class Members with an e-mail address, who received notice via e-mail. Ex. 4, McComb Decl. ¶ 6.

- The reverse location search identified 1,145,427 e-mail addresses of Settlement Sub-Class Members in the Settlement States, who received notice via e-mail. Ex. 4, McComb Decl. ¶ 6.

- There are an additional approximately 286,607 Settlement Sub-Class Members that were not identified by the reverse e-mail location search.

---

[10] *Williams v. MGM-Pathe Communications Co.*, 129 F.3d 1026, 1027 (9th Cir. 2005) (holding that district court "abused its discretion by basing the fee on the class members' claims against the fund rather than on a percentage of the entire fund or on the lodestar"); *Young v. Polo Retail, LLC*, No. C-02-4546 VRW, 2007 WL 951821, at *8 (N.D. Cal. Mar. 28, 2007) ("The Ninth Circuit … bars consideration of the class's actual recovery in assessing the fee award").

The 286,607 unidentified Settlement Sub-Class Members result from the process of reverse locating e-mail addresses within Fitbit's records, which excluded 20% to 25% of the Sub-Class Members.[11] Thus, KCC's reverse location search, which identified 1,146,427 Settlement Sub-Class Members in the settlement states, likely failed to identify approximately 20% of the Settlement Sub-Class Members from Fitbit's e-mail records, or 286,607 class members. We arrive at 286,607 by dividing the number of Settlement Sub-Class Members identified through the reverse location search (1,146,427) by 80% (1,146,427 / 0.80). This yields a result of 1,433,034. The difference between 1,433,034 and 1,146,427 (the number of class members actually identified) is 286,607, which represents the number of Settlement Sub-Class Members that were not identified by the reverse e-mail location search.

In total, there were **at least** 1,839,569 Settlement Sub-Class Members (202,491 direct mail recipients, 1,350,472 e-mail recipients, and 286,606 class members missed by the reverse email search). So, **at a minimum**, the monetary relief available to the Settlement Sub-Class Members amounts to approximately $22,994,612.50 (the amount per claim of $12.50 multiplied by 1,839,569, the number of potential and known class members).

Second, settlement administration is likely to cost $548,292.35. Ex. 4, McComb Decl. ¶ 15. Third, class Counsel's lodestar is $3,851,425. And, fourth, Class Counsel's verified expenses are $366,944.48. Thus, the settlement's minimum value is $27,761,274.33.

### ii.  Class Counsel's requested fee is within the reasonable and acceptable range of fee awards in the Ninth Circuit.

"Under the percentage-of-recovery method, the attorneys' fees equal some percentage of the common settlement fund; in [the Ninth] circuit, the benchmark is 25%." *In re online DVD-Rental Antitrust Litig*., 779 F.3d 934, 949 (9th Cir. 2015)). While the benchmark in the Ninth Circuit is 25%, it "is subject to adjustment – upward or downward – based on the Court's analysis of the factors the Ninth Circuit considered in *Vizcaino*:  (1) the results achieved for the class; (2) the complexity of the case and the risk of and expense to counsel of litigating it; (3) the skill,

---

[11] The reverse location process can identify zip codes for only 75% to 80% of the e-mail addresses that are searched. Dkt. No. 263-2, at Page 7 of 9.

experience, and performance of counsel on both sides; (4) the contingent nature of the fee; and (5) fees awarded in comparable cases." *In re Capacitors Antitrust Litig*., Case No. 3:14-cv-03264-JD, 2017 WL 9613950, at *3 (N.D. Cal. June 27, 2017) (citing *Vizcaino*, 290 F.3d at 1048-50).

Here, Class Counsel's requested fee award of $7,317,707.50 represents 26.3% of the fund, a slight upward deviation from the benchmark. This deviation is appropriate given the risk undertaken by Class Counsel. No roadmap existed for suing over sleep-tracking devices. Nor was there a stable of sleep experts who routinely testified in legal disputes. Instead, Class Counsel had to develop the theory, identify the experts, retain the experts, pay the experts, and learn on its own dime about sleep science, all in the absence of any previous sleep-tracking litigation or any other indication from prior litigation that the claim was viable. And all this work was undertaken on a contingency basis.

