1   DAVID F. MCDOWELL (CA SBN 125806)
    DMcDowell@mofo.com
2   MORRISON & FOERSTER LLP
    707 Wilshire Blvd., Suite 6000
3   Los Angeles, California  94105
    Telephone: 213.892.5200
4   Facsimile: 213.892.5454

5   ERIN M. BOSMAN (CA SBN 204987)
    EBosman@mofo.com
6   JULIE Y. PARK (CA SBN 259929)
    JuliePark@mofo.com
7   KAI BARTOLOMEO (CA SBN 264033)
    KBartolomeo@mofo.com
8   MORRISON & FOERSTER LLP
    12531 High Bluff Drive
9   San Diego, California  92130-2040
    Telephone: 858.720.5100
10  Facsimile: 858.720.5125

11
12  Attorneys for Defendant
    FITBIT, INC.

13                  UNITED STATES DISTRICT COURT

14                  NORTHERN DISTRICT OF CALIFORNIA

15

16
    JAMES P. BRICKMAN, individually and as a       Case No. 3:15-cv-2077-JD
17  representative of all others similarly situated,

18                      Plaintiff,                 **DEFENDANT FITBIT, INC.'S
                                                   OPPOSITION TO PLAINTIFFS'
19          v.                                     MOTION FOR AN AWARD OF
                                                   ATTORNEYS' FEES, COSTS, AND
20  FITBIT, INC.,                                  INCENTIVE COMPENSATION**

21                      Defendant.
                                                   Date:     August 1, 2019
22                                                 Time:     10:00 a.m.
                                                   Ctrm:     11, 19th Floor
23                                                 Trial:    N/A

24                                                 The Honorable James Donato

25                                                 Date Action Filed:     May 8, 2015

26

27

28

FITBIT'S OPP. TO FEES MOTION
Case No. 3:15-cv-2077-JD
sd-737583

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ................................................................................................. 1

II.   RELEVANT BACKGROUND ............................................................................ 2

    A.    Plaintiffs' Counsel Spent More Than Half a Year Locating a Proper
        Plaintiff, Racking Up Unnecessary Hours Along the Way ................................... 2

    B.    Claims Made by the Settlement Class ................................................................. 4

III.  ARGUMENT ...................................................................................................... 4

    A.    Plaintiffs' $3.85 Million Lodestar Is Unreasonable ............................................ 5

        1.   Plaintiffs' counsel should not be awarded fees for their prolonged
               struggles to locate adequate named plaintiffs. ............................................ 5

        2.   Plaintiffs engaged in excessive conferencing and internal emailing. ......... 6

        3.   Plaintiffs' practice of block billing leaves the Court unable to
               evaluate the reasonableness of the time spent per task. .............................. 7

        4.   Numerous vague entries cannot serve as the basis for a reasonable
               lodestar amount. ......................................................................................... 8

        5.   Unreasonable billing in .10 hour increments inflate the total hours
               sought by Plaintiffs. .................................................................................... 8

        6.   Plaintiffs seek unreasonable fees for out-of-state travel. .......................... 10

        7.   Plaintiffs cannot recover non-compensable clerical work. ....................... 10

        8.   Plaintiffs do not provide the Court with sufficient support for their
               hourly rates ................................................................................................ 11

    B.    The Court Should Not Allow a Multiplier. ......................................................... 12

    C.    Plaintiffs' "Constructive Common Fund" Cross-Check Is Unsupported and
        Fails to Justify Their Counsel's Requested Windfall ........................................... 14

        1.   This case does not lend itself to a constructive common fund,
               especially in light of the low number of claims actually made ................. 14

        2.   Plaintiffs cannot create "missing" class members to artificially
               inflate the settlement value. ....................................................................... 16

    D.    A Significant Portion of Plaintiffs' Costs Is Not Recoverable. ........................... 16

        1.   The majority of Plaintiffs' costs are unrecoverable under California
               law. ............................................................................................................ 16

        2.   Even under federal law, Plaintiffs' costs are largely unreasonable or
               unrecoverable. ........................................................................................... 19

IV.   CONCLUSION .................................................................................................. 20

1

## TABLE OF AUTHORITIES

2

**Page(s)**

3

**Cases**

4

*Alvarado v. FedEx Corp.*,
   No. C 04-0098 SI, 2011 WL 4708133 (N.D. Cal. Sep. 30, 2011) .......................................10, 12

5

6

*Ancora Techs., Inc. v. Apple, Inc.*,
   No. 11-CV-06357 YGR, 2013 WL 4532927 (N.D. Cal. Aug. 26, 2013) ................................20

7

*Baker v. Baker*,
   No. 16-CV-08931-VAP-JPRx, 2018 WL 6190597 (C.D. Cal. Aug. 31, 2018).........................5

8

9

*Blum v. Stenson*,
   465 U.S. 886 (1984) ...........................................................................................................11, 12

10

*In re Capacitors Antitrust Litig.*,
   No. 3:14-CV-03264-JD, 2017 WL 9613950 (N.D. Cal. June 27, 2017) .................................19

11

12

*Darling Int'l, Inc. v. Baywood Partners, Inc.*,
   No. C-05-3758-EMC, 2007 WL 4532233 (N.D. Cal. Dec. 19, 2007).......................................7

13

14

*Davis v. City & Cty. of S.F.*,
   976 F.2d 1536 (9th Cir. 1992), *vacated in part on other grounds on denial of
   reh'g*, 984 F.2d 345 (9th Cir. 1993) ......................................................................................11

15

16

*Evans v. Linden Research, Inc.*,
   No. C-11-01078 DMR, 2014 WL 1724891 (N.D. Cal. Apr. 29, 2014) ...................................14

17

18

*G. R. v. Brentwood Union Sch. Dist.*,
   No. 12-CV-06326-JST, 2013 WL 3369259 (N.D. Cal. July 5, 2013) ....................................11

19

*Gates v. Deukmejian*,
   987 F.2d 1392 (9th Cir. 1992).................................................................................................1

20

21

*Hall v. FCA US LLC*,
   No. 1:16-CV-0684-JLT, 2018 WL 2298431 (E.D. Cal. May 21, 2018)..................................19

22

23

*Hamed v. Macy's W. Stores, Inc.*,
   No. CV 10-2790 JCS, 2011 WL 5183856 (N.D. Cal. Oct. 31, 2011)......................................19

24

*Harris v. Marhoefer*,
   24 F.3d 16 (9th Cir. 1994).......................................................................................................19

25

26

*Hawthorne v. Umpqua Bank*,
   No. 11-cv-06700-JST, 2015 WL 1927342 (N.D. Cal. Apr. 28, 2015) ....................................13

27

28

**TABLE OF AUTHORITIES**
(continued)

Page(s)

*Hefler v. Wells Fargo & Co.*,
   No. 16-CV-05479-JST, 2018 WL 6619983 (N.D. Cal. Dec. 18, 2018) ...................................13

*Hensley v. Eckerhart*,
   461 U.S. 424 (1983) ......................................................................................................... *passim*

*Hernandez v. Grullense*,
   No. 12-CV-03257-WHO, 2014 WL 1724356 (N.D. Cal. Apr. 30, 2014) ........................6, 8, 10

*Jadwin v. Cty. of Kern*,
   767 F. Supp. 2d 1069 (E.D. Cal. 2011) .....................................................................................6, 8

*Jardine v. Maryland Cas. Co.*,
   No. 10-3335 SC, 2013 WL 4805025 (N.D. Cal. Sept. 9, 2013) ...............................................17

*Johnson v. Hey Now Properties, LLC*,
   No. 2:16-CV-02931-WBS-KJN, 2019 WL 586753 (E.D. Cal. Feb. 13, 2019) ................16, 20

*Johnson v. Metro-Goldwyn-Mayer Studios Inc.*,
   No. C17-541RSM, 2018 WL 5013764 (W.D. Wash. Oct. 16, 2018) .......................................15

*Ketchum v. Moses*,
   24 Cal. 4th 1122 (2001) ....................................................................................................12, 13

