UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

BEFORE THE HONORABLE JAMES DONATO, JUDGE

JAMES P. BRICKMAN,                )
individually and as a             )
representative of all others      )
similarly situated,               )
                                  )
          Plaintiff,              )
                                  )
  VS.                             )      **No. C 15-2077 JD**
                                  )
FITBIT, INC.,                     )
                                  )
          Defendant.              )
_____ )      San Francisco, California
                                         Thursday, August 1, 2019


**TRANSCRIPT OF PROCEEDINGS**

**APPEARANCES**:

For Plaintiff:          DWORKEN & BERNSTEIN CO.,L.P.A.
                        60 South Park Place
                        Painesville, Ohio 44077
                   **BY: PATRICK J. PEROTTI, ESQ.**
                        **FRANK A. BARTELA, ESQ.**

                        LAW OFFICES OF JOHN A. KITHAS
                        One Embarcadero Center, Suite 1020
                        San Francisco, California 94111
                   **BY: CHRISTOPHER LAND, ESQ.**

 (Appearances continued on next page)


Reported By:   Katherine Powell Sullivan, CSR #5812, CRR, RMR
               Official Reporter - U.S. District Court

**<u>APPEARANCES (continued)</u>:**

For Plaintiff:           BONEZZI, SWITZER, POLITO AND HUPP
                             1300 East 9th Street, Suite 1950
                             Cleveland, Ohio 44114
                    **BY:  RONALD A. MARGOLIS, ESQ.**

For the Defendant:      MORRISON & FOERSTER LLP
                             707 Wilshire Boulevard, Suite 6000
                             Los Angeles, California  94105
                    **BY:  DAVID F. MCDOWELL, ESQ.**

<u>**P R O C E E D I N G S**</u>

---oOo---

**THE CLERK:**  Calling civil 15-2077, Brickman versus Fitbit, Inc.

Counsel.  Counsel, come state your appearances for the record, please.

**MR. PEROTTI:**  Patrick Perotti, with Dworken & Bernstein --

**THE CLERK:**  You need to come to the podium.

**THE COURT:**  Come on up and make your appearances.

**MR. MARGOLIS:**  Ronald Margolis with Bonezzi Switzer.

**MR. PEROTTI:**  Patrick Perotti with Dworken & Bernstein.

**MR. BARTELA:**  Frank Bartela, also with Dworken & Bernstein.

**MR. LAND:**  Christopher Land with the law firm of John A. Kithas.

**MR. MCDOWELL:**  And David McDowell on behalf of Fitbit.

**THE COURT:**  Okay.  Who's going to take the lead? Mr. Perotti?

**MR. PEROTTI:**  Yes.

**THE COURT:**  All right.  Let's just talk about final approval first.  Just one second.

Okay.  It's been a busy morning.  Thank you for staying.

1          MR. PEROTTI:  Thank you.  It was interesting.

2          THE COURT:  All right.  Now, on final approval I'll

3     need you to -- I don't think you -- I need you to do the

4     guidelines that we have on final approval motions.

5          So you have to present things in chart form and make it

6     consistent with those Northern California guidelines.  We need

7     change to change this.  They're called guidelines, but they're

8     actually required.

9          So you're going to have to resubmit it.  And I'm not doing

10    that just for technical things.  There are two things that I

11    want to address.  So you're just going to have to redo the

12    whole final approval to fit the Northern California guidelines.

13         MR. PEROTTI:  Yes, Your Honor.

14         THE COURT:  Now, the claims rate is not good.  It's

15    way too low.  So how can you juice that?  How can you get it

16    up?  How can you get more people to get this money?  This is a

17    good settlement.

18         MR. PEROTTI:  We agree.

19         THE COURT:  And the 3 percent, or whatever it was,

20    claims rate is just not cutting it for me.

21         MR. PEROTTI:  Your Honor, the only way we can envision

22    getting the claims rate up -- and I would defer to defense

23    counsel for a joint action -- is we could reissue notice to the

24    individuals who have not submitted claims, sort of a tickler.

25    And I think it wouldn't just be --

1    THE COURT:  That didn't happen already?  Just one and

2  that's it?

3    MR. PEROTTI:  Well, there was more than one.  There

4  was monographs in publications.  There was over 111 million

5  Googles and Yahoos.  And so it was out all over.

6    People who wanted to submit did submit.  But to encourage

7  more submissions, I suppose we could send them another notice

8  and add the same language, just indicate that 18 people have

9  already submitted; don't lose your chance; get in in the next

10  30 days.  And then 15 days after that say, 14 more have

11  submitted; don't lose your chance; submit again.

