Patrick J. Perotti (Ohio Bar No. 0005481)
Frank A. Bartela (Ohio Bar No. 0088128)
DWORKEN & BERNSTEIN CO., L.P.A.
60 South Park Place
Painesville, OH 44077
Telephone: (440) 352-3391
Facsimile: (440) 352-3469
Email: pperotti@dworkenlaw.com
         fbartela@dworkenlaw.com
Appearance *pro hac vice*

John A. Kithas (California Bar No. 64284)
Christopher Land (California Bar No. 238261)
LAW OFFICES OF JOHN A. KITHAS
One Embarcadero Center, Suite 1020
San Francisco, CA 94111
Telephone: (415) 788-8100
Facsimile: (415) 788-8001
Email: john@kithas.com
         chris@kithas.com

ATTORNEYS FOR PLAINTIFFS

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMES P. BRICKMAN, individually and as a representative of all others similarly situated,<br><br>                              Plaintiff,<br><br>            v.<br><br>FITBIT, INC.,<br><br>                              Defendant. | Case No. 3:15-cv-2077-JD<br><br>**UNOPPOSED AMENDED MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENT**<br><br>The Honorable James Donato |

# TABLE OF CONTENTS

Table of Authorities ................................................................................................................ ii

Notice of Motion and Motion ................................................................................................ iv

I.    Introduction ................................................................................................................. 1

II.   Background Facts and Details of Settlement .............................................................. 3

     a.  The history of the litigation ................................................................................. 5

     b.  Settlement Negotiations ...................................................................................... 6

     c.  The relief provided to the Settlement Sub-Classes ............................................. 7

     d.  The Initial Notice Plan ........................................................................................

     e.  The Reminder Campaign and increase in claims made by Settlement Sub-Class Members ............................................................................................................. 8

III.  Argument ................................................................................................................... 10

     a.  Final approval of the settlement is appropriate .................................................. 10

          1.  Strength of Plaintiffs' case and the risk, expense, complexity, and likely duration of further litigation, including risk of maintaining class action status .......................................................................................... 11

          2.  The amount offered in settlement ................................................. 13

          3.  Extent of discovery completed and the stage of proceedings ...................... 14

          4.  The experience and views of counsel ......................................... 16

          5.  The reaction of the Settlement Sub-Class Members has been positive ........ 17

          6.  The Settlement Agreement is presumed fair because it is the product the product of good faith, informed, and arms-length negotiations after extensive fact and expert discovery ........................................................ 19

IV.  Final certification of the Settlement Sub-Classes is warranted ................................. 20

V.   The objection filed by Wanda Cochran failed to comply with the requirements of the Settlement and should be stricken from the record ................................................... 20

VI.  Conclusion ................................................................................................................ 22

Certificate of Service ............................................................................................................ 23

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## <u>TABLE OF AUTHORITIES</u>

<u>Cases</u>

*Bayat v. Bank of the West*, No. C-13-2376, 2015 WL 1744342 (N.D. Cal. Apr. 15, 2015) .......... 13

*Bellinghausen v. Tractor Supply Co*., 306 F.R.D. 245 (N.D. Cal. 2015) ................................ 11, 15

*Brickman, et al. v. Fitbit, Inc*., Case No. 3:15-cv-2077-JD ............................................................ 3

*California v. eBay, Inc*., No. 5:12-cv-05874, 2015 WL 5168666 (N.D. Cal. Sept. 3, 2015) ........ 10

*Churchill Vill., LLC v. Gen. Elec.*, 361 F.3d 566 (9th Cir. 2004) ............................................ 10, 19

*Churchill Village, L.L.C. v. General Electric*, 361 F.3d 566 (9th Cir. 2004) ............................... 10

*Class Plaintiffs v. City of Seattle,* 955 F.2d 1268 (9th Cir. 1992) ............................................... 10

*Colgan v. Leatherman Tool Group, Inc*., 135 Cal. App. 4th 663 (Cal. 2nd Dist. 2006) .............. 14

*Curtis–Bauer v. Morgan Stanley & Co., Inc.,* No. C 06-3903, 2008 WL 4667090 (N.D. Cal. Oct. 22, 2008) ...................................................................................................................................... 11

*Dyer v. Wells Fargo Bank, N.A.,* No. 13-cv-02858, 2014 WL 1900682 (N.D. Cal. May 12, 2014) ........................................................................................................................................................ 10

*Evans v. Linden Research, Inc.,* No C-11-01078 DMR, 2014 WL 1724891 (N.D. Cal. Apr. 29, 2014) ................................................................................................................................... 18, 19

*Garber v. Office of Comm'r of Baseball*, No. 12-CV-03704 (VEC), 2017 WL 752183 (S.D.N.Y., Feb. 27, 2017) ............................................................................................................................. 21

*Garner v. State Farm Mut. Auto Ins. Co.,* No. CV 08 1365, 2010 WL 1687832 (N.D. Cal. 2010) ........................................................................................................................................................ 19

*Hanlon v. Chrysler Corp.,* 150 F.3d 1011 (9th Cir.1998) ................................................ 10, 11, 20

*In re Apple iPhone 4 Prods. Liab. Litig.*, No. 5:10-md-2188 RMW, 2012 WL 3283432 (N.D. Cal. Aug. 10, 2012) .............................................................................................................................. 19

*In re Bluetooth Headset Prods. Liab. Litig*., 654 F.3d 935 (9th Cir. 2011) ................................... 19

*In re Cendant Corp.*, 264 F.3d 201 (3rd Cir. 2001) ..................................................................... 11

*In re Linkedin User Privacy Litigation*, 309 F.R.D. 573 (N.D. Cal. 2015) ...................... 10, 12, 19

*In re Netflix Privacy Litigation*, No. 5:11-cv-00379,  2013 WL 1120801 (N.D. Cal. 2013)........ 19

*In re Omnivision Techns., Inc*., 559 F.Supp.2d 1036 (N.D.Cal. 2008)......................................... 16

*In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934 (9th Cir. 2015) ............................... 11, 19

*In re Warfarin Sodium Antitrust Litig.*, 212 F.R.D. 231 (Del. 2002)............................................ 11

*Larsen v. Trader Joe's Company*, No. 11-cv-05188, 2014 WL 3404531 (N.D.Cal. July 11, 2014) ................................................................................................................................................ 15

*Left Coast Wrestling, LLC v. Dearborn Int'l LLC*, No. 317CV00466LABNLS, 2018 WL 2328471 (S.D. Cal. May 23, 2018) ........................................................................................................ 14

*Linney v. Cellular Alaska Partnership*, 151 F.3d 1234 (9th Cir. 1998)................................... 13, 15

*Lipuma v. American Express Company*, 406 F. Supp. 2d 1298 (S.D. Fla. 2005)......................... 13

*Lucas v. White*, 63 F.Supp.2d 1046 (N.D. Cal. 1999)................................................................... 22

*Miller v. Ghirardelli Chocolate Co.*, No. 12-cv-04936, 2015 WL 758094 (N.D. Cal., Feb. 20, 2015) ........................................................................................................................................ 22

*Moore v. Verizon Commc'n Inc.*, No. C 09-1823 SBA, 2013 WL 4610764 (N.D. Cal. Aug. 28, 2013) ........................................................................................................................................ 19

