Patrick J. Perotti (Ohio Bar No. 0005481)
Frank A. Bartela (Ohio Bar No. 0088128)
DWORKEN & BERNSTEIN CO., L.P.A.
60 South Park Place
Painesville, OH 44077
Telephone: (440) 352-3391/Fax: (440) 352-3469
Email: pperotti@dworkenlaw.com
       fbartela@dworkenlaw.com
Appearance *pro hac vice*

John A. Kithas (California Bar No. 64284)
Christopher Land (California Bar No. 238261)
LAW OFFICES OF JOHN A. KITHAS
One Embarcadero Center, Suite 1020
San Francisco, CA 94111
Telephone: (415) 788-8100
Facsimile: (415) 788-8001
Email: john@kithas.comp
       chris@kithas.com

Ronald A. Margolis (Ohio Bar No. 0031241)
BONEZZI, SWITZER, POLITO AND HUPP
1300 E. 9th Street, Suite 1950
Cleveland, OH 44114
Telephone: (216)875-2068/Fax: (216)875-1570
Email: rmargolis@bsphlaw.com
Appearance *pro hac vice*

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMES P. BRICKMAN, individually and as a representative of all others similarly situated,<br><br>              Plaintiff,<br><br>   v.<br><br>FITBIT, INC.,<br><br>              Defendant. | Case No. 3:15-cv-2077-JD<br><br>**DECLARATION OF PATRICK J. PEROTTI IN SUPPORT OF FINAL APPROVAL**<br><br>The Honorable James Donato<br><br>Date Action Filed:   May 8, 2015 |

I, Patrick J. Perotti, hereby declare as follows:

1. I am an attorney admitted to practice law in the courts of the State of Ohio and am admitted pro hac vice to practice before this Court. I am a Partner of the law firm Dworken & Bernstein Co., LPA, counsel of record for Plaintiff James P. Brickman. ("Plaintiff") in the above-captioned action. I have personal knowledge of the matters stated herein, and if called upon to do so, I could and would testify competently thereto.

2. Plaintiff James P. Brickman filed a class action complaint against Fitbit on May 8, 2015.

3. On December 22, 2015, the Fourth Amended Complaint was filed and Margaret Clingman was included as the named class representative of the putative California class.

4. The parties conducted extensive fact and merits discovery which included the exchange of written discovery in the form of interrogatories, requests for admission, and requests for production.

5. On May 26, 2016, Plaintiffs propounded their first set of written discovery including requests for admission, requests for production, and interrogatories.

6. Plaintiffs also served Notice for Deposition pursuant to Fed. R. Civ. P. 30(b)(6) on Fitbit on May 26, 2016.

7. On July 26, 2016, Fitbit served its responses and objections to Plaintiffs' first set of written discovery requests as well as objections to Plaintiffs' Notice of Deposition pursuant to Fed. R. Civ. P. 30(b)(6).

8. Prior to the production of responsive documents by Fitbit, the parties negotiated Stipulated Protective Order which was filed on August 23, 2016 (Dkt. No. 87) and granted by the Court on August 25, 2016 (Dkt. No. 88).

9. On August 26, 2016, Fitbit began a rolling production of documents responsive to Plaintiffs' written discovery request.

10. During the course of merits and class discovery, the parties maintained continuous communication with regard to discovery production.

11. In total, Fitbit produced approximately 149,914 pages of discovery in response to Plaintiffs' written discovery requests.

12. Class Counsel reviewed each and every page of the discovery documents produced by Fitbit during the course of written discovery. A detailed description of Class Counsel's method for the document review is found in my prior declaration in support of Plaintiffs' reply in support of the motion for fees, costs, and incentive awards. Dkt. No. 288-2, ¶¶ 2 – 7.

13. Class Counsel deposed Fitbit representative Colin Heneghan on November 14, 2016 and Fitbit representative Melanie Chase on November 15, 2016. Both depositions were conducted in person at Morrison Foerster's office in San Francisco, California.