District courts in California have routinely permitted upward deviations from the 25% benchmark. *General Mills*, *Inc*., 2013 WL 3213832, at *6 (awarding a 30% fee where "Class Counsel faced significant financial risks [and the] action involved complex scientific evidence and the use of expensive expert reports"); *Hendricks v*. *Starkist Co*., Case No. 13-cv-00728, 2016 WL 5462423, at * 12 (N.D. Cal. 2016) (court awarded 30% upward departure and a multiplier of 2.27 where the matter settled prior to class certification); *Soto v*. *Diakon Logistics* (*Delaware*), *Inc*., No. 8-cv-33-L-(JLB), 2015 WL 13344897, at *5 (S.D. Cal. June 25, 2015) (court approved an award of 29% noting that the "risks of litigation were real and substantial…. Class Counsel took this case on a contingent fee basis and had to forego other financial opportunities to litigate it."); *Djukich v*. *AutoNation Inc*., No. CV 13-04455-BRO (AGRx), 2015 WL 13756099, at *11 (C.D. Cal. Nov. 12, 2015) (court approved an upward adjustment to 28% and considered the "skill required to prosecute and manage [the] litigation" and the "contingent nature of the representation[.]); *In re Heritage Bond Litig*., No. 02-ML-1475 DT, 2005 WL 1594403, at *21 (C.D. Cal. June 10, 2005) (the court approved a fee award of 33.33% and cited to the complexity of the case, the contingent nature of the fee agreement, and the fact that class counsel paid all expenses incurred.).

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### IV.    Class Counsel's reasonable litigation expenses are recoverable.

Class Counsel seek reimbursement of their documented and verified litigation costs in the amount of $366,944.48.[12]  Class Counsel's expenses included payment for travel, deposition costs, expert fees, and document review and hosting services.  Dworken & Bernstein Expenses Report attached hereto as Exhibit 8.

"It is appropriate to reimburse attorneys prosecuting class claims on a contingent basis for 'reasonable expenses that would typically be billed to paying clients in non-contingency matters,' *i.e.*, costs 'incidental and necessary to the effective representation of the Class.'"  *In re Capacitors Antitrust Litig.*, 2017 WL 9613950, at *6 (quoting *Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994)); *Sullivan v. Dolgen California*, *LLC*, No. 3:15-cv-01617-JD, 2017 WL 3232540, at *2 (N.D. Cal. July 31, 2017) (holding that costs are recoverable in a class action where they were "reasonably necessary to the prosecution of this litigation, were the sort of expenses normally billed to paying clients, and were incurred for the benefit of the class.")

Reasonable expenses that may be reimbursed include "those for document production, experts and consultants, depositions, translation services, travel, mail and postage costs."  *In re Capacitors Antitrust Litig.*, 2017 WL 9613950, at *6 (citing *In re Media Vision Tech. Sec. Litig.*, 913 F.Supp. 1362, 1366 (N.D. Cal. 1995); *see also Odrick v. UnionBancal Corp.*, No. CV 10-05565 SBA, 2012 WL 6019495, at *6 (N.D. Cal. Dec. 3, 2012) (approving expenses "for a retained expert, mediation, travel, copying, mailing, legal research, and other litigation-related costs"); *In re Stec Inc. Securities Litigation*, SACV 09-01304-JVS CMLGx), 2013 WL 12129391, at *4 (C.D. Cal. May 23, 2013) (finding expenses for document hosting to be reasonable).

Here, Class Counsel seeks only reimbursement of expenses that were necessary to Class Counsel's effective representation of the classes in this matter.  The requested costs include travel expenses, deposition expenses, expert fees, document hosting and database fees, trial consultant fees, trial preparation costs, and mediation costs.  These expenses were not simply incidental to

---

[12] Class Counsel have unilaterally reduced their costs from $394,688 to $366,944.48 by eliminating expenses that Class Counsel have decided were not necessary to the litigation of this matter.  Ex. 1, Perotti Decl. at ¶ 78.

Class Counsel's representation, but instead represent necessary costs that Class Counsel absorbed with no guarantee of success.  Class Counsel seeks reimbursement for these costs in the amount of $366,944.48.