*Kumar v. Salov N. Am. Corp.*,
   No. 14-CV-2411-YGR, 2017 WL 2902898 (N.D. Cal. July 7, 2017) ......................................14

*Ladas v. Cal. State Auto. Ass'n*,
   19 Cal. App. 4th 761 (1993) ....................................................................................................19

*Lee v. Glob. Tel*link Corp.*,
   No. 2:15-CV-02495-ODW (PLA), 2018 WL 4625677 (C.D. Cal. Sept. 24,
   2018) ........................................................................................................................................13

*Linex Techs., Inc. v. Hewlett-Packard Co.*,
   No. 13-CV-00159-CW (MEJ), 2014 WL 5494906 (N.D. Cal. Oct. 30, 2014),
   *adopted*, No. C 13-159 CW, 2014 WL 6482602 (N.D. Cal. Nov. 18, 2014) ..........................20

*Lopez v. S.F. Unified Sch. Dist.*,
   385 F. Supp. 2d 981 (N.D. Cal. 2005) .....................................................................................11

*Lopez v. Youngblood*,
   No. CV-F-07-0474 DLB, 2011 WL 10483569 (E.D. Cal. Sept. 2, 2011) ...............................14

*In re Magsafe Apple Power Adapter Litig.*,
   No. 5:09-CV-01911-EJD, 2015 WL 428105 (N.D. Cal. Jan. 30, 2015)............................12, 13

**TABLE OF AUTHORITIES**
(continued)

Page(s)

*McCulloch v. Baker Hughes Inteq Drilling Fluids, Inc.*,
   No. 1:16-CV-00157-DAD-JLT, 2017 WL 5665848 (E.D. Cal. Nov. 27, 2017) ....................13

*Miller v. Vicorp Restaurants, Inc.*,
   No. C-03-00777 RMW, 2006 WL 463544 (N.D. Cal. Feb. 24, 2006), *amended*,
   No. C-03-00777 RMW, 2006 WL 8443027 (N.D. Cal. Apr. 14, 2006) ................................18

*Missouri v. Jenkins by Agyei*,
   491 U.S. 274 (1989) ..........................................................................................................11

*Nuvasive, Inc. v. Madsen Med., Inc.*,
   No. 13-CV-2077 BTM (RBB), 2016 WL 5118325 (S.D. Cal. July 1, 2016) ..........................17

*Nwabueze v. AT & T Inc.*,
   No. C 09-01529 SI, 2013 WL 6199596 (N.D. Cal. Nov. 27, 2013) ......................................14

*Odrick v. UnionBancal Corp.*,
   No. C 10-5565, 2012 WL 6019495 (N.D. Cal. Dec. 3, 2012) ...............................................19

*RD Legal Funding, LLC v. Erwin & Balingit, LLP*,
   No. 08-CV-597-L RBB, 2011 WL 90222 (S.D. Cal. Jan. 10, 2011) ......................................18

*Reyes v. Bakery & Confectionery Union & Indus. Int'l Pension Fund*,
   281 F. Supp. 3d 833 (N.D. Cal. 2017) ...........................................................................2, 8, 12

*Sea Prestigio, LLC v. M/Y Triton*,
   No. 10-cv-2412-BTM-MDD, 2014 WL 497278 (S.D. Cal. Feb. 6, 2014) .............................10

*Self v. FCA US LLC*,
   No. 1:17-CV-01107-SKO, 2019 WL 1994459 (E.D. Cal. May 6, 2019) ...............................20

*Serrano v. Unruh*,
   32 Cal. 3d 621 (1982) ..........................................................................................................1

*Sorenson v. Mink*,
   239 F.3d 1140 (9th Cir. 2001)...............................................................................................14

*Spann v. J.C. Penney Corp.*,
   211 F. Supp. 3d 1244 (C.D. Cal. 2016) ................................................................................13

*In re Stec Inc. Sec. Litig.*,
   No. CV 09-8536-JVS(MLGx), 2013 WL 12129391 (C.D. Cal. May 23, 2013) .....................19

*Terry v. City of San Diego*,
   583 F. App'x 786 (9th Cir. 2014) ...........................................................................................6

# TABLE OF AUTHORITIES
## (continued)

Page(s)

*Thermolife Int'l, LLC v. Myogenix Corp.*,
No. 13-CV-651 JLS (MDD), 2018 WL 325025 (S.D. Cal. Jan. 8, 2018), *aff'd
sub nom. Thermolife Int'l LLC v. GNC Corp.*, 922 F.3d 1347 (Fed. Cir. 2019) ........................8

*Welch v. Metro. Life Ins. Co.*,
480 F.3d 942 (9th Cir. 2007)......................................................................................5, 6

*Williams v. MGM–Pathe Commc'ns Co.*,
129 F.3d 1026 (9th Cir. 1997)..................................................................................14, 15

*Yeager v. Bowlin*,
No. CIV 2:08-102 WBS JFM, 2010 WL 1689225 (E.D. Cal. Apr. 26, 2010) ..........................7

**Statutes**

28 U.S.C. § 1920 ............................................................................................................19

Cal. Code Civ. Proc. § 1033.5 .......................................................................16, 17, 18, 19

## I.    INTRODUCTION

Plaintiffs ask this Court to approve an award of attorneys' fees and costs in excess of *$7.5 million* following the parties' settlement of Plaintiffs' individual and class claims.  While Fitbit does not dispute that Plaintiffs' attorneys may recover reasonable fees pursuant to the parties' Settlement Agreement, Fitbit *does* dispute the basis for, and reasonableness of, Plaintiffs' requested award.  Plaintiffs' requested fees and costs are excessive, unsupported, and disproportionate to the ultimate recovery obtained by the Settlement Class.

Plaintiffs' lodestar figure is based on billing records from two law firms that are replete with excessive and unnecessary conferencing and internal meetings, vague entries, and otherwise unrecoverable or unsupported amounts — problems that have been exhaustively catalogued in the accompanying declaration of renowned attorneys' fees expert Grant D. Stiefel.  Plaintiffs' request to almost double their fees through a 1.9 multiplier is similarly unsupported.  Indeed, Plaintiffs' proposed multiplier is based on factors that have been accounted for in their already-generous base lodestar figure.

Further, Plaintiffs' attorneys seek a windfall relative to the number of *actual* claims made. Their attempt to ignore actual numbers and instead justify the fee request by comparison to a "constructive" common fund should be rejected.  A constructive common fund is not appropriate in cases, like this one, where less than 5% of the class made a timely claim.  Moreover, the numbers Plaintiffs use are neither real nor realistic.  They include imaginary, or purportedly "missing," class members in order to add millions of dollars to the constructive fund.  And Plaintiffs fail to mention, let alone account for, the actual number of claims made by the Settlement Class.

"[W]hen faced with a massive fee application the district court has the authority to make across-the-board percentage cuts either in the number of hours claimed or in the final lodestar figure as a practical means of trimming the fat from a fee application." *Gates v. Deukmejian*, 987 F.2d 1392, 1399 (9th Cir. 1992) (internal quotation marks omitted); *see also Serrano v. Unruh*, 32 Cal. 3d 621, 635 (1982) ("*Serrano IV*") ("A fee request that appears unreasonably inflated is a special circumstance permitting the trial court to reduce the award or deny one

1    altogether.").  The Court also has the authority to reject or reduce proposed fee enhancements,

2    like Plaintiffs' requested multiplier.  *See Reyes v. Bakery & Confectionery Union & Indus. Int'l*

3    *Pension Fund*, 281 F. Supp. 3d 833, 857 (N.D. Cal. 2017).  Given the substantial problems with

4    Plaintiffs' lodestar figure, claimed costs, and 1.9 multiplier, the Court should exercise its

5    authority to reduce Plaintiffs' award as discussed herein.[1]

6    ## II.    RELEVANT BACKGROUND

7        The Court and the parties are familiar with the procedural history of this action, and Fitbit

8    does not, as a general matter, disagree with Plaintiffs' recitation of the relevant events.  However,

9    Plaintiffs' procedural history fails to adequately account for the first seven months of this case,

10   during which Plaintiffs' counsel struggled to articulate a viable claim and repeatedly added,

11   dropped, and swapped named plaintiffs in an effort to avoid the parties' binding agreement to

12   resolve their disputes in arbitration, rather than court.  Plaintiffs also omit key facts about how

13   many class members have actually made claims, which is essential to valuing the settlement for

14   cross-check purposes.