12    THE COURT:  Well, you know, that's happening in that

13  Equifax breach case.

14    MR. PEROTTI:  Yes, sir.

15    THE COURT:  People are doing that.

16    MR. PEROTTI:  Yes.

17    THE COURT:  And I just think for the amount of time,

18  and everything else, that went into this case, a settlement

19  rate of below -- a claims rate of below 4 percent is just not

20  good.

21    MR. PEROTTI:  I understand, sir.

22    THE COURT:  Is there anything in the system that's an

23  impediment other than notice?

24    MR. PEROTTI:  No.  We think the notice was robust.  It

25  was exactly what we should have sent out.  And it's, I guess,

1   the inertia of the customers.

2           **MR. MCDOWELL:**  Your Honor --

3           **THE COURT:**  Yes.

4           **MR. MCDOWELL:**  -- there are no real hurdles in the

5   claim process.

6           **MR. PEROTTI:**  No.  None.

7           **MR. MCDOWELL:**  So it's just a matter of --

8           **THE COURT:**  You just submit it online.  Right?

9           **MR. MCDOWELL:**  People are happy with the product and

10   didn't want their 12.50.

11           **THE COURT:**  Well, I'm not sure that's the only

12   explanation.  It may be for some, but I just think people get

13   bombarded with spam, junk, unsolicited -- I mean, it feels like

14   every other lawsuit I get in this court is about somebody

15   complaining about something that they got they didn't want in

16   email.

17      I'm afraid this is not making it to people because it's

18   going into spam filters.  They're seeing something and their

19   eyes are glazing over.

20           **MR. PEROTTI:**  Glazing over, yes.

21           **THE COURT:**  What does the re line look like?  The

22   subject line?

23           **MR. PEROTTI:**  I think that it's "In re Fitbit Class

24   Settlement."  I think that's the term.

25           **THE COURT:**  That's hardly a grabber.

 1          MR. PEROTTI:  We'd like to say --

 2          THE COURT:  You're sitting at home, you've had a long

 3     day at the office --

 4          MR. PEROTTI:  The problem is --

 5          THE COURT:  -- is that an email you leap to open?  I

 6     don't think so.

 7          MR. PEROTTI:  Yeah.  If we say open this and get $12,

 8     they'll think it's a scam.  So we'd like to figure out some

 9     other language that would grab their attention.

10          THE COURT:  Well, you know, the ones I've seen for

11     Equifax have said things like -- well, Equifax is up to $125,

12     so it was a little bit different.  But I'd like you to think

13     about it.  Okay?  I'm not going to micromanage it.

14          MR. PEROTTI:  Yes, sir.

15          THE COURT:  But think of a punchier subject line.

16          MR. PEROTTI:  Okay.

17          THE COURT:  And if you need some more time, obviously

18     you've got to extend the claims time or something.

19          MR. PEROTTI:  Yes, sir.

20          THE COURT:  So please do that.

21        Please accord the final approval application with the

22     guidelines.  You'll see you have to present a chart, sometimes

23     called a food label chart.

24          MR. PEROTTI:  I'm sorry?

25          THE COURT:  Called a food label chart, sometimes it

looks like that.  It's helpful.

Okay.  Now, you just work out -- you two have been good about this.  You two just work out what you need to do and give me a plan.  Okay?

Now, on the fees I was surprised that there was so much adversarial interaction on the fees.  I am not going to read 2,000 pages of billing entries.  I'm just not going to do that.  Okay?  So you have two choices.

I'm going to look at you in the first instance, Mr. Perotti.  You have two choices.

I recently hired an accountant because I had a massive MDL, and she is handling the attorneys' fees applications for me there.  It is a massive MDL, and they're not even close to the level of adversarial issues here.

I could tap her and let her give me an expert report.  You all pay for that, of course, at her rates.  But I'm happy to do that.

Or I'm happy to do something more practical, and that is I am going to award a multiplier because, as I've said before, this was a good result in an interesting case, and it deserves the benefit of a multiplier.

But, you know, I'm willing to just spot the -- this is just an idea -- just willing to spot the defendant on a no-questions-asked basis.  I'm not ruling one way or the other.  I'm just saying for the sake of practicality, fine, I'll give

them 90 percent of what they challenge.  And that way you don't
have to get an accountant, and I'll just use that figure for
the multiplier.

So that would be basically -- to be honest, I think that
would be taking your lodestar, 3.8 million, and taking it down
to something like 2.8 million, which is about 150,000 more than
the defendant says you should get.