*Nat'l Rural Telecomm. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 534 (C.D. Cal. 2004) ............. 13, 15

*New York v. Reebok Int'l Ltd.*, 903 F. Supp. 532 (S.D.N.Y. 1995) *aff'd,* 96 F.3d 44 (2nd Cir. 1996) ................................................................................................................................................ 15

*Noll v. eBay, Inc.,* 309 F.R.D. 593 (N.D. Cal. 2015) ............................................................... 11, 12

*Officers for Justice v. Civil Service Com'n of City and County of San Francisco*, 688 F.2d 615 (9th Cir. 1982) ................................................................................................................................. 13

*Ontiveros v. Zamora*, 303 F.R.D. 356 (E.D.Cal. 2014) ................................................................ 15

*Partnership Co. v. Atlantic Acquisition Ltd. P'ship*, 100 F.3d 1041 (1st Cir.1996) .................... 15

*Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948 (9th Cir. 2009) ................................... 11, 12, 16, 20

*Rodriguez v. West Publl'g Corp.,* No. CV05-3222 R(MCx), 2007 WL 2827379 (C.D. Cal. Sept. 10, 2007) .................................................................................................................................. 12

*Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370 (9th Cir. 1993)................................................... 12

**Statutes**

California's False Advertising Law, Cal. Bus. & Prof. Code § 17500, *et seq.*.............................. 5
Consumer Legal Remedies Act (Cal. Civ. Code § 1750, *et seq.* ................................................... 5
Florida's Deceptive and Unfair Trade Practices Act, Fla. Stat. § 501.201, *et seq.*........................ 5
Magnuson-Moss Warranty Act, 15 U.S.C. § 2301, *et seq.*........................................................... 5
Violations of California's Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, *et seq.*...... 5

**Rules**

Fed.R.Civ.P. 12(b)(6)..................................................................................................................... 5
Fed.R.Civ.P. 23(c)(2)(B)................................................................................................................ 4
Fed.R.Civ.P. 23(e)........................................................................................................................ 12
Fed.R.Civ.P. 23(e)(2)................................................................................................................... 12
Fed.R.Civ.P. 30(b)(6)............................................................................................................... 6, 19

## NOTICE OF MOTION AND MOTION

**PLEASE TAKE NOTICE** that on February 6, 2020 at 10:00 AM, or as soon as the matter may be heard, in Courtroom 11, before the Honorable James Donato, Plaintiffs shall and hereby do move the Court for an Order:

1. Of final approval of the settlement of this class action as set forth in the class action Stipulation of Settlement dated October 29, 2018 ("Settlement Agreement").

2. Final certification, for settlement purposes only, of the following Settlement Sub-Classes: all persons who purchased and registered online, a Fitbit Flex, One, or Ultra during the indicated time period in: California (2009 – October 27, 2014); Florida (2009 – October 27, 2014); New York (March 26, 2012 – October 27, 2014); Pennsylvania (March 26, 2012 – October 27, 2014); Ohio (March 26, 2012 – October 27, 2014); Michigan (March 26, 2012 – October 27, 2014); New Jersey (March 26, 2012 – October 27, 2014); Illinois (March 26, 2013 – October 27, 2014); Missouri (March 26, 2013 – October 27, 2014); Texas (March 26, 2014 – October 27, 2014); Georgia (March 26, 2014 – October 27, 2014); North Carolina (March 26, 2014 – October 27, 2014); and Washington (March 26, 2014 – October 27, 2014).

3. Entry of final judgment, order to pay valid claims and settlement costs.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## I.      Introduction.

After three years of litigation and shortly before trial was set to begin, the Plaintiffs and Defendant, Fitbit, (herein "Parties") reached the proposed settlement of this class action (herein "Settlement"). This Court granted preliminary approval of the Settlement, conditionally certified the Settlement Sub-Classes, and set a final approval hearing for August 1, 2019. The Parties then initiated notice to the Settlement Sub-Class Members (the "Initial Notice Plan") and submitted the previous Motion for Final Approval on July 25, 2019, prior to the August 1, 2019, final approval hearing. Dkt. No. 292.

After the August 1, 2019, final approval hearing, the Parties conferred and devised a reminder notice plan (herein "Reminder Campaign") pursuant to the Court's instructions. Dkt. Nos. 306 and 307. The Reminder Campaign included one round of reminder direct mail postcards sent to Settlement Sub-Class Members for which there was no e-mail address, three rounds of reminder e-mail messages, and over 3.8 million Facebook advertisements targeted directly to the Settlement Sub-Class Members. See Declaration of Deborah McComb, KCC, dated January 13, 2020, at ¶¶ 13-19, attached hereto as Exhibit 2. To ensure that the Reminder Campaign provided the broadest possible reach, Class Counsel voluntarily agreed to pay for two rounds of the e-mail reminders and over half of the targeted Facebook advertisements. See Declaration of Patrick J. Perotti, dated January 13, 2020, at ¶ 44, attached hereto as Exhibit 1. After the Reminder Campaign was approved by the Court, the campaign began on and included a 60 day claims period, which closed on December 22, 2019.

In total, the Reminder Campaign increased the claims submitted by Settlement Sub-Class Members by over 80,000 claims to a total of 141,490 claims, which totals $1,768,625 in monetary relief to be paid directly to the Settlement Sub-Class Members. Ex. 2, McComb Decl. at ¶ 22. The success of the Initial Notice Plan and the Reminder Campaign and positive reaction by the Settlement Sub-Class Members are fully outlined in the below chart which tracks the notice provided, opt-outs, and claims made by the Settlement Sub-Class Members during both the Initial Notice Plan and the Reminder Campaign.

| By the Numbers: Initial Notice Plan, Reminder Campaign, and Claims[1] | | | |
|---|---|---|---|
| | **Initial Notice** | **Reminder Campaign** | **Total** |
| **Notices Mailed** | 202,491 | 22,115 | 224,606 |
| **Notices Returned as Undeliverable** | 15,807 | 2,447 | 18,254 |
| **Undeliverable Notices Re-Mailed** | 6,702 | 0 | 6,702 |
| **Undeliverable Notices Returned with Forwarding Address and Re-Mailed** | 1,668 | 0 | 1,668 |
| **Notices E-mailed** | 1,350,472 | 3,802,739 | 5,153,211 |
| **Banner Advertisements on Yahoo! and Google Platforms** | 111,495,038 | 0 | 111,495,038 |
| **Facebook Ads** | 0 | 3,844,691 | 3,844,691 |
| **Timely Opt-Outs** | 212 | 0 | 212 |
| **Objections[2]** | 0 | 0 | 0 |
| **Amount of Claims** | 60,783 | 80,707 | 141,490 |
| **Total Monetary Value of Claims** | | | $1,768,625 |

Ex. 2, McComb Decl. at ¶¶ 7-10, 12-18, 21-23.

Plaintiffs submit this unopposed Amended Motion for Final Approval to request that the Court grant final approval of the Settlement, grant final certification of the Settlement Sub-Classes, authorize the payment of all valid claims made by the Settlement Sub-Class Members, and authorize the payment of all settlement administration costs.