14. On December 15, 2016, Class Counsel and Defendant attended a mediation before Martin Quinn at JAMS in San Francisco. No resolution was reached at this mediation.

15. On January 17, 2017, counsel for Fitbit took the depositions of Plaintiffs James Brickman and Margaret Clingman. Both depositions were conducted in person at Morrison Foerster's office in San Francisco, California.

16. On January 18, 2017, Class Counsel deposed Fitbit representative Shelten Yuen. The deposition was conducted in person at Morrison Foerster's office in San Francisco, California.

17. On January 31, 2017, Class Counsel filed their Motion for Class Certification with accompanying exhibits, declarations, and administrative requests to seal confidential materials. See Dkt. Nos. 119-119:26.

18. In this litigation, the parties produced expert reports from nine experts and depositions were held for each expert that produced a report.

19. On March 30, 2017, counsel for Plaintiffs and Defendant were present before Honorable Judge Donato for a hearing on Plaintiff's Motion for Class Certification and Defendant's Motion to Strike the Expert Report of Drs. Burke and Rosen.

20. At the March 30, 2017 hearing, the Court referred the parties to mediation before Hon. Magistrate Donna M. Ryu.

21. After the completion of briefing on Plaintiffs' Motion for Class Certification, Defendant's Motion for Summary Judgment, and Defendant's Motion to Strike Expert Testimony, the parties attended a mediation in California before Honorable Magistrate Donna M. Ryu on May 15, 2017.

22. No resolution was reached at the May 15, 2017, mediation before Hon. Magistrate Ryu.

23. On August 31, 2017, counsel for Plaintiffs and Defendant appeared before the Court for a hearing on Defendant's Motion for Summary Judgment.

24. On November 20, 2017, the Court issued its Order granting Plaintiffs' Motion for Class Certification and certified classes of consumers in California and Florida. Dkt. No. 194

25. On December 8, 2017, the Court issued its Order denying Defendant's Motion for Summary Judgment. Dkt No. 195.

26. On February 6, 2018, the parties attended an all-day mediation with Hon. John Leo Wagner of Judicate West, an independent, skilled, and well-respected neutral mediator in Santa Ana, California.

27. No resolution was reached as a result of this mediation. However, the parties continued to communicate regarding the potential resolution of this action.

28. The parties held a meeting on March 6, 2018, at Morrison Foerster's office in San Francisco, California to further discuss the potential for resolution of this action.

29. At the March 6, 2018, meeting, Plaintiffs' counsel presented chief executives of Fitbit a Power Point highlighting key testimony, evidence and other matters that would be the focus of the upcoming jury trial.

30. No resolution was reached at this meeting and the parties continued to prepare for the April 30, 2018 trial date.

31. On March 22, 2018 the parties submitted the materials required by the Court's standing order including Motions in Limine (Dkt. Nos. 222-225, 227-234), Trial Briefs (Dkt Nos. 226, 243), Joint Pre-Trial Statement (Dkt. No. 237), Joint Proposed Voir Dire with accompanying

objections (Dkt. No. 238), Joint Witness List with accompanying objections (Dkt No. 239), Joint Exhibit List with accompanying objections (Dkt No. 240), Joint Proposed Jury Verdict Forms (Dkt. No. 241), and Joint Proposed Jury Instructions with accompanying objections (Dkt. No. 242).

32. After the March 6, 2018, in person meeting, and after submitting the additional, detailed materials outlined above and especially in paragraph 31, the parties continued to build upon the previous mediation sessions and were able to reach a resolution of this action as outlined in the Agreement.

33. The parties filed a joint stipulation alerting the Court to the resolution of this matter on March 28, 2018. Dkt. No. 244.