**V.      The class representatives have devoted extensive time and effort to this matter.**

Plaintiffs request incentive awards to Plaintiffs Clingman and Brickman in the amount of $5,000 each and to Plaintiffs Ciavarella, Ray, Landis, Gau, Wathey, Curtis, and Samy in the amount of $500 each.  These awards are appropriate as all named plaintiffs undertook the reputational risk associated with a major class action matter, spent considerable time assisting Class Counsel throughout the case, and are unopposed by Fitbit.

"Incentive awards are fairly typical in class action cases." *Rodriguez v. West Publishing Corp.*, 563 F.3d 948, 958 (9th Cir. 2009).  Incentive awards "'are discretionary ... and are intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general.'"  *Harrison v. E.I DuPont De Nemours and Company*, No. 13-cv-01180-BLF, 2018 WL 5291991, at *7 (N.D. Cal. Oct. 22, 2018), quoting *Rodriguez*, 563 F.3d at 958-59 (9th Cir. 2009).  *Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 267 (N.D. Cal. 2015) ("[i]ncentive awards typically range from $2,000 to $10,000.").

Here, Plaintiffs Brickman and Clingman have invested nearly four years in this litigation against one of the most well-known consumer technology companies in the world.  They have each spent considerable time speaking with counsel, reviewing documents, participating in discovery, attending depositions, attending mediation sessions, and working to represent the classes which justifies the unopposed request for an incentive award in the amount of $5,000 each.  Declaration of James Brickman, at ¶¶ 3-18 attached as Exhibit 9; Declaration of Margaret Clingman at ¶¶ 4-20 attached as Exhibit 10.  Additionally, Plaintiffs Ciavarella, Ray, Landis, Wathey, Curtis, Gau, and Samy request an incentive award of $500 each based on their involvement and time spent during the settlement phase of the matter. Declaration of Catherine Ciavarella attached as Exhibit 11; Declaration of Carissa Ray attached as Exhibit 12; Declaration of Jim Gau, II attached as Exhibit 13; Declaration of Michael Landis attached as Exhibit 14; Declaration of Erica Wathey attached as

Exhibit 15; Declaration of Stephanie Curtis attached as Exhibit 16; Declaration of Amanda Samy attached as Exhibit 17.

### VI. Class members will have notice and an opportunity to object to Class Counsel's request for an award of attorneys' fees, costs, and incentive compensation.

The direct notice of settlement was distributed to class members beginning on March 1, 2019 via e-mail, U.S. mail, and publication notice. All forms of notice described the terms of the settlement, the approximate amount of Class Counsel's lodestar calculation, the maximum multiplier that Class Counsel would seek, and the amount of out-of-pocket expenses that Class Counsel would seek. Ex. 4, McComb Decl. at Exhibits A and B. Further, the notice clearly identified the date upon which this motion would be filed and how this motion could be accessed. The last date on which a class member may object to the settlement is June 17, 2019, which is also clearly identified in the notice. Class members have ample time (38 days) to object to Class Counsel's fee request, lodge any objections, or exclude themselves from this settlement. *In re Mercury Interactive Corp. Sec. Litig.*, 618 F.3d 988, 993-95 (9th Cir. 2010); *In re Volkswagen "Clean Diesel" Marketing, Sales Practices, and Prod. Liab. Litig.*, 895 F.3d 597, 615 (9th Cir. 2018). Presently, 70 days after the dissemination of notice, no class members have lodged any objections to the settlement or to Class Counsel's requested fees or costs.

### VII. Conclusion.

For the foregoing reasons, Plaintiffs request the Court enter judgement granting the application for incentive awards, awarding Class Counsel $7,317,707.50 in fees, and $366,944.48 in costs.

Dated:  May 10, 2019

DWORKEN & BERNSTEIN CO., L.P.A.

By: */s/ Patrick J. Perotti*
Patrick J. Perotti, Esq.

One of the Attorneys for Plaintiffs and the Classes.

1

## <u>CERTIFICATE OF SERVICE</u>

2

3        A copy of the Motion for an Award of Attorneys' Fees, Costs, and Incentive Compensation

4   was filed on May 10, 2019 and notice was sent via the Court's ECF system to all counsel of record.

5                                             */s/ Patrick J. Perotti*
                                             _____
6                                             Patrick J. Perotti, Esq. (#0005481)
                                             **DWORKEN & BERNSTEIN CO., L.P.A.**
7

8                                             One of the Attorneys for Plaintiffs

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28