15   ### A.    Plaintiffs' Counsel Spent More Than Half a Year Locating a Proper
16   ### Plaintiff, Racking Up Unnecessary Hours Along the Way.

17       Plaintiff James P. Brickman initiated this lawsuit on May 8, 2015, challenging Fitbit's

18   statements in certain advertising that its devices track sleep, track "hours slept," track "times

19   woken up," and track the "quality of sleep" of the wearer.  (ECF No. 1 ¶ 10.)  Plaintiff's core

20   theory of liability, at that time, centered on accuracy and precision.  That is, Mr. Brickman

21   claimed that Fitbit's advertising suggested that the devices could "track and provide precise and

22   accurate numbers, down to the minute, of how much sleep a user gets," but the "sleep-tracking

23   function simply does not and cannot accurately provide these numbers."  (*Id.* ¶ 23.)

24       Fitbit moved to dismiss the original Complaint on July 1, 2015.  (ECF No. 21.)  Rather

25   than oppose the motion, Plaintiffs filed the superseding First Amended Complaint ("FAC").

26   _____

27       [1] Fitbit does not contest the $5,000 incentive award sought by Plaintiffs Clingman and
     Brickman or the $500 incentive award sought by Plaintiffs Ciavarella, Ray, Landis, Gau, Wathey,
28   Curtis, and Samy.

1   (ECF No. 32.)  The FAC added a new plaintiff, Stephanie Mallick, who claimed to have

2   purchased a Fitbit Charge in February 2015 — approximately four months after Fitbit introduced

3   an arbitration agreement to its Terms of Service.  (*Id.* ¶ 40.)

4        Fitbit moved to dismiss the FAC on September 8, 2015.  (ECF No. 34.)  As Fitbit pointed

5   out in the motion, Plaintiffs' allegations were built on a contorted version of Fitbit's actual

6   representations, none of which promised a specific degree of accuracy.  (*Id.* at 1:2-6.)  Fitbit

7   noted that another court in the Northern District of California had twice rejected "accuracy"-

8   based claims against another activity tracker manufacturer that were virtually identical to the ones

9   Plaintiffs were attempting to advance.  (*See id.* at 1:26-2:1.)

10       On September 30, 2015, Fitbit also moved to compel arbitration of Ms. Mallick's claims

11   pursuant to the parties' written agreement to arbitrate.  (ECF No. 39.)  Plaintiffs opposed both

12   motions.  (ECF Nos. 42, 43.)

13       At the November 10, 2015 hearing on Fitbit's motions, this Court expressed serious

14   skepticism concerning Plaintiffs' "accuracy" theory and ability to avoid arbitration.  (Declaration

15   of David F. McDowell in Support of Fitbit's Opposition to Plaintiffs' Motion for an Award of

16   Attorneys' Fees, Costs, and Incentive Compensation ("McDowell Decl.") ¶ 2, Ex. 1 at 19:1-21:5;

17   *see also id.* at 22:11-14.)  When Plaintiffs' counsel attempted to voice their contention that

18   Fitbit's arbitration agreement was not enforceable, the Court stopped them short:

19            THE COURT: Let me just preamble that.  I don't think you have a

20            leg to stand on.

21   (*Id.* at 6:20-21.)  Plaintiffs' counsel immediately announced that Ms. Mallick would be dropped

22   from the lawsuit, and Plaintiffs would go hunting for a new named plaintiff.  (*See id.* at 6:23-

23   8:10.)

24       Plaintiffs filed a Second Amended Complaint on November 24, 2015, and, that same day,

25   filed a request to stay the action temporarily to facilitate their counsel's continued search for a

26   new named plaintiff.  (*See* ECF No. 54, 55.)  Plaintiffs filed their Third Amended Complaint on

27   December 8, 2015, adding new plaintiff Linda Sopoliga.  (ECF No. 57.)  But just two weeks later,

28   Plaintiffs filed a *Fourth* Amended Complaint, removing Ms. Sopoliga and adding new plaintiff

Margaret Clingman.  (ECF No. 60.)  The Fourth Amended Complaint also signaled a change in Plaintiffs' theory of liability.  Recognizing the myriad problems with their "accuracy" theory in light of Fitbit's actual representations, Plaintiffs pivoted away from the "accuracy" assertions that had driven the prior four iterations of the complaint over the past seven months.  Instead of accuracy, Plaintiffs alleged in the Fourth Amended Complaint that Fitbit's sleep-tracking representations were false or misleading because Fitbit's Devices "can only measure movement and not sleep."  (*Id.* ¶ 4.)  As Plaintiffs put it, "movement is not sleep," so Fitbit's representations must be false.  (*Id.* ¶ 35.)

Thus, despite the fact that Plaintiffs were represented by no fewer than two law firms and multiple lawyers at all times, it took seven months and five complaints for Fitbit to understand *who* was suing the company and *why* the company was being sued.

## B.  Claims Made by the Settlement Class.

The parties executed the Settlement Agreement and Release in October 2018.  (ECF No. 263-1.)  The parties went to great lengths to ensure that potential settlement class members received sufficient notice of the settlement.  Potential settlement class members received notice (1) directly by mail and email wherever possible, (2) through publication in multiple sources, and (3) through numerous online advertisements.  Despite ample notice, a 90-day claims period, and an all-cash benefit of $12.50 per claim, only 4.3% of eligible class members (60,362) submitted a timely claim.  (McDowell Decl. ¶ 3, Ex. 2.)  As Fitbit has maintained throughout this action, there is nothing wrong with the sleep-tracking feature on its products.  (*See* ECF No. 263-1 at 14:23-15:15 (denying any fault and contesting each of every claim asserted in this action).)  Fitbit submits that the relatively low number of actual claims made confirms that customers are satisfied with Fitbit's products.

## III.  ARGUMENT

Plaintiffs, as the party seeking fees, bear the burden to "submit evidence supporting the hours worked and rates claimed.  Where the documentation of hours is inadequate, the district court may reduce the award accordingly."  *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983).  "A court may award fees only for the number of hours it concludes were reasonably expended

1   litigating the case." *Baker v. Baker*, No. 16-CV-08931-VAP-JPRx, 2018 WL 6190597, at

2   *9 (C.D. Cal. Aug. 31, 2018) (reducing attorneys' fees award).  Here, Plaintiffs have failed to

3   provide the Court with sufficient evidence to warrant the inflated fees and costs sought.  The

4   Court should reduce the award accordingly.

5                    **A.       Plaintiffs' $3.85 Million Lodestar Is Unreasonable.**

6            Plaintiffs have failed to establish that their fee request is reasonable.  "In determining the

7   appropriate lodestar amount, the district court may exclude from the fee request any hours that are

8   'excessive, redundant, or otherwise unnecessary.'"  *Welch v. Metro. Life Ins. Co.*, 480 F.3d 942,

9   946 (9th Cir. 2007) (quoting *Hensley*, 461 U.S. at 434).  Plaintiffs' counsel claim to have billed

10  7,902.30 hours valued at $3,851,425, but their own billing entries call those figures into question.

11  Grant Stiefel, an attorneys' fees expert and the principal of a California-based legal auditing firm,

12  undertook an extensive review of the records underlying Plaintiffs' request for attorneys' fees and

13  costs.  (Declaration of Grant Stiefel in Support of Fitbit's Opposition to Plaintiffs' Motion for an

14  Award of Attorneys' Fees, Costs, and Incentive Compensation ("Stiefel Decl.") ¶¶ 3-20.)  His

15  review revealed numerous areas of excess and redundancy.  The Court should deduct ***at least***

16  $1,218,942.25 from Plaintiffs' lodestar as excessive, redundant, and not only unnecessary, but

17  also unsupported by the information Plaintiffs provided.  (*See id.* ¶ 58.)