So I'm not going to put you on the spot.  You can just
decide.  All right.  Talk to your colleagues.  But I am going
to award a multiplier.  And I actually think a multiplier of
about 2.5 is appropriate in this case.

**MR. PEROTTI:**  Yes, Your Honor.  If I could interrupt,
I have to say that it's not my opposing counsel's
responsibility that we're here today disputing.  He doesn't
write checks, and he's got two different -- 408 constrains me,
but he's got two different organizations, Fitbit and something
else, that he's got to deal with.  I don't envy what he's had
to go through in the last couple of months.

**THE COURT:**  Well, who's the other?

**MR. MCDOWELL:**  An insurer.

**THE COURT:**  Oh, okay.  All right.

Well, you just think it over, okay, and let me know what
you'd like to do.  The accountant, if you want to look her up,
she's in my Capacitors MDL case.  I just haven't done the order
yet, just haven't had time.  But it's Ms. Ip, I-P, and she was

here about two weeks ago.  And she's the person I probably would use if you want to go that route.

Now, on costs, it's just not clear to me why the civil procedure section would apply in this case.  I mean, we've got a case class in Florida, Ohio, all those other states.  I don't know why Section 1033.5 would determine costs for the whole case.

MR. MCDOWELL:  Well, I mean, I think they are brought here under the CLRA claim.  And that's why we thought the --

THE COURT:  Well, they are, but the Florida claim is totally different.  And I actually certified a Florida class, and then you all took it even farther and created all these other state classes, and none of those are California law.

I'm not seeing why -- I'm not sure the result is different.  I -- as a practical matter, I don't think the FRCP rule and the 1033.5 lead to particularly different results.  But I just thought I would give you a chance to --

MR. MCDOWELL:  I --

THE COURT:  -- tell me what I missed.

MR. MCDOWELL:  I think at the end of the day the outcome is the same.

THE COURT:  Okay.  All right.  So I'm just going to apply the federal rule then.  Okay?

Is that all right, Mr. McDowell?

MR. MCDOWELL:  It is, Your Honor.

1           **THE COURT:**  Okay.  Good.

2       Are you okay with that, Mr. Perotti?

3           **MR. PEROTTI:**  Yes, sir.

4           **THE COURT:**  Okay.  So I'll just take a look at it.  I

5     mean, you know, so looking at the costs -- let's see.

6     Typically, expert witness fees are not reimbursed, so you've

7     got 146,000 in that.

8           **MR. PEROTTI:**  We believe that where there's a showing

9     of necessity for the expert for the fundamental underlying

10    claim that they can be reimbursed.

11          **THE COURT:**  I think that's true in a lot of cases.  I

12    mean, sort of the bright-line rule is you don't get your

13    experts unless I ordered you to do something.  And I didn't.

14    So I'm kind of inclined to say no to that.

15        The court reporter fees, I mean, that's all fine.  I'm not

16    sure why the defendant objected to that.

17        Photocopying is fine.

18        Mock trial and jury consulting, I don't really see any

19    case law on that one.

20        Mr. McDowell?

21          **MR. MCDOWELL:**  I don't think there is, but there isn't

22    an authorization for it as a recoverable cost under the

23    statute.

24          **THE COURT:**  That's probably --

25          **MR. PEROTTI:**  And our response is the statute isn't

expressly onerous. It's an outline of specific things plus anything that's reasonable, necessary, and productive to the advancement of the interests of either the party, the plaintiff or defendant.

In this case, this is very customary in this type of a case to do this, because don't forget -- you didn't forget -- we almost were at trial for this case.

THE COURT: Oh, I do. Yes.

MR. PEROTTI: And so that's why this was done, so that we had --

THE COURT: That's ordering the *foie gras* supplement. That's not just getting your main meal. I mean, jury consultants, mock trial, that's sort of the bonus course.

MR. PEROTTI: Well.

THE COURT: Not your meat and potatoes. So I think that one's out.

I'm fine with the Court, as I said, everything -- oh, the travel. I didn't -- what's the issue with travel, Mr. McDowell? Too many people? Is that the basic?

MR. MCDOWELL: Well, Your Honor, it's too many people. I mean, the travel costs related to depositions is covered by the statute.

THE COURT: Yes.

MR. MCDOWELL: But this is for them just to get to the courthouse. And the fact that they're filed in San Francisco

1   when they're in Ohio, that's not something that should be on my

2   client's nickel.

3        **MR. PEROTTI:**  And with due respect, when we took the

4   deposition of the expert who made that opinion, he said no one

5   should get travel expenses; they should have found a California

6   lawyer.