The Settlement provides every Settlement Sub-Class Member who submitted a timely and valid claim a cash payment of $12.50. The Settlement covers the same California and Florida state classes previously certified by this Court. Dkt. No. 194. In addition, by agreement of the Parties, the Settlement also included those who purchased the Fitbit Devices in 11 other states during the

---

[1] As required by the Procedural Guidance for Class Action Settlements for the Northern District of California, this chart identifies, "the number of undeliverable class notices and claim packets, the number of class members who submitted valid claims, the number of class members who elected to opt out of the class, and the number of class members who objected to or commented on the settlement." *See* Procedural Guidance for Class Action Settlements, dated December 5, 2018, *available at* https://www.cand.uscourts.gov/forms/procedural-guidance-for-class-action-settlements/ (last viewed Jan. 7, 2020).

[2] No objections were made to the settlement. However, there was a single objection made to Class Counsel's fee request, which is discussed below at Section V.

class period.  Specifically, the Settlement Sub-Classes, as defined in the Settlement, include:  all persons who purchased and registered online, a Fitbit Flex, One, or Ultra during the indicated time period in:  California (2009 – October 27, 2014); Florida (2009 – October 27, 2014); New York (March 26, 2012 – October 27, 2014); Pennsylvania (March 26, 2012 – October 27, 2014); Ohio (March 26, 2012 – October 27, 2014); Michigan (March 26, 2012 – October 27, 2014); New Jersey (March 26, 2012 – October 27, 2014); Illinois (March 26, 2013 – October 27, 2014); Missouri (March 26, 2013 – October 27, 2014); Texas (March 26, 2014 – October 27, 2014); Georgia (March 26, 2014 – October 27, 2014); North Carolina (March 26, 2014 – October 27, 2014); and Washington (March 26, 2014 – October 27, 2014).

The notice provided by the Initial Notice Plan and the Reminder Campaign meets the Federal Rule of Civil Procedure 23(c)(2)(B) most "practicable under the circumstances" standard. The notice targeted Settlement Sub-Class Members through multiple rounds of direct e-mail notification, direct mail notification, publication notice, internet banner advertisements, targeted Facebook advertisements, and the settlement website.

The Settlement meets the standard for final approval.  The Court should enter the proposed final approval order that: (1) finally approves the terms of the Settlement Agreement; (2) grants final certification of the Settlement Sub-Classes for settlement purposes; (3) requires that Fitbit pay all settlement costs including claims to Settlement Sub-Class Members, settlement administration costs, and notice costs; and (4) enters a final judgment in this matter.[3]

## II.  Background Facts and Details of Settlement

### a.  The history of the litigation.[4]

On May 8, 2015, Plaintiff James P. Brickman filed a class action complaint against Fitbit in the United States District Court for the Northern District of California, San Francisco Division, titled *Brickman*, *et al*. *v*. *Fitbit*, *Inc*., Case No. 3:15-cv-2077-JD (the "Action").  On December 22,

---

[3] Plaintiffs' previously submitted their request for an award of attorneys' fees and costs as well as incentive compensation for the named Plaintiffs. Dkt. No. 282. This motion was heard by the Court during the initial final approval hearing on August 1, 2019.

[4] The history of the litigation has been extensively briefed in the Amended Motion for Preliminary Approval and Class Counsel's Motion for Attorneys' Fees, Costs, and Incentive Awards.  Dkt. Nos. 263, 383.

2015, Plaintiff Brickman, together with Plaintiff Margaret Clingman, filed the operative Fourth Amended Complaint (the "4AC" or "Complaint"). The Complaint alleged that Fitbit's advertising of the sleep-tracking feature on the Devices was false or misleading and that the Devices do not track sleep as advertised. The Complaint alleged the following causes of action: (1) Violations of California's Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, *et seq*. ("UCL") (4AC ¶¶ 70-98); (2) Violation of the Consumer Legal Remedies Act (Cal. Civ. Code § 1750, *et seq*. ("CLRA") (*id*. ¶¶ 104-109); (3) Violation of Florida's Deceptive and Unfair Trade Practices Act ("FDUTPA"), Fla. Stat. § 501.201, *et seq*. (*id*. ¶¶ 134-140); (4) Common Law Fraud (*id*. ¶¶ 141-109); (5) Negligent Misrepresentation (*id*. ¶¶ 149-154); and (6) Unjust Enrichment/Quasi-Contract (*id*. ¶¶ 155-164). The Complaint also included causes of action for violation of California's False Advertising Law, Cal. Bus. & Prof. Code § 17500, *et seq*.; violation of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301, *et seq*.; and breach of implied warranties; however, Plaintiffs James P. Brickman and Margaret Clingman subsequently abandoned those claims. The Complaint sought damages, restitution, punitive damages, and fees and costs.

On January 8, 2016, Fitbit filed a motion to dismiss Plaintiffs' Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) on the ground that Plaintiffs failed to state a claim upon which relief can be granted.[5] (Dkt. No. 63.) Plaintiffs opposed the motion and on July 15, 2016, the Court issued an Order denying the motion. (Dkt. No. 84.)

Fitbit answered Plaintiffs' Complaint on July 29, 2016, and denied the allegations therein and alleged various affirmative defenses. The parties conducted extensive fact and merits discovery which included the exchange of written discovery in the form of interrogatories, requests for admission, and requests for production. Ex. 1, Perotti Decl. at ¶ 4. Class Counsel reviewed over 149,000 pages of discovery documents produced by Fitbit during the course of written discovery. Ex. 1, Perotti Decl. at ¶¶ 11-12. Class Counsel deposed three of Fitbit's representatives designated under Federal Rule of Civil Procedure 30(b)(6), while counsel for Defendant deposed Plaintiffs Clingman and Brickman. Ex. 1, Perotti Decl. at ¶¶ 13-16. The parties' consulted and obtained

---

[5] Fitbit also filed motions to dismiss against Plaintiffs' initial complaint (Dkt. No. 21) and Plaintiffs' First Amended Complaint (Dkt. No. 34).

experts on the myriad issued presented by the suit and submitted expert reports from nine separate experts, each of whom were deposed.

On January 31, 2017, after the substantial discovery outlined above, Plaintiffs moved the Court for certification of Florida and California classes. Subsequently, on April 20, 2017, Fitbit filed its motion for summary judgment. On November 20, 2017, the Court granted the motion for class certification of Plaintiffs James P. Brickman and Margaret Clingman, except as to the Florida common law fraud and negligent misrepresentation claims.  The Court certified the following classes (the "Certified Classes"):

1. All California residents who have purchased and registered online a Fitbit Flex, One, or Ultra in the State of California between 2009 and October 27, 2014.

2. All Florida residents who have purchased and registered online a Fitbit Flex, One, or Ultra in the State of Florida between 2009 and October 27, 2014.

On December 8, 2017, the Court denied Fitbit's motion for summary judgment.  (Dkt. No. 195.)

After the Court's orders on class certification and summary judgment, the parties continued to prepare for trial in this matter. To that end, the parties met and conferred multiple times over the course of several months to prepare the joint materials required by this Court's standing order on civil jury trials. On March 22, 2018, the parties filed: (1) trial briefs; (2) joint pre-trial statement; (3) motions in limine; (4) joint exhibit list and objections; (5) joint witness list and objections; (6) joint proposed voir dire questions and objections; (7) joint proposed jury instructions and objections; and (8) joint proposed verdict forms and objections.