**I.      Preliminary approval, settlement administration, and the Reminder Campaign.**

34. The parties attended a preliminary approval hearing before this Court on September 13, 2018, where the Court denied the Motion for Preliminary Approval without prejudice. (Dkt. No. 257). The Court allowed the parties 45 days to cure the issues addressed during the preliminary approval hearing and file an Amended Motion for Preliminary Approval.

35. After the Court's denial of preliminary approval, the parties again entered renewed negotiations aimed at resolving this matter prior to trial.

36. The parties were able to reach an updated settlement, on behalf of the same classes outlined in the original preliminary approval motion, which was executed on October 29, 2018.

37. On December 17, 2018 the court granted preliminary approval of the Settlement and entered its Preliminary Approval Order. Dkt. No. 275.

38. After the Preliminary Approval Order was issued, Class Counsel continued working with KCC and Fitbit to ensure that the settlement administration was properly executed and all deadlines were met.

39. Pursuant to the Settlement and the Final Approval Order, KCC issued notice on March 1, 2019 and the claims period began on the same day.

40. The claims period remained open until May 30, 2019.

41. After the claims period closed, the Plaintiffs filed the original Unopposed Motion for Final Approval of Class Settlement, which was heard by this Court on August 1, 2019.

42. Pursuant to the Court's instructions, after the August 1, 2019, final approval hearing, Class Counsel conferred with both counsel for Fitbit and KCC to devise a supplemental package (the "Reminder Campaign") that would remind the Settlement Sub-Class Members of the Settlement and their right to claim a settlement benefit.

43. The Reminder Campaign, which is fully outlined in the declaration of Deborah McComb, filed as Exhibit 2 to the Unopposed Amended Motion for Final Approval of Class Settlement, included one round of direct mail postcards to Settlement Sub-Class Members for which the Parties did not have an e-mail address, three rounds of e-mail reminders to each Settlement Sub-Class Member that had not yet made a claim, and approximately 3,844,691 Facebook advertisements that were targeted and delivered to Settlement Sub-Class Members that had not yet made a claim.

44. In total, the Reminder Campaign added an additional estimated cost of approximately $92,155.00 to the settlement administration of the Settlement.

45. To ensure that the Reminder Campaign provided the broadest possible reach, Class Counsel voluntarily agreed to pay for two rounds of e-mail reminders and over half of targeted Facebook advertisements.

46. The Parties submitted the Reminder Campaign to the Court for approval on September 20, 2019, and the Court issued an Order approving the Reminder Campaign on October 16, 2019. Dkt Nos. 306 and 307.

47. The Reminder Campaign began on October 23, 2019, with the mailing of the postcard reminders, the first round of e-mail reminder messages, and the beginning of the distribution of the targeted Facebook ads.

48. The Reminder Campaign included a 60 day claims period, which began on October 23, 2019, and ended on December 22, 2019.

49. After the close of the December 22, 2019, Reminder Campaign claims deadline, KCC provided information related to the number of claims made and the number of opt outs received.

50. The declaration of Deborah McComb, Exhibit 2, fully outlines the amount of claims made, opt-outs, the notice methods employed, the reach of the class notice, and the amount of direct notices sent to Settlement Sub-Class members.

51. During the course of the settlement administration, and within the claims deadline, only a single objection was filed by Wanda J. Cochran. The objection was not to the settlement, but to Class Counsel's request for attorneys' fees. Neither Cochran nor her counsel appeared at the hearing, and did not present anything beyond the objection filing, itself.

**II.  Risks of an extended and costly litigation.**

52. Counsel assumed several different forms of risk when agreeing to work on this case and devoting substantial time over the course of three years of hard fought litigation.

53. This case included substantial travel time, which was particularly demanding during the expert discovery phase.

54. During any trial the risk of defeat is always present and is always a factor in determining the best appropriate options for the Plaintiffs and the class.

55. If Plaintiffs and the class were successful at trial, which I fully expect they would have been, it was certain that Fitbit would seek an appeal to the Ninth Circuit of multiple issues.