18                    **1.      Plaintiffs' counsel should not be awarded fees for their**
19                    **        prolonged struggles to locate adequate named plaintiffs.**

20          Plaintiffs impermissibly include hours spent replacing plaintiffs and amending their

21  pleading in order to avoid arbitration.  The Supreme Court has made clear that a proper lodestar

22  calculation should exclude "hours that are . . . otherwise unnecessary."  *Hensley*, 461 U.S. at 434.

23  Here, Plaintiffs' counsel seek to recoup fees for work that was unnecessary and that unreasonably

24  multiplied these proceedings.  For example, Fitbit's motion to compel arbitration was withdrawn

25  "on the basis that Plaintiffs were substituting a plaintiff" who was not subject to Fitbit's

26  arbitration clause.  (ECF No. 55 at 1:27-28.)  At that stage, over six months after filing suit,

27  Plaintiffs sought permission to submit a third amended complaint because they had finally

28  "tracked down the pertinent paperwork" and realized that the planned substitute for Plaintiff

1    Mallick (also a substitute plaintiff) was subject to the arbitration clause.  (*Id.* at 2:2-6.)  Plaintiffs

2    amended yet again and filed a fourth amended complaint on December 22, 2015, over seven

3    months after filing their original complaint.  (ECF No. 60.)  The time expended fixing their own

4    errors and preparing new pleadings was "unnecessary."  *See Hensley*, 461 U.S. at 434.  As a

5    result, the Court should deduct the 67.50 hours Plaintiffs' counsel spent working on the original

6    through third amended complaints, resulting in a reduction of $28,285.00 from Plaintiffs'

7    lodestar.  (Stiefel Decl. ¶ 57, Ex. J.)

8                      **2.      Plaintiffs engaged in excessive conferencing and internal
                              emailing.**
9

10          The Court should reduce Plaintiffs' proposed base lodestar to account for the

11   "unreasonable amount of time spent conferencing between counsel."  *Hernandez v. Grullense*,

12   No. 12-CV-03257-WHO, 2014 WL 1724356, at *10 (N.D. Cal. Apr. 30, 2014) (reducing billing

13   requested for "unreasonable" amount of conferencing among plaintiff's counsel).  The Ninth

14   Circuit has upheld reductions in fees for intra-office conferences that were "unnecessary and

15   duplicative."  *Welch v. Metro. Life Ins. Co.*, 480 F.3d 942, 949 (9th Cir. 2007); *accord Terry v.

16   City of San Diego*, 583 F. App'x 786, 790 (9th Cir. 2014) (affirming the district court's discretion

17   to reduce "unnecessary or excessive" hours spent conferencing because "the law does not require

18   the district court to compensate for all the time [plaintiff's] counsel spent conferring among

19   themselves").  The same applies to excessive emails among plaintiffs' counsel.  *See Jadwin*

20   *v. Cty. of Kern*, 767 F. Supp. 2d 1069, 1121 (E.D. Cal. 2011) (reducing lodestar by 15% after

21   reviewing time entries based in part on "the duplication of effort [and] the sheer number of hours

22   spent corresponding with co-counsel and on clerical/admin tasks").

23          Plaintiffs spent a whopping ***2,115.8 hours*** on internal emails and meetings, adding up to

24   $1,037,595.00 in fees.  (Stiefel Decl. ¶¶ 26-27.)  In fact, over 67% of the billing entries submitted

25   with Plaintiffs' fee request relate to "individual communications by and between Plaintiffs'

26   lawyers, primarily individual email messages."  (*Id.* ¶ 26.)  Much of this time represents an

27   unnecessary duplication of effort and appears to have been "reconstructed" after the fact, rather

28   than recorded contemporaneously, by assigning a minimum of .10 hour to *each and every email*

*sent or received* by Plaintiffs' counsel during this action. (*Id.* ¶ 27.)  In a single day, on March 8, 2018, "Plaintiffs' counsel claims to have spent a staggering ***15.6 hours*** sending 151 emails back and forth at a claimed value of $7,902.50." (*Id.* ¶ 30.)  A full report summarizing the 10,023 individual billing entries relating to internal communications by and between Plaintiffs' counsel is found in Exhibit D to the Stiefel Declaration.  This unreasonable amount of time spent speaking among themselves, apparently padded after the fact, should be reduced by 50%, resulting in a discount of 1,057.9 hours and $518,797.50 in fees at Plaintiffs' claimed hourly rates. (*Id.* ¶ 35.)

### 3. Plaintiffs' practice of block billing leaves the Court unable to evaluate the reasonableness of the time spent per task.

Use of block billing is "fundamentally inconsistent with the lodestar method because it render[s] it virtually impossible to break down hours, leaving the court without the ability to accurately determine whether a reasonable amount of time was spent by counsel on a discrete task." *Yeager v. Bowlin*, No. CIV 2:08-102 WBS JFM, 2010 WL 1689225, at *1 (E.D. Cal. Apr. 26, 2010) (internal quotation marks omitted).  As a result, courts have held that a trial court may "exercise its discretion in assigning a reasonable percentage [reduction] to the block billed entries, ***or simply cast them aside***." *Id.* at *2 (emphasis added) (quoting *Bell v. Vista Unified Sch. Dist.*, 82 Cal. App. 4th 672, 689 (2000)).  Block billing is disfavored by both federal and state courts, and courts "typically make[] an adjustment ranging from 5% to over 30%." *Darling Int'l, Inc. v. Baywood Partners, Inc.*, No. C-05-3758-EMC, 2007 WL 4532233, at *9 (N.D. Cal. Dec. 19, 2007).

Here, Plaintiffs billed 1,380.60 hours using block billing, making it almost impossible for the Court to evaluate the reasonableness of the time spent on each individual task.  (Stiefel Decl. ¶ 36, Ex. F.)  Paying clients increasingly prohibit block billing, instead demanding more detail and accountability from law firms. (*Id.* ¶ 40, Ex. E.)  Attorneys' fees expert Mr. Stiefel recommends a "conservative 20 percent deduction" to the hours recorded through block billing. (*Id.* ¶ 43.)  Therefore, the Court should reduce the 1,360.60 hours and $698,792.50 in fees recorded using block billing by 20%, or $139,758.50. (*Id.*)

1

**4.      Numerous vague entries cannot serve as the basis for a reasonable lodestar amount.**

2

3      Many of Plaintiffs' billing entries are impermissibly vague because they do not allow the

4   Court to determine whether the time expended was unreasonable.  "Courts have reduced fee

5   awards for vague entries."  *Thermolife Int'l, LLC v. Myogenix Corp.*, No. 13-CV-651 JLS

6   (MDD), 2018 WL 325025, at *13 (S.D. Cal. Jan. 8, 2018) (reducing hours because vague entries

7   provided no "explanation as to their reasonableness"), *aff'd sub nom. Thermolife Int'l LLC

8   *v. GNC Corp.*, 922 F.3d 1347 (Fed. Cir. 2019); *see also Jadwin*, 767 F. Supp. 2d at 1108

9   (excluding time based on "vague and imprecise billing entries").

10      Here, Plaintiffs' billing entries include "a number of vague or cryptic entries that lack

11   sufficient detail to support a fee award."  (Stiefel Decl. ¶ 47.)  Entries such as "file review,"

12   "document review," and "review notes" are so vague that "it is impossible to determine what

13   work was actually being performed or what materials were reviewed, much less assess the

14   reasonableness of same."  (*Id.*)  Mr. Stiefel identifies $558,557.50 in fees for 1,091 hours of

15   vaguely-described work by Plaintiffs' counsel that cannot justify awarding the full time recorded.

16   (*Id.* ¶ 52, Ex. H.)  Because Plaintiffs have failed to provide the Court information sufficiently

17   detailed to evaluate the reasonableness of these vague billing entries, the Court should deduct

18   50% ($279,278.75) from Plaintiffs' lodestar.  (*Id.* ¶ 52.)