7        **THE COURT:**  We're not going to go that far, but --

8        **MR. PEROTTI:**  No.  I think that every bit of travel

9   that we expended, if we were to take it away, that would be a

10  suggestion that you shouldn't go if you're out of state.  And

11  that's --

12       **THE COURT:**  Well, I'm not going to do that.  But, you

13  know, I think for deposition travel I think it should be

14  probably just two attorneys.

15     Who did you take to these depositions?

16       **MR. PEROTTI:**  I think we -- except for maybe one

17  deposition, we only had two attorneys.  Matter of fact, most of

18  them we only had Mr. Margolis, because they were expert

19  depositions.  And I didn't go because that was not my

20  bailiwick.

21       **THE COURT:**  If it's two attorneys or fewer, I don't

22  have a problem with that.

23       **MR. PEROTTI:**  Thank you, sir.

24       **THE COURT:**  Now, you said driving to the courthouse?

25  You can't do that.  Are you charging for mileage to the

courthouse?

     **MR. MCDOWELL:**  They were charging for airfare to the courthouse.

     **THE COURT:**  So that's just being in San Francisco.  I mean, that's life.  So that's fine.

  So if you agree that -- well, not agree because I'm just telling you.  If you accept the proposition that two or fewer attorneys is fine and travel to California for court proceedings that are required is fine, is there anything out of the 95,000 that would be left over that you would challenge?

     **MR. MCDOWELL:**  If that's your ruling, no, Your Honor.

     **THE COURT:**  All right.  So that's fine too.

  So I think everything is fine except for the experts.  All right?

     **MR. PEROTTI:**  Yes, sir.

     **THE COURT:**  I'll enter costs on that basis.

  And you're going to let me know -- how about a week from today? -- what your election is with respect to --

     **MR. PEROTTI:**  The notice.

     **THE COURT:**  No, fees.

     **MR. PEROTTI:**  Oh, the fees.  Okay.  Yes.

     **THE COURT:**  We can have an accountant do it or you can accept the proposal that we just -- accept 90 percent, no questions asked from the defendant.  I'm not going to say this or that was wrong.

1          MR. PEROTTI:  Yes, sir.

2          THE COURT:  Not going to do that.  So, you know, no

3    one could ever point to that and say anything about you.

4          MR. PEROTTI:  Absolutely.  Thank you.

5          THE COURT:  So I leave it up to you.

6       Yes, please.

7          MR. MCDOWELL:  Well, as I understand the Court's

8    ruling, I don't have -- I don't have a say in this matter.

9          THE COURT:  You do, but either you're going to get a

10   forensic accounting or I'm accepting nine out of ten of your

11   objections.

12         MR. MCDOWELL:  I understand, Your Honor.

13         THE COURT:  Which is a higher acceptance rate than any

14   other lawyer ever gets in federal court.  So, either way, you

15   win, I think.  But if you don't think that, you can let me

16   know.

17         MR. MCDOWELL:  Well, I mean, I would like to be heard

18   on the multiplier if the Court --

19         THE COURT:  Well, that's fine.  We can do that in a

20   minute.  But what about just that -- is there anything on that

21   proposition that gives you heartburn?

22         MR. MCDOWELL:  No, Your Honor.

23         THE COURT:  Okay.  Now, let's talk about the

24   multiplier.  Go ahead.

25         MR. MCDOWELL:  Well, Your Honor, I don't think this is

a case that a multiplier is, in fact, appropriate.  This is --
I mean, at the end of the day, given what the claim rate was,
and the benefit, I just don't see it being an extraordinary
case.

It's certainly not an extraordinary case with the Court
increasing the multiplier from what the plaintiffs have asked
for.  I think the case law is pretty clear that this isn't --
you know, it has to be something rare and exceptional, and I
don't think this is.

This is a case of a dispute about an advertisement and the
claims about a product.  Yes, it was litigated.  It was
litigated hard.  We saw this court a fair number of times.  But
I don't think there was anything more than that.

That fee and that request is being paid as a result of the
hourly rates of the counsel who are involved here, and they're
being well compensated for it.  So I just don't see the basis
for it.  I don't see that it's consistent with the standard of
an extraordinary result.  And I don't see the basis for that --

**THE COURT:**  Okay.  All right.  Thank you.

Mr. Perotti.

**MR. PEROTTI:**  Your Honor, I don't have much to add
other than what you already indicated, and that is this was an
extraordinary result.  We didn't reinvent the wheel.  There was
no wheel.  This had never been done before.