### b.  Settlement Negotiations

Throughout the litigation, efforts were made by the parties to explore potential settlement. Several mediations were conducted, culminating in a settlement after the Court had denied summary judgment, granted class certification, and extensive trial preparation occurred.

The proposed settlement was reached following significant, and hard fought, litigation as is outlined above. During the course of this litigation, the parties entered into several rounds of arms-

length negotiations which included the help of expert mediators. After the final mediation, before the Hon. John Leo Wagner (Ret.) of Judicate West, the parties continued to discuss settlement, having benefitted from the guidance and direction of the mediator. On March 6, 2018, the parties held a meeting in the San Francisco office of Morrison Forester to further discuss settlement. Ex. 1, Perotti Decl. at ¶ 28. After this meeting, the parties continued to discuss settlement in this matter, which led to the terms of the settlement memorialized in the Settlement Agreement, and which are summarized in this motion. The parties filed a Joint Notice of Settlement in Principle and Stipulation and Proposed Order to Vacate Upcoming Dates and Deadlines on March 28, 2018. Dkt. No. 244.

### c. The relief provided to the Settlement Sub-Classes.

The Settlement provided relief to nine Settlement Sub-Classes which are comprised of Settlement Sub-Class Members in thirteen different states ("Settlement States"). The Court originally certified classes of consumers in Florida and California. However, through the extensive arm's-length negotiations outlined above, Settlement Sub-Class Members in eleven additional states were eligible for relief.

Through the Settlement, Settlement Sub-Class Members were able to file a claim for a cash payment of $12.50 for each qualifying device that they purchased in the Settlement States during the class period. There is no limit on the number of claims that a class member can make, provided that each claim relates to a separate qualifying device purchased in a covered jurisdiction during the relevant time period. Dkt. No. 263-1.

The amount paid to individual claimants is not dependent on the number of claims submitted, the cost of notice or administration, the amount paid in attorneys' fees and costs, or any incentive compensation paid to the named class representatives. Instead, each Settlement Sub-Class Member who made a valid and timely claim will be paid $12.50 in cash for each and every qualifying Fitbit device purchased during the class period, regardless of any of those other factors. This outcome is excellent for the members of the Settlement Sub-Classes, since, based on Plaintiffs' analysis, the most they could recover at trial for out of pocket loss was approximately $15. Ex. 1, Perotti Decl. at ¶¶ 66-67.

#### d.  The Initial Notice Plan.

The Court granted preliminary approval of the Settlement on December 17, 2018, which allowed the parties to distribute notice and Settlement Sub-Class Members to submit claims. Dkt. No. 275. The Settlement included a robust notice plan and a user-friendly claims process. The Initial Notice Plan provided direct notice via e-mail and regular mail as well as publication notice through two national magazines and internet advertisements. Ex. 2, McComb Decl. at ¶¶ 5 – 13.  Direct notice, via U.S. Mail, was sent to 202,491 Settlement Sub-Class Members that purchased their device directly from Fitbit's website and provided a mailing address. Ex. 2, McComb Decl. at ¶ 5. After the direct mail notice was sent out, KCC received 1,668 notices returned with a forwarding address. Ex. 2, McComb Decl. at ¶ 9.  Those notices were immediately re-mailed to the new addresses. *Id.* KCC also received 15,807 direct mail notices returned by the USPS with undeliverable addresses. Ex. 2, McComb Decl., at ¶ 10. KCC performed address searches through various sources and was able to find updated addresses for 6,702 Settlement Sub-Class Members. Ex. 2, McComb Decl., at ¶ 10. Notice was re-mailed to these individuals after their address was updated. *Id.*

Fitbit also provided to KCC, the Settlement Administrator, approximately 5,158,436 e-mail addresses associated with Fitbit devices. Ex. 2,  McComb Decl. at ¶¶ 2-4. Those e-mail addresses were then reverse location searched to determine whether the individual holder of that e-mail address was in one of the Settlement States. Ex. 2, McComb Decl. at ¶ 3. KCC was able to reverse locate 1,146,427 unique e-mail addresses connected to individuals in the Settlement States through this process. In total, direct e-mail notice was sent to 1,350,472 e-mail addresses. Ex. 2, McComb Decl. at ¶¶3-6.

Publication notice was made in *ESPN the Magazine, People,* and *San Francisco Examiner*. Ex. 2, McComb Decl. at ¶ 11. Additionally, banner advertisements, which directed individuals to the settlement website, were run on the Yahoo! Network and Google Display. In total, the internet banner ads received approximately 111,495,038 impressions during their publication period. Ex. 2, McComb Decl. at ¶ 12. The settlement website (www.sleepdevicesettlement.com) hosts copies of the class notice, Settlement Agreement, preliminary approval order, and claim form instructions.

Further, class members can submit claim forms or opt-out forms electronically through the settlement website (as well as via U.S. mail). The settlement website and class notice also provide a toll-free 1-800 number with a live operator that individuals can call with questions related to the settlement. Ex. 2, McComb Decl. at ¶ 25.

The direct notice (e-mail and mail) and publication notice informed the class members of: (1) the deadline to file a claim, (2) the method to file a claim, (3) the amount of money available for each claim, (4) the scope of the release, (5) the date of the final approval hearing, (6) the date that Class Counsel would file their motion for fees and costs, (7) the amount of Class Counsel's lodestar[6] and expenses that would be sought through that motion, and (8) that a copy of all settlement documents were available on the settlement website. At the time of filing of this motion, no class members have objected to the settlement. Ex. 2, McComb Decl., Exhibits A, B, and C. The Court and the parties received one objection to Class Counsel's fee request. (Dkt. No. 286.)

Furthermore, the claim form and claims process were streamlined and simple. The claim form could be completed online or downloaded and submitted via U.S. mail. The claim form could be completed in a matter of minutes and required that the Settlement Sub-Class Member simply identify themselves by name, provide their mailing address, current e-mail address, the state that they purchased the qualifying Fitbit device in, and the e-mail address that they used to register the qualifying Fitbit device. Settlement Sub-Class Members were not required to provide a proof of purchase of the qualifying Fitbit device nor were they required to state the date or exact location where they purchased the qualifying Fitbit device. In total, there were 60,783 claims made during the Initial Notice Plan claims period. Ex. 2, McComb Decl. at ¶ 22. Additionally, there were 212 Settlement Sub-Class Members that timely opted out. Ex. 2, McComb Decl. at ¶ 23. A list of the Settlement Sub-Class Members that timely opted out is attached to the McComb declaration as Exhibit G.

> **e.   The Reminder Campaign and increase in claims made by Settlement Sub-Class Members.**

---

[6] The direct mail, direct e-mail, and publication notice advised the class that Class Counsel had incurred a lodestar of "approximately $3,800,000" and out of pocket expenses of $394,688. Ex. 2, McComb Decl. at Exhibits A, B, and C.