56. An appeal of this matter would have required the further expenditure of time, money, and effort to ensure that the Plaintiffs and the classes were provided the best possible representation. All of that work, and all the above work, was and would be performed without pay, and without assurance of any recovery, on a wholly contingent fee basis.

**III.  Opinion of a skilled and experienced attorney.**

57. As I have previously attested, I have served as lead counsel on multiple class actions across the U.S. over many years.

58. I have extensive experience litigating complicated cases to trial and through an appeal.

59. I regularly evaluate the worth of class actions I am leading, including the risk of loss and likelihood of success; the viability of the Defendant; the track record of other like cases handled by me and also by others in the same industry; business factors affecting the Defendant including upcoming major business events where the company would want to conclude a large, pending class suit; the legal climate in the jurisdiction where my case is pending on the specific issues presented in my lawsuit; and especially the attitude of jury pools (based on focus group studies we commission for our upcoming trials).

60. The most important skill in these cases is making the issues *extremely* simple, and knowing what to give up.

61. In numerous banking cases I have handled, this approach required that we emphasize the risk of a significant money judgment for a challenged practice that was clearly a violation of certain laws, using a well-planned base of both appellate and Supreme Court (Ohio) case law (created by us) to prevent any avoidance of liability. A very good example of that strategy was a recent victory against the Federal National Mortgage Association after almost 15 years of state and federal court litigation involving hundreds of thousands of customers and millions of dollars.

62. In numerous other suits, the issue that forced settlement was the risk of state or national agency review of the challenged business practices, leading to potential disqualification, sanctions, penalties, or loss of licensure or certification.

63. In the present case, the key issue was the good name and reputation of Fitbit for a product that relies almost entirely on name and reputation.

64. Based on all of the foregoing, it is my opinion as a skilled and experienced attorney that the settlement reached in this matter was an extraordinary one, and one that provides an excellent monetary benefit to the class members.

65. In addition to securing a settlement for only Florida and California customers, Class Counsel using very careful research, analysis and negotiation with defense counsel after Fitbit's indication of willingness to settle, expanded the settlement to include approximately eleven other states and the customers from those states.

66. The settlement provides a cash payment of $12.50 for every timely and valid claim. This amount represents approximately 83% of the best case per device damages (i.e. $15 per device) that Plaintiffs would have sought at a trial.

67. It is my experience that direct monetary relief in this proportion to the potential damages to be awarded at trial, in the context of a consumer class action, is an exceptional benefit to the class. Typical settlement that are approved and are considered excellent by the courts are often less than 50% of possible maximum recovery. This one is 83% of that amount.

68. Pursuant to information forwarded to Class Counsel by the Settlement Administrator, we were able to structure a very extensive notice so that approximately 1.5 million consumers were directly informed of this matter and their rights to settlement participation multiple times.

### IV. Objection of Wanda Cochran

69. The website www.serialobjector.com identifies Wanda Cochran as a serial objector to class action settlements.

70. This website identifies that Wanda Cochran has objected to the following settlements: *Poertner v. The Gillette Company*, No. 12-cv-00803 (M.D. Fla.); *Gemelas v. The Dannon Company, Inc.*, No. 08-cv-00236 (N.D. Ohio); *Volz v. Coca-Cola*, No. 10-cv-00879 (S.D. Ohio); *Koller v. Deoleo USA*, No. 14-cv-02400 (N.D. Cal.); *Demmick v. Cellco Partnership*, No. 06-cv-02163 (D. NJ); *Flaum v. Doctor's Associates*, No. 16-cv-61198 (S.D. Fla.)

71. I checked the docket of each of these cases, by the use of PACER, and confirmed that Wanda Cochran did submit an objection in each of these class action settlements.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated: January 13, 2020

**DWORKEN & BERNSTEIN CO., L.P.A.**

By: */s/ Patrick J. Perotti*
Patrick J. Perotti, Esq.

One of the Attorneys for Plaintiffs