19

**5.      Unreasonable billing in .10 hour increments inflate the total hours sought by Plaintiffs.**

20

21      While some of Plaintiffs' entries reflect indecipherable block billing, numerous other

22   entries go to the opposite extreme:  Plaintiffs' billing records are replete with ".10" entries for

23   minor, repetitive, and often inconsequential tasks.  Excessive .10 hour entries have been reduced

24   by 50% in this district because "[m]any of these tasks reasonably took a fraction of six minutes

25   and should have been consolidated into one six-minute task."  *Hernandez*, 2014 WL 1724356, at

26   *8-*9.  Courts in this district are "critical of the practice of billing for multiple .1 hour entries

27   separately where they could be consolidated."  *Reyes*, 281 F. Supp. 3d at 855 (quotation omitted).

28   Plaintiffs submitted hundreds, if not thousands, of .10 hour (six-minute) time entries, often for

multiple .10 entries on the same day.  To take just one example, on January 21, 2014, one of Plaintiffs' attorneys billed .10 hours for "Email from PJB re: initial thoughts on Fitbit potential?" another .10 hours for "Email from FAB re: advertising language," and yet another .10 hours for "Email from JF re: analysis of Fitbit shortcomings."  (ECF No. 282-5 at 1-2.)  A particularly stunning example took place on February 2, 2017, when one of Plaintiffs' attorneys had *thirteen* separate .10 hour entries for individual emails.

| Single Dworken Attorney's .10 hour entries for February 2, 2017 | | |
|---|---|---|
| **Description** | **Time Billed** | **Price** |
| Email with Margolis, PJP re: Margolis spoke with Montgomery-Downs | .10 | $32.50 |
| Email with Margolis, PJP re: Montgomery-Downs | .10 | $32.50 |
| Email with Margolis, PJP re: Montgomery-Downs | .10 | $32.50 |
| Email with PJP, Margolis, Oloff re: filled in blanks in draft email/sent back for review | .10 | $32.50 |
| Email with PJP, Margolis, Oloff re: updated additions to draft email/letter | .10 | $32.50 |
| Emails with PJP, Margolis, Oloff re: draft email 2pm version for review | .10 | $32.50 |
| Email with Margolis, PJP, Oloff re: suggested changes to 2PM draft email | .10 | $32.50 |
| Email with PJP, Margolis, Oloff, cly re: is draft email ready to be finalized/sent; changes made | .10 | $32.50 |
| Email with PJP, Margolis, cly re: finalize letter/email to Stern; waiting on final approval from PJP before sending | .10 | $32.50 |
| Emails with PJP re: final approval to send letter to stern/all counsel on experts | .10 | $32.50 |
| Email with Bosman, Stern, Bartolomeo, Park, PJP, Margolis re: letter from PJP | .10 | $32.50 |
| Emails with jls re: phone message/call Margolis on cell | .10 | $32.50 |
| Emails with jls, cly re: PDF version of letter from PJP | .10 | $32.50 |
| **Total for .10 hour entries by Single Dworken Attorney on February 2, 2017** | **1.30** | **$422.50** |

1   (ECF No. 282-5 at 652-54.)  Each of these emails "reasonably took a fraction of six minutes."

2   *See Hernandez*, 2014 WL 1724356, at *8.  To separate out each individual email, most all of

3   which were related, unreasonably inflates the time spent per task.  Accordingly, the Court should

4   significantly reduce the billing related to unreasonable .10 hour increments.

5              **6.      Plaintiffs seek unreasonable fees for out-of-state travel.**

6              Plaintiffs claim to have spent the equivalent of *three months* of full-time billable attorney

7   work on travel.  (Stiefel Decl. ¶ 53.)  Plaintiffs themselves admit they billed significant amounts

8   of time for numerous trips from Ohio to California.  (ECF No. 282-1 ¶ 66; ECF No. 282-2 ¶ 30

9   ("substantial time spent traveling").)  By Mr. Stiefel's calculations, these trips to and from

10  California and Ohio amount to 389.80 hours of time — for travel alone — amounting to

11  $213,590.00 in fees.  (Stiefel Decl. ¶¶ 53, 56.)  These fees and hours include not only attendance

12  at hearings, but also at depositions.  (ECF No. 282-1 ¶ 66.)  These fees are unreasonable and

13  should be deducted from the Court's award.  For instance, counsel from Dworken and Bonezzi

14  could have made their appearances by telephone, particularly because local counsel was present

15  at virtually every hearing.  *See Sea Prestigio, LLC v. M/Y Triton*, No. 10-cv-2412-BTM-MDD,

16  2014 WL 497278, at *7 (S.D. Cal. Feb. 6, 2014) (excluding from the lodestar all travel billed as

17  "excessive . . . because most of her appearances could have been made by telephone, especially

18  since local counsel was present"); *Alvarado v. FedEx Corp.*, No. C 04-0098 SI, 2011 WL

19  4708133, at *18 (N.D. Cal. Sep. 30, 2011) (deducting 218 hours at $475/hour for travel time

20  spent driving between San Francisco and Fresno because "the 'travel' at issue is more properly

21  characterized as a lengthy . . . commute that should be absorbed into [the attorney's] overhead").

22  The $213,590.00 billed for 389.80 hours spent traveling to and from California and Ohio, which

23  does not include 133.50 hours claimed for travel between Plaintiffs' counsel's various offices in

24  Ohio or to expert witness meetings and depositions, should be excluded from any fee award.

25  (Stiefel Decl. ¶¶ 55-56, Ex. I.)

26             **7.      Plaintiffs cannot recover non-compensable clerical work.**

27             Clerical and routine tasks are not properly chargeable to the client and should instead be

28  allocated as law firm overhead; therefore, fees for these tasks are not recoverable.  The Supreme

Court has recognized that "purely clerical or secretarial tasks should not be billed at a paralegal rate [let alone an attorney rate], regardless of who performs them." *Missouri v. Jenkins by Agyei*, 491 U.S. 274, 288 n.10 (1989); *accord G. R. v. Brentwood Union Sch. Dist.*, No. 12-CV-06326-JST, 2013 WL 3369259, at *4 (N.D. Cal. July 5, 2013) ("hours billed for administrative tasks are not compensable"). Plaintiffs seek $39,232.50 for 74.7 hours spent by attorneys, charging hundreds of dollars an hour, on clerical work. (Stiefel Decl. ¶ 46.) The time entries reflecting these administrative tasks are shown in Exhibit G to the Stiefel Declaration. None of those fees are recoverable and, thus, should be deducted in full from Plaintiffs' lodestar.

### 8.    Plaintiffs do not provide the Court with sufficient support for their hourly rates.

Under the lodestar method, the hourly rates that Plaintiffs' counsel seek must also be reasonable. *See Davis v. City & Cty. of S.F.*, 976 F.2d 1536, 1545-46 (9th Cir. 1992) (internal citations omitted) ("[R]easonable fees are . . . to be calculated according to the prevailing market rates in the relevant community, with close attention paid to the fees charged by 'lawyers of reasonably comparable skill, experience, and reputation.'"), *vacated in part on other grounds on denial of reh'g*, 984 F.2d 345 (9th Cir. 1993); *Lopez v. S.F. Unified Sch. Dist.*, 385 F. Supp. 2d 981, 986 (N.D. Cal. 2005).

Plaintiffs have failed to meet their burden of producing "satisfactory evidence" that their rates are in line with the market rates in the Northern District of California. *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984). Aside from their own declarations, Plaintiffs offer only a brief declaration from another attorney who blesses their hourly rates without providing any examples of comparable rates for attorneys providing similar services with comparable skill, experience, and reputation. (*See* ECF No. 282-7 ¶ 15.) And neither Plaintiffs nor their lone non-party declarant offer any explanation for why a seventh-year associate is charging the same rate as an associate with thirteen years of legal experience, and *more* than two associates with eight years each of experience. (*See* ECF No. 282 at 13:8-15 (chart reflecting hourly rate for Stuber (7 years) as equal to that of Fleming (13 years) and more than the rate for Bartela (8 years) and Brickman (8 years).)