This concept has never been tried before.  And as a result

of having my co-counsel, who was good with expert witnesses and technical engineering matters, we managed to figure out some things that even the Fitbit people weren't able to figure out.

We identified issues about actigraphy and accelerometers and things that -- there was a de facto injunction here. Because of what we did, they changed their product, and they don't do this anymore the way they used to.

And that was a really, really good result for these people because these people were getting a product that -- at the very beginning, once we went through 170,000 documents, we found the memo where their own people, the most important one of their own people, their own scientist said, This does not do what we're saying it does.

And the only way we figured that out was starting from the very beginning and figuring out exactly how actigraphy worked. And that's why we had to have so many experts and so many -- this was not something very simple at all.

THE COURT: It was high risk, in other words.

MR. PEROTTI: It was not only high risk, it was time-consuming, and it was inventive and creative and novel and all the other things the Court indicates in the Ninth Circuit and all the other circuits are the determinates of multipliers.

And we believe that with a cutdown in hours, that Your Honor's suggestion of the multiplier you mentioned would be very fair as an outcome in this case because of -- and, again,

it's not Dave's fault, it's not my fault that the class members didn't participate.  But they certainly had an opportunity.

And if you look at the standard in the Ninth Circuit where you talk about constructive common fund benchmarks, we ended up getting to those same numbers using that standard.

And in the Ninth Circuit, the Court not only goes with 25 percent, in some of the cases they have gone farther than 25 percent.  They have gone, in *Vizcaino* and *Johnson*, 28 percent, 30 percent.

If you look at the value available to these people, that's -- that's a guideline.  And that is exactly what we achieved.

**THE COURT:**  Well, you know none of this is final until we get the whole fees thing worked out.  But my view is the claims -- the claims rate is of concern to me, but that is not an issue that goes to fees.  It goes to the potential overall victory.

And what has been striking to me was plaintiffs recovered $12.50 per claimant with a prediction that 15 would be the home run at trial.  I mean, I very rarely see cases that get that close to the maximum outer recovery obtained only after jury trial.

**MR. PEROTTI:**  With nothing taken out, we think, is the key.  12.50, no attorneys' fees are taken out, no costs are taken out, no notice is taken out.  They get the whole --

1    **THE COURT:** Well, and I was going to say the

2  settlement itself -- and I compliment both sides, as I did last

3  time because it takes two to get these things done -- resulted

4  in the change in the technology or at least was associated with

5  the change in the technology and the fact that every dollar

6  goes to the pockets of the injured people --

7    **MR. PEROTTI:** Yes, sir.

8    **THE COURT:** -- with all of this ancillary --

9  attorneys' fees and incentive awards, which I'll get to in a

10  moment, all ancillary to that. So it was a pretty outstanding

11  result.

12    And I see a lot of these, and I know what my benchmark is,

13  and this is definitely at the high end of the bell curve.

14    **MR. PEROTTI:** Thank you, sir.

15    **THE COURT:** And it is within the bounds of

16  constructive common funds multipliers and cross-check --

17    **MR. PEROTTI:** Yes.

18    **THE COURT:** -- with a percentage of recovery. So I'm

19  pretty much probably going to stick with that.

20    But, you know, let's get all this done, and I'll give you

21  my final word when we get that. We have the final approval to

22  work out.

23    You know, on incentive fees, I have a long and strong

24  opposition to them, but in this case this is the first time

25  where the fees did not come out of a common fund.

 1          So given that factor, it's not going to take money out of

 2    any other class members' pockets, I am fine with the unopposed

 3    request of $5,000 each for plaintiffs Brickman and Clingman,

 4    and then $500 for the remaining seven named plaintiffs.

 5               MR. PEROTTI:  Thank you, sir.

 6               THE COURT:  I'll put that in there as well.

 7          And you two just work out timelines and everything else.

 8    Okay?  And I really encourage you to think creatively on how to

 9    juice it up for the claims rate.

10               MR. PEROTTI:  Thank you very much.

11               THE COURT:  There's no restrictions on that.  You

12    don't have to write like a lawyer.

13               MR. PEROTTI:  Yes, sir.

14               THE COURT:  All right.  Thank you.

15               MR. PEROTTI:  Thank you very much.

16               MR. MCDOWELL:  Thank you, Your Honor.

17          (At 12:01 p.m. the proceedings were adjourned.)

18                         - - - - -

19

20

21

22

23

24

25

**CERTIFICATE OF REPORTER**

     I certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.

DATE: Friday, August 2, 2019

_____

Katherine Powell Sullivan, CSR #5812, RMR, CRR
U.S. Court Reporter