The Reminder Campaign, approved by this Court on October 16, 2019, focused on reminding the Settlement Sub-Class Members of the Settlement and their right to make a claim and seek the $12.50 cash settlement benefit. Dkt. No. 306. The Reminder Campaign provided the Settlement Sub-Class Members with a further 60 day period to submit claims, which expired on December 22, 2019. Dkt. No. 308. The Reminder Campaign utilized direct mail postcards which were delivered to 22,115 Settlement Sub-Class Members for which the Parties did not have a valid e-mail address, three rounds of reminder e-mail messages sent to those Settlement Sub-Class Members who had not yet made a claim (between 1.2 and 1.3 million e-mail reminders were sent in each of the three rounds totaling approximately 3.8 million e-mail messages), approximately 3,844,691 million Facebook advertisements that were targeted and delivered directly to Settlement Sub-Class Members, and a press release that was delivered to various class action websites. Ex. 2, McComb Decl. at ¶ 13-19. In total, the Reminder Campaign resulted in over 80,000 additional claims made by Settlement Sub-Class Members. Ex. 2, McComb Decl. at ¶ 22. This increased the claims made from 60,783 to 141,490, which has provided a substantial increase in the monetary relief provided to the Settlement Sub-Class Members. *Id.* The success of the Initial Notice Plan and the Reminder Campaign is included in the brief chart below.

| By the Numbers: Initial Notice Plan, Reminder Campaign, and Claims | | | |
|---|---|---|---|
| | Initial Notice | Reminder Campaign | Total |
| Notices Mailed | 202,491 | 22,115 | 224,606 |
| Notices Returned as Undeliverable | 15,807 | 2,447 | 18,254 |
| Undeliverable Notices Re-Mailed | 6,702 | 0 | 6,702 |
| Undeliverable Notices Returned with Forwarding Address and Re-Mailed | 1,668 | 0 | 1,668 |
| Notices E-mailed | 1,350,472 | 3,802,739 | 5,153,211 |
| Banner Advertisements on | 111,495,038 | 0 | 111,495,038 |

| Yahoo! and Google Platforms | | | |
|---|---|---|---|
| Facebook Ads | 0 | 3,844,691 | 3,844,691 |
| Timely Opt-Outs | 212 | 0 | 212 |
| Objections | 0 | 0 | 0 |
| Amount of Claims | 60,783 | 80,707 | 141,490 |
| Total Monetary Value of Claims | | | $1,768,625 |

### III.   Argument

#### a.   Final approval of the settlement is appropriate.

Settlements of class actions are strongly favored in the Ninth Circuit. "The Ninth Circuit maintains a 'strong judicial policy' that favors the settlement of class actions." *Dyer v. Wells Fargo Bank, N.A.,* No. 13-cv-02858, 2014 WL 1900682, at *5 (N.D. Cal. May 12, 2014) (quoting *Class Plaintiffs v. City of Seattle,* 955 F.2d 1268, 1276 (9th Cir. 1992)); *Churchill Village, L.L.C. v. General Electric,* 361 F.3d 566, 576 (9th Cir. 2004). Pursuant to Fed. R. Civ. P. 23(e), a Court may grant final approval of a class settlement only after a finding that the settlement is "fair, adequate, and reasonable." *California v. eBay, Inc.,* No. 5:12-cv-05874, 2015 WL 5168666, at *2 (N.D. Cal. Sept. 3, 2015) ("At the final approval stage, the primary inquiry is whether the proposed settlement "is fundamentally fair, adequate, and reasonable."); *In re Linkedin User Privacy Litigation,* 309 F.R.D. 573, 582 (N.D. Cal. 2015) (citing Fed.R.Civ.P. 23(e)(2)).

The decision of whether to accept or reject a settlement lies in "the sound discretion of the trial judge because he is exposed to the litigants, and their strategies, positions, and proof." *Hanlon v. Chrysler Corp.,* 150 F.3d 1011, 1026 (9th Cir.1998). "It is the settlement taken as a whole, rather than the individual component parts, that must be examined for overall fairness." *Id.* The Ninth Circuit has adopted a non-exhaustive eight factor balancing test to guide the Court's discretion in determining whether a proposed settlement is fair, reasonable, and adequate: "(1) the strength of plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement." *Churchill Vill., LLC v. Gen. Elec.,* 361 F.3d 566, 575 (9th Cir. 2004)

(citing *Hanlon*, 150 F.3d at 1026); *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 944 (9th Cir. 2015).

The Court should find that the Settlement is well within the range of approval as a fair, reasonable, and adequate resolution between the Parties, warranting final approval. All of the relevant factors set forth by the Ninth Circuit for evaluating the fairness of a settlement at the final stage weigh in favor of approval.

**1. Strength of Plaintiffs' case and the risk, expense, complexity, and likely duration of further litigation, including risk of maintaining class action status.**

These factors require a review of the strength of Plaintiffs' case, potential risks, rewards, and expense associated with a continuation of the present litigation against the benefit of the settlement. *In re Warfarin Sodium Antitrust Litig.*, 212 F.R.D. 231, 254 (Del. 2002) (noting that the complexity, expense, and likely duration of litigation includes "the probable costs, in both time and money, of continued litigation.'") (quoting *In re Cendant Corp.*, 264 F.3d 201, 233 (3rd Cir. 2001)).

Courts do not apply any "particular formula" to test the strength of a given party's case. *Bellinghausen v. Tractor Supply Co*., 306 F.R.D. 245, 255 (N.D. Cal. 2015). Instead, "the Court's assessment of the likelihood of success is 'nothing more than an amalgam of delicate balancing, gross approximations and rough justice.'" *Bellinghausen,* 306 F.R.D. at 255 (quoting *Rodriguez v. W. Publ'g Corp*., 563 F.3d 948, 965 (9th Cir. 2009)).

Further, the Court must also assess the normal risks associated with the difficulties and complexities of proving liability and damages, if the case were to progress to a trial. *Noll v. eBay, Inc.,* 309 F.R.D. 593, 606 (N.D. Cal. 2015) ("[i]mmediate receipt of money through settlement, even if lower than what could potentially be achieved through ultimate success on the merits, has value to a class, especially when compared to risky and costly continued litigation.); *Curtis–Bauer v. Morgan Stanley & Co., Inc.,* No. C 06-3903, 2008 WL 4667090, at *4 (N.D. Cal. Oct. 22, 2008) ("Settlement avoids the complexity, delay, risk and expense of continuing with the litigation and will produce a prompt, certain, and substantial recovery for the Plaintiff class."); *Torrisi v. Tucson*

*Elec. Power Co.*, 8 F.3d 1370, 1376 (9th Cir. 1993) (noting that the "inherent risks of litigation" were a basis for final approval).

Plaintiffs and Class Counsel are confident in the strength of their claims, but are also acutely aware of the risks associated with trial due to the enormous amount of briefing on the relevant legal issues in this case. Specifically, Plaintiffs are mindful of the defenses available to Fitbit regarding Plaintiffs' ability to prove liability and damages at trial. Fitbit has maintained throughout this litigation that Plaintiffs' claims are meritless and that Plaintiffs cannot prove, and are not entitled to recover, damages. Fitbit argued that Plaintiffs' claims were unfounded, denied any potential liability, and contended that the classes should be decertified. If this settlement is not finally approved, Fitbit has maintained that it is prepared to continue to litigate the case vigorously. On the merits, Fitbit has continued to dispute all claims alleged in the Complaint and in the Action and does not admit any liability or wrongdoing whatsoever.