Moreover, the time sheets submitted by Dworken and Bonezzi reveal their staffing decision to have the most expensive lawyers — the senior partners at both firms — perform nearly half of all work.  Indeed, the two senior-most partners at Dworken and Bonezzi recorded well over one thousand hours more than all but one associate attorney.  (ECF No. 282 at 13:8-23.)  This choice resulted in higher fees and is at odds with the normal staffing structure at comparable law firms.  To avoid incentivizing inadequately supported rates and inefficient staffing, the Court should reduce the hourly rates requested by Plaintiffs.

## B.   The Court Should Not Allow a Multiplier.

Plaintiffs contend that they are entitled to a multiplier of 1.9 to nearly double their fees recovery.  But a multiplier is awarded only in "rare and exceptional cases . . . based on facts not subsumed in the initial lodestar calculation."  *Reyes*, 281 F. Supp. 3d at 857 (citation omitted).  Plaintiffs have failed to meet their burden of proving that enhancement is warranted in this case for three reasons.  *See Ketchum v. Moses*, 24 Cal. 4th 1122, 1138 (2001) ("[T]he party seeking a fee enhancement bears the burden of proof.").

*First*, Plaintiffs' arguments for a 1.9 multiplier were taken into account in the lodestar calculation.  *See In re Magsafe Apple Power Adapter Litig.*, No. 5:09-CV-01911-EJD, 2015 WL 428105, at *14 (N.D. Cal. Jan. 30, 2015) (declining to apply a multiplier because "Class counsel's time, labor, and skill, as well as the settlement amount involved and the results obtained have been considered in the lodestar calculation").  To virtually double Plaintiffs' fees based on the same reasons already reflected in the lodestar would be a "clear example of double counting." *See Blum*, 465 U.S. at 898-901 (reversing trial court's increase of fees award because the upward adjustment was a "clear example of double counting" because many of the identified factors were already considered by the lodestar calculation).  The Court should avoid such double counting here by declining to apply a multiplier.

*Second*, Plaintiffs' argument that the contingent nature of the fee award supports the imposition of a multiplier on their lodestar also falls flat.  Courts frequently deny requests for a multiplier even where the case presents a "contingent risk."  *See Alvarado*, 2011 WL 4708133, at *19 (recognizing the "contingent risk," but finding "other factors weigh[ed] in favor of no upward

1   adjustment of the lodestar"); *see also Ketchum*, 24 Cal. 4th at 1138 (recognizing that "the trial

2   court is not *required* to include a fee enhancement to the basic lodestar figure for contingent

3   risk") (emphasis in original).  As the court in *Hawthorne v. Umpqua Bank*, No. 11-cv-06700-JST,

4   2015 WL 1927342, at *5 (N.D. Cal. Apr. 28, 2015) explained, "contingency-fee litigation is 'not

5   a 'special consideration' — it's the nature of the beast.  Sometimes the recovery turns out to be

6   lower than expected, or even non-existent; sometimes the recovery turns out to be substantial or

7   even enormous.'"  Indeed, the risks and challenges Plaintiffs identified "are not unique to this

8   particular matter.  Cases take many years for resolution, research is conducted as to the issues at

9   hand, counsel develop theories of the issues involved, assemble resources, file cases,

10  communicate with clients and opposing counsel, and form co-counsel agreements."  *In re*

11  *Magsafe Apple Power Adapter Litig.*, 2015 WL 428105, at *14.  The Court should decline to

12  award Plaintiffs a windfall for doing their everyday work.

13          *Third*, the cases Plaintiffs rely on in their effort to double their recovery are

14  distinguishable.  All of the cases Plaintiffs look to as "comparable" for multiplier purposes (ECF

15  No. 282 at 17:27) only considered lodestar as a cross-check, not the primary method of evaluating

16  attorneys' fees.  *See Spann v. J.C. Penney Corp.*, 211 F. Supp. 3d 1244, 1264-65 (C.D. Cal. 2016)

17  (conducting cross-check using lodestar method); *Hefler v. Wells Fargo & Co.*, No. 16-CV-05479-

18  JST, 2018 WL 6619983, at *14 (N.D. Cal. Dec. 18, 2018) (same); *McCulloch v. Baker Hughes*

19  *Inteq Drilling Fluids, Inc.*, No. 1:16-CV-00157-DAD-JLT, 2017 WL 5665848, at *7-8 (E.D.

20  Cal. Nov. 27, 2017) (same); *Lee v. Glob. Tel\*link Corp.*, No. 2:15-CV-02495-ODW (PLA), 2018

21  WL 4625677, at *10 (C.D. Cal. Sept. 24, 2018) (reducing award based on lodestar cross-check).

22  As the courts in these cases noted, a lodestar cross-check is not scrutinized to nearly the same

23  degree as when lodestar is used as the primary method to determine the reasonableness of fees.

24  *See McCulloch*, 2017 WL 5665848, at *7 (explaining that "[w]here a lodestar is merely being

25  used as a cross-check, the court may use a *rough calculation* of the lodestar") (internal quotation

26  marks omitted) (emphasis added); *Spann*, 211 F. Supp. 3d at 1265 ("In conducting the cross-

27  check, the court need not 'closely scrutinize each claimed attorney-hour.'").  Here, the Court is

28  not conducting a rough calculation, but rather "must provide enough of an explanation to allow

1   for meaningful review of the fee award." *Sorenson v. Mink*, 239 F.3d 1140, 1146 (9th Cir. 2001).

2   Plaintiffs' cases are inapposite.

3       Therefore, the Court should decline to apply a multiplier to Plaintiffs' lodestar.

4       **C.    Plaintiffs' "Constructive Common Fund" Cross-Check Is**
            **Unsupported and Fails to Justify Their Counsel's Requested Windfall.**

5

6       Plaintiffs' counsel's billing entries fail to support their requested fee award.  Their

7   "constructive common fund" cross-check fares no better.  Use of a constructive common fund is

8   not warranted in this case, and Plaintiffs' counsel's attempt to use hundreds of thousands of

9   allegedly "missing" class members to artificially inflate the fund and skew the cross-check should

10  be rejected.

11          **1.    This case does not lend itself to a constructive common fund,**
                 **especially in light of the low number of claims actually made.**

12

13      As an initial matter, this case is ill-suited for use of a constructive common fund cross-

14  check.  The material differences between this case and the cases Plaintiffs cite to support their use

15  of a constructive common fund show why.  In the cases on which Plaintiffs rely, the defendants

16  did not object to the amount of fees sought.  *See Nwabueze v. AT & T Inc.*, No. C 09-01529 SI,

17  2013 WL 6199596, at *11 (N.D. Cal. Nov. 27, 2013) (calculating the total value of constructive

18  common fund by including *uncontested* fees and costs); *Evans v. Linden Research, Inc.*, No. C-

19  11-01078 DMR, 2014 WL 1724891, at *1 (N.D. Cal. Apr. 29, 2014) (same); *Lopez v.*

20  *Youngblood*, No. CV-F-07-0474 DLB, 2011 WL 10483569, at *3 (E.D. Cal. Sept. 2, 2011)

21  (same); *Kumar v. Salov N. Am. Corp.*, No. 14-CV-2411-YGR, 2017 WL 2902898, at *7-*8 (N.D.

22  Cal. July 7, 2017) (same, and parties agreed on the estimated total settlement value).  Here, in

23  contrast, there is no agreement regarding Plaintiffs' fees, costs, or the settlement value.  As

24  demonstrated above, Plaintiffs' lodestar is unreasonably inflated, and thus the numbers used by

25  Plaintiffs as a cross-check, which include the lodestar, are also inflated.

26      Plaintiffs' support for using the total settlement amount that could be claimed, as opposed

27  to actual claims made, is similarly distinguishable.  In *Williams v. MGM–Pathe Commc'ns Co.*, a

28  common fund case, the value of the $4.5 million settlement fund was undisputed.  129 F.3d 1026,

1027 (9th Cir. 1997). In fact, the settlement agreement included a provision that "the class attorneys would seek to recover fees based on the entire $4.5 million fund." *Id.* Not so here. Thus, "Plaintiff[s'] valuation of the benefit to the class is unreasonable." *Johnson v. Metro-Goldwyn-Mayer Studios Inc.*, No. C17-541RSM, 2018 WL 5013764, at *10 (W.D. Wash. Oct. 16, 2018) ("[T]he Court doesn't believe that *Williams* is controlling or instructive here as there is not a true common fund and Defendants have not agreed to any particular valuation of the settlement.").