The risks associated with an impending trial were also compounded by Fitbit's motion to decertify the classes, which it filed prior to the parties reaching settlement. *Rodriguez v. West Pubbl'g Corp.,* No. CV05-3222 R(MCx), 2007 WL 2827379, at *8 (C.D. Cal. Sept. 10, 2007) (finding that where it was likely that Defendant would move to decertify the class, this element weighed in favor of approval), *rev'd on other grounds*, 563 F.3d 948 (9th Cir. 2009); *In re Linkedin User Privacy Litig.*, 309 F.R.D. at 587 (N.D. Cal. 2015) ("the notion that a district court could decertify a class at any time is an inescapable and weighty risk that weighs in favor of a settlement.") (citing *Rodriguez*, 563 F.3d at 966); *Noll v. eBay, Inc.*, 309 F.R.D. at 606 ("Although a class can be certified for settlement purposes, the notion that a district court could decertify a class at any time is an inescapable and weighty risk that weighs in favor of a settlement.").

While Class Counsel are confident in their positions and their ability to succeed at trial, Class Counsel is extensively experienced in class action litigation and cognizant of the realities that trial and Defendant's decertification request entail. The expense, complexity, and uncertainties associated with the remaining stages of the litigation weigh heavily in favor of settlement. Against this backdrop, Plaintiffs and Class Counsel appropriately determined that the instant settlement vastly outweighs the uncertainties outlined above. Moreover, even if Plaintiffs were successful on

liability and damages at trial, it could be years before any form of relief was actually provided to the certified classes. *Lipuma v. American Express Company*, 406 F. Supp. 2d 1298, 1322 (S.D. Fla. 2005) (the likelihood of an appeal "strongly favor[s]" approval of a settlement).

### 2. The amount offered in settlement.

This factor requires an assessment of the "consideration obtained by the class members in a class action settlement[.]" *Nat'l Rural Telecomm. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 534, 527 (C.D. Cal. 2004) (citing *Officers for Justice v. Civil Service Com'n of City and County of San Francisco*, 688 F.2d 615, 628 (9th Cir. 1982)); *Bayat v. Bank of the West*, No. C-13-2376, 2015 WL 1744342, at *4 (N.D. Cal. Apr. 15, 2015) (noting that this factor is "generally considered the most important, because the critical component of any settlement is the amount of relief obtained by the class.") Thus, the Court should look to "the complete package taken as a whole, rather than the individual component parts, that must be examined for overall fairness." *Officers for Justice*, 688 F.2d at 628. "[I]t is well-settled law that a proposed settlement may be acceptable even though it amounts to only a fraction of the potential recovery that might be available to the class members at trial." *DIRECTV*, 221 F.R.D. at 527 (citing *Linney v. Cellular Alaska Partnership*, 151 F.3d 1234, 1242 (9th Cir. 1998)).

Here, the Settlement Agreement provides relief to each and every Settlement Sub-Class Member who filed a valid and timely claim. These class members will receive a cash payment of $12.50 for each claim they made related to a qualify Fitbit device. The potential benefits available to the class members in the Settlement Sub-Classes were not capped and each class member was eligible to receive this relief for each qualifying Fitbit device purchased during the applicable class period. As a whole, the relief that the Settlement Sub-Classes will receive is excellent, since, according to Plaintiffs' analysis, the most they could recover at trial for out of pocket loss was approximately $15. Further, the relief available to the class members of the Settlement Sub-Classes

will not be reduced by the amount of claims made by other class members, the costs associated with administrating and providing notice of the settlement, or attorneys' fees and costs to Class Counsel.

The Settlement is limited to claims and conduct relating to the listed Fitbit devices (Flex, One, and Ultra) for the time periods noted in the Settlement Sub-Class definitions. Significantly, although no relief is provided for the future, Fitbit stopped selling the challenged products in the United States in or before 2017. *See Colgan v. Leatherman Tool Group, Inc.*, 135 Cal. App. 4th 663, 702 (Cal. 2nd Dist. 2006) ("Although the Unfair Competition Law imposes liability for past acts, in order to grant injunctive relief under section 17204 or section 17535, there must be a threat that the wrongful conduct will continue."); *see also Left Coast Wrestling, LLC v. Dearborn Int'l LLC*, No. 317CV00466LABNLS, 2018 WL 2328471, at *14 (S.D. Cal. May 23, 2018) (noting that "[i]njunctions must be tailored to address only the specific harm suffered by the injured party"). Further, and as requested by the Court, in conjunction with the Amended Motion for Preliminary Approval, Fitbit filed a declaration by Conor Heneghan, Ph.D., Fitbit's Director of Research, Algorithms, that established that the Devices were discontinued. Heneghan's declaration also discussed how the sleep tracking technology in the Devices and current products differ in terms of technology and capabilities. Dkt. No. 264-3.

The amount of relief provided to the class members in the Settlement Sub-Classes reflects a reasoned and beneficial compromise weighed against the continued risk of highly contested litigation.

### 3. Extent of discovery completed and the stage of proceedings.

The amount of discovery conducted by the parties during the litigation may be relevant to the determination of the adequacy of the parties' knowledge of the case and their ability to settle settlement based on a complete understanding of the factual issues. *DIRECTV*, 221 F.R.D. at 528

(C.D. Cal. 2004). "A settlement following sufficient discovery and genuine arms-length negotiation is presumed fair." *DIRECTV,* 221 F.R.D. at 528 (citing *Partnership Co. v. Atlantic Acquisition Ltd. P'ship,* 100 F.3d 1041, 1043 (1st Cir.1996); *New York v. Reebok Int'l Ltd.*, 903 F. Supp. 532, 535 (S.D.N.Y. 1995) *aff'd,* 96 F.3d 44 (2nd Cir. 1996)).

Thus, this factor looks to whether "the parties have sufficient information to make an informed decision about settlement." *Larsen v. Trader Joe's Company*, No. 11-cv-05188, 2014 WL 3404531, at \*5 (N.D.Cal. July 11, 2014) (citing *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1239 (9th Cir. 1998)). Courts have explained that "formal discovery is not a necessary ticket to the bargaining table." *Bellinghausen,* 306 F.R.D. at 257 (quoting *Linney*, 151 F.3d at 1239). Instead, the focus of the court is whether "the parties carefully investigated the claims before reaching a resolution." *Bellinghausen,* 306 F.R.D. at 257 (quoting *Ontiveros v. Zamora*, 303 F.R.D. 356, 371 (E.D.Cal. 2014)).

Here, prior to the Settlement the parties completed extensive fact and expert discovery. The parties exchanged written discovery in the form of interrogatories, requests for admission, and requests for production. Ex. 1, Perotti Decl. at ¶ 4. Class Counsel reviewed approximately 149,000 pages of discovery documents produced by Fitbit during the course of written discovery. Ex. 1, Perotti Decl. at ¶ 11. Class counsel deposed three of Fitbit's representatives designated under Fed. R. Civ. 30(b)(6), while counsel for Defendant deposed Plaintiffs Clingman and Brickman. Ex. 1, Perotti Decl. at ¶¶ 13-16. The parties' submitted expert reports from nine separate experts, each of whom were deposed by opposing counsel. Ex. 1, Perotti Decl. at ¶ 18.