Because *Williams* is distinguishable, the Court should look to the actual percentage of class participation to value the settlement fund. *See id.* at *10-*11 (noting that "100% class participation in a claims-made consumer class action is entirely unrealistic" and instead using 10% class participation as "a more reasonable, yet still highly generous, estimate"). Here, the claims period has ended, and 4.3% of the class made timely claims, amounting to 60,362 participants. (McDowell Decl. ¶ 3, Ex. 2.) This participation rate is reasonable and typical. *See id.* at *4 (noting that "participation rate as low as 3% [is] not unusual in consumer class actions") (citing 2 MCLAUGHLIN ON CLASS ACTIONS § 6:24 (14th ed.)). Even accepting Plaintiffs' lodestar, costs, and estimate of the settlement administration fees for the sake of illustration, the actual value of the settlement would be $5,521,186.84, as shown in the chart below:

| Value of Settlement Based on Claims Made<br>(accepting Plaintiffs' fees and costs numbers for the sake of illustration) | |
| --- | --- |
| Settlement value (60,362 claims x $12.50) | $754,525.00 |
| Plaintiffs' estimate of settlement administration (ECF No. 282 at 20:16) | $548,292.35 |
| Plaintiffs' inflated lodestar (*Id.* at 20:17) | $3,851,425.00 |
| Plaintiffs' unreasonable costs (*Id.* at 20:18) | $366,944.48 |
| **Total (inflated by unreasonable fees and costs)** | **$5,521,186.83** |

Plaintiffs' requested lodestar and multiplier amount to $7,317,707.50, ***133%*** of the total settlement value calculated above. This number is in no way "reasonable in relation to the results obtained." *Hensley*, 461 U.S. at 424. The Supreme Court has cautioned that an "unmistakable

1   windfall" is a basis for reversal on appeal. *Id.* at 455.  Allowing Plaintiffs' counsel to recover

2   *more* than the class would be an unmistakable windfall.  Applying the 25% benchmark offered by

3   Plaintiffs, the percentage of recovery here would be $1,371,296.71, which supports a significant

4   reduction to the fees sought by Plaintiffs.

**2.      Plaintiffs cannot create "missing" class members to artificially inflate the settlement value.**

7   Despite the actual number of claims made, Plaintiffs go *beyond* the total possible recovery

8   by *adding* fictitious members to the class.  Why?  Because Plaintiffs cannot achieve any

9   acceptable cross-check of their fee request without artificially inflating the size of the class.

10  Plaintiffs offer no legal support for adding 286,606 purportedly "missing" members to the

11  settlement class.  (*See* ECF No. 282 at 20:1-18.)  That is because no such legal support exists.

12  This convoluted calculation adds $3,582,575 to the settlement fund value.  The Court should

13  reject Plaintiffs' cross-check calculations on that basis alone, as it raises serious questions

14  regarding accuracy and reliability.

**D.      A Significant Portion of Plaintiffs' Costs Is Not Recoverable.**

16  Plaintiffs' request for every conceivable cost remotely related to this action should be

17  rejected, and their costs should be significantly reduced.  Although it is unclear from Plaintiffs'

18  Motion which body of law — state or federal — applies, under either statutory scheme, many of

19  Plaintiffs' claimed costs are not recoverable.

**1.      The majority of Plaintiffs' costs are unrecoverable under California law.**

22  Plaintiffs contend they are the "prevailing party" under the California Consumers Legal

23  Remedies Act, which includes a fee-shifting prong.  (*See* ECF No. 282 at 9:22-25); *see also*

24  *Johnson v. Hey Now Properties, LLC*, No. 2:16-CV-02931-WBS-KJN, 2019 WL 586753, at*4

25  (E.D. Cal. Feb. 13, 2019) ("[S]tate law governs the award of costs where a state law provision

26  allows for the awarding of costs.") (internal quotation marks omitted)).  California Code of Civil

27  Procedure § 1033.5 specifies what costs are recoverable by a prevailing party.  Costs are only

28  recoverable if they are both "reasonable in amount" and "reasonably necessary to the conduct of

the litigation."  (*See* Cal. Code Civ. Proc. § 1033.5(c)(2) and (3).)  Costs "merely convenient or beneficial" to "preparation" for litigation are not recoverable.  (*Id.*)  "Section 1033.5(b) provides that the following items are not allowable as costs, except when expressly authorized by law: (1) fees of experts not ordered by the court; (2) investigation expenses in preparing the case for trial; (3) postage, telephone, and photocopying charges, except for exhibits; (4) costs in investigation of jurors or in preparation for voir dire; (5) transcripts of court proceedings not ordered by the court."  *Nuvasive, Inc. v. Madsen Med., Inc.*, No. 13-CV-2077 BTM (RBB), 2016 WL 5118325, at *7 (S.D. Cal. July 1, 2016).

Plaintiffs seeks costs in a variety of categories — many of which are specifically excluded as recoverable costs under California law.  The following cost categories are either wholly or partially unrecoverable:

| Cost Categories That Are Totally Unrecoverable or Should Be Reduced | | |
|---|---|---|
| **Cost Category** | **Total Sought** | **Total Possibly Recoverable** |
| Expert Witness/Consulting Expert Fees | $146,714.38 | $0 |
| Attorney Travel Expenses | $95,547.41 | $16,203.82 for deposition travel |
| Mock Trial/Jury Consulting Fees | $29,446.95 | $0 |
| Court Reporters/Deposition Transcripts/Hearing Transcripts | $27,003.27 | $0 (not enough information to identify deposition transcripts) |
| Printing/Photocopying Costs | $4,862.02 | $0 |
| Parking | $46.50 | $0 |
| **Total** | **$303,620.53** | **$16,203.82** |

**Expert Witness/Consulting Expert Fees**.  Fees of experts not ordered by the Court are expressly "not allowable as costs."  Cal. Code Civ. Proc. § 1033.5(b)(1).  The Court did not order any experts in this action; therefore, Plaintiffs cannot recover any of the $146,714.38 spent on expert fees. *See Jardine v. Maryland Cas. Co.*, No. 10-3335 SC, 2013 WL 4805025, at *3 (N.D. Cal. Sept. 9, 2013) (removing all expert fees from costs award because they are not permitted under Cal. Code Civ. Proc. § 1033.5).

**Attorney Travel Expenses**.  "The only allowable travel expenses are those to attend

1   depositions." *RD Legal Funding, LLC v. Erwin & Balingit, LLP*, No. 08-CV-597-L RBB, 2011

2   WL 90222, at *6 (S.D. Cal. Jan. 10, 2011) (citing Cal. Code Civ. Proc. § 1033.5(a)(3)).  Here,

3   Plaintiffs lump together *all* attorney travel expenses, regardless of whether the travel involved a

4   deposition or not.  Indeed, only $16,203.82 in travel expenses expressly relate to depositions.

5   (*See* ECF No. 282-8.)  Another $60,680.16 in travel expenses sought by Plaintiffs expressly *do*

6   *not* relate to depositions, including $14,840.25 spent on March 19, 2018, for a settlement meeting

7   (ECF No. 282-8 at 15).  And the descriptions for the remainder of travel expenses do not identify

8   what the travel was for at all.  (*Id.*)  The majority of Plaintiffs' travel expenses are not recoverable

9   and should be reduced to, at most, the $16,203.82 specifically identified as deposition-related

10   travel.[2]

11        **Mock Trial/Jury Consulting Fees**.  "Costs in investigation of jurors or in preparation for

12   voir dire" are not allowed.  Cal. Civ. Proc. Code § 1033.5(b)(4).  Conducting mock trials and

13   engaging jury consultants fall precisely within this category of unrecoverable costs.  *See Miller*

14   *v. Vicorp Restaurants, Inc.*, No. C-03-00777 RMW, 2006 WL 463544, at *2 (N.D. Cal. Feb. 24,

15   2006) (noting that expenses for juror questionnaires and a "National jury project" are not

16   recoverable under the statute), *amended*, No. C-03-00777 RMW, 2006 WL 8443027 (N.D. Cal.