Further, the parties also engaged in extensive briefing and argument on significant legal issues including Fitbit's motion to dismiss,[7] Plaintiffs' motion for class certification,[8] Fitbit's motion for summary judgment,[9] motions to exclude expert testimony,[10] and Fitbit's motion to decertify the classes.[11] Prior to settlement, the parties were engaged in trial preparation which

---

[7] Dkt. Nos. 21, 34, 42, 46, 63, 67, 72, and 84.
[8] Dkt. Nos. 119, 122, 128, and 194.
[9] Dkt. Nos. 152, 165, 174, and 195.
[10] Dkt. Nos. 123, 139, 140, 154, 167, 173, and 195.
[11] Dkt. Nos. 207, 214, and 221.

included the filing of: (1) trial briefs; (2) joint pre-trial statement; (3) motions in limine; (4) joint exhibit list and objections; (5) joint witness list and objections; (6) joint proposed voir dire questions and objections; (7) joint proposed jury instructions and objections; and (8) joint proposed verdict forms and objections.

The record was sufficiently and fully developed such that the parties were completely informed of the viability of the remaining claims, and the issues relevant to the trial of Plaintiffs' theories.  Thus, the parties were able to adequately evaluate the strengths and weaknesses of their respective positions and come to a fair, reasonable, and adequate class-wide settlement.

### 4.       The experience and views of counsel.

"Parties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in litigation." *Rodriguez,* 563 F.3d at 967.  For this reason, courts should give the recommendation of counsel a "presumption of reasonableness." *In re Omnivision Techns., Inc*., 559 F.Supp.2d 1036, 1043 (N.D.Cal. 2008).

Based on the judgment, experience litigation consumer class actions, the information learned during extensive fact discovery, expert discovery, and briefing of complex legal issues, Class Counsel believes the proposed Settlement Agreement is fair, adequate, and reasonable. Ex. 1, Perotti Decl. at ¶¶ 57-68. As previously noted, the question of ascertainable out of pocket loss figured heavily in Fitbit's defenses, since there was serious conflict in the evidence and facts about how much of the purchase price could be actually and lawfully attributed to the sleep tracking function of the product, versus other non-challenges features. Ex. 1, Perotti Decl. at ¶¶ 57-68. Each side had documentation that the Devices were designed as a single, integrated product, and Fitbit also disclosed both fact and expert evidence refuting any additional cost for the sleep function.

The success and in fact even admissibility and sufficiency at trial of Plaintiffs' entire theory of relief presented unknown and significant risk, as did the assurance of subsequent Ninth Circuit appeal by Fitbit, if Plaintiffs managed to prevail at trial.  For all those reasons, obtaining all class

members the opportunity to receive nearly 100% of the value of their out of pocket loss is an excellent result for the class.  Notably, the result obtained by Class Counsel ensures the amount of Class Member recovery is ***not*** diminished in any way by any award of attorney fees and costs; cost of administration; cost of notice; or any other obligation that otherwise would typically take away from the amount of each Class Members' recovery.

**5.      The reaction of the Settlement Sub-Class Members has been positive.**

The reaction by the Settlement Sub-Class Members has been unquestionably positive.  The settlement included a robust Initial Notice Plan, a supplemental Reminder Campaign, and a user-friendly claims process. The Initial Notice Plan provided direct notice via e-mail and regular mail as well as publication notice through two national magazines and internet banner advertisements. Ex. 2, McComb Decl., at ¶¶ 2-12. The Reminder Campaign included one round of direct mail postcards, three rounds of e-mail reminder messages, and Facebook advertisements targeted directly to the Settlement Sub-Class Members. Ex. 2, McComb Decl. at ¶ 13-19. In total, 224,606 postcards were mailed directly to Settlement Sub-Class Members, 5,153,211 e-mail notices were sent, 3,844,691 targeted Facebook ads were delivered, and 111,495,038 banner advertisements were delivered. Ex. 2, McComb Decl. at ¶¶ 5-7, 12-19.

Furthermore, the claim form and claims process were streamlined and simple. The claim form could be completed online or downloaded and submitted via U.S. mail. The claim form could be completed in a matter of minutes and required that the Settlement Sub-Class Member simply identify themselves by name, provide their mailing address, current e-mail address, the state that they purchased the qualifying Fitbit device in, and the e-mail address that they used to register the qualifying Fitbit device. Settlement Sub-Class Members were not required to provide a proof of purchase of the qualifying Fitbit device nor were they required to state the date or exact location where they purchased the qualifying Fitbit device.

In total, 141,490 timely claims were made by Settlement Sub-Class Members, which represents a claims rate of between 7.69% and 9.11%.[12] The Reminder Campaign resulted in a 4% to 5% increase in the claims rate. In turn, only 212 Settlement Sub-Class Members opted out of the settlement, which represents approximately 0.01% of the class. Ex. 2, McComb Decl. at ¶ 23. Additionally, no class members objected to the Settlement. And only a single class member filed an objection to Class Counsel's request for fees and costs. However, Class Counsel believes that objection, filed by a serial objector,[13] failed to comply with the requirements set forth in the settlement agreement, provides no basis for the contention that Class Counsel's requested fees are unreasonable, and should be stricken from the record. See Section V, p. 20.

Thus, the timely claims made by Settlement Sub-Class Members in this case total $1,768,625, which is to be paid by Fitbit to the Settlement Sub-Class Members. Additionally, the robust notice plan and settlement administration totals $485,213.54 to date, and KCC estimated that the Reminder Campaign would cost an additional $92,155.00, which are also to be paid, in part, by Fitbit. Ex. 2, McComb Decl. at ¶ 27. To ensure the broadest reach possible for the Reminder Campaign, Class Counsel voluntarily agreed to pay for two of the three rounds of e-mail reminder messages and over half of the Facebook advertisements. Ex. 1, Perotti Decl. at ¶ 45.

The claims rate, taken together with the robust notice plan, demonstrates that the Settlement is fair, adequate, and reasonable. "A court may appropriately infer that a class action settlement is fair, adequate, and reasonable when few class members object to it[.]" *Evans v. Linden Research, Inc.*, No. C-11-01078 DMR, 2014 WL 1724891, at *4 (N.D. Cal. April 29, 2014). Indeed, the

---

[12] The variation in the claims rate is due to the method by which the class size is estimated. Direct notice via e-mail and U.S. mail were sent to 1,552,963. If the claims rate is based on this number, it equates to 9.11%. Class Counsel estimated the class size at 1,839,569, which yields a claims rate of 7.69%.

[13] See Serial Objector Index, Wanda J. Cochran, *available at* https://www.serialobjector.com/persons/70 (last viewed July 23, 2019).

claims rate is well within the range of similar settlements which were granted final approval. *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 941 (9th Cir. 2015) (upholding settlement where direct notice was sent to 35,000,000 class members and there were 1,183,444 claims made, which equates to a 3.4% claims rate); *In re Apple iPhone 4 Prods. Liab. Litig.*, No. 5:10-md-2188 RMW, 2012 WL 3283432, at *1 (N.D. Cal. Aug. 10, 2012) (final approval of a claims-made settlement was granted where the claims rate was between 0.16% and 0.28%); *Moore v. Verizon Commc'n Inc.*, No. C 09-1823 SBA, 2013 WL 4610764, at *8 (N.D. Cal. Aug. 28, 2013) (granting final approval of a class settlement with a 3% claims rate); *Evans v. Linden Research, Inc.*, No C-11-01078 DMR, 2014 WL 1724891, at *4 (N.D. Cal. Apr. 29, 2014) (granting final approval of a class settlement with a claims rate of 4.3%).