17   Apr. 14, 2006).  Accordingly, the Court should deny all $29,446.95 sought for this category of

18   costs.

19        **Court Reporters/Deposition Transcripts/Hearing Transcripts**.  Only two categories of

20   transcript costs are recoverable:  (1) deposition transcripts and (2) transcripts of court proceedings

21   *ordered by the court*. Cal. Code Civ. Proc. § 1033.5(a)(3)(A), (a)(9).  "Transcripts of court

22   proceedings not ordered by the court" are expressly not allowed.  *Id.* § 1033.5(b)(5).  Here,

23   Plaintiffs do not provide the Court with sufficient information to distinguish between recoverable

24   and unrecoverable transcripts.  Nor do Plaintiffs explain what statute establishes their right to

25   court reporter fees.  *Id.* § 1033.5(a)(11).  Without this information, the Court should deny

26   Plaintiffs' request for costs for court reporters and transcripts.

27   _____

28        [2] Even then, those deposition travel costs should be scrutinized as to their reasonableness.

**Printing/Photocopying Costs**.  "[P]hotocopying charges, except for exhibits" are not allowable as costs.  Cal. Code Civ. Proc. § 1033.5(b)(3); *see also Hamed v. Macy's W. Stores, Inc.*, No. CV 10-2790 JCS, 2011 WL 5183856, at *12 (N.D. Cal. Oct. 31, 2011) (denying "entire amount" of photocopy costs because "Plaintiff did not specify which part . . . was spent on exhibits used during trial").  This case did not proceed to trial, and thus no photocopies were used as trial exhibits.  Therefore, this entire amount should be denied.

**Parking**.  "[P]arking fees, cab fares and mileage/parking fees" are not recoverable.  *Ladas v. Cal. State Auto. Ass'n*, 19 Cal. App. 4th 761, 775 (1993) (internal quotation marks omitted).  Accordingly, the Court should eliminate the $46.50 in parking fees from Plaintiffs' costs.

Because the majority of Plaintiffs' costs are unrecoverable, the Court should reduce the costs award as described above.

### 2.  Even under federal law, Plaintiffs' costs are largely unreasonable or unrecoverable.

Even under federal law, Plaintiffs' requested costs are unreasonable and in part unrecoverable.  Recoverable costs are set out in 28 U.S.C. § 1920.[3]  The only expert fees recoverable under Section 1920 are those for "court appointed experts."  28 U.S.C. § 1920(6).  Here, Plaintiffs seek $146,714.38, representing 40% of their total requested costs, for expert witness fees.  The Court did not appoint any experts in this action.  Therefore, the Court should deduct $146,714.38 from Plaintiffs' costs as unrecoverable under federal law.  *See Hall v. FCA US LLC*, No. 1:16-CV-0684-JLT, 2018 WL 2298431, at *10 (E.D. Cal. May 21, 2018) (holding that "Plaintiffs are not entitled to recover the expert fees" in post-settlement fees motion because

---

[3] Plaintiffs rely on a number of common fund cases to argue for recovery of unreasonable costs, including $146,714.38 in expert fees.  (ECF No. 282 at 22:1-23:3.)  But as Plaintiffs themselves note, "there is no 'common fund' here."  (*Id.* at 18:23.)  Therefore, the cases Plaintiffs cite are inapposite.  *See In re Capacitors Antitrust Litig.*, No. 3:14-CV-03264-JD, 2017 WL 9613950 (N.D. Cal. June 27, 2017) (common fund case); *In re Stec Inc. Sec. Litig.*, No. CV 09-8536-JVS(MLGx), 2013 WL 12129391 (C.D. Cal. May 23, 2013) (same); *Odrick v. UnionBancal Corp.*, No. C 10-5565 SBA, 2012 WL 6019495 (N.D. Cal. Dec. 3, 2012) (same); *Harris v. Marhoefer*, 24 F.3d 16 (9th Cir. 1994) (awarding fees and costs under 42 U.S.C. § 1988 based on a civil rights claim).

1   experts were not appointed by the court).[4]

2          Additionally, Plaintiffs' document hosting costs are not recoverable.  Courts in this district

3   recognize that "[i]mportantly, e-discovery hosting costs and associated fees are not

4   compensable."  *Linex Techs., Inc. v. Hewlett-Packard Co.*, No. 13-CV-00159-CW (MEJ), 2014

5   WL 5494906, at *4 (N.D. Cal. Oct. 30, 2014), *adopted*, No. C 13-159 CW, 2014 WL 6482602

6   (N.D. Cal. Nov. 18, 2014); *accord Ancora Techs., Inc. v. Apple, Inc.*, No. 11-CV-06357 YGR,

7   2013 WL 4532927, at *3 (N.D. Cal. Aug. 26, 2013) ("[T]his Court agrees with others in this

8   district that e-discovery storage costs are 'non-compensable under Section 1920.'") (quotation

9   omitted).  Therefore, the Court should deduct the $38,390.05 for document hosting from

10  Plaintiffs' costs award.

11          Beyond the unrecoverable expert fees and document hosting costs, Plaintiffs seek

12  unreasonable costs.  For example, even if travel costs were recoverable, they should be

13  significantly reduced because Plaintiffs' request reflects significant duplication of effort.  At the

14  hearing on the motion for preliminary approval on September 13, 2018, for example, four

15  attorneys represented Plaintiffs, three traveling from Ohio despite local counsel also attending the

16  hearing.  (ECF No. 257 at 1; McDowell Decl. ¶ 4, Ex. 3.)  Based on Plaintiffs' expense list, they

17  seek reimbursement for $9,351.12 in costs for attending that hearing.  (*See* ECF No. 282-8 at 19.)

18  Plaintiffs have not explained why each of these individuals' attendance was necessary at the

19  hearing, where local counsel was present and only one of Plaintiffs' attorneys spoke on the

20  record.  (McDowell Decl ¶ 4, Ex. 3.)  Duplicative and unnecessary expenses should be excluded.

21          Plaintiffs have not shown that their expenses are reasonable.  Therefore, the Court should

22  significantly reduce the costs award.

23  **IV.    CONCLUSION**

24          There is no basis for awarding Plaintiffs attorneys' fees and costs in an amount

25  approaching the windfall requested.  Plaintiffs' billing records are rife with excessive

---

26          [4] *See also Self v. FCA US LLC*, No. 1:17-CV-01107-SKO, 2019 WL 1994459, at *15
    (E.D. Cal. May 6, 2019) ("Plaintiff is not entitled to recover the expert fees under section 1920");
27  *Johnson*, 2019 WL 586753, at *4 ("Plaintiff cannot recover as costs any of his litigation expenses
    for investigation and expert fees because they fall outside of the purview of Section 1920.").

28

conferencing and travel, block billing, and vague entries.  Plaintiffs' costs include mostly unrecoverable expenses.  Finally, Plaintiffs' requested fees and costs would result in a windfall greater than the claims actually made by the class.  For the reasons discussed herein, Fitbit respectfully requests that the Court:

    1.   Reduce Plaintiffs' base lodestar by at least $1,218,942.25;

    2.   Deny entirely Plaintiffs' request for a multiplier of 1.9; and

    3.   Decrease the costs awarded, as described herein, to account for amounts that are wholly or partially unrecoverable or unreasonable.

Dated: June 14, 2019          MORRISON & FOERSTER LLP

By: /s/ David F. McDowell
     David F. McDowell

Attorneys for Defendant
FITBIT, INC.