### 6. The Settlement Agreement is presumed fair because it is the product the product of good faith, informed, and arms-length negotiations after extensive fact and expert discovery.

In addition to examining the eight *Churchill* factors, courts must consider the risk that collusion is present. "Collusion may not be evident on its face, thus the Ninth Circuit has provided examples of subtle signs of collusion including: (1) when counsel receive a disproportionate distribution of the settlement; (2) when the parties negotiate a 'clear sailing' arrangement providing for the payment of attorneys' fees separate and apart from class funds; and (3) when the parties arrange for fees not awarded to revert to defendants rather than be added to the class fund." *Linkedin* at 589, citing *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946–47 (9th Cir. 2011).

"Courts have afforded a presumption of fairness and reasonableness of a settlement agreement where that agreement was the product of non-collusive, arms' length negotiations conducted by capable and experienced counsel." *In re Netflix Privacy Litigation*, No. 5:11-cv-00379, 2013 WL 1120801, at *4 (N.D. Cal. 2013) (citing *Garner v. State Farm Mut. Auto Ins. Co.*, No. CV 08 1365, 2010 WL 1687832, at *13 (N.D. Cal. 2010)). Indeed, the Ninth Circuit "put[s] a

good deal of stock in the product of an arms-length, non-collusive, negotiated resolution" when preliminarily approving a class-wide settlement. *Rodriguez v. West Publishing Corp.*, 563 F.3d at 965 (citing *Hanlon*, 150 F.3d at 1027).

Here, as extensively noted above, the Settlement was not reached until the case was on the precipice of trial. Prior to reaching the Settlement, the parties conducted several rounds of mediations, without reaching an agreement. Ex. 1, Perotti Decl. at ¶¶ 20-22, 26-28. The legal and factual issues were fully fleshed out after extensive discovery and briefing on all relevant issues. Further, the parties did not reach a clear-sailing agreement and Class Counsel's requested fees and costs have been fully briefed and were heard by the Court at the previous August 1, 2019, hearing. Based on this, the parties were able to reach the present Settlement, which has benefited the Settlement Sub-Class Members, prior to a trial and future lengthy appeal.

**IV.    Final certification of the Settlement Sub-Classes is warranted.**

The previously filed Unopposed Amended Motion for Preliminary Approval requested certification of the Settlement Sub-Classes for the purposes of settlement. Dkt. No. 263. The Court granted this request in its Preliminary Approval Order. Dkt. No. 275. The parties seek final certification of the Settlement Sub-Classes for the purposes of settlement in conjunction with the request that this Court finally approve the Settlement. Plaintiffs incorporate the previous, and extensive, briefing on the certification request from the Unopposed Amended Motion for Preliminary Approval and request that the Court grant final certification of the Settlement Sub-Classes for the purposes of settlement.

**V.    The objection filed by Wanda Cochran failed to comply with the requirements of the Settlement and should be stricken from the record.**

No Settlement Sub-Class Members have filed an objection to the Settlement. However, one individual, Wanda J. Cochran, did file an objection to Class Counsel's requested attorneys' fees and costs. Dkt. No. 286. The Cochran objection should be stricken from the record and/or denied

as it failed it failed to meet the requirements of the Court's Preliminary Approval Order and lacks any basis in law.

Initially, Cochran has not complied with the objection requirements set forth in the Preliminary Approval Order and, therefore, her objection should be stricken. In its Preliminary Approval Order (Dkt. No. 275), this court required that any Settlement Sub-Class Member that sought to object must file and serve a timely notice of intent to object that included a number of specifically identified criteria. Dkt. No. 275, at pp. 5-6. The court's order required, among other things, that if the objector had previously objected to more than three other settlements, the objector must identify those cases, identify who filed the objection, state the outcome of the prior objections, and state the amount of money paid in connection with the objections to the objector including whether such payments were disclosed to the court overseeing the respective settlement. Dkt. No. 275, at pp. 5-6. Additionally, Cochran did not appear at the hearing for Class Counsel's fee request and the initial final approval hearing.

Here, Cochran's objection is silent on this point, but Cochran has been identified as a "serial objector" who has objected to no less than six separate class action settlements.[14] Serial objectors do not seek any benefit for the class members, but instead a payment from Class Counsel to simply go away. This is evidenced by Cochran's conclusory objection to Class Counsel's request for fees and costs, which does not seek to confer any benefit to the Settlement Sub-Class Members. Indeed, serial objectors, such as Cochran, file these meritless objections in an "effort to extract fees from class counsel in exchange for the withdrawal of a meritless objection to the proposed class settlement." *Garber v. Office of Comm'r of Baseball*, No. 12-CV-03704 (VEC), 2017 WL 752183, at *4 (S.D.N.Y., Feb. 27, 2017).

Further, Cochran's conclusory objection to Class Counsel's fees provide no factual or legal merit other than a single sentence that proclaims that Class Counsel does not deserve the fees sought here. "Such '[c]onclusory and unsubstantiated objections are not sufficient to warrant a reduction

---

[14] The website www.serialobjector.com lists Cochran as a known class action settlement serial objector who has objected to six cases. Class Counsel have checked the dockets of each case and confirmed that Cochran did indeed object to settlements reached in those actions or attorneys' fees sought in the settlement. Ex. 1, Perotti Decl. at ¶ 69-71.

in fees.'" *Miller v. Ghiradelli Chocolate Co.*, No. 12-cv-04936, 2015 WL 758094, at *11 (N.D. Cal., Feb. 20, 2015) (quoting *Lucas v. White*, 63 F.Supp.2d 1046, 1057 (N.D. Cal. 1999)). This deficiency should result in the Court either striking the conclusory objection and/or denying the objection.

## VI.   Conclusion.

For all of the foregoing reasons, Plaintiffs request that the Court issue an order (1) granting final approval of the Settlement, (2) granting certification of the Settlement Sub-Classes for the purposes of settlement, (3) directing Fitbit to pay all settlement costs including claims to Settlement Sub-Class Members, settlement administration costs, and notice costs; and (4) entering a final judgment in this matter. Plaintiffs submit with this motion a proposed final approval order, which has been agreed upon by the Parties and is attached hereto as Exhibit 3.

Dated:  January 13, 2020

DWORKEN & BERNSTEIN CO., L.P.A.

By:  */s/ Patrick J. Perotti*
Patrick J. Perotti, Esq.

One of the Attorneys for Plaintiffs and the Classes.

## CERTIFICATE OF SERVICE

A copy of the Unopposed Amended Motion for Final Approval of Class Settlement was filed on January 13, 2020 and notice was sent via the Court's ECF system to all counsel of record.

*/s/ Patrick J. Perotti*
Patrick J. Perotti, Esq. (#0005481)
DWORKEN & BERNSTEIN CO., L.P.A.

One of the Attorneys for Plaintiffs